## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **WSOU Investments, LLC d/b/a Brazos Licensing and Development,**<br><br>Plaintiff,<br><br>v.<br><br>**Xilinx, Inc.,**<br><br>Defendant. | C.A. No. 20-1228-CFC<br>C.A. No. 20-1229-CFC<br>C.A. No. 20-1231-CFC<br>C.A. No. 20-1232-CFC<br>C.A. No. 20-1233-CFC |

## XILINX INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404

Dated: December 23, 2020

OF COUNSEL:
Hilda C. Galvan
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
(214) 969-4556
hcgalvan@jonesday.com

David B. Cochran
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-7029
dcochran@jonesday.com

Thomas W. Ritchie
JONES DAY

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Beth A. Swadley (No. 6331)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
bswadley@ycst.com

77 West Wacker Dr.
Chicago, IL  60601-1692
(312) 269-4003
twritchie@jonesday.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.    SUMMARY OF ARGUMENT ........................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS ....................................2

III.  CONCISE STATEMENT OF FACTS ................................................3

IV.  LEGAL STANDARDS ..............................................................5

V.   ARGUMENT ..........................................................................7

    A.   The Northern District of California is an Appropriate Venue .............8

    B.   The Private Interest Factors Strongly Favor Transfer to the
        Northern District of California ................................................8

        1.   First Factor:  WSOU's Forum Preference Should be
             Given Reduced Weight ....................................................8

        2.   Second Factor:  Xilinx's Preferred Forum is the Northern
             District of California ......................................................10

        3.   Third Factor:  The Claims Arose in the Northern District
             of California ................................................................11

        4.   Fourth Factor:  The Northern District of California is
             More Convenient ..........................................................13

        5.   Fifth Factor:  Convenience of Non-Party Witnesses is
             Neutral ......................................................................15

        6.   Sixth Factor:  The Relevant Records Reside in the
             Northern District of California .........................................16

    C.   The Public Interest Factors Support Transfer to the Northern
        District of California ........................................................17

        1.   Eighth Factor:  Practical Considerations Favor Transfer
             to the Northern District of California ..................................17

## TABLE OF CONTENTS
### (continued)

Page

2.   Tenth Factor:  The Local Interest Factor Favors Transfer
to the Northern District of California ......................................18

3.   Remaining Factors:  The Remaining Four Factors are
Neutral With Respect to Transfer to the Northern District
of California ...............................................................................20

VI.   CONCLUSION..............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page**

<span style="font-variant: small-caps;">Cases</span>

*ANI Pharm., Inc. v. Method Pharm., LLC*,
  C.A. No. 17-1097-MN, 2019 WL 176339 (D. Del. Jan. 11, 2019)....................18

*Arbor Global Strategies, LLC v. Xilinx, Inc.,*
  C.A. No. 10-1986-MN, 2020 WL 4673832 (D. Del. Aug. 12, 2020)..........13, 19

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
  C.A. No. 12-139-GMS, 2013 WL 3293611 (D. Del. June 28, 2013) ..........13, 14

*Human Genome Scis., Inc. v. Genentech, Inc.*,
  C.A. No. 11-082-LPS, 2011 WL 2911797 (D. Del. July 18, 2011)....................6

*Illumina, Inc. v. Complete Genomics, Inc.*,
  C.A. No. 10-649-RFK, 2010 WL 4818083 (D. Del. Nov. 9, 2010)...................17

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ...................................................................14, 18

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) .........................................................................16

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ...................................................................11, 18

*In re Link_A_Media Devices Corp.,*
  662 F.3d 1221 (Fed. Cir. 2011)  .......................................................................15

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .........................................................................20

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008*) ...........................................................................14

*Intellectual Ventures I LLC v. Altera Corp.*,
  842 F. Supp. 2d 744 (D. Del. 2012).........................................8, 12, 13, 14, 15, 18

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
  797 F. Supp. 2d 472 (D. Del. 2011).......................................................................19

*Jumara v. State Farm Insurance Co.*,
  55 F.3d 873 (3d Cir. 1995) ...........................................................................passim

*McRo, Inc v. Activision Blizzard, Inc.*,
  C.A. No. 12-1508-LPS-CJB, 2013 WL 6571618
  (D. Del. Dec. 13, 2013)........................................................................7, 10, 11, 13

*Mitel Networks Corp. v. Facebook, Inc.*,
  943 F. Supp. 2d 463 (D. Del. 2013)......................................................................14

*Nalco Co. v. AP Tech Grp. Inc.*,
  C.A. No. 13-1063-LPS, 2014 WL 3909114
  (D. Del. Aug. 8, 2014) ..............................................................7, 11, 13, 16, 17

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
  425 F. Supp. 2d 325 (E.D.N.Y. 2006) ..................................................................16

*Papst Licensing GmbH & Co. KG v. Xilinx, Inc.*,
  126 F. Supp. 3d 430 (D. Del. 2015)...................................... 11, 12, 13, 17, 18, 19

*Pragmatus AV, LLC v. Yahoo! Inc.*,
  C.A. No. 11-902-LPS-CJB, 2012 WL 4889438
  (D. Del. Oct. 15, 2012) .......................................................................................10

*Selene Commc'n Techs., LLC v. Trend Micro Inc.*,
  C.A. No. 14-435-LPS, 2015 WL 237142 (D. Del. Jan. 16, 2015) .............7, 9, 10

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970) ....................................................................................6

STATUTES

28 U.S.C. § 1400(b) ....................................................................................8

28 U.S.C. § 1404(a) ...................................................................1, 5, 6, 20

Xilinx, Inc. ("Xilinx") respectfully requests transfer of the above-captioned cases to the Northern District of California under 28 U.S.C. § 1404(a).

## I.   SUMMARY OF ARGUMENT

The Northern District of California is by far the more convenient venue in which to litigate these cases.  On balance, the private and public interest factors strongly favor transfer, especially in view of the reduced weight, if any, that should be given to plaintiff's forum preference.

WSOU Investments, LLC ("WSOU") has demonstrated, over the past year, that it does not have a preference to litigate in Delaware.  Since March, WSOU has filed 181 patent-infringement lawsuits, with 176 of them filed against 14 other defendants in the Western District of Texas or Eastern District of Virginia.  Almost half of those defendants, like Xilinx, are Delaware companies with a principal place of business outside of Delaware.  Indeed, WSOU is itself a Delaware company with its principal place of business outside of Delaware.  In addition, the relationship between the patents-in-suit and Delaware, as well as that of the named inventors and Delaware, is minimal.  Four of the patents-in-suit have had no connection to Delaware, and the fifth had a connection for a limited period.  And, the named inventors all reside outside of Delaware.  Simply put, there is no rational reason for WSOU's selection of Delaware as the forum for these cases, and thus, this factor should be given reduced weight, if any.

- 1 -

The other private interest factors–the defendant's preference, where the claim arose, and location of relevant records–weigh strongly in favor of transfer.  Xilinx's only connection to Delaware is that it serves as its state of incorporation.  It has no office or other facilities in Delaware.  Its headquarters are in San Jose, California, in the Northern District, where it employs approximately 1,633 people.   Its employees/witnesses and documents relevant to these cases are primarily located in the Northern District, and none are located in Delaware.  Xilinx researched, designed, developed and marketed the vast majority of the accused products in the Northern District of California, and its records show that it does not make any sales in Delaware.

Additionally, two of the public interest factors–practical considerations and local interest–favor transfer, while the remaining public interest factors and the private interest factor (convenience of third-party witnesses) are neutral.  Thus, more factors weigh in favor of transfer than against it.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

These five cases are at an early stage.  The Complaints were filed on September 16, 2020, and Xilinx moved to dismiss WSOU's indirect infringement claims on November 9.  On November 23, WSOU filed Amended Complaints limiting its pre-suit damages to direct infringement.  On December 7, Xilinx moved

to dismiss the indirect infringement claims in the Amended Complaints.   On December 21, 2020, WSOU filed its oppositions to those motions.

## III.   CONCISE STATEMENT OF FACTS

Xilinx is a recognized leader in the business of designing, developing, and marketing field programmable gate arrays (FPGAs) and other logic devices. Declaration of Xin Wu ("Wu Decl."), filed concurrently, ¶ 2.  Xilinx is headquartered in San Jose, California, within the Northern District of California, where it employs approximately 1,633 employees.  *Id.* ¶¶ 3, 5.  Xilinx has no office or facilities in Delaware.  *Id.* ¶ 5.  The accused products in these cases were researched, designed, developed, and marketed at Xilinx's offices in the Northern District of California. *Id.* ¶ 4.  And Xilinx employees with knowledge of the accused products work primarily in Xilinx's headquarters in Northern California or outside of the United States.  *Id.* ¶ 5.

The documents that may be relevant to these cases, including those relating to research, development, marketing, and sale of the accused products, are all maintained at its headquarters in the Northern District of California.  *Id.* ¶ 6.  Its general business records are also maintained at Xilinx's headquarters in San Jose. *Id.* ¶ 7.

To Xilinx's knowledge, WSOU's only connection to Delaware is that it is incorporated here.   Declaration of Jeffrey M. White ("White Decl."), filed

concurrently, ¶ 2 at 1.    WSOU does not appear to have any physical presence in Delaware.   Indeed, WSOU's principal place of business is in Waco, Texas.   D.I. 1 (Complaint) ¶ 1; White Decl. ¶ 3 at 1.

In addition to these five lawsuits, WSOU has filed 176 other lawsuits in the Western District of Texas and Eastern District of Virginia involving other patents and defendants.  *Id.* ¶ 18.   Almost half of the lawsuits filed outside of Delaware involve parties that are Delaware corporations.  *Id.* ¶ 18 at 1-5.

The relationship between the patents-in-suit and the District of Delaware is minimal at best.  Before being assigned to WSOU in August 2017, and December 2017, the only connection between the patents-in-suit and Delaware is that one patent was initially assigned to a Delaware corporation, although, through corporate changes, it was later assigned to a French corporation.

- U.S. Patent Nos. 6,784,653 ("'653 patent") (C.A. No. 20-1228-CFC ("Case-1228")) was assigned to WSOU on August 21, 2017.  White Decl. ¶ 8 at 6, 13.  A few weeks earlier, on August 2, 2017, it was assigned to Wade and Company (organized and located in Toronto, Ontario, Canada). *Id.*  Before that, it was assigned to Alcatel Lucent (incorporated and located in France). *Id.* ¶ 4 at 3.

- U.S. Patent Nos. 7,613,938 ("'938 patent") (C.A. No. 20-1231-CFC ("Case-1231")) and 9,312,838 ("'838 patent") (C.A. No. 20-1233-CFC ("Case-1233")) share the same assignment history as the '653 patent. *Id.* ¶¶ 6-8 at 14-15.

- U.S. Patent No. 7,068,950 ("'950 patent") (C.A. No. 20-1229-CFC ("Case-1229")) shares the same history as the '653 patent, except at issuance the '950 patent was assigned to Lucent Technologies, Inc. (New Jersey).  D.I. 1, Exhibit 1 in Case-1229; White Decl. ¶ 8 at 6, 16.

- 4 -

- U.S. Patent No. 7,903,971 ("'971 patent") (C.A. No. 20-1232-CFC ("Case-1232")) was assigned to WSOU on December 22, 2017.  White Decl. ¶¶ 9-10.  Before that, it was assigned to Alcatel Lucent.  *Id.*

In addition, none of the named inventors have a connection to Delaware.

- The '653 patent named inventor, Wolfgang Baumert, appears to live in Schwieberdingen, Germany according to the '653 patent.  D.I. 1, Exhibit 1 in Case-1228.

- The '950 patent named inventor, Jeffrey Sinsky, appears to live in New Jersey.  White Decl. ¶¶ 11–12.

- The '938 patent named inventors–Charles Pearse, Eric Doyon and Tony D'Addona–appear to live in Canada.  *Id.* ¶¶ 13–14; D.I. 1, Exhibit 1 in Case-1231.

- The most current location for the '971 patent named inventor, Heinz-Georg Krimmel, is Korntal-Muenchingen, Germany.  White Decl. ¶ 15.

- The '838 patent named inventors–Jeffrey Zwiebel and Andrea Galbiati–appear to live in Texas and Italy, respectively.  *Id.* ¶¶ 16–17.

WSOU has not disclosed whether the named inventors are serving as consultants to WSOU or otherwise have an obligation to assist WSOU with these cases.  If so, these inventors would be available for trial in either the Northern District of California or Delaware.  Xilinx is not aware of any other non-party witnesses who reside in Delaware.

## IV.   LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Transfer is appropriate when, "on balance the litigation would more conveniently proceed and the interests of

justice would be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  The burden is on the moving party to show the "balance of convenience of the parties is strongly in favor" of transfer. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  The Third Circuit has recognized that:

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara,* 55 F.3d at 879 (citation omitted).

In the Third Circuit, the first step is to determine whether the case could have been brought in the transferee venue.  *Id.* at 878–79.  Next, the court weighs the private and public interest factors.  *Id.* at 879–80; *see, e.g., Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. No. 11-082-LPS, 2011 WL 2911797, at *5–11 (D. Del. July 18, 2011).  The private interests include:

> [the] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora . . . and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara*, 55 F.3d at 879 (citations omitted).  The public interests include:

- 6 -

[7] the enforceability of the judgment, [8] practical considerations that could make the trial easy, expeditious, or inexpensive, [9] the relative administrative difficulty in the two fora resulting from court congestion, [10] the local interest in deciding local controversies at home, [11] the public policies of the fora, . . . and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80.

A case should be transferred, when, as is the case here, the court finds that more factors weigh in favor of transfer than against. *See Selene Commc'n Techs., LLC v. Trend Micro Inc.*, C.A. No. 14-435-LPS, 2015 WL 237142, at *1–2 (D. Del. Jan. 16, 2015) (transferring where three factors weighed in favor of transfer, two weighed against, and all others "are either neutral or slightly favor transfer"); *Nalco Co. v. AP Tech Grp. Inc.*, C.A. No. 13-1063-LPS, 2014 WL 3909114, at *1–2 (D. Del. Aug. 8, 2014) (transferring where four factors favored transfer, one weighed against, and all other factors "are either neutral or favor transfer"); *McRo, Inc v. Activision Blizzard, Inc.*, C.A. No. 12-1508-LPS-CJB, 2013 WL 6571618, at *13 (D. Del. Dec. 13, 2013) (transferring where six factors weighed in favor of transfer, one weighed against, and all others were neutral).

## V. ARGUMENT

Xilinx asks this Court to transfer these cases to the Northern District of California because that district was an appropriate original venue for these cases, and on balance, the *Jumara* factors strongly favor transfer.

### A.   The Northern District of California is an Appropriate Venue

These cases could originally have been brought in the Northern District of California. As set forth above, Xilinx's principal place of business is in San Jose, California. The Northern District of California is where Xilinx employs approximately 1,633 people; where the vast majority of its development, design, and marketing of the accused products takes place; where the vast majority of the Xilinx employees with knowledge of and involvement in the accused products reside; and where the vast majority of the documents pertaining to the accused products are located. Wu Decl. ¶¶ 4–7. Thus, Xilinx meets the first step of the transfer analysis. *See* 28 U.S.C. § 1400(b).

### B.   The Private Interest Factors Strongly Favor Transfer to the Northern District of California

Xilinx addresses each of the private interest factors as they appear in *Jumara*, 55 F.3d at 879. All of the private factors weigh in favor of transfer, except for WSOU's forum preference (which should be given little weight, if any) and the convenience of third-party witnesses (which is neutral).

### 1.   First Factor:  WSOU's Forum Preference Should be Given Reduced Weight

Typically, the plaintiff's choice of forum is given substantial weight. *See, e.g.*, *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754-55 (D. Del. 2012). However, when a plaintiff's connection to its choice of forum is as tenuous as WSOU's, including that its principal place of business is not in Delaware, courts

in this District have given the plaintiff's choice reduced weight.  *See, e.g.*, *Selene*, 2015 WL 237142, at *1 (concluding "the deference to be given to [Plaintiff's] choice of forum is reduced" where the plaintiff's principal place of business was not in Delaware).  In *Selene*, the court also took into account that the plaintiff had only been created four years prior, its parent company was wholly owned by a Nevada corporation, and the plaintiff had only owned the patent-in-suit for a year before the suit was brought.  *See id.* at *1 & n.1.

The facts here are more compelling than those in *Selene* and, accordingly, warrant that WSOU's choice of forum be given reduced weight.  WSOU has no known offices or personnel in Delaware; rather, its only known addresses are in Waco, Texas, and Los Angeles, California.  White Decl. ¶¶ 3-10.  Additionally, WSOU was created only three years ago, and the patents-in-suit were assigned to WSOU later that same year.  *Id.*  Prior to being assigned to WSOU, four of the patents-in-suit had no connection to Delaware, and the fifth had a connection for a limited period.

Moreover, WSOU does not have a strong preference to litigate in Delaware, as evidenced by its litigation history.  Beginning in March 2020, WSOU has filed 181 patent-infringement lawsuits.  *Id.* ¶ 18.  These five cases against Xilinx are the only lawsuits filed in Delaware.  *Id.*  WSOU has filed the vast majority of its lawsuits in the Western District of Texas (164 cases), and the remainder were filed in the

Eastern District of Virginia (12 cases). *Id.* In fact, WSOU sued Arista Networks, Juniper Networks, Hewlett Packard, Google, Dell Technologies, and Salesforce.com outside of Delaware even though they are all Delaware corporations. *Id.* ¶¶ 19–24. By selecting Texas over Delaware for its litigation against these six Delaware corporations, WSOU established that Delaware is ***not*** its preferred venue for litigating its disputes. Accordingly, there is no rational and legitimate reason for WSOU to choose Delaware for the present cases. WSOU's choice of forum should therefore be given limited weight, if any. *See Selene*, 2015 WL 237142, at *1. Certainly, WSOU's conduct, and lack of true connection to Delaware, should not render its choice of venue dispositive.

### 2. Second Factor: Xilinx's Preferred Forum is the Northern District of California

Xilinx's preference is to litigate these cases in the Northern District of California, and it has "rational, legitimate reasons to support that preference," which strongly favors transfer. *McRo*, 2013 WL 6571618, at *4 (quoting *Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2012 WL 4889438, at *6 (D. Del. Oct. 15, 2012)). As detailed above, Xilinx's principal place of business is in the Northern District of California. That district is significantly more convenient because the vast majority of the relevant Xilinx witnesses and the relevant Xilinx documents are located there. Wu Decl. ¶¶ 5–8. Additionally, the vast majority of the accused products were designed and developed there. *Id.* ¶ 4. The "physical

proximity of [Xilinx's] place of business (and relatedly, to witnesses and evidence potentially at issue in the case) to the proposed transferee district is a clear, legitimate basis for seeking transfer." *See McRo*, 2013 WL 6571618, at *4; *see also Papst Licensing GmbH & Co. KG v. Xilinx, Inc.*, 126 F. Supp. 3d 430, 438-39 (D. Del. 2015) (finding the "second private interest *Jumara* factor weighs in favor of transfer" to the Northern District of California).

> ### 3.   Third Factor:  The Claims Arose in the Northern District of California

With respect to the third factor, a court "typically focuses on the location of the production, design and manufacture of the accused instrumentalities." *Papst*, 126 F. Supp. 3d at 439; *Nalco*, 2014 WL 3909114, at *2 (finding this factor "favor[ed] transfer" where the defendant "conduct[ed] all of its research and development, marketing, and sales out of" the proposed transferee forum such that plaintiff's claims arose "from products developed, marketed, and sold out of" that forum). Here, this factor strongly favors transfer.

There are significant connections between the claims in these cases and the Northern District of California that support transfer. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (finding where "there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor"). Xilinx researched, designed, developed, and marketed the vast majority of the accused products in these cases at

its headquarters in San Jose, in the Northern District of California.  Wu Decl. ¶ 4.

Xilinx has no record of any sales of its products into Delaware.  *Id.* ¶ 9.  Further,

Xilinx is accused of directly infringing the method claims of the '653 patent, the

'950 patent, and the '971 patent, which would require Xilinx to use the accused

products to practice those methods.  Any such use by Xilinx would not have occurred

in Delaware, where it has no offices or facilities, and would have occurred, if at all,

in Northern California, where research, design, and development of the vast majority

of the accused products are conducted. *See* Wu Decl. ¶¶ 4-5.  Xilinx is also accused

of induced and contributory infringement[1] based on its customers' alleged use of the

accused products.  Any alleged inducement or contributory conduct by Xilinx would

emanate from the Northern District of California, while any alleged direct

infringement would arise where the customer is located.

Although the decision to transfer in every case is based on a unique set of

facts, the Court can look to precedent for guidance.  *Altera*, 842 F. Supp. 2d at 751.

Here, the facts relevant to transfer are similar to those in an earlier Delaware case

involving Xilinx.  *Papst*, 126 F. Supp. 3d at 430.  In *Papst*, the court transferred a

lawsuit brought by a patent assertion entity against Xilinx from Delaware to the

---

[1] These indirect infringement claims are currently the subject of pending motions to dismiss for failure to state a claim.  (D.I. 12, in Case-1228, Case-1229; Case-1231, and Case-1232; D.I. 11, Case-1233.)

Northern District of California.[2]  Among other factors, the *Papst* court found that the third factor weighed in favor of transfer because the allegedly infringing acts at issue, like those here, had a far stronger connection to the Northern District of California, than to Delaware.  *Id.* at 439; *Nalco*, 2014 WL 3909114, at *2 (finding factor favored transfer where research and development occurred in the transferee district).

### 4.  Fourth Factor:  The Northern District of California is More Convenient

The Court must consider issues including "(l) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal."  *See McRo*, 2013 WL 6571618, at *7.  As to the third sub-factor, a determination that a company has sufficient financial resources to litigate in either forum should not "blind the court to the inevitable costs and disruptions that cross-country litigation imposes."  *Audatex N. Am., Inc. v. Mitchell*

---

[2]  The *Altera* court denied transfer on a set of facts that differed in significant ways from those here, including that part of the *Altera* case had previously been transferred to the District of Delaware from the Northern District of California.  The facts also differed in *Arbor Global Strategies, LLC v. Xilinx, Inc.*, C.A. No. 10-1986-MN, 2020 WL 4673832 (D. Del. Aug. 12, 2020), where transfer was denied based in large part on the plaintiff's preference for this forum, having filed its first and only patent infringement case in Delaware.

*Int'l, Inc.*, C.A. No. 12-139-GMS, 2013 WL 3293611, at *4 (D. Del. June 28, 2013) (quoting *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 472 (D. Del. 2013)).

The Northern District of California would plainly be a more convenient forum than Delaware for Xilinx, resulting in cost savings, reduced lost productivity, and less impact on Xilinx's employees (and their families). Xilinx's principal place of business is eleven miles from the Federal Courthouse in San Jose. Wu Decl. ¶ 3. Xilinx witnesses located in or around San Jose will not need separate hotel or airfare to be able to testify, will not lose days on either end of their testimony for cross-country travel (resulting in both lost productivity and extended personal disruption), and can maintain reasonable off-hours, potentially easing childcare, elder care, and other similar issues. *Id.* ¶ 8. In contrast, none of the potential witnesses or evidence is known to be in or near Delaware. *Id.*; *see In re Acer Am. Corp.*, 626 F.3d 1252, 1255–56 (Fed. Cir. 2010) (reversing refusal to transfer, noting that failing to transfer would result in "significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work . . . [and] 'personal costs associated with being away from work, family, and community'" (internal citation omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008))).[3]

---

[3] The *Altera* court considered the location of Xilinx's operations and witnesses in California, found this factor weighed in favor of transfer, and noted that Xilinx's incorporation in Delaware was not dispositive. *See Altera*, 842 F. Supp. 2d at 756

WSOU also does not have any witnesses, operations, records, or physical connection to Delaware. Its only known addresses are in Waco, Texas, and Los Angeles, California. D.I. 1 ¶ 1; White Decl. ¶¶ 3–10.

Further, this factor weighs in favor of transfer when viewed in light of WSOU's litigation tactics. In its litigation dispute with at least two defendants, WSOU has filed multiple <u>rounds</u> of lawsuits against them, creating additional inconvenience and costs to those defendants. WSOU filed three rounds of lawsuits against Huawei, with 11 cases filed in March, 12 cases filed in June, and 7 cases filed in September, and two rounds against Juniper Networks. White Decl. ¶ 18.

### 5. Fifth Factor: Convenience of Non-Party Witnesses is Neutral

Courts have explained that the "convenience of non-party witnesses" carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Except for the named inventors on the patents-in-suit, Xilinx is not aware of any other non-party witnesses. Xilinx has reason to believe that the named inventors live in Germany, New Jersey, Canada, Texas, and Italy and are therefore located outside of the State of Delaware. White Decl. ¶¶ 11–17. The Northern District of California and Delaware would be equally convenient (or inconvenient) for the four inventors in Germany, Texas, and Italy,

---

(citing *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223–24 (Fed. Cir. 2011)).

while Delaware may be more convenient for the other four inventors located in New Jersey and Canada.  However, as is typical, the inventors may be consulting with WSOU or otherwise have an obligation to be involved in this litigation.  Under this scenario, they would be available for trial in either the Northern District of California or Delaware.  Thus, this factor would be neutral.

### 6.   Sixth Factor:  The Relevant Records Reside in the Northern District of California

The Northern District of California is home to the vast majority of sources of proof relevant to these cases, which clearly weighs in favor of transfer.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  Specifically, Xilinx's headquarters are in San Jose, and any documents related to the development, production, and sales of the accused products in the United States, as well as any relevant business records, are in the Northern District of California.  Wu Decl. ¶¶ 3–7.  The majority of the custodians of these documents are also in the Northern District of California.  *Id.* ¶¶ 4–7; *see Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006))); *Nalco*, 2014 WL 3909114, at *2 (acknowledging technological advances reduce burden of transferring evidence, but concluding that "plainly this factor favors transfer" where defendant's records were

kept in transferee district); *see also Papst*, 126 F. Supp. 3d at 443 (concluding this factor weighed in favor of transfer where majority of documents were in Northern District of California).

### C. The Public Interest Factors Support Transfer to the Northern District of California

The public interest factors of practical considerations and local interest favor transfer, while the remaining public interest factors are neutral.

#### 1. Eighth Factor: Practical Considerations Favor Transfer to the Northern District of California

The "practical considerations that could make the trial easy, expeditious, or inexpensive" favor transfer. *See Jumara*, 55 F.3d at 879. These considerations include the "convenience of witnesses and parties" and the "physical distance of the parties to Delaware." *Illumina, Inc. v. Complete Genomics, Inc.*, C.A. No. 10-649-RFK, 2010 WL 4818083, at *6 (D. Del. Nov. 9, 2010) (holding that convenience factors "heavily favor[ed]" transfer where "[m]ost of the potential and identified witnesses, and relevant records and evidence, are located in the Northern District of California").

As discussed above, Xilinx, the majority of its witnesses, and its relevant evidence are *in* the Northern District of California. Wu Decl. ¶¶ 3–7. As such, for each of these individuals, both the monetary cost and the time lost as a result of travel due to these cases would be much less in California than were these cases to continue

in Delaware. *ANI Pharm., Inc. v. Method Pharm., LLC*, C.A. No. 17-1097-MN, 2019 WL 176339, at *10 (D. Del. Jan. 11, 2019) (finding factor favored transfer and noting that while Wilmington is "relatively accessible to the parties, the Court cannot avoid the reality that trial in this district would require all parties, witnesses, experts, and evidence to be transported to Delaware").[4]   As such, there are no practical considerations that would render Delaware a more appropriate venue than the Northern District of California.  This factor therefore favors transfer.

### 2.    Tenth Factor:  The Local Interest Factor Favors Transfer to the Northern District of California

The Northern District of California's "relevant factual connection" to these cases favors transfer. *Hoffman-La Roche*, 587 F.3d at 1338; *see also Acer*, 626 F.3d at 1256 (noting local connection in patent case in Northern District of California based, *inter alia*, on location of defendant and impact of the result).  The Northern District of California is home to Xilinx and the vast majority of its relevant employees while, in contrast, neither party has ***any*** physical connection to Delaware. *See ANI Pharm.*, 2019 WL 176339, at *10 ("Other than Plaintiff's selection of this district, the controversy has no significant connection to Delaware."); *Papst*, 126 F.

---

[4]  While the court in the *Altera* case, in which Xilinx was a defendant, found that practical considerations weighed against transfer to the Northern District of California, that case involved related actions pending in the District of Delaware that had been transferred to Delaware from the Northern District of California. *Altera*, 842 F. Supp. 2d at 759.  That is not the case here.

Supp. 3d at 445–46 ("[I]t can be said that the Northern District of California has some greater local interest in the case than does Delaware.").

Although some courts have found that "the local interest factor is *typically neutral*" in patent infringement cases, WSOU's litigation strategy is not the typical scenario being considered by those courts. *See Arbor Global*¸ 2020 WL 4673832, at *5 (*citing Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 486 (D. Del. 2011)) (emphasis added). WSOU's litigation strategy involves filing multiple lawsuits against Delaware corporations outside of Delaware, suggesting that WSOU does not view Delaware as having a local interest in patent infringement cases involving Delaware corporations. This weighs against the local interest factor being neutral. White Decl. ¶¶ 18-24. This suggestion is more relevant than the suggestion that simply because Xilinx is a global company, it is not a "local" company in the Northern District of California.[5] The only location where Xilinx could be "local" is in the Northern District of California, where almost half of its employees work and where it conducts research, design, and development for the accused products. Wu Decl. ¶¶ 3–5.

---

[5] The court in *Arbor Global* found that being a global company with a significant number of employees throughout the world, suggested that Xilinx was not "local." 2020 WL 4673832, at *5.

### 3. Remaining Factors:  The Remaining Four Factors are Neutral With Respect to Transfer to the Northern District of California

The remaining four public interest factors are neutral and thus do not weigh for or against transfer.  Judgment in either district would be equally enforceable (Factor Seven).  Administrative difficulties (Factor Nine) are currently neutral when considering court congestion.  Public policy (Factor Eleven) is neutral if not slightly in favor of transfer.  WSOU's practice of filing all of its other patent infringement cases against Delaware corporations outside of Delaware is contrary to the supposed public policy of encouraging Delaware companies to resolve disputes in Delaware.  Finally, these cases do not involve state law claims (Factor Twelve), and courts in both fora are equally capable of applying patent law.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

## VI.   CONCLUSION

On balance, the private and public interest factors favor transfer, especially in view of the reduced weight, if any, that should be given to plaintiff's forum preference.  Accordingly, Xilinx respectfully requests that this Court transfer these cases to the Northern District of California under 28 U.S.C. § 1404(a).

December 23, 2020

OF COUNSEL:

Hilda C. Galvan
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
(214) 969-4556
hcgalvan@jonesday.com

David B. Cochran
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-7029
dcochran@jonesday.com

Thomas W. Ritchie
JONES DAY
77 West Wacker Dr.
Chicago, IL  60601.1692
(312) 269-4003
twritchie@jonesday.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

 */s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Beth A. Swadley (No. 6331)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
bswadley@ycst.com

*Attorneys for Xilinx, Inc.*

- 21 -

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Shea Gaza, hereby certify that on December 23, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

James M. Lennon, Esquire
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE 19806
*jlennon@devlinlawfirm.com*

*Attorneys for Plaintiff*

I further certify that on December 23, 2020, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel, and on the following:

Isaac Rabicoff, Esquire
Rabicoff Law Firm LLC
5680 King Centre Drive, Suite 645
Alexandria, VA 22315
*isaac@rabilaw.com*

*Attorneys for Plaintiff*

27308804.1

Dated:   December 23, 2020

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

_/s/ Anne Shea Gaza_
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Beth A. Swadley (No. 6331)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
(302) 571-6600
_agaza@ycst.com_
_rvrana@ycst.com_
_bswadley@ycst.com_

_Attorneys for Xilinx, Inc._

27308804.1

2