IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **WSOU Investments, LLC d/b/a Brazos Licensing and Development,**<br><br>                    Plaintiff,<br><br>          v.<br><br>**Xilinx, Inc.,**<br><br>                    Defendant. | C.A. No. 20-1228-CFC-JLH<br>C.A. No. 20-1229-CFC-JLH<br>C.A. No. 20-1231-CFC-JLH<br>C.A. No. 20-1232-CFC-JLH<br>C.A. No. 20-1233-CFC-JLH |

**STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY, INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION (ESI)**

**1. General Provisions**

   **a. Cooperation.**  This Order will govern discovery in these cases, including discovery of ESI, as a supplement to the Federal Rules of Civil Procedure, the District of Delaware Local Rules, and the Scheduling Order and Protective Order entered in these cases.  The parties' agreement to the terms of this Stipulation and Order should not be deemed an acknowledgment that any information hereby excluded from discovery would or would not be discoverable in the absence of this Order. Nothing in this Stipulation and Order shall waive in whole or in part any objection raised by a party in its written responses to specific discovery requests served in this action.

   **b. Proportionality.**  Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1]  This includes identifying appropriate

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

   **c. Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

    (i) Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

    (ii) Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

   **d. Privilege.**

    (i) The parties conferred on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

    (ii) With respect to information generated after the filing of the Initial Complaint, parties are not required to include any such information in privilege logs.

    (iii) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    (iv) Pursuant to Federal Rule of Evidence 502(d), the production of privileged information or work product, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in the pending case or in any other federal or state proceeding. Information

that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced or upon notice by the producing party. The receiving party shall not use information that the producing party asserts is privileged or work product protected regardless of whether the receiving party agrees with the claim of privilege and/or work product protection. Nothing in this Order shall prevent a receiving party from challenging the privilege or protection asserted by the producing party.

**2. Initial Discovery Conference.**

    **a. Timing.** The parties had an initial discovery conference (the "Initial Discovery Conference") pursuant to Fed. R. Civ. P. 26(f), which took place before the Fed. R. Civ. P. 16 scheduling conference ("Rule 16 Conference").

    **b. Content.** The parties have discussed and shall continue to discuss the following:

        (i)   The issues, claims and defenses asserted in the case that define the scope of discovery.

        (ii)  The likely sources of potentially relevant information (i.e., the "discoverable information"), including witnesses, custodians and other data sources (e.g., paper files, email, databases, servers, etc.).

        (iii) Technical information, including the exchange of production formats.

        (iv) The existence and handling of privileged information.

        (v)  The categories of ESI that should be preserved.

**3. Initial Disclosures.** Each party shall serve initial disclosures within 30 days after the Rule 16 Conference according to the following provisions:

    **a. Custodians.** The 10 custodians most likely to have discoverable information in their possession, custody or control. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information. To the extent a Party has less than 10 custodians, it shall identify those custodians most likely to have discoverable information in their possession, custody, or control.

    **b. Non-custodial data sources.**[2] A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

    **c. Notice.** The parties shall identify any issues relating to:

        (i) Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

        (ii) Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

        (iii) Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

**4. Discovery in Patent Litigation.**

    **a.** The parties have produced or will produce initial discovery as set forth in Paragraphs 7(a)–(d) of the Scheduling Order entered by this Court.

---

[2] That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

b. Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

5. **Specific E-Discovery Issues.**

a. As a preliminary matter, the Court will not require general search and production of email, absent a showing of good cause. If a party believes targeted email discovery is necessary, it shall propose a procedure identifying custodians and search terms it believes the opposing party should search. The opposing party can oppose, or propose an alternate plan. If the parties cannot agree, they shall follow paragraph 8(g) of the Scheduling Order to engage the Court's assistance in resolving the disputes.

b. **On-site inspection of electronic media.** Aside from the review of Defendant Xilinx's Source Code, which is defined within provisions stipulated in the Protective Order, on-site inspection of electronic media shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

c. **Format.** Subject to subsection 5(f) below, non-ESI and ESI, shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata. Documents shall also be produced with load files that shall denote document breaks, if applicable. A party that receives

a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format to the extent reasonably accessible.

      **d. Text Searchable Documents.** If there is no extractable text, the producing party shall perform Optical Character Recognition ("OCR") on the document and provide the associated text file. All text files should be produced as document level text files with a path to the text file included in the database load file; extracted text/OCR should not be embedded in the load file itself.

      **e. Footer.** Each document image shall contain a footer with sequentially ascending production number and the appropriate confidentiality designation.

      **f. Native files.** In the event that production of a document in TIFF image file format would be impracticable, the producing party shall have the option of producing such document in native format. Generally, the only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files. Native files shall be designated by including a unique production number and appropriate confidentiality designation in the native document's file name and a corresponding slipsheet with the production number and confidentiality designation. Documents produced in native format shall be accompanied by a directory, load file, or Bates number linking file in .csv format, or if such format is not practicable, in another commonly used directory/load file format such as .opt and .dat. To the extent that a party intends to use a document produced in native format for depositions, pleadings, trial or for any other purpose where the document produced natively does not originally contain pagination and the identification of individual pages is necessary, that party may sequentially number the individual pages of the document and include the appropriate confidentiality designation.

  **g. Metadata fields.** The parties will provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

  **h. Color.** In order to reduce costs, the parties agree that they may produce TIFFs in black-and-white or grayscale format, but only to the extent color is not necessary or helpful for understanding the content of the document. To the extent produced only in black-and-white or grayscale format, TIFFs shall be reproduced in color upon reasonable request.

**6. Modification**

  This Stipulated Order may be modified by a stipulation of the parties or by the Court for good cause shown.

Dated: August 27, 2021

| DEVLIN LAW FIRM LLC | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|
| */s/ James M. Lennon* <br> James M. Lennon (No. 4570) <br> 1526 Gilpin Avenue <br> Wilmington, DE 19806 <br> Phone: (302) 449-9010 <br> Fax: (302) 353-4251 <br> jlennon@devlinlawfirm.com <br><br> OF COUNSEL: <br><br> Jonathan K. Waldrop <br> jwaldrop@kasowitz.com <br> Darcy L. Jones <br> djones@kasowitz.com | */s/ Anne Shea Gaza* <br> Anne Shea Gaza (No. 4093) <br> Robert M. Vrana (No. 5666) <br> Beth A. Swadley (No. 6331) <br> Rodney Square <br> 1000 N. King Street <br> Wilmington, Delaware 19801 <br> (302) 571-6600 <br> agaza@ycst.com <br> rvrana@ycst.com <br> bswadley@ycst.com |

Marcus A. Barber
mbarber@kasowitz.com
John W. Downing
jdowning@kasowitz.com
Heather S. Kim
hkim@kasowitz.com
Jack Shaw
jshaw@kasowitz.com
ThucMinh Nguyen
tnguyen@kasowitz.com
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Shelley Ivan
sivan@kasowitz.com
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1700

Paul G. Williams
pwilliams@kasowitz.com
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street N.E., Suite 2445
Atlanta, GA 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

*Attorneys for Plaintiff*

OF COUNSEL:

Hilda C. Galvan
Christopher A. Buxton
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
(214) 969-4556
hcgalvan@jonesday.com
cbuxton@jonesday.com

David B. Cochran
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114-1190
(216) 586-7029
dcochran@jonesday.com

Thomas W. Ritchie
JONES DAY
77 West Wacker Drive
Chicago, IL 60601-1692
(312) 269-4003
twritchie@jonesday.com

Stephanie M. Mishaga
JONES DAY
4655 Executive Dr., Suite 1500
San Diego, CA 92121-3134
(858) 703-3140
smishaga@jonesday.com

*Attorneys for Xilinx, Inc.*

SO ORDERED this ___31st___ day of ___August_____, 2021.

_____
United States Magistrate Judge

8

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last- opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.