IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>                Plaintiff,<br><br>    v.<br><br>XILINX, INC.,<br><br>                Defendant. | C.A. No. 20-1228-CFC-JLH<br>(Consolidated) |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM ANNE SHEA GAZA REGARDING MOTION TO RESOLVE PROTECTIVE ORDER DISPUTE**

*Of Counsel:*

Hilda C. Galvan
Christopher A. Buxton
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
(214) 969-4556
hcgalvan@jonesday.com
cbuxton@jonesday.com

David B. Cochran
JONES DAY
North Point 901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-7029
dcochran@jonesday.com

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Beth A. Swadley (No. 6331)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
bswadley@ycst.com

*Attorneys for Defendant Xilinx, Inc.*

Thomas W. Ritchie
JONES DAY
77 West Wacker, Suite 3500
Chicago, Illinois 60601
(312) 269-4003
twritchie@jonesday.com

Jonathan McNeal Smith
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
(213) 243-2559
jonathansmith@jonesday.com

Dear Magistrate Judge Hall:

Three weeks after the parties submitted the agreed upon Protective Order (D.I. 64), WSOU disclosed five technical experts with whom it intends to share Xilinx's protected material. Xilinx did not object to these experts, except for Lloyd Linder ("Linder"). Xilinx objected to Linder because he regularly and actively consults for semiconductor companies on the same technology accused of infringement in this case. This consulting work is not litigation related—Linder consults on the design of new products for other semiconductor companies.

Releasing Xilinx's protected material to someone who regularly advises on product design would nullify Xilinx's efforts to safeguard its proprietary and highly confidential product designs. Importantly, WSOU seeks to give Linder access to Xilinx's source code and schematics, which are given the highest level of protection under the Protective Order because of the serious economic injury that could result from their disclosure. Accordingly, good cause exists for preventing disclosure of this highly sensitive material to Linder.

**Background:** WSOU alleges that Xilinx's FPGA products, including its programmable RFSoC (radio frequency system on chip), infringe WSOU's patents. These products include, among other elements, analog-to-digital converters (ADCs), digital-to-analog converters (DACs), and serializer/deserializer (SerDes) interfaces. Pursuant to the Scheduling Order (D.I. 63), on September 29, Xilinx produced core technical documents for the accused products, including design implementation documents, source code, and design schematics. This information provides the blueprint for an engineer to understand how the accused products are designed and what sets them apart from competitors' products.

On October 7, WSOU informed Xilinx of its intention to provide Linder with access to Xilinx's protected materials. (Smith Decl. Ex. A, submitted herewith.) By noon the next day, Xilinx informed WSOU that Linder's disclosure failed, among other things, to provide a complete "list of companies that [Linder] has been employed by or provided consulting services for" as required by the Protective Order. (*Id.* Ex. C.) WSOU did not respond.

Late on October 12, WSOU indicated that Linder and another expert would be reviewing source code the following week. (*Id.* Ex. D.) Within hours, Xilinx notified WSOU that, although WSOU had failed to address the deficiencies in its disclosure of Linder, Xilinx was objecting to Linder based on the disclosed information and requested a meet and confer on October 13 or 14. (*Id.*) WSOU agreed to meet and confer on October 14, and provided Linder's updated CV one day before the meeting, which, among other things, changed the party for whom Linder had consulted in a litigation, and specified the litigations where he provided a report or testimony, but did not include the complete list of companies by whom he was employed or provided consulting services. On October 14, the parties conferred, but were unable to resolve the objection. (*Id.* ¶ 5.) The next day, WSOU provided a proposed motion seeking an extension of time to serve infringement contentions stating that the Linder objection required such an extension. But, given that WSOU first requested the extension days before WSOU even disclosed its technical experts, WSOU's argument rings hollow.

**Legal Standard:** Good cause for granting a protective order "is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks omitted). In determining whether good cause exists, courts balance the interests of the parties. *Id.* at 787. "When, as is the issue here, disclosure of confidential information to a third-

1

party consultant is opposed by the disclosing party," courts should balance the receiving party's interest in selecting the consultant most beneficial to its case against the disclosing party's interest in protecting confidential commercial information. *BASF Corp. v. U.S.*, 321 F. Supp. 2d 1373, 1378 (Ct. Int'l Trade 2004). The disclosing party bears the burden of showing that the confidential information will be useful to others in the industry, and that the consultant is in a position that could allow the information to be used by others in the industry. *Saso Golf, Inc. v. Nike, Inc.*, No. 08 C 1110, 2009 WL 3242112, at *2 (N.D. Ill. Oct. 5, 2009) (internal quotation marks omitted). The receiving party "bears the burden of showing that there are not other experts available or that those who are available will be less useful than" the objected to expert. *Id.* (internal quotation marks omitted).

**Discussion:** There is good cause to issue a protective order preventing WSOU from disclosing Xilinx's HIGHLY SENSITIVE MATERIAL (D.I. 64 ¶ 14) to Linder. First, for more than a decade, Linder has regularly and actively consulted for companies concerning the design of ADCs, DACs, and SerDes interfaces. (Smith Decl. Ex. B at 4-8.)

| Time Period | Description of work |
|---|---|
| 2012-Present | **Alphacore, Inc.**—"Architecture review and enhancements of high speed CMOS ADC." |
| 2017-Oct. 2021 | **Analog Devices, Inc.**—Worked with "design team on a DAC buffer IC to improve performance." |
| 2012-2020 | **Lockheed Martin**—Worked on "overall ADC architecture development." |
| 2019 | **Microchip Technology, Inc.**—"Participated in an ADC architecture study for 28 and 56 GBps SERDES products." |
| 2014-2016 | **Quantum Semiconductor, LLC**—"Consultation on architecture and simulations for proprietary ADC architecture." |
| 2006-2016 | **Nu-Trek, Inc.**—Proposals on "high dynamic range ADC." |
| 2012-2013 | **SpaceMicro**—"CMOS quadrature DAC design and layout." |
| 2010-2012 | **Semtech**—Consulted on "DAC circuits" and "ADC architectures." |
| 2006-2012 | **Raytheon Corp.**—"Involved in the development of 40 GSPS ADC architecture." |
| 2006-2011 | **LinearChip, Inc.**—Development of "circuit topologies for the DAC," and "DAC architecture." |
| 2008-2010 | **Hittite Microwave**—Architecture for high speed DAC and ADC. |

Xilinx's confidential information indisputably would be useful to any of the above companies and any other technology or semiconductor companies with whom Linder may consult. (*Id.*, Ex. E at 6 (identifying companies, including Analog Devices and Microchip).) The source code, design implementation documents, and design schematics disclose how Xilinx designed its products and what sets them apart from its competitors. *See Saso Golf*, 2009 WL 3242112, at *2-3. For this reason, Xilinx zealously protects this information. Indeed, Xilinx is currently in litigation with Analog Devices, Inc. for whom Linder has consulted on the design of DACs. *Analog Devices, Inc. v. Xilinx, Inc.*, C.A. 1:19-02225-RGA, D.I. 46 at 24. In fact, Linder agreed to serve as a consulting witness for Xilinx in this litigation (a fact he did not disclose) and withdrew from the litigation after he received a multi-year opportunity with ADI. (*Id.* Ex. H.)

Second, Linder's consulting work creates "a risk that he would conflate the knowledge he learned from confidential information disclosed to him in this case with knowledge he possesses

from his consulting work in current and future dealings with [Xilinx's] competitors." *Monolithic Power Sys., Inc. v. Intersil Corp.*, C.A. 16-1125-LPS, 2018 WL 6113465, at *1 (D. Del. Nov. 19, 2018). That risk is a particularized harm, regardless of whether or not all of the companies Linder consults for compete directly with Xilinx. *Apeldyn Corp. v. AU Optronics Corp.*, C.A. 08-568-SLR, 2012 WL 2368796, at *8 (D. Del. June 13, 2012).

The risk of disclosure is not alleviated merely because Linder signed the Protective Order. His very job as a design consultant is to draw upon his knowledge and experience to improve the design of his clients' products, or develop wholly new designs. Even assuming the best intentions, Linder could not possibly compartmentalize the knowledge he would gain from Xilinx's proprietary designs and mentally designate it as "off limits" when designing for his industry clientele or patenting his "own" ideas. Linder has hundreds of patents, some publishing as recently as 2021. (Smith Decl. Exs. F-G.) Simply put, inadvertent disclosure by an expert who actively consults in the industry is inevitable—a fact widely recognized by the many district courts that have found good cause to issue protective orders preventing disclosure to such experts. *See, e.g.*, *Monolithic Power Sys.*, 2018 WL 6113465, at *1-2 (Judge Stark affirming "the risk of economic injury from even non-deliberate disclosure by an individual with scientific expertise of confidential scientific information belonging to a competitor warrant[s] the entry of th[is] more restrictive protective order"); *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (accepting the expert "is a man of great moral fiber," but questioning "his human ability during future years of research to separate the applications he has extrapolated from [confidential] documents from those he develops from his own ideas"); *BASF Corp.*, 321 F. Supp. 2d at 1380 (observing that it "is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so" (internal quotation marks omitted)); *Tailored Lighting, Inc. v. Osram Sylvania Prod., Inc.*, 236 F.R.D. 146, 149 (W.D.N.Y. 2006) (observing that "it seems unreasonable to expect that anyone working to further his own scientific and technological interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests"); *Litton Indus., Inc. v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 531 (E.D. Wis. 1990) ("If the expert is called upon two years after this litigation to assist a potential competitor in structuring its business, will he really be able to compartmentalize all he or she has learned and not use any of the information obtained from [confidential documents]?").

Finally, WSOU's interest in having Linder as its expert of choice pales in comparison to Xilinx's significant interest in safeguarding its intellectual property. WSOU has already disclosed four other technical experts beyond Linder. (Smith Decl. ¶ 2, Ex. A.) During the meet and confer, WSOU never argued that there are no other experts available or that those who are available will be less useful than Linder. *Saso Golf*, 2009 WL 3242112, at *2. Therefore, the "risk of economic injury from even non-deliberate disclosure by" Linder "warrant[s] the entry of [a] more restrictive protective order, even at the cost of depriving [WSOU] of its preferred choice of expert." *Monolithic Power Sys.*, 2018 WL 6113465, at *2.

Because there is a clearly defined and serious injury to Xilinx that would result from disclosure to Linder, good cause exists for a protective order. Xilinx requests that the Court enter an order, in substantially the form attached hereto, precluding the disclosure to Linder.

| | |
|---|---|
| Dated:  October 25, 2021 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| OF COUNSEL: | |
| | */s/ Anne Shea Gaza* |
| Hilda C. Galvan | Anne Shea Gaza (No. 4093) |
| Christopher A. Buxton | Robert M. Vrana (No. 5666) |
| JONES DAY | Beth A. Swadley (No. 6331) |
| 2727 North Harwood Street | Rodney Square |
| Dallas, TX 75201 | 1000 North King Street |
| (214) 969-4556 | Wilmington, DE 19801 |
| hcgalvan@jonesday.com | (302) 571-6600 |
| cbuxton@jonesday.com | agaza@ycst.com |
| | rvrana@ycst.com |
| David B. Cochran | bswadley@ycst.com |
| JONES DAY | |
| North Point 901 Lakeside Avenue | *Attorneys for Xilinx, Inc.* |
| Cleveland, Ohio 44114 | |
| (216) 586-7029 | |
| dcochran@jonesday.com | |
| | |
| Thomas W. Ritchie | |
| JONES DAY | |
| 77 West Wacker, Suite 3500 | |
| Chicago, Illinois 60601 | |
| (312) 269-4003 | |
| twritchie@jonesday.com | |
| | |
| Jonathan McNeal Smith | |
| JONES DAY | |
| 555 South Flower Street | |
| Fiftieth Floor | |
| Los Angeles, CA 90071 | |
| (213) 243-2559 | |
| jonathansmith@jonesday.com | |

28747095

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 25, 2021, a copy of the foregoing document was served on the persons listed below in the manner indicated:

**BY E-MAIL**

James M. Lennon
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
jlennon@devlinlawfirm.com

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John W. Downing
Heather S. Kim
Jack Shaw
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
jwaldrop@kasowitz.com
djones@kasowitz.com
mbarber@kasowitz.com
jdowning@kasowitz.com
hkim@kasowitz.com
jshaw@kasowitz.com
tnguyen@kasowitz.com

Isaac Rabicoff
RABICOFF LAW FIRM LLC
5680 King Centre Drive, Suite 645
Alexandria, VA 22315
isaac@rabilaw.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street N.E., Suite 2445
Atlanta, GA 30309
pwilliams@kasowitz.com

Shelley Ivan
Hershy Stern
Joshua A. Whitehill
Howard L. Bressler
Bradley P. Lerman
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
sivan@kasowitz.com
hstern@kasowitz.com
jwhitehill@kasowitz.com
hbressler@kasowitz.com
blerman@kasowitz.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Beth A. Swadley (No. 6331)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
bswadley@ycst.com

*Attorneys for Xilinx, Inc.*