## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WSOU INVESTMENTS, LLC d/b/a BRAZOS
LICENSING AND DEVELOPMENT,

               Plaintiff,

     v.

XILINX, INC.,

               Defendant.

C.A. No. 20-1228-CFC-JLH
(consolidated)

**EXHIBIT A – FILED**
**SEPARATELY UNDER SEAL**

## PLAINTIFF'S LETTER IN OPPOSITION TO XILINX'S
## OCTOBER 25, 2021 LETTER TO THE HONORABLE JENNIFER L. HALL
## REGARDING SCHEDULING ORDER DISCOVERY DISPUTE

Dated: October 27, 2021

DEVLIN LAW FIRM LLC
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiff*

Dear Judge Hall:

Pursuant to Your Honor's Oral Order (D.I. 82 in C.A. No. 20-1228), Plaintiff WSOU Investments, LLC provides its response opposing Xilinx's application for relief on the disputed issue that Xilinx submitted to the Court on October 25, 2021 (D.I. 84). Notwithstanding WSOU's requests before the parties' meet and confer session and their participation in that session, Xilinx's letter brief is the first time it has specifically enumerated the purported bases for its opposition to WSOU's use of Mr. Linder as an expert or the disclosure of Xilinx's Protected Materials to him. In any event, as shown below, neither the law nor the facts support granting Xilinx's proposed protective order.[1]

## 1.   Xilinx Does Not Meet Its Legal Burden To Preclude Mr. Linder Or Prevent His Review Of Xilinx's Information

First, the law is well-settled that, subject to her being sufficiently qualified and her opinion meeting appropriate standards, a party's choice of an expert to opine in its favor should be respected. *See*, *e.g.*, *Allstate Ins. Co. v. Nationwide Ins. Co.*, No. 12 C 3609, 2013 WL 3287133, at *3 (N.D. Ill. June 28, 2013) ("A party's choice of an expert is a critical one, and we would not bar a party from exercising that choice absent a showing of good cause"); *Nellson N. Operating, Inc. v. Elan Nutrition, LLC*, 238 F.R.D. 544, 547 (D. Vt. 2006) (party in patent infringement case "must have latitude to choose the experts that it believes have the necessary expertise and ability to convey highly technical information to the Court"). Moreover, the burden of proof to obtain a protective order or preclude the disclosure of confidential information pursuant to such an order rests on the party seeking it. *See*, *e.g.*, *Fisher v. Borden, Inc.*, Civ. No. 92-4306, 1994 U.S. Dist. LEXIS 21273, at *6-8 (D.N.J. Oct. 25, 1994). *See also Isis Pharms., Inc. v. Santaris Pharma A/S Corp.*, 2013 U.S. Dist. LEXIS 94263, 2013 WL 3367575, at *3 (S.D. Cal. July 5, 2013) ("Where the parties have agreed to, and the court has entered, a protective order, 'the party opposing disclosure of confidential information has the burden of establishing that there is good cause to continue the protection of the discovery material'") (citations omitted). Xilinx does not -- because it cannot -- carry this burden.

Indeed, Xilinx's entire motion rests on whole-cloth speculation that the lure of Xilinx's Protected Materials, including source code and schematics, will be so great that Mr. Linder will be unable to resist using it for his own future gain or to benefit Xilinx's competitors, and will subject himself to court sanction and potential legal action -- and imperil any future consulting work -- by flouting a protective order by which he has agreed to be bound in this litigation shielding Xilinx's Protected Materials from disclosure or use outside of this litigation. (D.I. 84, p. 3.) But Xilinx presents *nothing* to justify that feigned concern. Mr. Linder has functioned as a consultant for approximately one hundred clients over several decades, has signed hundreds of non-disclosure/confidentiality agreements with regard to those clients' proprietary information as

---

[1] Per the Court's Oral Order (D.I. 79), WSOU already addressed its discovery issue -- Xilinx's refusal to afford WSOU a reasonable extension to produce its initial claim charts -- in a letter to the Court dated October 25 (D.I. 83). WSOU is also serving its initial claim charts on October 27, 2021 pursuant to the Court's current scheduling order despite Xilinx preventing Mr. Linder's analysis of the Xilinx materials. If the Court finds that WSOU's time extension request (D.I. 83) has merit, WSOU hereby requests that the Court also grant WSOU leave to supplement its initial charts giving WSOU sufficient time to have Mr. Linder review and provide his analysis to WSOU.

part of that work and has *never* been accused of improperly disclosing or making use of sensitive information provided to him in his role as an expert consultant. *See* October 27, 2021 Declaration of Lloyd Linder, ¶¶ 3-4 (Ex. A hereto). Nor does Xilinx even allege -- let alone present any evidence indicating -- that he has done so. While Xilinx argues (D.I. 84, p. 2) that the information sought to be disclosed to Mr. Linder "would be useful to any of the above companies [which with Mr. Linder consults or used to consult] and any other technology or semiconductor companies with whom Linder may consult,"[2] there is simply nothing presented by Xilinx indicating that Mr. Linder will flout his obligations under the protective order here and reveal to those companies the Protected Materials. *See*, *e.g.*, *Nellson N. Operating, Inc., supra*, 238 F.R.D. at 547 (finding no "reason to doubt the integrity with which [the expert] undert[ook] to keep [the requesting party's] information confidential" where expert had previous experience handling confidential information and agreed to segregate the materials to be disclosed). Even the cases Xilinx cites indicate that the harm to a party seeking to preclude disclosure of confidential information must be "clearly defined." *See Monolithic Power Sys., Inc. v. Intersil Corp.*, *C.A.* 16-1125-LPS, 2018 WL 6113465, at *1 (D. Del. Nov. 19, 2018). Here, it is entirely speculative.

In fact, as Xilinx itself concedes (D.I. 84, p. 2), Xilinx thought enough of Mr. Linder's expertise and integrity, trusting him not to reveal Xilinx's secrets, *to hire him as its own expert* in *Analog Devices, Inc. v. Xilinx, Inc., C.A.* And while Xilinx attempts to impugn Mr. Linder by claiming he abandoned Xilinx in that case for an opportunity from a competitor, it does not allege -- let alone show -- that Mr. Linder violated any protective order or confidentiality agreement with Xilinx or that Xilinx is pursuing any action against him for doing so. And Xilinx does not reveal that the *Analog Devices* case involved different subject matters from what Mr. Linder went to consult with ADI on. (Ex. A, ¶ 5.) If anything, then, Xilinx's own letter brief confirms Mr. Linder's trustworthiness to comply with the protective order here.

In the face of that record, Xilinx's speculation-based, evidence-bereft objection to Mr. Linder's review of its Protected Materials -- which would effectively preclude virtually *any* expert in the field from functioning as an expert witness in *any* case touching on his expertise -- should be rejected: "An objection [to disclosing information to an expert] should not be sustained on the grounds that an expert 'will inevitably misuse [the confidential] information if he consults for [the disclosing party's] competitors in the future because the information will be in his head. … This would effectively give a party 'the power of veto over its adversary's choice of experts.'" *Codexis, Inc. v. EnzymeWorks, Inc.*, No. 3:16-cv-00826-WHO, 2017 U.S. Dist. LEXIS 199186, at *17-23 (N.D. Cal. Dec. 4, 2017) (rejecting defendant's argument that plaintiff's expert should be denied access to its information "especially given his signed agreement to be bound to the protective order"). *See also Allstate Ins. Co. v. Nationwide Ins. Co.*, *supra*, 2013 WL 3287133, at *3 (denying motion to preclude disclosure of source code information to plaintiff's expert where the expert agreed to be bound by protective order because the expert "faces serious professional, practical, and legal ramifications if he does not abide by the protective order" and therefore "[w]e deem that sufficient to deter a non-attorney such as [the expert] from violating the protective order"); *Advanced Semiconductor Materials America Inc. v. Applied Materials Inc*., No. 95-20169 RMW (EAI), 1996 WL 908654, at *3 (N.D. Cal. Oct. 28, 1996) (rejecting defendant's argument that plaintiff's expert would "inevitably misuse

---

[2] Xilinx's own chart shows that Mr. Linder's consulting work for most of the companies listed has ceased. (D.I. 84, p. 2.)

[confidential] information if he consults for [defendant's] competitors in the future because the information will be in his head" and stating that "this cannot be the standard to be applied" because "[i]f it was, then a litigant could successfully object to any active industry consultant in any high technology litigation, thereby giving it the power of veto over its adversary's choice of experts").[3]

That is all the more so where a challenged expert has specialized expertise that is vital to the case of the party that seeks to employ him.  As the court in *Allstate*, *supra*, noted: "[P]atent litigation generally presents issues that involve substantial complexity. The role of an expert in assisting a party in presenting these issues to a court and jury in an intelligent and understandable fashion can be central to the outcome of the case ... To suggest that because there are hundreds of people in [the area] who, like [the expert], are actuaries, and that they all are fungible … blinks this reality.  A party's choice of an expert is a critical one, and we would not bar a party from exercising that choice absent a showing of good cause." 2013 WL 3287133, at *3.  *See also Advanced Semiconductor*, *supra*, 1996 WL 908654, at *3 (rejecting defendant's opposition to disclosure of confidential information to expert where that expert "possesses qualifications to be an expert witness in this case which [plaintiff's] other designated experts may not possess"). That is the case with Mr. Linder here.  As his curriculum vitae indicates, WSOU selected Mr. Linder based on his unique qualifications and experience for certain technical analysis in this litigation.  Xilinx's effort to exclude Mr. Linder from access to its source code, schematics and other Protected Materials should be therefore be rejected.

### 2.    Mr. Linder's Other Work Is Not Related To The Products At Issue Here

Xilinx's arguments also should be rejected on the facts.  Among other things, none of Xilinx's arguments is tied to any of the five patents involved in this case.  For example, the ADC/DAC technologies in which Mr. Linder has consulted for others form the basis for Xilinx's proposed protective order (*see* D.I. 84 at 2 (table)), but Xilinx fails to explain or particularize how the ADC/DAC technologies are tied to any particular patent in his case or, therefore, why disclosure of information regarding them to Mr. Linder poses a risk to Xilinx sufficient to effectively preclude WSOU's use of him as an expert here.  Nor are any of Xilinx's arguments tied to any of the accused Xilinx products (*i.e.*, Virtex, Kintex, Zynq, etc.).  Other than the fact that Xilinx's technology relates to electronic circuitry -- a broad technological area -- there is nothing to indicate that Mr. Linder's access to Xilinx's source code, schematics or other information (all protected by the Court's Protective Order in this litigation) will relate to or be of any benefit to his other consulting work (or, of course, that he would sell his integrity and, thereby, his ability to obtain future consulting work, by using Xilinx's proprietary information in violation of the protective order here).[4]

---

[3] *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 21 (D. Del. 1988), on which Xilinx relies (D.I. 84, p. 3) and the *Monolithic* court relied for the notion that persons given access to confidential information may not segregate that information from their own, involved requested disclosure to *plaintiff's own president*, not an outside expert like Mr. Linder.  *Tailored Lighting, Inc. v. Osram Sylvania Prod., Inc.*, 236 F.R.D. 146, 147 (W.D.N.Y. 2006) (D.I. 84, p. 3) similarly involved disclosure to its *own president*.

[4] If the Court rules in Xilinx's favor and precludes Mr. Linder from reviewing the information in question, WSOU respectfully requests sufficient time to identify a new expert and have that expert review the confidential information.

Respectfully submitted,

James M. Lennon (No. 4570)

Enclosure
cc:  Clerk of the Court (via CM/ECF, w/encl.)
     All Counsel of Record (via CM/ECF & Email, w/encl.)