**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | ) ) ) ) |
| Plaintiff, | ) ) C.A. No. 20-cv-1228-CFC-JLH (Consolidated) |
| v. | ) ) **JURY TRIAL DEMANDED** |
| XILINX, INC., | ) ) |
| Defendant. | ) ) |

## JOINT CLAIM CONSTRUCTION CHART

Pursuant to Paragraph 11 of the Scheduling Order (D.I. 63), as modified (D.I. 105),

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU") and

Defendant Xilinx, Inc. ("Xilinx") (collectively, "the Parties"), by and through their respective

attorneys, hereby submit this Joint Claim Construction Chart for the five patents asserted in the

above-captioned consolidated action—*i.e.*, U.S. Patent Nos. 6,784,653, 7,068,950, 7,613,938,

7,903,971, and 9,312,838.

In Exhibit A hereto, the Parties provide their respective proposed constructions of each

disputed claim term, together with an identification of intrinsic evidence on which each Party

intends to rely either to support its proposed claim construction or to oppose the other party's

proposed claim construction.

Copies of the patents and other intrinsic evidence identified by the Parties in Exhibit A are

attached as Exhibits B-K, as follows:

| Exhibit | Intrinsic Record Material |
|---|---|
| Exhibit B | U.S. Patent No. 6,784,653 |
| Exhibit C | U.S. Patent No. 7,068,950 |

| Exhibit | Intrinsic Record Material |
|---|---|
| Exhibit D | U.S. Patent No. 7,613,938 |
| Exhibit E | U.S. Patent No. 7,903,971 |
| Exhibit F | U.S. Patent No. 9,312,838 |
| Exhibit G | Excerpts from File History of U.S. Patent No. 6,784,653 |
| Exhibit H | Excerpts from File History of U.S. Patent No. 7,068,950 |
| Exhibit I | Excerpts from File History of U.S. Patent No. 7,613,938 |
| Exhibit J | Excerpts from File History of U.S. Patent No. 7,903,971 |
| Exhibit K | Excerpts from File History of U.S. Patent No. 9,312,838 |

Each Party reserves the right to rely on any intrinsic evidence identified by the other Party and to rely on extrinsic evidence.  The Parties also reserve the right to rely on additional intrinsic evidence to the extent it is necessary to provide additional context or to rebut arguments made during the claim construction briefing.  The Parties further reserve the right to update their respective proposed constructions during claim construction briefing.

Dated: January 27, 2022

DEVLIN LAW FIRM LLC

By: */s Peter Akawie Mazur*
James M. Lennon (No. 4570)
Peter Akawie Mazur (No. 6732)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com
pmazur@devlinlawfirm.com

OF COUNSEL:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
ThucMinh Nguyen
John W. Downing
Heather S. Kim
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
(650) 453-5170

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

OF COUNSEL:

Hilda C. Galvan
Keith B. Davis (*pro hac vice* to be filed)
Christopher A. Buxton
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
(214) 220-3939

Hershy Stern
Howard L. Bressler
Joshua A. Whitehill
Shelley Ivan
Bradley P. Lerman
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1700

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, NE, Suite 2445
Atlanta, GA 30309
(404) 260-6080

*Attorneys for Plaintiff*
*WSOU Investments LLC d/b/a*
*Brazos Licensing and Development*

hcgalvan@jonesday.com
cbuxton@jonesday.com

David B. Cochran
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-7029
dcochran@jonesday.com

Thomas W. Ritchie
JONES DAY
77 West Wacker Dr.
Chicago, IL 60601-1692
(312) 269-4003
twritchie@jonesday.com

Jonathan McNeal Smith
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
(213) 243-2559
jonathansmith@jonesday.com

*Attorneys for Defendant*
*Xilinx, Inc.*

**EXHIBIT A**

**Joint Claim Construction Chart for:**
**U.S. Patent Nos. 6,784,653 ("the '653 patent"), 7,068,950 ("the '950 patent"),**
**7,613,938 ("the '938 patent"), 7,903,971 ("the '971 patent"), and 9,312,838 ("the '838 patent")**

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| 1. | "directly connected" | '653 patent, claims 1, 7 | No construction necessary – plain and ordinary meaning.  Should the Court find construction necessary:<br><br>"connected such that the output of the decision circuit corresponds to the input of the integrator"<br><br>**Intrinsic Support:**<br><br>'653 patent:   Abstract; 1:20-27, 1:57-67, 2:22-29, 2:58-64; Figs. 1, 3. | Connected with nothing in between.<br><br>**Intrinsic Support:**<br><br>The '653 patent at abstract; 2:22–29; 2:48–64; 4:7–8; Figs. 1, 3. |
| 2. | "decision circuit" | '653 patent, claims 1, 7 | No construction necessary – plain and ordinary meaning.<br><br>**Intrinsic Support:**<br><br>'653 patent: Abstract; 1:36-55, 2:53-3:18. | Circuit that decides whether an input signal is a binary "1" or "0" by comparing the input signal to the variable threshold.<br><br>**Intrinsic Support:**<br><br>The '653 patent at abstract; 1:28–64 (including, stating at 1:41–43, "The first decision circuit 11 is therefore used to recover the received bits of the input signal Uin by deciding whether a binary "1" or a binary "0" was received," stating at 1:43-45, "These recovered bits are provided by the first decision circuit 11 as an output Signal Uout," and stating at 1:54–56, "All decisions |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | of the Second decision circuit 12 are provided as an output Signal Uincorr."); 2:1–13; 2:22–29; 2:62–64; 3:3–22 ("If the variable threshold value Uvar is e.g. in the upper part of the eye diagram, then it is probable that the Second decision signal 12 decides a bit of the input Signal Uin to be a binary "0" whereas it is actually a binary "1". As a consequence, the number of bits which are decided to be "0"-S becomes greater than the number of decided "1"-s."); 4:6–9; 4:32–35; Figs, 1, 3; Claims 1, 6, 7. |
| 3. | "an input signal corresponding to the carrier and data signals" / "data-modulated signal corresponding to the carrier and data signals" | '950 patent, claim 1 / claim 17 | No construction necessary – plain and ordinary meaning.<br><br>**Intrinsic Support:**<br><br>'950 patent:   3:19-42, 3:49-65, 4:59-5:50, 6:47-57; Figs. 1, 3A, 3B, 4; claims 9-14. | An [input] signal corresponding to a modulated optical signal.<br><br>**Intrinsic Support:**<br><br>The '950 patent at abstract; 2:3–18; 3:15–41; 3:49–57; 6:26–29; 6:32–57; Figs. 3A, 3B, 4; *see also* 1:11–67 and Fig. 1.<br><br>Prosecution History of SN 10/100,521 ("'521 FH"): *See generally* March 10, 2005 Non-Final   Rejection;   June   10,   2005 Amendment/Request   for   Reconsideration After Non-Final Rejection; August 8, 2005 Non-Final Rejection; October 27, 2005 Amendment/Request   for   Reconsideration After Non-Final Rejection. |

| | | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|---|
| 4. | | "spectral null" | '950 patent, claims 1, 17 | No construction necessary – plain and ordinary meaning.  Should the Court find construction necessary:<br><br>"loss or reduction of power indicative of misalignment"<br><br>**Intrinsic Support:**<br><br>'950 patent: Abstract; 2:3-18; 3:10-41; 3:66-4:22; 4:42-5:18; Figs. 2, 3A, 3B.<br><br>'950 patent prosecution history:   6/10/05 Amendment at 7-9; 10/27/05 Response at 2-3. | A frequency at which the amount of energy transmitted is at a minimum.<br><br>**Intrinsic Support:**<br><br>The '950 patent at Abstract; 2:7–10; 3:29–41; 3:66–4:12; 4:19–22; 4:42–46; 4:59–5:7; 5:15–18; 7:11–12; 7:41–44 (dependent claim 5, further reciting "wherein the control signal is generated based on the concavity of the spectral shape of the input signal corresponding to a spectral null of the input signal"); Figs. 2, 3A-B, 6, 8A-B.<br><br>Prosecution History of SN 10/100,521 ("'521 FH"): June 10, 2005 Amendment/Request for Reconsideration After Non-Final Rejection at 7 ("[I]t is clear that Notargiacomo relies on analyzing spectral power in a spectral band corresponding to a <u>characteristic peak</u> (i.e., the second harmonic of the pilot tone) of the modulated signal, and not in a spectral band corresponding to a <u>spectral null</u> of that signal, as explicitly recited in amended claim 1." (emphasis in original)); *id.* ("[S]imilar to Notargiacomo, Baghdady seeks to minimize (suppress) the intensity of a <u>peak</u>. The Applicant submits that Baghdady does not teach or even suggest "an analyzer configured (i) to analyze spectral power of an input signal corresponding to the carrier and data signals in a spectral band corresponding |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | to a spectral null of the input signal." Furthermore, the Examiner's reliance in the rejection of original claim 4 on Baghdady's col. 5, line 55, stating that "The output signal of the envelope detector is filtered by a lowpass filter having a null at zero Hertz" is completely misplaced because the quoted text talks about a null of the filter, and not a null of the signal, as explicitly recited in amended claim 1 (and original claim 4)." (emphasis in original)); *id.* at 8 (similar discussion and emphasis for Taneda); *id.* at 8–9 (similar discussion and emphasis for Fuller). |
| 5. | "a spectral band corresponding to a spectral null" | '950 patent, claims 1, 17 | Not indefinite.[1]  No construction necessary – plain and ordinary meaning.   Should the Court find construction necessary:<br><br>"a frequency band that includes at least a frequency of a spectral null"<br><br>**Intrinsic Support:**<br><br>'950 patent:  Abstract; 2:3-18; 3:10-41; 3:66-4:22; 4:42-5:58; Figs. 2, 3A, 3B. | Indefinite.[2]<br><br>**Intrinsic Support:**<br><br>The '950 patent at abstract; 2:7–10 ("In one implementation, the device evaluates the amount of energy in a certain frequency band located near a selected null of the RF spectrum."); 4:1–12 (including referring at 4:3–4 to "the amount of energy in a certain band located near a spectral null," and also stating, at 4:4–7, "[i]n one implementation, |

---

[1] Plaintiff objects to Defendant's assertion of indefiniteness for the claim term "a spectral band corresponding to a spectral null" because Defendant did not disclose the basis for its indefiniteness position in its invalidity contentions and therefore waived this defense.

[2] Plaintiff's objection that Defendant has waived indefiniteness for this term is meritless.  Xilinx identified this term as indefinite at page 44 of the cover pleading of its Initial Invalidity Contentions, served on December 1, 2021 (identifying "'[a] spectral band corresponding to a spectral null' (claims 1, 17)" as indefinite under "35 U.S.C. § 112(2) – Indefiniteness").  Further, the Court may take up claim construction—including indefiniteness—at any time including at trial. Accordingly, there has not been and cannot be any waiver.

|  | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
|  |  |  | '950 patent prosecution history:   6/10/05 Amendment at 7-9; 10/27/05 Response at 2-3. | the band may be centered on null 304 (see FIG.3B) and have a bandwidth of, e.g., 2 GHz.  [But i]n a different implementation, a different bandwidth and/or a different null or combination of nulls may be used.")}; 4:43–46; Figs. 2, 3A-B, 6, 8A-B. |
| 6. | "an analyzer configured (i) to analyze spectral power of an input signal corresponding to the carrier and data signals, the spectral power being in a spectral band corresponding to a spectral null of the input signal, and (ii) to generate a control signal based on the analysis" | '950 patent, claim 1 | Not governed by pre-AIA 35 U.S.C. § 112, ¶ 6, and not indefinite.[3]   No construction necessary – plain and ordinary meaning.<br><br>To the extent the Court treats the term as means-plus-function:<br><br>Function: (i) to analyze spectral power of an input signal corresponding to the carrier and data signals, the spectral power being in a frequency band located near a spectral null of the input signal, and (ii) to generate a control signal based on the analysis.<br><br>Structure:  A combination of one or more of integrated or discrete circuit elements, filters, analog-to-digital converter (ADC) circuitry, digital-to-analog converter (DAC) circuitry, processors, or equivalents thereof. | Governed by pre-AIA 35 U.S.C. § 112, ¶ 6.<br><br>Function: (i) to analyze spectral power of an input signal corresponding to the carrier and data signals, the spectral power being in a spectral band corresponding to a spectral null of the input signal, and (ii) to generate a control signal based on the analysis;<br><br>Structure: Indefinite.[4]<br><br>**Intrinsic Support:**<br><br>The '950 patent at 2:19–27; 2:55–59; 3:49–51; 3:57–59; 3:66–4:58 (including, in particular, statement at 4:38–41: "Based on the measured amplitude, processor 512 generates a digital control signal that is then converted by DAC 514 to analog control |

[3] Plaintiff objects to Defendant's assertion of indefiniteness for this claim term because Defendant did not disclose the basis for its indefiniteness position in its invalidity contentions and therefore waived this defense.

[4] Plaintiff's objection that Defendant has waived indefiniteness for this term is meritless. Xilinx identified this term as indefinite at page 44 of the cover pleading of its Initial Invalidity Contentions, served on December 1, 2021 (identifying "'an analyzer configured (i) to analyze spectral power of an input signal corresponding to the carrier and data signals, the spectral power being in a spectral band corresponding to a spectral null of the input signal, and (ii) to generate a control signal based on the analysis' (claim 1)" as indefinite under "35 U.S.C. § 112(2) – Indefiniteness"). Further, the Court may take up claim construction—including indefiniteness—at any time including at trial.  Accordingly, there has not been and cannot be any waiver.

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | signal 416 applied to phase shifter 408."); 7:9–14; Figs. 4, 5 and 6. |
| | | | **Intrinsic Support:** '950 patent: Abstract; 2:3-18, 2:55-67, 3:10-42, 3:49-6:57; Figs. 1, 2, 3A, 3B, 4, 5, 6, 7, 8A, 8B, 9. '950 patent prosecution history: 6/10/05 Amendment at 7-9; 10/27/05 Response at 2-3. | |
| 7. | "operable independent of the controller" | '938 patent, claim 13 | No construction necessary – plain and ordinary meaning. **Intrinsic Support:** '938 patent: 1:55-60, 3:13-24, 4:45-54, 5:38-53; claims 1, 2, 13, 19. '938 patent prosecution history: 9/25/08 Response at 4, 6; 6/26/09 Notice of Allowance at 3. | Operating separately from signals or commands of the controller. **Intrinsic Support:** The '938 patent at 1:40–49; 1:55–60 ("In some embodiments, the switch controller is operable independently of the controller for controlling the switch to restore the electrical power to the device. In this arrangement, the switch controller enables electrical power to be restored to the device if the module becomes inoperative, for example in the event that power is also removed from the controller."); 4:39-54, 5:38-53, Figs. 1-3; 10:8–12. Prosecution history of SN 11/370,618 ("'618 FH"): September 25, 2008 Amendment/Request for Reconsideration After Non-Final Rejection at 4 ("Regarding claim 2, in O'Meany, IA 23 does not operate |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | independently of the MC 11 for controlling the power relay switch 22.  In O'Meany paragraphs 21 and 22, the IA 23 is described as directing the relay 22 to disconnect power in dependence on a shutdown signal generated by the MC computer 11."); *id.* at 6 ("The references do not disclose a switch controller operating <u>independently</u> of a controller for controlling the switch to decouple, as claimed in dependent claim 2." (emphasis in original)); June 26, 2009 Notice of Allowability at 3. |
| 8. | "wherein the plurality of signal states and the number of bits in each sequence are increased" | '971 patent, claims 1, 15 | No construction necessary – plain and ordinary meaning.<br><br>**Intrinsic Support:**<br><br>'971 patent:   1:19-37; 1:41-2:27; 2:40-43; 3:37-5:6.<br><br>'971 patent prosecution history:   3/1/10 Request for Reconsideration at 6-11; 6/7/10 Amendment at 7-10; 9/13/10 Amendment at 7-8. | Wherein an increase in the plurality of signal states and the number of bits in each sequence is performed automatically by the optical line termination.<br><br>**Intrinsic Support:**<br><br>The '971 patent at Abstract; 1:21–35; 1:41–62; 2:1–8; 2:8–14 ("For example, the optical line termination analyzes the received optical signal of a specific frame with regard to its power and then evaluates a corresponding number of signal states.  If the received power is high, the number of signal states may also be high. This is a simple but effective method to define the number of signal states."); 2:15–18; 2:19–24 ("In a further advantageous embodiment of the invention, the optical power of the optical signal received at the optical line termination is evaluated for a |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | specific frame, the number of signal states is defined based on the evaluated optical power, and the defined number of signal states is assigned to that network termination from which the received frame was sent."); 2:25–27; 3:42–58; Fig. 2b; 3:64–4:13 ("The optical line termination OLT analyzes the received frames from the different network terminations NT1, NT2, NT3, NT4, NT5 and evaluates the received optical signals within each of the corresponding frames. … Based on the evaluation, the optical line termination OLT defines a signaling mode for each of the received frames. This signaling mode comprises a specific number of signal states … . Then, the optical line termination OLT assigns this signaling mode, i.e. the corresponding number of signal states, to the upstream direction of that network terminations NT1, NT2, NT3, NT4, NT5 from which the frame was sent."); 4:14–26; 4:33-51; 4:52–58; 4:63–5:6 ("As a result, the transmission … in the upstream direction is always adapted to the actual quality of the optical signal received by the optical line termination OLT. E.g. based on the received power P and/or other quality criteria, the signaling mode … is evaluated and adjusted, if necessary. The transmission rate … is thereby permanently optimized."); 5:7–22 (similar discussion for downstream); 6:8–11; 6:49–52; 7:3–6; 8:4–7. |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | Prosecution history of SN 11/390,313 ("'313 FH"): December 12, 2008 Non-Final Rejection at 2 (rejecting pending method claims 1-11 as unpatentable subject matter under § 101); April 13, 2009 Amendment / Request for Reconsideration After Non-Final Rejection at 5 (arguing method claims 1-11 are patentable subject matter because "As amended, the operations recited in at least claim 1 -11 are tied to a particular apparatus. For example, the operation of "generating an optical signal," as recited in claim 1, is "at the optical line termination." Similarly, the operation of changing the number of signal states during operation is performed by "the optical line termination." Because the operations recited in claims 1-11 are tied to an apparatus, the Applicants submit the subject matter recited in claims 1-11 is patent eligible per *In re Bilski*."); *id.* at 6-7 (distinguishing Chand prior art from method claim 1 as only discussing and comparing "various modulation schemes such as basic QAM (2 states), 16 QAM (16 states), and 64 QAM (64 states) … with different signal states. … Chand's disclosure fails to disclose "wherein the number of signal states is **changed** during operation by the optical line termination," as recited in claim 1." (emphasis in original).); *id.* at 7 (same argument for apparatus claim 12, which later |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | issued as claim 15.); September 3, 2009 Amendment / Request for Reconsideration After Non-Final Rejection at 1-2 (claim amendments adding "is increased" language), 8 ("In addition, Maeda is silent on *increasing* the number of signal states to greater than two based on a *transmission quality* of one of the optical lines. Asashiba fails to cure the deficiency of Maeda." (emphasis in original).)<br><br>*See also* Prosecution history of SN 11/390,313 ("'313 FH"): March 1, 2010 Applicant Arguments/Remarks Made in an Amendment at 7 ("Initially, the Applicants submit claim 1 is not obvious over the combination of Azadet and Asashiba at least because neither document, alone or in combination, teach, suggest, or disclose, at least, "the number of signal states is increased to a number of signal states that is greater than two **based on a transmission quality of the one of the optical fibers**," as recited in claim 1." (emphasis in original)); *id.* at 8 (arguing this limitation is not met because, "[h]owever, the system disclosed by Azadet appears to generate the three level value (0,1,2) regardless of a "transmission quality of the one of the optical fibers."); *id.* at 10 (arguing that Azadet does not disclose this limitation because "Rather, [Azadet] paragraphs [0019]-(0025) merely disclose |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | operations for converting input bits into optical signals and voltages regardless of "the quality of the one of the optical signals," as recited in claim 1").<br><br>*See also* June 7, 2010 Amendment/Request for Reconsideration After Non-Final Rejection at 7 ("For example, para. [0012] [of the '313 Application] recites "[a]n increase of the number of signal states, however, represents an increase of the transmission rate. **Therefore, the invention provides an adaptation of the transmission rate depending on the transmission quality of the link.**" (emphasis in original)); *id.* at 7–8 (referring to the specification stating that the number of signal states "may be adapted" based on transmission quality of the link); *id.* at 9 (again, distinguishing Azadet, by saying "However, the system disclosed by Azadet **always** generates the three level values regardless of a "a transmission quality of the optical signal on the one of the plurality of optical fibers" as recited by amended claim 1 … Specifically, the output of the three level value in para. [0014] of Azadet shows that the three level value is **always** three. … Thus, the three level value is converted into the optical signal and the optical signal has **no influence on the three level value** as disclosed by Azadet." (emphasis in original).) |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | *See also* September 13, 2010 Amendment/Request for Reconsideration After Non-Final Rejection at 2 and 4 (claim amendments for this limitation); *id.* at 8 (distinguishing the Faulkner prior art stating "Therefore, because the system in Faulkner **maintains an 8-bit coding**, Faulkner does not disclose "wherein the plurality of signal states **and the number of bits in each sequence** are increased based on a transmission quality of the optical signal" as recited amended claim 1." (emphasis in original).) |
| 9. | "based on a transmission quality of the optical signal" | '971 patent, claims 1, 15 | No construction necessary – plain and ordinary meaning.<br><br>**Intrinsic Support:**<br><br>'971 patent: 1:19-37; 1:41-2:27; 3:37-5:6.<br><br>'971 patent prosecution history: 3/1/10 Request for Reconsideration at 6-11; 6/7/10 Amendment at 7-10; 9/13/10 Amendment at 7-8. | Based on analysis and evaluation of a characteristic of the optical signal.<br><br>**Intrinsic Support:**<br><br>The '971 patent at Abstract; 1:21–35; 1:41–62; 2:1–8; 2:8–14 ("For example, the optical line termination analyzes the received optical signal of a specific frame with regard to its power and then evaluates a corresponding number of signal states. If the received power is high, the number of signal states may also be high. This is a simple but effective method to define the number of signal states."; 2:15–18; 2:19–24 ("In a further advantageous embodiment of the invention, the optical power of the optical signal received at the optical line termination is evaluated for a specific frame, the number of signal states is |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | defined based on the evaluated optical power, and the defined number of signal states is assigned to that network termination from which the received frame was sent."); 2:25–27; 3:42–58; Fig. 2b; 3:64–4:13 ("The optical line termination OLT analyzes the received frames from the different network terminations NT1, NT2, NT3, NT4, NT5 and evaluates the received optical signals within each of the corresponding frames. … Based on the evaluation, the optical line termination OLT defines a signaling mode for each of the received frames. This signaling mode comprises a specific number of signal states … . Then, the optical line termination OLT assigns this signaling mode, i.e. the corresponding number of signal states, to the upstream direction of that network terminations NT1, NT2, NT3, NT4, NT5 from which the frame was sent."); 4:14–26; 4:33–51; 4:52–58; 4:63–5:6 ("As a result, the transmission … in the upstream direction is always adapted to the actual quality of the optical signal received by the optical line termination OLT. E.g. based on the received power P and/or other quality criteria, the signaling mode … is evaluated and adjusted, if necessary. The transmission rate … is thereby permanently optimized."); 5:7-22 (similar discussion for downstream); 6:8–11; 6:49–52; 7:3–6; 8:4–7; Fig. 1. |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | Prosecution history of SN 11/390,313 (""313 FH"): December 12, 2008 Non-Final Rejection at 2 (rejecting pending method claims 1-11 as unpatentable subject matter under § 101); April 13, 2009 Amendment / Request for Reconsideration After Non-Final Rejection at 5 (arguing method claims 1-11 are patentable subject matter because "As amended, the operations recited in at least claim l -11 are tied to a particular apparatus. For example, the operation of "generating an optical signal," as recited in claim 1, is "at the optical line termination." Similarly, the operation of changing the number of signal states during operation is performed by "the optical line termination." Because the operations recited in claims 1-11 are tied to an apparatus, the Applicants submit the subject matter recited in claims 1-11 is patent eligible per *In re Bilski*."); *id.* at 6–7 (distinguishing Chand prior art from method claim 1 as only discussing and comparing "various modulation schemes such as basic QAM (2 states), 16 QAM (16 states), and 64 QAM (64 states) … with different signal states. … Chand's disclosure fails to disclose "wherein the number of signal states is **changed** during operation by the optical line termination," as recited in claim 1." (emphasis in original).); *id.* at 7 (same argument for apparatus claim 12, which later issued as claim 15.); September 3, 2009 |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|------|----------|---------------------|---------------------|
| | | | | Amendment / Request for Reconsideration After Non-Final Rejection at 1-2 (claim amendments adding "is increased" language), 8 ("In addition, Maeda is silent on *increasing* the number of signal states to greater than two based on a *transmission quality* of one of the optical lines. Asashiba fails to cure the deficiency of Maeda." (emphasis in original).) |
| | | | | *See also* Prosecution history of SN 11/390,313 ("'313 FH"): March 1, 2010 Applicant Arguments/Remarks Made in an Amendment at 7 ("Initially, the Applicants submit claim 1 is not obvious over the combination of Azadet and Asashiba at least because neither document, alone or in combination, teach, suggest, or disclose, at least, "the number of signal states is increased to a number of signal states that is greater than two **based on a transmission quality of the one of the optical fibers**," as recited in claim 1." (emphasis in original)); *id.* at 8 (arguing this limitation is not met because, "[h]owever, the system disclosed by Azadet appears to generate the three level value (0,1,2) regardless of a "transmission quality of the one of the optical fibers."); *id.* at 10 (arguing that Azadet does not disclose this limitation because "Rather, [Azadet] paragraphs [0019]-(0025] merely disclose operations for converting input bits into |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | optical signals and voltages regardless of "the quality of the one of the optical signals," as recited in claim 1"). |
| | | | | *See also* June 7, 2010 Amendment/Request for Reconsideration After Non-Final Rejection at 7 ("For example, para. [0012] [of the '313 Application] recites "[a]n increase of the number of signal states, however, represents an increase of the transmission rate. **Therefore, the invention provides an adaptation of the transmission rate depending on the transmission quality of the link**." (emphasis in original)); *id.* at 7–8 (referring to the specification stating that the number of signal states "may be adapted" based on transmission quality of the link); *id.* at 9 (again, distinguishing Azadet, by saying "However, the system disclosed by Azadet **always** generates the three level values regardless of a "a transmission quality of the optical signal on the one of the plurality of optical fibers" as recited by amended claim 1 … Specifically, the output of the three level value in para. [0014] of Azadet shows that the three level value is **always** three. … Thus, the three level value is converted into the optical signal and the optical signal has **no influence on the three level value** as disclosed by Azadet." (emphasis in original).) |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | | *See also* September 13, 2010 Amendment/Request for Reconsideration After Non-Final Rejection at 2 and 4 (claim amendments for this limitation); *id.* at 8 (distinguishing the Faulkner prior art stating "Therefore, because the system in Faulkner **maintains an 8-bit coding**, Faulkner does not disclose "wherein the plurality of signal states **and the number of bits in each sequence** are increased based on a transmission quality of the optical signal" as recited amended claim 1." (emphasis in original).) |
| 10. | "edge detector" | '838 patent, claim 1 | No construction necessary – plain and ordinary meaning.  Should the Court find construction necessary:<br><br>"a component/module capable of detecting an edge of a signal"<br><br>**Intrinsic Support:**<br><br>'838 patent: 2:30-37, 4:60-67, 5:12-21, 6:7-22; Figs. 2, 6. | A circuit that detects a rising or falling edge of an input signal and generates an output signal upon detection.<br><br>**Intrinsic Support:**<br><br>The '838 patent at Abstract, 1:51–56; 1:64–67; 2:30–37; 2:45–54; 3:3–10; 3:18–26; 4:12–14; 4:60–67; 5:14–17; 5:22–26; 5:42–50; 6:12–22; 6:24–28; 7:11–26; Fig. 2 (edge detectors 202 and 206); Fig. 3 (edge detectors 302 and 306); Fig. 6 (blocks 604, 608, 612, 616, 624, 628). |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| 11. | "enable signal" | '838 patent, claim 1 | No construction necessary – plain and ordinary meaning. Should the Court find construction necessary:<br><br>"a signal representative of the input clock signal"<br><br>**Intrinsic Support:**<br><br>'838 patent:   1:48-62, 2:30-37, 4:60-5:4, 5:66-6:2 6:7-22; Figs. 5, 6. | A control signal that allows an electronic circuit to operate.<br><br>**Intrinsic Support:**<br><br>The '838 patent at 1:53; 1:55–56; 1:59–62; 1:66–2:5; 2:15–22; 2:30–44; 2:47–63; 3:3–36; 4:60–5:4; 5:22–42; 5:44–65; 5:66–6:2; 6:3–6; 6:14–32; 7:11–26; Fig. 2 (first enable signal 204; second enable signal 208; first adjusted enable signal 216); Fig. 3 (third enable signal 304; fourth enable signal 308; fifth enable signal 316); Fig. 4 (first enable signal 204; second enable signal 208; first adjusted enable signal 216) Fig. 5 (third enable signal 304; fourth enable signal 308; fifth enable signal 316); Fig. 6 (blocks 608, 612, 616, 620, 624, 628, 632, and 636). |

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| 12. | "dual clock generator configured to receive the first adjusted enable signal and the second enable signal, and in response operable to generate a reference clock signal and transmit the reference clock signal over a single conductor." | '838 patent, claim 1 | Not governed by AIA 35 U.S.C. § 112(f), and not indefinite.[5]  No construction necessary – plain and ordinary meaning.   Should the Court find construction necessary:<br><br>"a component/module capable of generating the reference clock signal"<br><br>To the extent the Court treats this term as means-plus-function:<br><br>Function: to receive the first adjusted enable signal and the second enable signal, and in response operable to generate a reference clock signal and transmit the reference clock signal over a single conductor.<br><br>Structure:   Including, but not limited to, clocking resource, switch matrix/interconnection wires, configurable logic blocks, or equivalents thereof.<br><br>**Intrinsic Support:** | Governed by 35 U.S.C. § 112(f).<br><br>Function: to receive the first adjusted enable signal and the second enable signal, and in response operable to generate a reference clock signal and transmit the reference clock signal over a single conductor.<br><br>Structure: Indefinite.[6]<br><br>**Intrinsic Support:**<br><br>The '838 patent at 2:19–22; 3:13–17; 4:40-46; 5;5-31; 5:32–5:39; 6:19-22; Figs. 1, 2 (reference generator 218), 4, 6. |

[5] Plaintiff objects to Defendant's assertion of indefiniteness for the claim term "dual clock generator" because Defendant did not disclose any indefiniteness positions for the '838 patent in its invalidity contentions and therefore waived this defense.

[6] Plaintiff's objection that Defendant has waived indefiniteness for this term is meritless.  This term must be construed as a matter of law because it is governed by 35 U.S.C. § 112(f), thereby requiring the Court to identify its function and any corresponding, clearly-linked specification structure.  Defendant timely disclosed its claim construction position for this term in its January 13, 2022 proposed constructions, identifying it as a subject to 112(f) but indefinite, and Plaintiff identifies no inability to construe this term or prejudice, having presented its opposing claim construction position and intrinsic evidence in this Joint Claim Construction Chart.  Further, the Court may take up claim construction—including indefiniteness—at any time including at trial.  Accordingly, there have not been and cannot be any waiver, and this term must be construed.

| | Term | Claim(s) | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|---|
| | | | '838 patent: Abstract; 1:39-2:7, 2:15-22, 2:38-44, 3:13-17, 3:42-54, 4:40-5:11, 5:32-39, 5:66-6:2, 6:7-22; Figs. 1, 2, 4, 6. | |
| 13. | "reference clock signal" | '838 patent, claim 1 | No construction necessary – plain and ordinary meaning.  Should the Court find construction necessary:<br><br>"a signal representative of the enable signals"<br><br>**Intrinsic Support:**<br><br>'838 patent: 1:59-62, 2:15-22, 4:40-50, 5:32-39, 5:66-6:2, 6:7-22; Figs. 5, 6. | A periodic timing signal from which another timing signal is generated.<br><br>**Intrinsic Support:**<br><br>The '838 patent at Abstract; 1:59–67; 2:19–22; 2:45–54; 3:13–26; 4:40–58; 5:32–39; 5:42–50; 5:66–6:2; 6:4; 6:17–33; 7:22–26; Fig. 2; Figs. 4–6. |