# EXHIBIT I

17691    U.S. PTO
030806

PTO/SB/05 (09-04)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY
# PATENT APPLICATION
# TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| *Attorney Docket No.* | 195006-00977 |
| *First Inventor* | Eric Doyon et al. |
| *Title* | POWER CYCLE CIRCUIT |
| *Express Mail Label No.* | EV671180426US |

## APPLICATION ELEMENTS
*See MPEP chapter 600 concerning utility patent application contents.*

1. [✓] **Fee Transmittal Form** (e.g., PTO/SB/17)
   (Submit an original and a duplicate for fee processing)
2. [ ] **Applicant claims small entity status.**
   See 37 CFR 1.27.
3. [✓] **Specification**    [Total Pages ___23___ ]
   Both the claims and abstract must start on a new page
   *(For information on the preferred arrangement, see MPEP 608.01(a))*
4. [✓] **Drawing(s)** (35 U.S.C. 113)   [Total Sheets ___5___ ]
5. **Oath or Declaration**   [Total Sheets ___4___ ]
   a. [✓] Newly executed (original or copy)
   b. [ ] A copy from a prior application (37 CFR 1.63(d))
      *(for continuation/divisional with Box 18 completed)*
      i. [ ] DELETION OF INVENTOR(S)
         Signed statement attached deleting inventor(s)
         name in the prior application, see 37 CFR
         1.63(d)(2) and 1.33(b).
6. [✓] **Application Data Sheet.** See 37 CFR 1.76
7. [ ] **CD-ROM or CD-R** in duplicate, large table or
   Computer Program *(Appendix)*
   [ ] Landscape Table on CD
8. **Nucleotide and/or Amino Acid Sequence Submission**
   *(if applicable, items a. – c. are required)*
   a. [ ] Computer Readable Form (CRF)
   b. [ ] Specification Sequence Listing on:
      i. [ ] CD-ROM or CD-R (2 copies); or
      ii. [ ] Paper
   c. [ ] Statements verifying identity of above copies

*ADDRESS TO:*   Commissioner for Patents
               P.O. Box 1450
               Alexandria VA  22313-1450

## ACCOMPANYING APPLICATION PARTS

9. [✓] **Assignment Papers** (cover sheet & document(s))
   Name of Assignee   ALCATEL

10. [ ] **37 CFR 3.73(b) Statement**       [✓] **Power of**
    *(when there is an assignee)*           **Attorney**
11. [ ] **English Translation Document** *(if applicable)*
12. [ ] **Information Disclosure Statement** (PTO/SB/08 or PTO-1449)
    [ ] Copies of citations attached
13. [ ] **Preliminary Amendment**
14. [✓] **Return Receipt Postcard** (MPEP 503)
    *(Should be specifically itemized)*
15. [ ] **Certified Copy of Priority Document(s)**
    *(if foreign priority is claimed)*
16. [ ] **Nonpublication Request** under 35 U.S.C. 122(b)(2)(B)(i).
    Applicant must attach form PTO/SB/35 or equivalent.
17. [✓] **Other:** Credit Card Payment form

18. If a CONTINUING APPLICATION, *check appropriate box, and supply the requisite information below and in the first sentence of the specification following the title, or in an Application Data Sheet under 37 CFR 1.76:*

[ ] Continuation   [ ] Divisional   [ ] Continuation-in-part (CIP)   of prior application No.: ...................................

*Prior application information:*          *Examiner* ........................   *Art Unit:* ........................

## 19. CORRESPONDENCE ADDRESS

[✓] The address associated with Customer Number: | 46361 | **OR** | [ ] Correspondence address below |

| Name | Arnold B. Silverman | | | |
|---|---|---|---|---|
| Address | | | | |
| City | | State | | |
| Country | | Telephone | | Zip Code | |
| | | | | Fax | |

| Signature | *Chwld B. Silverman* | Date | March 8, 2006 |
|---|---|---|---|
| Name (Print/Type) | Arnold B. Silverman | Registration No. (Attorney/Agent) | 22,614 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office. U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/17 (12-04)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

*Effective on 12/08/2004.*
*Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).*

# FEE TRANSMITTAL
## For FY 2005

☐ Applicant claims small entity status. See 37 CFR 1.27

| TOTAL AMOUNT OF PAYMENT | ($) | 1000.00 |
|---|---|---|

| *Complete if Known* | |
|---|---|
| Application Number | Not yet assigned |
| Filing Date | March 8, 2006 |
| First Named Inventor | Eric Doyon et al. |
| Examiner Name | Not yet assigned |
| Art Unit | Not yet assigned |
| Attorney Docket No. | 195006-00977 |

## METHOD OF PAYMENT (check all that apply)

☐ Check  ☒ Credit Card  ☐ Money Order  ☐ None  ☐ Other (please identify): _____

☒ Deposit Account   Deposit Account Number: 02-2556   Deposit Account Name: Eckert Seamans

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☐ Charge fee(s) indicated below                    ☐ Charge fee(s) indicated below, except for the filing fee

☒ Charge any additional fee(s) or underpayments of fee(s)   ☒ Credit any overpayments
under 37 CFR 1.16 and 1.17

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

## FEE CALCULATION

### 1. BASIC FILING, SEARCH, AND EXAMINATION FEES

| Application Type | FILING FEES Fee ($) | Small Entity Fee ($) | SEARCH FEES Fee ($) | Small Entity Fee ($) | EXAMINATION FEES Fee ($) | Small Entity Fee ($) | Fees Paid ($) |
|---|---|---|---|---|---|---|---|
| Utility | 300 | 150 | 500 | 250 | 200 | 100 | 1000 |
| Design | 200 | 100 | 100 | 50 | 130 | 65 | _____ |
| Plant | 200 | 100 | 300 | 150 | 160 | 80 | _____ |
| Reissue | 300 | 150 | 500 | 250 | 600 | 300 | _____ |
| Provisional | 200 | 100 | 0 | 0 | 0 | 0 | _____ |

### 2. EXCESS CLAIM FEES

| Fee Description | Fee ($) | Small Entity Fee ($) |
|---|---|---|
| Each claim over 20 or, for Reissues, each claim over 20 and more than in the original patent | 50 | 25 |
| Each independent claim over 3 or, for Reissues, each independent claim more than in the original patent | 200 | 100 |
| Multiple dependent claims | 360 | 180 |

| Total Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| 20 - 20 or HP = | 0 | x 50 | = 0 |

HP = highest number of total claims paid for, if greater than 20

| Indep. Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| 3 - 3 or HP = | 0 | x 200 | = 0 |

HP = highest number of independent claims paid for, if greater than 3

| Multiple Dependent Claims | |
|---|---|
| Fee ($) | Fee Paid ($) |
| | |

### 3. APPLICATION SIZE FEE

If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| - 100 = | / 50 = | (round up to a whole number) x | = | |

### 4. OTHER FEE(S)

Non-English Specification, $130 fee (no small entity discount)                    Fees Paid ($) _____

Other: _____

## SUBMITTED BY

| Signature | *Arnold B. Silverman* | Registration No. (Attorney/Agent) 22,614 | Telephone 412-566-2077 |
|---|---|---|---|
| Name (Print/Type) | Arnold B. Silverman | | Date  March 8, 2006 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

51236-120

# INFORMATION SHEET

Title:                                     Power Cycle Circuit

Name and Address of Current Owner:       Alcatel
54, rue La Boétie
75008 Paris
France

Name and Address of Each Inventor:       Eric Doyon
72 Du Meridien
Gatineau, Quebec  J9A 3C6
Canada
Citizenship:  Canadian

Charles Alexander Pearse
51 Haywood Crescent
Kanata, Ontario  K2L 2J3
Canada
Citizenship:  Canadian

Tony D'Addona
27 Amethyst Crescent
Stittsville, Ontario  K2S 1Z1
Canada
Citizenship:  Canadian

Priority Data:                               No Priority

Small Entity:                                No

Correspondence Address:                  Arnold B. Silverman
Reg. No. 22, 614
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
Telephone:  412.566.2077
Facsimile:  412.566.6099

## POWER CYCLE CIRCUIT

Field of the Invention

      The present invention relates to circuits for controlling power cycles, and in particular, but not limited
5  to, circuits for controlling power cycles in communication devices.

Background

      A communication network switch typically comprises a number of line cards having communication ports connected
10  to a communication network for transmitting and receiving communication data to and from the network, and a control processor for controlling local operations of the line card. A control card is also provided for monitoring and managing operation of the line cards.  Occasionally, events occur
15  which cause line cards to malfunction or become inoperative, and in some cases line cards can be restored to their operative condition by a software reset which causes the software which controls the card to reboot.  However, in some situations, a software reset is insufficient to clear
20  the error, and in this case, personnel need to be dispatched into the field to physically inspect the switching element on sight and resolve the problem.  In many cases, errors can be cleared and line card operation restored by switching off power to the line card for a predetermined length of time
25  which is typically sufficient to discharge capacitive components on the card, and then restoring power to the card.  A power cycle is performed by disconnecting power to the card, which typically requires pulling the card out of the slot, waiting a few seconds, and then reinserting the
30  card into the slot to reconnect power to the card.  A drawback of this procedure is that personnel must physically visit the network element site in order to perform a power

1

cycle on the failed line card which is both costly and time consuming.

Summary of the Invention

According to one aspect of the present invention,
5   there is provided an apparatus comprising:  a device; a controller for controlling operation of the device, and a switch for switchably coupling electrical power to the device to enable the device to operate, the controller including a module for controlling the switch to decouple
10  the electrical power from the device, and the apparatus further comprising a switch controller for controlling the switch to restore the electrical power to the device a predetermined time after the switch decouples the electrical power from the device.

15      In this arrangement, the controller which controls operation of the apparatus controls the switching off of power to a device to enable the device to undergo a power cycle, where power is shut off for a predetermined length of time and then restored.

20      In some embodiments, the switch controller is operable independently of the controller for controlling the switch to restore the electrical power to the device.  In this arrangement, the switch controller enables electrical power to be restored to the device if the module becomes
25  inoperative, for example in the event that power is also removed from the controller.

In some embodiments, the switch is adapted to switchably couple electrical power to the controller to enable the controller to operate, the module is arranged for
30  controlling the switch to decouple electrical power from the device and the controller, and the switch controller is

2

adapted for controlling the switch to restore electrical power to the device and to the controller a predetermined time after the switch decouples the electrical power from the device and the controller.  In this arrangement, the

5   module controls switching off of power to both the device and to itself.  The switch controller controls the switch to restore electrical power both to the controller and to the device.  This arrangement provides a simple and inexpensive means of implementing a power cycle capability.  For

10  example, where the apparatus includes a switchable device, such as a power converter, for providing power both to the controller and the device, the arrangement enables a power cycle to be performed simply by controlling the switchable device.

15          In some embodiments, the apparatus comprises a line card for a communication system and the controller comprises a processor on the line card for controlling operation thereof.

            In some embodiments, the controller may include an
20  interface for receiving a signal from a remote location to cause the controller to shut down power to the device, and optionally to itself.  This arrangement enables a line card processor to be controlled from a remote location to perform a power cycle on the line card, thereby obviating the need

25  for personnel to physically visit the location of the network element.  For example, the power cycle control signal may be sent remotely from a network management system (NMS).  Furthermore, since the reset is controlled by the line card's local processor and is performed on itself, line

30  cards can be controlled individually to reset themselves without effecting other line cards.

In some embodiments, the apparatus may include a detector for detecting a condition of the apparatus (e.g. a condition of the device) and the module is responsive to the detection of the condition to control the switch to decouple
5   electrical power from the device.

In some embodiments, the device may comprise a device capable of adopting different states (such as a memory device, for example) and the condition is one in which the device becomes incapable of changing state.

10   In some embodiments, the switch controller comprises a timing circuit for controlling the predetermined length of time power to the controller is turned off, and for controlling the timing when power to the controller is restored.

15   In some embodiments, the timing circuit is electrically isolated from the device and/or the controller. For example, the timing circuit may be energized by an electrical power source whose voltage is higher than that required to drive the device and/or the controller.
20   Electrical isolation between the device and/or controller and the timing circuit assists in increasing the reliability of the system in completely removing power from the device and/or controller during the power cycle.

In some embodiments, the module for controlling
25   the switch is adapted to generate and transmit a command to the switch for causing the switch to decouple power to the device and/or controller.

Some embodiments of the apparatus further comprise a verifier or validation circuit for verifying that the
30   command is a valid command for decoupling power from the device and/or controller.  The verifier reduces the risk

4

that the controller will initiate a power cycle through a signal that was not intended to cause a power cycle.

In some embodiments, the apparatus comprises a plurality of devices (i.e. two or any other number) which are coupled to the switch to receive power to enable them to operate, and which undergo a power cycle when the switch is turned off.

In some embodiments, two or more switches may be provided, each of which switchably couples power to a different device, and are operable to perform a power cycle, for example, under the control of the or a controller and/or the or a switch controller.

According to another aspect of the present invention, there is provided a circuit card comprising: one or more devices, a controller for controlling operation of the circuit card, and a switch responsive to a command received from the controller, for causing electrical power to at least one device to be decoupled therefrom for a predetermined period of time.

In some embodiments, the switch is responsive to the command for decoupling electrical power to the controller for a predetermined period of time.

In some embodiments, the switch comprises a timing circuit.

In some embodiments, the timing circuit is adapted to transmit a signal to an electrical power device in response to the command, that causes the electrical power to be decoupled from the controller, and after the predetermined period of time, sends a signal to the electrical power device that causes electrical power to the controller to be restored.

5

In some embodiments, the electrical power device comprises a power converter which may or may not be located on the circuit card.

According to another aspect of the present
5   invention, there is provided an apparatus comprising:  a device for performing operations associated with the apparatus, a switch for switchably coupling electrical power to the device to enable the device to operate, the device including a module for controlling the switch to decouple
10   electrical power from the device, and  the apparatus further comprising a switch controller for controlling the switch to restore electrical power to the device a predetermined time after the switch decouples electrical power from the device.

15   In some embodiments, the apparatus further comprises an interface for receiving a control signal for causing the module to control the switch.

In some embodiments, the apparatus comprises a detector for detecting a condition of the apparatus, and
20   wherein the module is responsive to the detection of the condition to control the switch to decouple electrical power from the device.

In some embodiments, the device comprises a controller for controlling operation of the apparatus.

25   In some embodiments, the device is adapted to perform operations associated with the apparatus, for example one or more other devices associated with the apparatus.

In some embodiments, the device comprises a
30   processor or a logic device, for example a field programmable gate array (FPGA), an application specific

6

integrated circuit (ASIC), a programmable logic device (PLD) or a programmable logic array (PLA).

In some embodiments, the apparatus comprises a communication device, such as a line card of a network

5 element, for example a router or network switch.

According to another aspect of the present invention, there is provided an apparatus comprising:   a controller for controlling operation of the apparatus; a switch for switchably coupling electrical power to the

10 controller; a verifier for receiving a control signal and verifying whether the control signal is a valid control signal and for controlling the switch to decouple the electrical power from the controller if the control signal is valid.

15 Other aspects and features of the present invention will become apparent, to those ordinarily skilled in the art, upon review of the following description of the specific embodiments of the invention.

Brief Description of the Drawings

20 Examples of embodiments of the invention will now be described in greater detail with reference to the accompanying drawings, in which:

Figure 1 is a block diagram of an apparatus in accordance with one embodiment of the present invention;

25 Figure 2 is a block diagram of a circuit card in accordance with one embodiment of the present invention;

Figure 3 is a block diagram of an apparatus in accordance with one embodiment of the present invention;

Figure 4 is a block diagram of a circuit card in accordance with one embodiment of the present invention;

Figure 5 is a block diagram of a verifier in accordance with one embodiment of the present invention;

5        Figure 6 is a circuit diagram of a timing circuit in accordance with one embodiment of the present invention; and

Figure 7 shows an example of a timing diagram for illustrating operation of an embodiment of the invention.

10  Detailed Description of the Preferred Embodiments

Referring to Figure 1, an apparatus 100 in accordance with one embodiment of the present invention, comprises a device 105 and a controller 110 for controlling operation of the device.  The device 105 and controller 110
15  are enabled to operate by electrical power from an electrical power source 140.  A switch 120 can couple and decouple the electrical power to and from the device 105 and the controller 110.  The controller 110 includes a module 112 for controlling the switch to decouple the electrical
20  power source 140 from the device 105 and the controller 110. The apparatus also includes a switch controller 130, which controls the switch 120 to restore the electrical power from the power source 140 to the device and controller after a predetermined time has elapsed from decoupling the
25  electrical power from the device and the controller.

Therefore, in operation the module 112 for controlling the switch 120 can issue a command to the switch 120 to decouple the electrical power from the controller 110, thus cutting off its own power.  The switch
30  controller 130 will restore the electrical power after a predetermined time has elapsed from decoupling.

8

In this arrangement, both the controller and device are driven from a voltage source through a common switch, which therefore controls power to both elements. The provision of a switch controller 130 which is operable

5   independently of the controller 110, to restore power to the device and controller, allows the reset or power cycle to be performed by the common switch, which results in power to both the device and the controller to be turned off for a period of time. With the same arrangement, the power cycle

10  can be initiated by the controller 110.

In some embodiments the switch controller 130 is a timing circuit. One example of a timer that can be used in such a timing circuit is an ICM 7555 timer. In some embodiments, the timing circuit is electrically isolated

15  from the controller 110. This may be achieved using, for example, a relay switch, a transformer or an optical coupler.

In some embodiments, the timing circuit requires power to operate and may receive electrical power other than

20  via the switch 120. In other embodiments, the timing circuit may receive power through the switch 120, and store electrical power to enable it to operate.

In some embodiments, the device includes one or more capacitive elements or has electrical capacitance, and

25  the predetermined period of time after which the switch controller 130 restores power is sufficient to allow the capacitive element(s) or capacitance to discharge. Advantageously, this provides a power cycle that enables the apparatus to fully power down.

30  In some embodiments the module 112 for controlling the switch 120 controls the switch by sending a command to the switch to decouple power. The apparatus may also

9

comprise a verifier for verifying that the command issued by the module 112 is a valid command for decoupling power from the controller 110.  Verifying that the command is a valid command as a pre-requisite to switching off power to the

5   controller assists in preventing power to the controller from being turned off accidentally, by, for example, an erroneous signal from the controller.

In some embodiments, the controller is a processor or logic device located on a line card in a communication

10   system.

An interface, for example, interface 150, may be provided for transmitting signals to the controller from another device and/or a remote location.  The interface may be used to transmit to the controller a signal for causing

15   the controller to perform a power cycle on the device and on itself.  In some embodiments, the apparatus may include a detector for detecting a malfunction or other (fault) condition and the controller may be responsive to the detected condition to perform a power cycle.

20   Now referring to Figure 2, a further embodiment of the present invention is a circuit card 200 comprising a controller 210, a data path 225 which includes a customer interface 260 and a switching fabric interface 270, a memory 275 and a switch 220, which is operable to switchably

25   couple/decouple an electrical power source 240 to and from the controller, the data path and the memory.  The switch 220 is responsive to a command received from the controller 210 to cause the electrical power source 240 to be decoupled from the controller 210, the data path 225 and the

30   memory 275 for a predetermined period of time.

In some embodiments the switch 220 comprises a timing circuit which performs a similar function to the

10

timing circuit described with reference to Figure 1.  Some embodiments of the timing circuit send a signal to an electrical power device that causes the electrical power source 240 to be decoupled from the controller 210, the data

5   path and the memory.  The timing circuit then sends another signal to the electrical power device after the predetermined period of time has elapsed that causes the electrical power to be restored to the controller 210.  One example of an electrical power device is a DC power

10  converter located either on or off the circuit card.

As with the apparatus described with reference to Figure 1, the timing circuit of the circuit card 200 may also be electrically isolated from the controller by any one or more of a relay switch, a transformer, an optical

15  coupler, or any other suitable device.

The circuit card 200 may also comprise a verifier (not shown) for verifying that the command received from the controller is a valid command for decoupling the electrical power source 240 from the controller 210, the data path 225

20  and the memory 275.

An interface, for example, interface 250, may be provided for transmitting signals to the controller from another device and/or a remote location.  The interface may be used to transmit to the controller a signal for causing

25  the controller to perform a power cycle on elements of the card connected to receive power through the switch 220.  In some embodiments, the apparatus may include a detector for detecting a malfunction or other condition (e.g. fault condition) and the controller may be responsive to the

30  detected condition to initiate a power cycle.  For example, the memory or part thereof may acquire a fixed state from which it cannot return.  The controller or another device

11

may be operable to detect this condition, and the controller responds by initiating a power cycle to reset the memory, as required.

Figure 3 is a block diagram of another exemplary
5   embodiment of the present invention.  An apparatus 300 comprises a device 305 and a controller 310 for controlling operation of the device, a switch 320 for coupling an electrical power source 340 to the device and the controller, and a verifier 330 for receiving a control
10  signal and verifying whether the control signal is a valid control signal.  The verifier 330 further controls the switch 320 to decouple the electrical power 340 from the controller 310 if the control signal is valid.

In some embodiments, the control signal is
15  received from the controller 310.  In these embodiments, the controller 310 is adapted to issue a command to shut down power to the device and to itself.  In other embodiments, the control signal is received from a device external of the apparatus.

20          An interface, for example, an interface 350, may be provided for transmitting signals to the controller from another device and/or a remote location.  The interface may be used to transmit to the controller a signal for causing the controller to perform a power cycle on the device and on
25  itself.  In some embodiments, the apparatus may include a detector for detecting a malfunction or other condition (e.g. fault condition) and the controller may be responsive to the detected condition to perform a power cycle.

In some embodiments, the verifier 330 comprises a
30  sequence decoder and the control signal comprises a coded sequence.  The sequence decoder decodes the coded sequence and verifies that the decoded sequence is a correct sequence

12

for decoupling the electrical power 340 from the controller 310.   The control signal may also comprise an enable command.   In these embodiments, the verifier 330 will only control the switch 320 to decouple the electrical power
5   source 340 from the controller 310 if the decoded sequence is the correct sequence and the enable command is received.

In some embodiments, the verifier 330 also comprises an interface for interfacing with the controller 310.   As with the previously described embodiments, the
10   switch 320 may comprise a timing circuit.

The apparatus described with reference to Figure 3 may be located on a circuit card such as a line card in a communication system.   The controller may comprise a processor (or logic device) for controlling and/or
15   monitoring functions of one or more components of the line card.

Figure 4 is a block diagram of a circuit card 400 in accordance with a specific embodiment of the present invention.   The circuit card comprises a controller 410, a
20   verifier 430, a timing circuit 420 and a DC power converter 440.   The DC power converter 440 and the timing circuit 420 receive power from a power source, for example a back plane. The controller 410 receives electrical power from the DC power converter 440.   The controller 410 controls operation
25   of the circuit card 400 (for example one or more device thereon - not shown) and can issue a command that directs the timing circuit 420 to send a signal to the DC power converter 440 to shut down power to the controller 410 and one or more elements of the card that receive power from the
30   power converter.   The timing circuit 420, which is powered by the back plane, is adapted to then automatically send a second signal after a predetermined period of time to the DC

13

power converter 440 to restore power to the controller 410.
The verifier 430 verifies that the command from the
controller 410 is a valid command for decoupling power.  A
further feature of the circuit card 400 is an isolator 450
5   which electrically isolates the timing circuit from the
controller.  In Figure 4, the isolator 450 is positioned
between the timing circuit 420 and the verifier 430.  The
isolator 450 may be a relay, a transformer or an optical
coupler or any device that will achieve the function of
10  electrically isolating the timing circuit from the other
devices on the circuit card.

      In this embodiment, one side of the isolator 450
(e.g. to the left of the dashed line 470) is coupled, when
operative, to the output side of the power converter, and
15  the other side of the isolator 450 and the timer are
connected to receive power from the back plane.  In this
embodiment, the power converter has a switch on the power
input side (e.g. above the dashed line 480 in Figure 4), and
the timing circuit is adapted to control this switch to
20  couple/decouple power to the controller and verifier and any
other elements connected to receive power from the power
converter.

      In other embodiments,, the timing circuit could be
adapted to control a switch on the output side of the power
25  converter.  In other embodiments, the power converter may
comprise an a/c power converter, depending on the
requirements of the system.

      An interface, for example, an interface 460, may
be provided for transmitting signals to the controller from
30  another device and/or a remote location.  The interface may
be used to transmit to the controller a signal for causing
the controller to perform a power cycle on the card.  In

14

some embodiments, the card may include a detector for detecting a malfunction or other condition (e.g fault condition) and the controller may be responsive to the detected condition to initiate a power cycle.

5      Figure 5 is a block diagram of an exemplary embodiment of a verifier 530 that may be used in any of the apparatuses or circuit cards described herein.  The verifier 530 comprises an interface 532 for interfacing with a device that issues a control signal for decoupling power from a
10   controller.  The control signal received by the interface comprises an enable command and a coded sequence.  The coded sequence is decoded by a decoder 534 and both parts of the control signal are then processed by logic 536., which may, for example comprise a logic gate such as an AND gate, or
15   other logic device for performing a logical operation on the two signals.  If both the enable command and the decoded sequence are valid, the verifier 530 will issue a signal to a switch to decouple power from the controller.

       The verifier may be implemented by any suitable
20   circuit, including but not limited to an FPGA (Field Programmable Gate Array), a Programmable Logic Device or Array (PLD or PLA) or other integrated circuit device.

       Figure 6 is a circuit diagram of a timing circuit of a specific embodiment of the present invention that may
25   be used in any of the apparatuses or circuit cards described herein.

       Referring to Figure 6, the circuit comprises an electrical isolator 603, for example an optical coupler, a timer circuit 604, and a switch 605, which on/off controls a
30   voltage converter 606.  The timer circuit 604 is coupled to receive electrical power from a suitable power source, for example a voltage rail 609.  The timer 604 includes a signal

15

input 611 for receiving an input signal from the optical coupler 603, and an output 613 for controlling the switch 605.  In one embodiment, the voltage converter 606 is adapted to down convert an input voltage from a suitable

5   voltage source (e.g. a back plane voltage source) to a reduced voltage which is suitable for energizing a controller, for example a processor for controlling functions and operations of a line card and one or more other device(s) of the line card.  In this embodiment, the

10  voltage converter 606 provides a reduced voltage to the controller (not shown) and to terminals 615, 617 coupled to the input side of the optical coupler 603.

An example of operation of the circuit of Figure 6 will now be described with reference to the timing diagram

15  of Figure 7.

Referring to Figure 7, when the apparatus is to undergo a power cycle, the controller generates and transmits a signal or command to cause the power controlling circuitry to turn off power to the apparatus, including the

20  controller.  As indicated in the embodiments described above, the signal or command may be optionally verified as a valid signal or command for turning off power to the apparatus so that the signal or command or another signal generated in response thereto is only passed to the power

25  controlling circuit if the signal is valid.  In the circuit of Figure 6, in response to a power cycle command from the controller, a switch (not shown) is closed at time $t_0$, to enable current to flow through the light emitting diode 619 of the optical coupler 603.  This signal is shown as the

30  first trace 701 in Figure 7.  Light emitted by the light emitting diode is received by the photo detector 621 of the optically coupled isolator 603 and starts the timer 604 at time $t_1$.  At the same time, the timer causes the voltage at

16

the output 613 to change from low to high, as shown by the second trace 703 in Figure 7, and this causes the switch 605 of the voltage converter 606 to switch off power to the apparatus and controller, as shown by the third trace 705 in
5    Figure 7.

After a predetermined time, for example four to five seconds, (or any other time interval), the timer causes the voltage at the output 613 to change from high to low, as indicated by trace 703, causing the voltage converter to
10   restore power to the apparatus at time $t_2$, as shown by trace 705.

In this embodiment, the switch 605 is responsive to a positive change in the control signal to switch off the power converter.  Thus, in this embodiment, it is to be
15   noted that the power converter is responsive to a voltage of a larger magnitude in order to switch off power to the apparatus and controller, and a lower or zero voltage is required to cause the voltage converter to provide power to the apparatus and controller.  Thus, in the normal state
20   where the voltage converter supplies power to the apparatus and controller, no or little voltage is required from the output of the timer circuit.  In other embodiments, the switch is responsive to a negative change in the control signal to switch off power to the converter.  In this latter
25   embodiment, an invertor may be connected to the output 613 of the timer circuit to invert the signal to the switch 605.

In other embodiments of the invention, the switch may be implemented to switchably couple only the controller
30   to the power source to enable the controller to undergo a power cycle, or the switch may be implemented to switchably couple one or more devices to the power source under the

17

control of the controller, and the controller may be powered separately and not undergo the power cycle.

Embodiments of the invention may be implemented in any apparatus or application, and are not limited to
5   communication devices.

Other aspects and embodiments of the invention comprise any one or more features disclosed herein in combination with any one or more other features or a variant or equivalent thereof.

10          In any of the aspects and embodiments of the invention disclosed herein, any one or more features may be omitted altogether or substituted by another feature which may comprise an equivalent or variant thereof.

What has been described is merely illustrative of
15   the application of the principles of the invention.   Other arrangements and methods can be implemented by those skilled in the art without departing from the spirit and scope of the present invention.

18

**CLAIMS:**

1.        An apparatus comprising:

a device;

a controller for controlling operation of the
5  device, and

a switch for switchably coupling electrical power
to the device to enable the device to operate,

the controller including a module for controlling
the switch to decouple the electrical power from the device,

10        and the apparatus further comprising a switch
controller for controlling the switch to restore the
electrical power to the device a predetermined time after
the switch decouples the electrical power from the device.

2.        An apparatus as claimed in claim 1, wherein said
15  switch controller is operable independently of said
controller for controlling the switch to restore said
electrical power.

3.        An apparatus as claimed in claim 2, wherein said
switch is adapted to switchably couple electrical power to
20  the controller to enable the controller to operate, said
module is arranged for controlling the switch to decouple
the electrical power from the device and the controller, and
the switch controller is adapted for controlling the switch
to restore the electrical power to the device and to the
25  controller a predetermined time after the switch decouples
the electrical power from the device and the controller.

4.        The apparatus of claim 1, wherein the switch
controller comprises a timing circuit.

19

5.      The apparatus of claim 4, wherein the timing circuit is electrically isolated from the controller.

6.      The apparatus of claim 1, wherein the device has capacitance and the predetermined period of time is sufficient to substantially discharge said capacitance after power is decoupled from the device.

7.      The apparatus of claim 1, wherein the module for controlling the switch is configured to send a command to the switch to cause said switch to decouple said electrical power.

8.      The apparatus of claim 7, further comprising a verifier for verifying that the command is a valid command for decoupling power from the device.

9.      The apparatus of claim 1, further comprising a power converter for receiving power from a power source and supplying converted power to said device, and wherein said switch is adapted for switchably coupling the converted power to said device.

10.     The apparatus of claim 9, wherein said switch is configured for switchably coupling said power converter to said source of electrical power.

11.     The apparatus of claim 1, further comprising a substrate, and wherein said controller and said device are both disposed on said substrate.

12.     The apparatus of claim 1, wherein the device comprises a data storage device.

13.     A circuit card comprising:

        one or more devices,

20

a controller for controlling operation of the circuit card, and

a switch responsive to a command received from the controller, for causing electrical power to at least one
5   device to be decoupled therefrom for a predetermined period of time.

14.      A circuit card as claimed in claim 13, wherein said switch is responsive to said command for decoupling electrical power to said controller for a predetermined
10   period of time.

15.      The circuit card according to claim 13, wherein the switch comprises a timing circuit.

16.      The circuit card according to claim 13, wherein, in response to the command, the timing circuit sends a
15   signal to an electrical power device that causes the electrical power to be decoupled from the device and after the predetermined period of time sends a signal to the electrical power device that causes the electrical power to said device to be restored.

20   17.      A circuit card according to claim 13, further comprising a verifier for verifying that the command is a valid command for decoupling the electrical power from the controller, and wherein said verifier comprises a sequence decoder for decoding a coded sequence and verifying that the
25   decoded sequence is a correct sequence.

18.      The apparatus of claim 17, wherein the verifier requires both the correct sequence and an enable command before controlling the switch to decouple the electrical power from at least one device.

30   19.      An apparatus comprising:

21

a device for performing operations associated with the apparatus,

a switch for switchably coupling electrical power to the device to enable the device to operate,

5     the device including a module for controlling the switch to decouple electrical power from the device, and

the apparatus further comprises a switch controller for controlling the switch to restore electrical power to the device a predetermined time after the switch

10    decouples electrical power from the device.

20.     An apparatus as claimed in claim 19, further comprising at least one of (a) an interface for receiving a control signal for causing said module to control said switch, and (b) a detector for detecting a condition of said

15    apparatus, and wherein said module is responsive to the detection of said condition to control said switch to decouple electrical power from said device.

22

## Abstract

An apparatus comprises a controller for controlling operation of the apparatus and a switch for switchably coupling electrical power to the controller to

5   enable the controller and apparatus to operate.   The controller includes a module for controlling the switch to decouple electrical power from the apparatus, including the controller, and the apparatus further comprises a switch controller for controlling the switch to restore electrical

10   power to the apparatus and controller a predetermined period of time after the switch decouples electrical power therefrom .   The apparatus may be embodied in a line card of a communication system and the controller may comprise a control processor for controlling local operations of the

15   line card.

23

*1/5*



**FIG. 1**



**FIG. 2**

*2/5*



**FIG. 3**



**FIG. 4**

*3/5*



**FIG. 5**



**FIG. 6**

5/5



**FIG. 7**

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/370,618 | 03/08/2006 | Eric Doyon | 195006-00977 | 3411 |

46361          7590          06/26/2008
ECKERT SEAMANS CHERIN & MELLOTT, LLC.
600 GRANT STREET, 44TH FLOOR
PITTSBURGH, PA 15219

| EXAMINER |
|---|
| BROWN, MICHAEL J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2116 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/26/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 11/370,618 | DOYON ET AL. |
| | Examiner | Art Unit | |
| | Michael J. Brown | 2116 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>08 March 2006</u>.

2a)☐ This action is **FINAL**.   2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-20</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-20</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>3/8/2006</u> is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 11/370,618                                    Page 2
Art Unit: 2116

## DETAILED ACTION

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

1. Claims1-7, 9-16, and 19-20 are rejected under 35 U.S.C. 103(a) as being

unpatentable over O'Meany(US PGPub 2002/0023233) in view of Ginggen et

al.[Ginggen](US PGPub 2006/0271797).

As to claim 1, O'Meany discloses an apparatus comprising a device(remotely

located controlled(RLC) computer 12, see Fig. 1); a controller(master controller(MC)

computer 11, see Fig. 1) for controlling operation of the device(see paragraph 0017,

lines 1-4), and a switch(power relay switch 22, see Fig. 1) for switchably coupling

electrical power to the device to enable the device to operate(see paragraph 0018, lines

1-3), the controller including a module(controlled computer database 26, see Fig. 1) for

Application/Control Number: 11/370,618                                        Page 3
Art Unit: 2116

controlling the switch to decouple the electrical power from the device(see paragraph 0021, lines 3-7), and the apparatus further comprising a switch controller(IA 23, see Fig. 1) for controlling the switch to restore the electrical power to the device(see paragraph 0018, lines 4-7).  However, O'Meany fails to specifically disclose restoring the electrical power to the device a predetermined time after the switch decouples the electrical power from the device.

Ginggen teaches restoring the electrical power(closing switch 225; see paragraph 0024, lines 14-15) to a device(components; see paragraph 0024, line 16) a predetermined time(predetermined period of time; see paragraph 0024, lines 12-13) after the switch decouples the electrical power from the device(see paragraph 0024, lines 12-16).  It would have been obvious to one of ordinary skill in the art at the time the invention was made to combine Ginggen and O'Meany's inventions in order to restore power to O'Meany's RLC computer 12 after a certain amount of time has passed.  The motivation to do so would have been to create effective power cycling functionality.

As to claim 2, O'Meany discloses the apparatus as claimed in claim 1, wherein said switch controller is operable independently of said controller for controlling the switch to restore said electrical power(see paragraph 0018, lines 3-7).

As to claim 3, O'Meany and Ginggen teach the apparatus as claimed in claim 2, wherein said switch is adapted to switchably couple electrical power to the controller to enable the controller to operate, said module is arranged for controlling the switch to decouple the electrical power from the device and the controller, and the switch controller is adapted for controlling the switch to restore the electrical power to the

Application/Control Number: 11/370,618                                                     Page 4

Art Unit: 2116

device and to the controller(see O'Meany paragraph 0018, lines 3-7; paragraph 0021,

lines 3-7; and paragraph 0025, lines 6-9) a predetermined time after the switch

decouples the electrical power from the device and the controller(see Ginggen

paragraph 0024, lines 12-16).

As to claim 4, Ginggen teaches the apparatus of claim 1, wherein the switch

controller comprises a timing circuit(real time clock; see paragraph 0024, line 13).

As to claim 5, Ginggen teaches the apparatus of claim 4, wherein the timing

circuit is electrically isolated from the controller(see paragraph 0024, lines 12-13).

As to claim 6, Ginggen teaches the apparatus of claim 1, wherein the device has

capacitance and the predetermined period of time is sufficient to substantially discharge

said capacitance after power is decoupled from the device(see paragraph 0024, lines

12-16).

As to claim 7, O'Meany discloses the apparatus of claim 1, wherein the module

for controlling the switch is configured to send a command to the switch to cause said

switch to decouple said electrical power(see paragraph 0021, lines 3-7).

As to claim 9, O'Meany discloses the apparatus of claim 1, further comprising a

power converter for receiving power from a power source and supplying converted

power to said device, and wherein said switch is adapted for switchably coupling the

converted power to said device(see paragraph 0018).

As to claim 10, O'Meany discloses the apparatus of claim 9, wherein said switch

is configured for switchably coupling said power converter to said source of electrical

power(see paragraph 0018).

Application/Control Number: 11/370,618                                      Page 5
Art Unit: 2116

As to claim 11, Ginggen teaches the apparatus of claim 1, further comprising a substrate(implantable medical device 200, see Fig. 2), and wherein a controller(processor 205, see Fig. 2) and said device(components; see paragraph 0024, line 16) are both disposed on said substrate(see Fig. 2).

As to claim 12, O'Meany discloses the apparatus of claim 1, wherein the device comprises a data storage device(the device is a computer and it is well known in the art that computers comprise memory/data storage devices).

As to claim 13, O'Meany discloses a circuit card comprising one or more devices(remotely located controlled(RLC) computer 12, see Fig. 1), a controller(master controller(MC) computer 11, see Fig. 1) for controlling operation of the circuit card(see paragraph 0017, lines 1-4), and a switch(power relay switch 22, see Fig. 1) responsive to a command received from the controller, for causing electrical power to at least one device to be decoupled therefrom(see paragraph 0018, lines 1-3).  However, O'Meany fails to specifically disclose causing electrical power to at least one device to be decoupled therefrom for a predetermined period of time.

Ginggen teaches causing electrical power to at least one device(components; see paragraph 0024, line 16) to be decoupled therefrom for a predetermined period of time(predetermined period of time; see paragraph 0024, lines 12-13) (see paragraph 0024, lines 12-16.  It would have been obvious to one of ordinary skill in the art at the time the invention was made to combine Ginggen and O'Meany's inventions in order to restore power to O'Meany's RLC computer 12 after a certain amount of time has

Application/Control Number: 11/370,618                                          Page 6
Art Unit: 2116

passed.  The motivation to do so would have been to create effective power cycling functionality.

As to claim 14, Ginggen teaches the circuit card as claimed in claim 13, wherein said switch is responsive to said command for decoupling electrical power to said controller for a predetermined period of time(see paragraph 0024, lines 12-16).

As to claim 15, Ginggen teaches the circuit card according to claim 13, wherein the switch comprises a timing circuit(real time clock; see paragraph 0024, line 13).

As to claim 16, Ginggen teaches the circuit card according to claim 13, wherein, in response to the command, the timing circuit sends a signal to an electrical power device that causes the electrical power to be decoupled from the device and after the predetermined period of time sends a signal to the electrical power device that causes the electrical power to said device to be restored(see paragraph 0024, lines 12-16).

As to claim 19, O'Meany discloses an apparatus(remotely located controlled(RLC) computer 12, see Fig. 1) comprising a device(master controller(MC) computer 11, see Fig. 1) for performing operations associated with the apparatus(see paragraph 0017, lines 1-4), a switch(power relay switch 22, see Fig. 1) for switchably coupling electrical power to the device to enable the device to operate, the device including a module(controlled computer database 26, see Fig. 1) for controlling the switch to decouple electrical power from the device(see paragraph 0021, lines 3-7), and the apparatus further comprises a switch controller(IA 23, see Fig. 1) for controlling the switch to restore electrical power to the device(see paragraph 0018, lines 4-7).

Application/Control Number: 11/370,618                                          Page 7
Art Unit: 2116

However, O'Meany fails to specifically disclose restoring electrical power to the device a predetermined time after the switch decouples electrical power from the device.

Ginggen teaches restoring the electrical power(closing switch 225; see paragraph 0024, lines 14-15) to a device(components; see paragraph 0024, line 16) a predetermined time(predetermined period of time; see paragraph 0024, lines 12-13) after the switch decouples the electrical power from the device(see paragraph 0024, lines 12-16).  It would have been obvious to one of ordinary skill in the art at the time the invention was made to combine Ginggen and O'Meany's inventions in order to restore power to O'Meany's RLC computer 12 after a certain amount of time has passed.  The motivation to do so would have been to create effective power cycling functionality.

As to claim 20, O'Meany discloses the apparatus as claimed in claim 19, further comprising at least one of (a) an interface for receiving a control signal(shutdown signal; see paragraph 0021, line 6) for causing said module to control said switch(see paragraph 0021, lines 4-7), and (b) a detector for detecting a condition of said apparatus, and wherein said module is responsive to the detection of said condition to control said switch to decouple electrical power from said device.


2.      Claims 8, 17, and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over O'Meany(US PGPub 2002/0023233) in view of Ginggen et al.[Ginggen](US PGPub 2006/0271797), and further in view of Kobayashi(US Patent 6,625,739).

Application/Control Number: 11/370,618                                          Page 8
Art Unit: 2116

As to claim 8, O'Meany and Ginggen teach the apparatus as cited in claim 7; however, O'Meany and Ginggen fail to specifically teach the apparatus further comprising a verifier for verifying that the command is a valid command for decoupling power from the device.

Kobayashi teaches a verifier for verifying that the command is a valid command(power-off command; see column 9, line 67) for decoupling power from the device(see column 9, lines 63-67). It would have been obvious to one of ordinary skill in the art at the time the invention was made to combine Kobayashi's invention with O'Meany and Ginggen's invention in order to assure that decoupling power to the RLC computer 12 is necessary. The motivation to do so would be to prevent unnecessary power cycling.

As to claim 17, O'Meany and Ginggen teach the circuit card as cited in claim 13; however, O'Meany and Ginggen fail to specifically teach the circuit card further comprising a verifier for verifying that the command is a valid command for decoupling the electrical power from the controller, and wherein said verifier comprises a sequence decoder for decoding a coded sequence and verifying that the decoded sequence is a correct sequence.

Kobayashi teaches a verifier for verifying that the command is a valid command(power-off command; see column 9, line 67) for decoupling the electrical power from the controller, and wherein said verifier comprises a sequence decoder for decoding a coded sequence and verifying that the decoded sequence is a correct sequence(see column 9, lines 63-67). It would have been obvious to one of ordinary

Application/Control Number: 11/370,618                                    Page 9
Art Unit: 2116

skill in the art at the time the invention was made to combine Kobayashi's invention with

O'Meany and Ginggen's invention in order to assure that decoupling power to the RLC

computer 12 is necessary.  The motivation to do so would be to prevent unnecessary

power cycling.

As to claim 18, Kobayashi teaches the apparatus of claim 17, wherein the verifier

requires both the correct sequence and an enable command before controlling the

switch to decouple the electrical power from at least one device(see column 9, lines 63-

67).


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Michael J. Brown whose telephone number is (571)272-

5932.  The examiner can normally be reached Monday-Thursday from 7:00am-5:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Rehana Perveen can be reached on (571)272-3676.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 11/370,618                                        Page 10
Art Unit: 2116

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Michael J. Brown
Art Unit 2116

/Thuan N. Du/
Primary Examiner, Art Unit 2116

| *Notice of References Cited* | Application/Control No.<br>11/370,618 | Applicant(s)/Patent Under Reexamination<br>DOYON ET AL. | |
|---|---|---|---|
| | Examiner<br>Michael J. Brown | Art Unit<br>2116 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2002/0023233 | 02-2002 | O'Meany, Francisco | 713/300 |
| * | B | US-2006/0271797 | 11-2006 | Ginggen et al. | 713/300 |
| * | C | US-6,625,739 | 09-2003 | Kobayashi, Yasuhiro | 713/310 |
| * | D | US-2006/0277421 | 12-2006 | Balestriere, James | 713/300 |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**


Appl. No.        :   11/370,618        Confirmation No.   3411
Applicant        :   Eric Doyon et al.
Filed            :   03/08/2006
TC/A.U.         :   2116
Examiner       :   Brown, Michael J.

Docket No.      :   195006-00977
Customer No.   :   46361

**<u>RESPONSE</u>**

Mail Stop Amendment                               September 25, 2008
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:


       In response to the Office Action of June 26, 2008, the following remarks are submitted:


       **Remarks/Arguments** begin on page 2 of this paper.

Appl. No. 11/370,618

## **REMARKS/ARGUMENTS**

Claims 1 to 20 are pending in this application.

Claims 1 to 20 are rejected.

### 35 U.S.C. § 103(a) Rejections

Claims 1-7, 9-16 and 19-20 are rejected under 35 U.S.C. § 103(a) on the ground of being unpatentable over U.S. Patent Application Publication No. 2002/0023233 to O'Meany (hereinafter "O'Meany") in view of U.S. Patent Application Publication No. 2006/0271797 to Ginggen et al. (hereinafter "Ginggen").

Claims 8, 17 and 18 are rejected under 35 U.S.C. § 103(a) on the ground of being unpatentable over O'Meany in view of Ginggen and further in view of U.S. Patent No. 6,625,739 to Kobayashi (hereinafter "Kobayashi").

Applicant respectfully traverses these rejections for the reasons that follow.

The Supreme Court in *KSR International Co. v. Teleflex Inc. (KSR)*, 82 USPQ2d 1385 (2007) reaffirmed the framework for determining obviousness as set forth in *Graham v. John Deere Co.* (383 U.S. 1, 148 USPQ 459 (1966)). Obviousness is a question of law based on underlying factual inquiries. The factual inquiries enunciated by the Court are as follows:

(A) Ascertaining the scope and content of the prior art;
(B) Ascertaining the differences between the claimed invention and the prior art; and
(C) Resolving the level of ordinary skill in the pertinent art.

Appl. No. 11/370,618

Scope and Content of the Prior Art

With respect to the scope and content of the prior art, it is respectfully submitted that the Examiner has erred in ascertaining the scope of O'Meany and Ginggen for the reasons that follow.

With respect to claim 1, the Examiner alleges that O'Meany discloses an apparatus comprising a device; a controller for controlling operation of the device, and a switch for switchably coupling power to the device to enable the device to operate, the controller including a module for controlling the switch to decouple the electrical power from the device, and the apparatus further comprising a switch controller for controlling the switch to restore the electrical power to the device.

Applicants respectfully disagree.  Even if the components of O'Meany could be interpreted as disclosing the elements claimed in claim 1, they are not part of one apparatus.  They are separate remote devices.  For example, MC 11, which the Examiner has equated with the controller, is not part of the same apparatus as RLC 12, which the Examiner has equated with the device.  Likewise, the power relay switch 22 and IA 23 are part of local controller 31, which is also a separate apparatus.

Claim 13 claims a circuit card comprising similar elements as the apparatus of claim 1.  O'Meany certainly does not disclose all of the elements, i.e MC 11, RLC 12, power relay switch 22, IA 23 and database 26, on a circuit card.

With respect to independent claim 19, the examiner indicates that the RLC of O'Meany discloses the apparatus and that the MC 11 discloses the device.  This is contradictory to the Examiner's analysis of this reference given with respect to claim 1.

Furthermore, the Examiner indicates that database 26 discloses the module for controlling the switch to decouple.  However, the database 26 simply contains information used by MC 11 to generate a shutdown signal (paragraph [0021] lines 4 to 6 of O'Meany).  The database does not

control the switch to decouple and therefore can not be equated with the module recited in claim 1. In O'Meany, it is the RLC itself that controls the switch for decoupling. MC 11 sends a shutdown signal to IA 23, which in turn sends the signal to the RLC. The RLC initiates an orderly shutdown routine and then sends a safe-to-shut down signal to relay 22. See paragraphs 21 and 22 of O'Meany.

The Examiner correctly indicates that O'Meany does not disclose that the switch controller controls the switch to restore electrical power to the device a predetermined time after the switch decouples the electrical power from the device. However, the Examiner cites Ginggen as disclosing this feature. The Examiner indicates that the motivation to combine O'Meany and Ginggen is to create effective power cycling functionality. However, it is respectfully submitted that there is no suggestion in either reference of power cycling functionality. It is respectfully submitted that to cite power cycling functionality as the motivation to combine these to references is to use hindsight analysis, which is not permissible. Only after reading the applicants disclosure would one be motivated to combine all of the elements claimed in claim 1.

Therefore, it is respectfully submitted that the Examiner has failed to meet at least the first part of the test from *KSR* with respect to independent claims 1, 13 and 19. The dependent claims include all of the features of their respective independent claims and therefore the same arguments apply. Further errors were made in interpreting the cited references as disclosing the limitations of at least the following dependent claims as well.

Regarding claim 2, in O'Meany, IA 23 does not operate independently of the MC 11 for controlling the power relay switch 22. In O'Meany paragraphs 21 and 22, the IA 23 is described as directing the relay 22 to disconnect power in dependence on a shutdown signal generated by the MC computer 11.

Claim 3 recites that the module controls the switch to decouple the electrical power from both the device and the controller and that the switch controller is adapted for controlling the switch to restore power to both the device and the controller. It is respectfully submitted that nowhere in O'Meany is it disclosed that the electrical power is decoupled and restored to both the RLC and

Appl. No. 11/370,618

the MC.  The power relay switch 22 has no ability to decouple or restore power to MC 11, which the Examiner has equated to the controller.  Likewise, claim 14 recites the switch being responsive to a command to decouple power from the controller.

With respect to claims 4 and 15, it is submitted that the real time clock disclosed in Ginggen is not part of a switch.

With respect to claim 5, the cited portion of Ginggen does not disclose electrically isolating the real time clock.

With respect to claim 6, there is no mention in Ginggen of the capacitance of the device, let alone a predetermined period of time sufficient to substantially discharge the capacitance after power is decoupled.

With respect to claim 7, the Examiner has equated the database 26 with the module and it respectfully submitted that a database can not be configured to send a command.

With respect to claim 9, the cited portion of O'Meany discloses a power source and not a power converter.

With respect to claim 11, the Examiner indicates that the medical device 200 of Ginggen is a substrate having a controller and said device disposed thereon.  However, in claim 13, "said controller and said device are both disposed on said substrate".   The controller and device recited in claim 13 refer back to those recited in claim 1, which the Examiner has equated with MC 11 and RLC 12 of O'Meany.  It is respectfully submitted that MC 11 and RLC 12 from O'Meany could not be disposed on a medical device such as that disclosed in Ginggen.  Examples given for medical device are implantable medical devices such as a drug infusion pump, stimulator or sensor.

With respect to claim 20, the Examiner has not shown where either of the references discloses a detector for detecting a condition.

Appl. No. 11/370,618

With respect to claims 8, 17 and 18, Kobayashi is cited as teaching a verifier.  While Applicants do not concede that Kobayashi teaches all of the limitations of the verifier recited in these claims, it is submitted that in any event, Kobayashi does not cure the defects in O'Meany and Ginggen with respect to independent claims 1 and 13, from which these claims depend.

<u>Differences between the Claimed Invention and the Prior art</u>

Many differences between the claimed invention and the cited references are described above. For example, the cited references do not disclose all of the components as part of an apparatus or circuit card, as claimed in the independent claims.  The references do not disclose a switch controller operating <u>independently</u> of a controller for controlling the switch to decouple, as claimed in dependent claim 2.  As well, the references do not disclose the predetermined period of time being sufficient to discharge capacitance, as claimed in claim 6.  In view of these, as well as other differences, it is respectfully submitted that the Examiner has erred in not properly ascertaining these differences.

<u>Person Skilled in the Art</u>

The Examiner has not addressed the level of ordinary skill in the pertinent art and therefore has failed to meet this part of the test from *KSR*.

<u>Conclusion</u>

For at least the reasons given above, it is respectfully requested that the rejections under 35 U.S.C. § 103(a) be withdrawn.

Appl. No. 11/370,618

In view of the foregoing, favourable consideration and allowance of this application are respectfully requested.

Reconsideration and early allowance are requested.

Respectfully submitted,

ERIC DOYON et al.

By      /Kirk D. Houser/

Kirk D. Houser
Reg. No. 37,357
Tel.:  412-566-6083

Date: September 25, 2008

UNITED STATES PATENT AND TRADEMARK OFFICE



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/370,618 | 03/08/2006 | Eric Doyon | 195006-00977 | 3411 |

46361          7590          01/05/2009
ECKERT SEAMANS CHERIN & MELLOTT, LLC.
600 GRANT STREET, 44TH FLOOR
PITTSBURGH, PA 15219

| EXAMINER |
|---|
| BROWN, MICHAEL J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2116 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/05/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 11/370,618 | DOYON ET AL. |
| | Examiner | Art Unit |
| | Michael J. Brown | 2116 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *25 September 2008*.

2a)☐ This action is **FINAL**.          2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-20* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-20* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on *08 March 2006* is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 11/370,618                                    Page 2
Art Unit: 2116

## DETAILED ACTION

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham* **v.** *John Deere Co.,* 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

1.    Determining the scope and contents of the prior art.
2.    Ascertaining the differences between the prior art and the claims at issue.
3.    Resolving the level of ordinary skill in the pertinent art.
4.    Considering objective evidence present in the application indicating obviousness or nonobviousness.

1.    Claims 1-20 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Jochiong et al.[Jochiong](US Patent 6,851,068) in view of Liu(US PGPub

2005/0099753).


<u>As to claims 1, 13, and 19</u>

Jochiong discloses an apparatus/circuit card(system 100, see Fig. 1) comprising

one or more devices(peripheral sub-system 104, 404, and 406, see Figs. 1 and 4) for

performing operations associated with the apparatus/circuit card(see column 4, lines 9-

19); a controller(host system 104, see Fig. 1) for controlling operation of the devices(see

column 3, lines 58-60), and a switch(power control sensing circuitry 110, see Figs. 1

Application/Control Number: 11/370,618                                          Page 3
Art Unit: 2116

and 2) for switchably coupling electrical power to the device to enable the device to

operate(see column 4, lines 20-39), and the controller/device including a

module(comparator 204, see Fig. 2A) for controlling the switch to decouple the electrical

power from the device(see column 4, lines 26-45).  However, Jochiong fails to

specifically disclose the apparatus further comprising a switch controller for controlling

the switch to restore the electrical power to the device a predetermined time after the

switch decouples the electrical power from the device.

        Liu teaches an apparatus comprising a switch controller(control circuit 15, see

Fig. 1) for controlling a switch(transient voltage suppressor 14, see Fig. 1) to restore

electrical power to a device(electric equipment 13, see Fig. 1) a predetermined time

after the switch decouples the electrical power from the device(see paragraph 0014,

lines 6-13).  It would have been obvious to one of ordinary skill in the art at the time the

invention was made to combine Liu's control circuit 15 with Jochiong's system 100 in

order to control Jochiong's power control sensing circuitry 110 in the same manner.

The motivation to do so would have been to automatically resume the power after the

power disconnection for a certain amount of time(see Liu paragraph 0014, lines 12-13).


_As to claim 2_

        Liu teaches the apparatus wherein said switch controller is operable

independently of said controller for controlling the switch to restore said electrical

power(see paragraph 0014, lines 6-8).

Application/Control Number: 11/370,618                                    Page 4
Art Unit: 2116

*As to claim 3*

Jochiong and Liu teach the apparatus wherein said switch is adapted to switchably couple electrical power to the controller to enable the controller to operate(see Jochiong column 4, lines 20-39), said module is arranged for controlling the switch to decouple the electrical power from the device and the controller(see Jochiong column 4, lines 26-45), and the switch controller is adapted for controlling the switch to restore the electrical power to the device and to the controller a predetermined time after the switch decouples the electrical power from the device and the controller(see Liu paragraph 0014, lines 6-13).

*As to claims 4 and 15*

Liu teaches the apparatus/circuit card wherein the switch controller comprises a timing circuit(timer; see paragraph 0014, line 2).

*As to claim 5*

Liu teaches the apparatus wherein the timing circuit is electrically isolated from the controller(see paragraph 0014, lines 1-2).

*As to claim 6*

Liu teaches the apparatus wherein the device has capacitance and the predetermined period of time is sufficient to substantially discharge said capacitance

Application/Control Number: 11/370,618                                        Page 5
Art Unit: 2116

after power is decoupled from the device(see paragraph 0019).


*As to claim 7*

        Jochiong discloses the apparatus wherein the module for controlling the switch is

configured to send a command to the switch to cause said switch to decouple said

electrical power(see column 4, lines 41-47).


*As to claims 8 and 17*

        Jochiong discloses the apparatus further comprising a verifier(circuit 208, see

Fig. 2B) for verifying that the command is a valid command for decoupling power from

the device, and wherein said verifier comprises a sequence decoder for decoding a

coded sequence and verifying that the decoded sequence is a correct sequence(see

column 4, lines 41-44).


*As to claim 9*

        Liu teaches the apparatus further comprising a power converter(power supply

output terminal 12, see Fig. 1) for receiving power from a power source(power supply

11, see Fig. 1) and supplying converted power to said device, and wherein said switch

is adapted for switchably coupling the converted power to said device(see paragraph

0014).


*As to claim 10*

Application/Control Number: 11/370,618                                    Page 6
Art Unit: 2116

Liu teaches the apparatus wherein said switch is configured for switchably

coupling said power converter to said source of electrical power(see paragraph 0014).


_As to claim 11_

Jochiong discloses the apparatus further comprising a substrate, and wherein

said controller and said device are both disposed on said substrate(see column 4, lines

6-9).


_As to claim 12_

Jochiong discloses the apparatus wherein the device comprises a data storage

device(see column 4, lines 12-13).


_As to claim 14_

Liu teaches the circuit card wherein said switch is responsive to said command

for decoupling electrical power to said controller for a predetermined period of time(see

paragraph 0014, lines 1-13).


_As to claim 16_

Liu teaches the circuit card wherein, in response to the command, the timing

circuit sends a signal to an electrical power device that causes the electrical power to be

decoupled from the device and after the predetermined period of time sends a signal to

the electrical power device that causes the electrical power to said device to be

Application/Control Number: 11/370,618                                   Page 7
Art Unit: 2116

restored(see paragraph 0014, lines 6-13).


*As to claim 18*

    Jochiong discloses the apparatus wherein the verifier requires both the correct

sequence and an enable command before controlling the switch to decouple the

electrical power from at least one device(see column 4, lines 41-44).


*As to claim 20*

    Jochiong discloses the apparatus further comprising at least one of (a) an

interface for receiving a control signal for causing said module to control said switch,

and (b) a detector for detecting a condition of said apparatus, and wherein said module

is responsive to the detection of said condition to control said switch to decouple

electrical power from said device(see column 4, lines 20-39).


***Response to Arguments***

2.    Applicant's arguments, see Remarks, filed 9/25/2008, with respect to the

rejection(s) of claim(s) 1-20 under 35 U.S.C. 103(a) as being unpatentable over

O'Meany(US PGPub 2002/0023233) in view of Ginggen et al.[Ginggen](US PGPub

2006/0271797), and further in view of Kobayashi(US Patent 6,625,739) have been fully

considered and are persuasive.  Therefore, the rejection has been withdrawn.

However, upon further consideration, a new ground(s) of rejection is made in view of

Application/Control Number: 11/370,618                                Page 8
Art Unit: 2116

Jochiong et al.[Jochiong](US Patent 6,851,068) in view of Liu(US PGPub 2005/0099753).


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Michael J. Brown whose telephone number is (571)272-5932.  The examiner can normally be reached Monday-Thursday from 7:00am-5:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Thomas Lee can be reached at (571)272-3667.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Michael J Brown/
Examiner, Art Unit 2116

                              /Thomas  Lee/
                              Supervisory Patent Examiner, Art Unit 2115

| *Notice of References Cited* | Application/Control No. 11/370,618 | Applicant(s)/Patent Under Reexamination DOYON ET AL. | |
|---|---|---|---|
| | Examiner Michael J. Brown | Art Unit 2116 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,851,068 | 02-2005 | Jochiong et al. | 713/330 |
| * | B | US-2005/0099753 | 05-2005 | Liu, Szu-Ping | 361/118 |
| * | C | US-5,353,240 | 10-1994 | Mallory et al. | 702/186 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Appl. No.          :   11/370,618          Confirmation No.   3411
Applicant          :   Eric Doyon et al.
Filed              :   March 8, 2006
TC/A.U.            :   2116
Examiner           :   Michael J. Brown

Docket No.         :   195006-00977
Customer No.       :   46361

## <u>AMENDMENT</u>

Mail Stop Amendment                                    March 27, 2009
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

In response to the Office Action of January 5, 2009, please amend this application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 6 of this paper.

Appl. No. 11/370,618

**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1. (Currently Amended) ~~An apparatus~~ A circuit card comprising:

a device;

a controller for controlling operation of the device, and

a switch for switchably coupling electrical power to the device to enable the device to operate,

the controller including a module for controlling the switch to decouple the electrical power from the device,

and the ~~apparatus~~ circuit card further comprising a switch controller for controlling the switch to restore the electrical power to the device a predetermined time after the switch decouples the electrical power from the device.

2. (Currently Amended) ~~An apparatus~~ The circuit card as claimed in claim 1, wherein said switch controller is operable independently of said controller for controlling the switch to restore said electrical power.

3. (Currently Amended) ~~An apparatus~~ The circuit card as claimed in claim 2, wherein said switch is adapted to switchably couple electrical power to the controller to enable the controller to operate, said module is arranged for controlling the switch to decouple the electrical power from the device and the controller, and the switch controller is adapted for controlling the switch to restore the electrical power to the device and to the controller a predetermined time after the switch decouples the electrical power from the device and the controller.

4. (Currently Amended) The ~~apparatus~~ circuit card of claim 1, wherein the switch controller comprises a timing circuit.

2

Appl. No. 11/370,618

5. (Currently Amended) The ~~apparatus~~ <u>circuit card</u> of claim 4, wherein the timing circuit is electrically isolated from the controller.

6. (Currently Amended) The ~~apparatus~~ <u>circuit card</u> of claim 1, wherein the device has capacitance and the predetermined period of time is sufficient to substantially discharge said capacitance after power is decoupled from the device.

7. (Currently Amended) The ~~apparatus~~ <u>circuit card</u> of claim 1, wherein the module for controlling the switch is configured to send a command to the switch to cause said switch to decouple said electrical power.

8. (Currently Amended) The ~~apparatus~~ <u>circuit card</u> of claim 7, further comprising a verifier for verifying that the command is a valid command for decoupling power from the device.

9. (Currently Amended) The ~~apparatus~~ <u>circuit card</u> of claim 1, further comprising a power converter for receiving power from a power source and supplying converted power to said device, and wherein said switch is adapted for switchably coupling the converted power to said device.

10. (Currently Amended) The ~~apparatus~~ <u>circuit card</u> of claim 9, wherein said switch is configured for switchably coupling said power converter to said source of electrical power.

11. (Currently Amended) The ~~apparatus~~ <u>circuit card</u> of claim 1, further comprising a substrate, and wherein said controller and said device are both disposed on said substrate.

12. (Currently Amended) The ~~apparatus~~ <u>circuit card</u> of claim 1, wherein the device comprises a data storage device.

13. (Original) A circuit card comprising:

       one or more devices,

       a controller for controlling operation of the circuit card, and

Appl. No. 11/370,618

a switch responsive to a command received from the controller, for causing electrical power to at least one device to be decoupled therefrom for a predetermined period of time.

14. (Currently Amended) [[A]] The circuit card as claimed in claim 13, wherein said switch is responsive to said command for decoupling electrical power to said controller for a predetermined period of time.

15. (Original) The circuit card according to claim 13, wherein the switch comprises a timing circuit.

16. (Original) The circuit card according to claim 13, wherein, in response to the command, the timing circuit sends a signal to an electrical power device that causes the electrical power to be decoupled from the device and after the predetermined period of time sends a signal to the electrical power device that causes the electrical power to said device to be restored.

17. (Currently Amended) [[A]] The circuit card according to claim 13, further comprising a verifier for verifying that the command is a valid command for decoupling the electrical power from the controller, and wherein said verifier comprises a sequence decoder for decoding a coded sequence and verifying that the decoded sequence is a correct sequence.

18. (Currently Amended) The ~~apparatus~~ circuit card of claim 17, wherein the verifier requires both the correct sequence and an enable command before controlling the switch to decouple the electrical power from at least one device.

19. (Currently Amended) ~~An apparatus~~ A circuit card comprising:

a device for performing operations associated with the ~~apparatus~~ circuit card,

a switch for switchably coupling electrical power to the device to enable the device to operate,

the device including a module for controlling the switch to decouple electrical power from the device, and

Appl. No. 11/370,618

the ~~apparatus~~ <u>circuit card</u> further comprises a switch controller for controlling the switch to restore electrical power to the device a predetermined time after the switch decouples electrical power from the device.

20. (Currently Amended) ~~An apparatus~~ <u>The circuit card</u> as claimed in claim 19, further comprising at least one of (a) an interface for receiving a control signal for causing said module to control said switch, and (b) a detector for detecting a condition of said ~~apparatus~~ <u>circuit card</u>, and wherein said module is responsive to the detection of said condition to control said switch to decouple electrical power from said device.

Appl. No. 11/370,618

## **REMARKS/ARGUMENTS**

Claims 1 to 20 are pending in this application.

Claims 1 to 20 are rejected.

*Amendments*

The claims have been amended in the manner shown in the Listing of Claims.  Claims 1 to 12 and 18 to 20 have been amended to replace "apparatus" with "circuit card".

*35 U.S.C. 103(a) rejections*

Claims 1-20 are rejected under 35 U.S.C. 103(a) on the ground of being unpatentable over U.S. Patent No. 6,851,068 to Jochiong et al. (hereinafter "Jochiong") in view of U.S. Patent Application Publication No. 2005/0099753 to Liu (hereinafter "Liu").

Applicants respectfully submit that the amended claims overcome this rejection for the reasons that follow.

The Supreme Court in *KSR International Co. v. Teleflex Inc. (KSR)*,  82 USPQ2d 1385 (2007), reaffirmed the framework for determining obviousness as set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966).  Obviousness is a question of law based on underlying factual inquiries. The factual inquiries enunciated by the Court are as follows:

    (A) ascertaining the scope and content of the prior art; and

    (B) ascertaining the differences between the claimed invention and the prior art; and

    (C) resolving the level of ordinary skill in the pertinent art.

Appl. No. 11/370,618

Scope and content of the prior art

With respect to the scope and content of the prior art, it is respectfully submitted that the Examiner has erred in ascertaining the scope of Jochiong and Liu for the reasons that follow.

With respect to claims 1, 13, and 19 the Examiner alleges that Jochiong discloses an apparatus/circuit card comprising one or more devices, a controller for controlling operation of the device, and a switch for switchably coupling power to the device to enable the device to operate, the controller including a module for controlling the switch to decouple the electrical power from the device.   However, Jochiong discloses a <u>system</u> 100 comprising a host system and peripheral devices.  It is respectfully submitted that the system 100 disclosed in Jochiong cannot be interpreted as disclosing or suggesting a "circuit card" comprising the devices and switch.  There are no examples given for what the system 100 may be but examples are given as to what the host system could be.  The examples include a workstation or a server.  It is respectfully submitted that a system that comprises a workstation or server could not be a "circuit card".  Claims 1 and 19 have been amended to recite a circuit card.

Therefore, it is respectfully submitted that the Examiner has failed to meet at least the first part of the test from *KSR* with respect to independent claims 1, 13 and 19. The dependent claims include all of the features of their respective independent claims and therefore the same arguments apply. Further errors were made with respect to interpreting the prior art as applied to the limitations of at least the following dependent claims as well.

With respect to claim 5, the cited portion of Liu does not disclose electrically isolating the real time clock.  Rather it states:  "A control chip 151 of the control circuit 15 has a timer (not shown in the figures)."  The timer in the cited part of Liu is therefore part of the controller.  There is no disclosure of electrically isolating the timer from the controller.

With respect to claim 6, while the cited portion of Liu discloses capacitors, these capacitors are part of the device 10, which is the power supply protector.  They are used by the protector to eliminate surge.  The power supply protector disclosed in Liu is not configured to decouple a

device from its power for a time period sufficient to discharge capacitance in the device from which the power was decoupled. The closest disclosure in Liu to the "device" claimed in the present invention is the electrical equipment 13 and there is no mention of the electrical equipment having a capacitance or that the time period during which power is decoupled should be sufficient to discharge such a capacitance.

With respect to claims 8 and 17, the cited portion of Jochiong states: "Still in connection with FIG. 2, in comparator 204, if the voltage on the incoming signal 112 is lower than the threshold value, this indicates that the heartbeat signal is not present and a power down pulse is triggered in the circuit at 208." It is respectfully submitted that comparing the voltage of an incoming signal to a threshold value is not equivalent to verifying the "validity" of a "command". The command referred to in claim 8 is a command to the switch to cause the switch to decouple the electrical power. The incoming signal 112 in Jochiong is, for example, a heartbeat signal or timing signal, not a command. Furthermore, there is certainly no disclosure of a sequence decoder or decoding a coded sequence in order to verify if a command is valid, as required by claim 17.

With respect to claim 11, the Examiner indicates Jochiong discloses the controller and device are both disposed on the same substrate. However, the cited portion of Jochiong states: "The host system 102 and the peripheral expansion subsystem 104 may be co-located for example within the same rack mounting in a data center or may be in geographically distinct locations." It is respectfully submitted that a person skilled in the art would not interpret a rack mounting in a data center to be a substrate and that the Examiner's interpretation is in error.

Differences between the claimed invention and the prior art

Many differences between the claimed invention and the cited references are described above. It is respectfully submitted that the Examiner has erred in not properly ascertaining these differences.

Appl. No. 11/370,618

In particular, the Examiner has failed to ascertain that claim 13 was directed to a circuit card and that the system 100 of Jochiong could not be implemented on a circuit card.   As mentioned above, all of the claims are now directed to a circuit card and therefore, also differ over the cited references for at least this reason.

Person skilled in the art

The Examiner has not provided any evidence of the level of ordinary skill in the pertinent art and therefore has failed to meet this part of the test from *KSR*.

Conclusion

For at least the reasons given above, it is respectfully requested that the rejections under 35 U.S.C. 103(a) be withdrawn.

In view of the foregoing, favourable reconsideration and early allowance of this application are respectfully requested.

Respectfully submitted,

ERIC DOYON ET AL.

By      /Kirk D. Houser/

Kirk D. Houser
Reg. No. 37,357
Attorney for Applicants

Tel.:  412-566-6083



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

46361      7590      06/26/2009

ECKERT SEAMANS CHERIN & MELLOTT, LLC.
600 GRANT STREET, 44TH FLOOR
PITTSBURGH, PA 15219

| EXAMINER |
|---|
| BROWN, MICHAEL J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2116 | |

DATE MAILED: 06/26/2009

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/370,618 | 03/08/2006 | Eric Doyon | 195006-00977 | 3411 |

TITLE OF INVENTION: POWER CYCLE CIRCUIT

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 09/28/2009 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to: Mail** Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

46361          7590          06/26/2009

ECKERT SEAMANS CHERIN & MELLOTT, LLC.
600 GRANT STREET, 44TH FLOOR
PITTSBURGH, PA 15219

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/370,618 | 03/08/2006 | Eric Doyon | 195006-00977 | 3411 |

TITLE OF INVENTION: POWER CYCLE CIRCUIT

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 09/28/2009 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BROWN, MICHAEL J | 2116 | 713-300000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered attorney or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/370,618 | 03/08/2006 | Eric Doyon | 195006-00977 | 3411 |

46361          7590          06/26/2009

ECKERT SEAMANS CHERIN & MELLOTT, LLC.
600 GRANT STREET, 44TH FLOOR
PITTSBURGH, PA 15219

| EXAMINER |
|---|
| BROWN, MICHAEL J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2116 | |

DATE MAILED: 06/26/2009

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 415 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 415 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702.  Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101   or (571)-272-4200.

Page 3 of 3

| *Interview Summary* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 11/370,618 | DOYON ET AL. | |
| | Examiner | Art Unit | |
| | Michael J. Brown | 2116 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Michael J. Brown_.                    (3)_____.

(2) _Kirk D. Houser_.                      (4)_____.

Date of Interview: _17 June 2009_.

Type:  a)☒ Telephonic   b)☐ Video Conference
       c)☐ Personal [copy given to: 1)☐ applicant   2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒ No.
       If Yes, brief description: _____.

Claim(s) discussed: _1,13,16,and 19_.

Identification of prior art discussed: _NA_.

Agreement with respect to the claims f)☒ was reached.   g)☐ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Examiner wanted to speak with the attorney to discuss an amendment proposal to put the application in condition for allowance.  Mr. Houser agreed with the proposed amendments and gave Examiner permission to do an Examiner's Amendment and therefore send out a Notice of Allowance_.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MEPP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

| /Michael J Brown/ Examiner, Art Unit 2116 | |
|---|---|

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 11/370,618 | DOYON ET AL. | |
| | Examiner | Art Unit | |
| | Michael J. Brown | 2116 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *Amendments filed on 3/27/2009*.

2. ☒ The allowed claim(s) is/are *1-20*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None   of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☒ Interview Summary (PTO-413), Paper No./Mail Date *6/17/2009* .

7. ☒ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

| /Michael J Brown/ | /Thomas Lee/ |
|---|---|
| Examiner, Art Unit 2116 | Supervisory Patent Examiner, Art Unit 2115 |

Application/Control Number: 11/370,618                                    Page 2
Art Unit: 2116

## EXAMINER'S AMENDMENT

1.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview

with Kirk D. Houser on 6/17/2009.

The application has been amended as follows: claims 1, 13, 16, and 19 are

amended as follows:


1. (Currently Amended) A circuit card comprising:

a device;

a controller for controlling operation of the device, and

a switch for switchably coupling electrical power to the device to enable the

device to operate,

the controller including a module for controlling the switch to decouple the

electrical power from the device,

and the circuit card further comprising a switch controller, operable independent

of the controller, for controlling the switch, if the switch also decouples electrical power

from the controller, to restore the electrical power to the device and the controller a

predetermined time after the switch decouples the electrical power from the device and

the controller.

Application/Control Number: 11/370,618                                   Page 3
Art Unit: 2116

13. (Currently Amended) A circuit card comprising:

one or more devices,

a controller for controlling operation of the circuit card, ~~and~~

a switch responsive to a command received from the controller, for causing electrical power to at least one device to be decoupled therefrom for a predetermined period of time, and

an electrical power device, operable independent of the controller, that causes electrical power to the at least one device and the controller to be restored after the predetermined time period if the electrical power was also decoupled from the controller.

16. (Currently Amended) The circuit card according to claim ~~13~~ 15, wherein, in response to the command, the timing circuit sends a signal to ~~an~~ the electrical power device that causes the electrical power to be decoupled from the device and after the predetermined period of time sends a signal to the electrical power device that causes the electrical power to said device to be restored.

19. (Currently Amended) A circuit card comprising:

a device for performing operations associated with the circuit card,

a switch for switchably coupling electrical power to the device to enable the device to operate,

Application/Control Number: 11/370,618                                    Page 4
Art Unit: 2116

the device including a module for controlling the switch to decouple electrical

power from the device, and

the circuit card further comprises a switch controller, operable independent of the

device, for controlling the switch to restore electrical power to the device a

predetermined time after the switch decouples electrical power from the device if the

switch decoupled electrical power from the device.


### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Michael J. Brown whose telephone number is (571)272-

5932.  The examiner can normally be reached Monday-Thursday from 7:00am-5:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Thomas Lee can be reached at (571)272-3667.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 11/370,618                                               Page 5
Art Unit: 2116

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Michael J Brown/
Examiner, Art Unit 2116

                        /Thomas  Lee/
                        Supervisory Patent Examiner, Art Unit 2115

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Appl. No.          :   11/370,618                  Confirmation No.    3411
Applicant          :   Eric Doyon et al.
Filed              :   March 8, 2006
TC/A.U.            :   2116
Examiner           :   Michael J. Brown

Docket No.         :   195006-00977
Customer No.       :   46361

July 13, 2009

## STATEMENT OF THE SUBSTANCE OF THE INTERVIEW

The undersigned attorney and Examiner Michael J. Brown discussed the present application by telephone on June 17, 2009.  The following is the Statement of the Substance of the Interview:

1.  No exhibit was shown or discussed.

2.  Claims 1, 13, 16 and 19 were discussed.

3.  No prior art was discussed.

4.  Amendments to Claims 1, 13, 16 and 19 were discussed.

5.  The Examiner initiated the telephone interview in order to review proposed amendments to the claims prior to issuance of an Examiner's Amendment.

6.  No other pertinent matters were discussed.

7.  Agreement was reached with the Examiner regarding the proposed amendments.  The Examiner's Interview Summary, mailed on June 26, 2009, is correct.

Respectfully submitted,

ERIC DOYON ET AL.

By:     /Kirk D. Houser/

Kirk D. Houser
Reg. No. 37,357
Attorney for Applicants

Tel.:  412-566-6083

1