# EXHIBIT J



# Sughrue
SUGHRUE MION, PLLC

David J. Cushing
T 202-663-7925
dcushing@sughrue.com

2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213
T 202.293.7060
F 202.293.7860

401 Castro Street
Mountain View, CA 94041-2007
T 650.625.8100
F 650.625.8110

AIG Bldg. 14F
1-1-3 Marunouchi
Chiyoda-ku Tokyo 100-0005
Japan
T 03.5220.0200
F 03.5220.0222

www.sughrue.com

March 28, 2006

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Re:    Application of Heinz-Georg KRIMMEL
       A METHOD OF OPERATING A PASSIVE OPTICAL NETWORK
       **Assignee: ALCATEL**
       Our Ref.  Q93673

Dear Sir:

Attached hereto is the application identified above comprising 15 pages of the specification, including the claims and abstract, 2 sheet(s) of drawings, a copy of the executed Assignment and PTO 1595 form, and a copy of the executed Declaration and Power of Attorney. Also enclosed is an Information Disclosure Statement and PTO/SB/08 A & B (modified).

The Government filing fee is calculated as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total claims | 14 | - 20 | = | | x | $50.00 | = | $.00 |
| Independent claims | 1 | - 3 | = | | x | $200.00 | = | $.00 |
| Base Fee | | | | | | | $300.00 |
| Search Fee | | | | | | | $500.00 |
| Examination Fee | | | | | | | $200.00 |

**TOTAL FILING FEE**                                              **$1000.00**
Recordation of Assignment                                         $40.00
**TOTAL FEE**                                                     **$1040.00**

Checks for the statutory filing fee of $1000.00 and Assignment recordation fee of $40.00 are attached. The USPTO is directed and authorized to charge all required fees, except for the Issue Fee and the Publication Fee, to Deposit Account No. 19-4880. Please also credit any overpayments to said Deposit Account. A duplicate copy of this transmittal letter is attached.



**Sughrue**
SUGHRUE MION, PLLC

Commissioner for Patents
March 28, 2006
Page 2

Priority is claimed from:

| Country | Application No | Filing Date |
|---------|---------------|-------------|
| Europe | 05290737.5 | April 4, 2005 |

The priority document is enclosed herewith.

Respectfully submitted,
SUGHRUE MION, PLLC

Attorneys for Applicant

By: _____
David J. Cushing
Registration No. 28,703

SUGHRUE MION, PLLC
Telephone:  (202) 293-7060
Facsimile:  (202) 293-7860

WASHINGTON OFFICE
23373
CUSTOMER NUMBER

## A method of operating a passive optical network

## Background of the Invention

The invention is based on a priority application EP05290737.5 which is hereby incorporated by reference.

The invention relates to a method of operating a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations and comprising the step of generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states. The invention also relates to a corresponding passive optical network, to a corresponding optical line termination and to a corresponding network termination.

It is known to define the transmission rate within a passive optical network to a pre-defined value. Under this condition, all network terminations are able to communicate with the optical line termination.

In order to incorporate network terminations in the passive optical network that have a higher transmission rate, it is known to use several different transmission rates at least in the upstream direction. In this case, the optical line termination must be adapted to all of the used transmission rates. In order to use several transmission rates in the downstream direction, the receivers of the network terminations would have to be adapted.

However, the transmission qualities of the links between the optical line termination and the network terminations may be different or may even change from time to time. For example, changes within the passive optical fiber network may have the consequence

2

that a specific transmission path includes an additional splitter with the result that the transmission quality of the link is reduced.

The known methods do not consider such changes of the transmission quality.

## Summary of the Invention

It is an object of the invention to provide a method of operating a passive optical network that is capable to consider changes of the transmission quality of a link.

Based on a method as outlined above, the invention solves this object by the step of changing the number of signal states.

On one hand, if the transmission quality of the link proves to be better, it is possible to increase the number of signal states of the optical signal. Due to the better transmission quality, the optical line termination and/or the corresponding network termination is able to distinguish this increased number of signal states correctly within a received optical signal.

On the other hand, if the transmission quality of the link proves to be worse, the number of signal states is decreased so that it is easier for the optical line termination and/or the corresponding network termination to recognize the correct signal state within the received optical signal

As a result, the number of signal states of the optical signal may be adapted based on the transmission quality of the link.

3

An increase of the number of signal states, however, represents an increase of the transmission rate. Therefore, the invention provides an adaptation of the transmission rate depending on the transmission quality of the link.

In an advantageous embodiment, a first number of signal states is two (2) and a second number of signal states is greater than two (2). Alternatively, it is possible that both, a first and a second number of signal states are greater than two (2), but both are different from each other.

In a further advantageous embodiment, it is not only possible to change between a first and a second number of signal states, but between several different numbers of signal states, for example between two (2) and four (4) and eight (8) and sixteen (16) signal states.

In an advantageous embodiment of the invention, the number of signal states depends on the power of the received optical signal. For example, the optical line termination analyzes the received optical signal of a specific frame with regard to its power and then evaluates a corresponding number of signal states. If the received power is high, the number of signal states may also be high. This is a simple but effective method to define the number of signal states.

It is advantageous, if the number of signal states is defined for any one of the network terminations. This allows to adapt the transmission rate of any one of the network terminations separately.

In a further advantageous embodiment of the invention, the optical power of the optical

4

signal received at the optical line termination is evaluated for a specific frame, the number of signal states is defined based on the evaluated optical power, and the defined number of signal states is assigned to that network termination from which the received frame was sent.

Advantageously, that network termination from which the received frame was sent, is informed about the defined number of signal states.

Further features, applications and advantages of the invention will become apparent from the following description of exemplary embodiments of the invention that are shown in the drawings. There, all described and shown features, separately or in any combination, represent the subject matter of the invention, independently of the wording of these features in the description and independently of the combination of these features in the claims or of the dependencies of the claims.

**Brief Description of the Drawings**

Figure 1 shows a schematic block diagram of an embodiment of a passive optical network according to the invention, and figure 2a and 2b show schematic diagrams of signals within the passive optical network of figure 1.

In figure 1, a passive optical network PON is shown. On the side of the network provider, the passive optical network PON provides an optical line termination OLT. On the customer side of the link, the passive optical network PON provides a number of network terminations NT1, NT2, NT3, NT4, NT5.

5

**Detailed Descriptions of the Drawings**

According to figure 1, the optical line termination OLT is connected with the first network termination NT1 by optical fibers via a first optical splitter S1. The first optical splitter S1 is connected by an optical fiber with a second optical splitter S2 which, in turn, is connected by an optical fiber with a third optical splitter S3. The second and the fifth network termination NT2, NT5, are connected with the second optical splitter S2 and the third and the fourth network termination NT3, NT4 are connected with the third optical splitter S3.

The transmission direction from the optical line termination OLT to the network terminations NT1, NT2, NT3, NT4, NT5 is called downstream. The opposite direction, i.e. the direction from the network terminations NT1, NT2, NT3, NT4, NT5 to the optical line termination OLT is called upstream.

The optical paths may be realized on a single fiber for combined upstream and downstream direction; however, multiple fiber paths may also be present.

The optical line termination OLT comprises a device for transmitting and receiving optical signals via the connected optical fiber. Furthermore, the optical line termination OLT comprises a device for analyzing received optical signals and for generating signal states for the upstream direction. These signal states will be explained later.

Any one of the network terminations NT1, NT2, NT3, NT4, NT5 comprises a device for transmitting and receiving optical signals. Any one of the optical splitters S1, S2, S3 is designed to forward optical signals received at one of the connected optical fibers of

6

one side to the connected optical fibers of the other side, and vice versa.

The data to be transmitted in the downstream direction is encapsulated in frames. Any one of the frames comprises a destination address. The optical line termination OLT sends these frames one after the other with the corresponding destination addresses. All network terminations NT1, NT2, NT3, NT4, NT5 receive all frames. Each one of the network terminations NT1, NT2, NT3, NT4, NT5 examines the destination address of a received frame. If a respective frame is addressed to one of the network terminations NT1, NT2, NT3, NT4, NT5, then this specific network termination, e.g. NT2, stores the received frame for further processing.

The data to be transmitted in the upstream direction is also encapsulated. However, each one of the network terminations NT1, NT2, NT3, NT4, NT5 is only allowed to send data within allocated time frames. The optical line termination OLT, therefore, receives a sequence of frames from the different network terminations NT1, NT2, NT3, NT4, NT5.

As all frames transmitted in the downstream direction are generated by the same optical line termination OLT, the transmitted intensities of the corresponding optical signals are also the same. This is shown in figure 2a.

Figure 2a shows a diagram of the transmitted optical power P at the output of the optical line termination OLT over the time t. In figure 2a, a sequence of frames is transmitted by the optical line termination OLT in the downstream direction "DS".  As can be seen, all frames have the same power P.

In contrast thereto, all frames received in the upstream direction by the optical line

termination OLT, are generated by different network terminations NT1, NT2, NT3, NT4, NT5. The frames from the different network terminations NT1, NT2, NT3, NT4, NT5 are transmitted via different paths through the passive optical network PON. The number of optical splitters and the length of the optical fibers being passed, therefore, are also different for the different frames.

As a result, the optical signals corresponding to the different frames received in the upstream direction by the optical line termination OLT generally have different intensities. This is shown in figure 2b.

Figure 2b shows a diagram of the received optical power P at the input of the optical line termination OLT over the time t. In figure 2b, a sequence of frames is received by the optical line termination OLT in the upstream direction "US".  As can be seen, the frames have different powers P.

Each frame is built up of symbols. In connection with all frames being transmitted in upstream or in downstream direction, a maximum symbol rate or Baud rate is pre-defined. For example, this rate is 1.244,16 Mbaud. This pre-defined rate remains constant.

The optical line termination OLT analyzes the received frames from the different network terminations NT1, NT2, NT3, NT4, NT5 and evaluates the received optical signals within each of the corresponding frames. This evaluation may be directed to the optical power P of the received signals; however, the evaluation may alternatively or in addition comprise evaluations of the error rate and/or the error ratio and/or the eye opening or the like of the received optical signals.

8

Based on the evaluation, the optical line termination OLT defines a signaling mode for each of the received frames. This signaling mode comprises a specific number of signal states wherein each of the signal states is defined by a different optical power or a different optical intensity or the like. Then, the optical line termination OLT assigns this signaling mode, i.e. the corresponding number of signal states, to the upstream direction of that network terminations NT1, NT2, NT3, NT4, NT5 from which the frame was sent.

If the optical signal of a received frame coming from e.g. the network termination NT1 has a high optical power P and enough margin of the transmission link quality, then the optical line termination OLT defines a signaling mode with e.g. a number of 16 signal states in connection with the network termination NT1. However, if the optical signal of a received frame coming from e.g. the network termination NT4 has a low optical power P, then the optical line termination OLT defines a signaling mode with e.g. a number of 2 signal states in connection with the network termination NT4. Other signaling modes may have other numbers of signal states, e.g. 8 and/or 4 for received optical powers P that are in between a high received power P and a low received power P.

A number of 16 signal states means that the optical signal received from the respective network termination, e.g. the network termination NT1, may have 16 different values, wherein each of these values corresponds to a different binary value. Based on these 16 different signal states, therefore, it is possible to encode 4 binary digits in each transmitted symbol.

However, if there is only a number of 2 signal states, then the optical signal received

9

from the respective network termination, e.g. from the network termination NT4, may only represent 2 different values. Based on these 2 different signal states, therefore, it is possible to encode only 1 binary digit in each transmitted symbol.

Having 8 signal states, 3 binary digits can be encoded per symbol, and having 4 signal states, 2 binary digits can be encoded per symbol.

As a consequence, if the symbol rate is e.g. 1.244,16 Mbaud, and if the number of the signal states in connection with a specific network termination is 16, then the transmission rate from and to this network termination is 4 x 1.244,16 Mbits/sec. If the number of signal states is 8, then the transmission rate is 3 x 1.244,16 Mbits/sec, if the number of signal states is 4, then the transmission rate is 2 x 1.244,16 Mbits/sec, and if the number of signal states is 2, then the transmission rate is 1.244,16 Mbits/sec which corresponds to the symbol rate of 1.244,16 Mbaud.

The optical line termination OLT then informs the respective network termination about the evaluated signaling mode, i.e. about the evaluated number of signal states. Then, the subsequent transmissions between the respective network termination and the optical line termination OLT in the upstream direction are carried out using the defined number of signal states.

This procedure is carried out for all network terminations NT1, NT2, NT3, NT4, NT5. As well, this procedure is repeated consecutively or from time to time for all network terminations NT1, NT2, NT3, NT4, NT5.

As a result, the transmission between any one of the network terminations NT1, NT2,

10

NT3, NT4, NT5 and the optical line termination OLT in the upstream direction is always adapted to the actual quality of the optical signal received by the optical line termination OLT. E.g. based on the received power P and/or other quality criteria, the signaling mode for the respective network terminations NT1, NT2, NT3, NT4, NT5 is evaluated and adjusted, if necessary. The transmission rate between the optical line termination OLT and the network terminations NT1, NT2, NT3, NT4, NT5 is thereby permanently optimized.

Alternatively or in addition, it is possible to implement a similar scenario in the downstream direction. In this case, one or more of the network terminations NT1, NT2, NT3, NT4, NT5 are adapted to analyze the frames received from the optical line termination OLT with regard to the optical power of the received optical signals or with regard to other criteria like the error rate and/or the error ratio and/or the eye opening of the optical signal received from the optical line termination OLT. The respective network termination sends the results of the analysis back to the optical line termination OLT which then defines a signaling mode as described above, based on the received results. The transmissions between the optical line termination OLT and the respective network termination in the downstream direction may then be carried out using the defined signaling mode.

As a requirement for carrying out the described procedures, the optical line termination OLT and/or the network terminations NT1, NT2, NT3, NT4, NT5 must be able to generate an optical signal with e.g. 16 different signal states, and to distinguish 16 different signal states of a received optical signal.

Of course, the optical line termination OLT must fulfill this requirement in any case.

11

However, it is possible that only "new" network terminations are able to fulfill this requirement, whereas "old" network terminations remain to work with only 2 signal states. The address of these "old" network terminations may be stored in the optical line termination OLT so that the number of signal states is held fixed for these "old" network terminations. These "old" network terminations, therefore, do not have to be replaced.

Furthermore, it is possible that in the downstream direction at least the address, in particular the header of the address, of any frame is always sent with only 2 signal states. This ensures that any one of the network terminations, i.e. "old" ones and "new" ones", are able to read the received address or header correctly.

As well it is possible that the described number of signal states is only introduced in one of the two transmission directions, e.g. in the upstream direction. Then, the network terminations must only be able to generate an optical signal with e.g. 16 different signal states. However, the receivers of the network terminations do not need to be able to detect the 16 signal states of a received optical signal. The receiver of the optical line termination OLT, of course, must be able to distinguish between different signal states of the received optical signal. This requirement, therefore, is only necessary once within the optical line termination OLT but not within the network terminations.

Furthermore, it is possible that – prior to the above described procedures – the signal states between the optical line termination OLT and the network terminations are calibrated using so-called preambles. This calibration of the signal states may as well be carried out any time when a new network termination is incorporated into the passive optical network PON. Furthermore, any preamble sent in the upstream direction may be used for the described calibration and to inform the optical line termination OLT about

12

the possible number of signal states of the sending network termination.

13

# Claims

1.  A method of operating a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations and comprising the step of generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states, wherein the number of signal states is changed.

2.  The method of claim 1, comprising the step of generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states that is two, characterized by the step of generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states that is greater than two.

3.  The method of claim 1, characterized in that the number of signal states depends on the quality of the received optical signal.

4.  The method of claim 1, characterized in that the number of signal states depends on an optical power of the received optical signal.

5.  The method of claim 1, characterized in that the number of signal states depends on an error rate/ratio and/or an eye opening of the received optical signal.

6.  The method of claim 1, characterized in that the optical signal corresponds to a specific frame.

7.  The method of claim 6,  characterized in that the frame corresponds to one of the network terminations.

8.  The method of claim 1, characterized in that for an upstream direction and/or for a downstream direction, the number of signal states is forwarded to at least one of the network terminations.

14

9.  The method of claim 1, characterized in that for an upstream direction and/or for a downstream direction, the number of signal states is defined for any one of the network terminations.

10. The method of claim 1, characterized in that an optical power of the optical signal received at the optical line termination is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and wherein the defined number of signal states is assigned to that network termination from which the received frame was sent.

11. The method of claim 10, characterized in that a network termination from which the received frame was sent, is informed about the defined number of signal states.

12. A passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein means are provided for carrying out the method of claim 1.

13. An optical line termination being part of a passive optical network comprising said optical line termination being connected via optical fibers to a number of network terminations wherein said optical line termination comprises means for carrying out the method of claim 1.

14. A network termination being part of a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein said network termination comprises means for carrying out the method of claim 1.

15

## Summary

The invention relates to a method of operating a passive optical network . The passive optical network comprises an optical line termination being connected via optical fibers to a number of network terminations. The method comprises the step of generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states. The method is characterized in that the number of signal states is changed.



Heinz-Georg KRIMMEL
A METHOD OF OPERATING A PASSIVE
OPTICAL NETWORK
Attorney Docket No.:  Q93673
Sheet 1 of 2



1/2

Figure 1

Heinz-Georg KRIMMEL
A METHOD OF OPERATING A PASSIVE
OPTICAL NETWORK
Attorney Docket No.:  Q93673
Sheet 2 of 2

2/2

Figure 2a

DS

to NT4

Figure 2b

US

from NT1

from NT2

PATENT APPLICATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of                                           Docket No: Q93673

Heinz-Georg KRIMMEL

Appln. No.: Not Yet Assigned

Confirmation No.: Not Yet Assigned              Group Art Unit: Not Yet Assigned

Filed: March 28, 2006                                       Examiner: Not Yet Assigned

For:      A METHOD OF OPERATING A PASSIVE OPTICAL NETWORK

## INFORMATION DISCLOSURE STATEMENT
## UNDER 37 C.F.R. §§ 1.97 and 1.98

**MAIL STOP AMENDMENT**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

　　　　In accordance with the duty of disclosure under 37 C.F.R. § 1.56, Applicant hereby

notifies the U.S. Patent and Trademark Office of the documents which are listed on the attached

PTO/SB/08 A & B (modified) form and/or listed herein and which the Examiner may deem

material to patentability of the claims of the above-identified application.

　　　　One copy of each of the listed documents is submitted herewith, along with a copy of the

corresponding Communication from a Foreign Patent Office, except for the following: U.S.

patents and/or U.S. patent publications; and co-pending non-provisional U.S. applications filed

after June 30, 2003.

　　　　The present Information Disclosure Statement is being filed: (1) No later than three

months from the application's filing date; (2) Before the mailing date of the first Office Action

INFORMATION DISCLOSURE STATEMENT
Attorney Docket No.: Q93673

on the merits (whichever is later); or (3) Before the mailing date of the first Office Action after

filing a request for continued examination (RCE) under §1.114, and therefore, no Statement

under 37 C.F.R. § 1.97(e) or fee under 37 C.F.R. § 1.17(p) is required.

The submission of the listed documents is not intended as an admission that any such

document constitutes prior art against the claims of the present application. Applicant does not

waive any right to take any action that would be appropriate to antedate or otherwise remove any

listed document as a competent reference against the claims of the present application.

The USPTO is directed and authorized to charge all required fees, except for the Issue

Fee and the Publication Fee, to Deposit Account No. 19-4880. Please also credit any

overpayments to said Deposit Account.

Respectfully submitted,

David J. Cushing
Registration No. 28,703

SUGHRUE MION, PLLC
Telephone:  (202) 293-7060
Facsimile:  (202) 293-7860

WASHINGTON OFFICE
23373
CUSTOMER NUMBER

Date:  March 28, 2006

2

MODIFIED PTO/SB/08 A & B (06-03)

| Substitute for Form 1449 A & B/PTO | | | | | Complete if Known | |
|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | | | | Application Number | Not Yet Assigned | |
| | | | | Confirmation Number | Not Yet Assigned | |
| | | | | Filing Date | March 28, 2006 | |
| | | | | First Named Inventor | Heinz-Georg KRIMMEL | |
| | | | | Art Unit | Not Yet Assigned | |
| | | | | Examiner Name | Not Yet Assigned | |
| Sheet | 1 | of | 1 | Attorney Docket Number | Q93673 | |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number | | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document |
|---|---|---|---|---|---|
| | | Number | Kind Code[2] *(if known)* | | |
| | | US 6 763 193 | B1 | 07-13-2004 | CHAND et al. |
| | | US 2003/0011854 | A1 | 01-16-2003 | KAHN et at. |
| | | US 5, 920, 416 | A | 07-06-1999 | BEYLAT et al. |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document | | | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Translation[6] |
|---|---|---|---|---|---|---|---|
| | | Country Code[3] | Number[4] | Kind Code[5] *(if known)* | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city, and/or country where published. | Translation[6] |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1]Applicant's unique citation designation number (optional).  [2]See Kind Codes of USPTO Patent Documents at www.uspto.gov, MPEP 901.04 or in the comment box of this document.  [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST. 3).  [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.  [6] Applicant is to indicate here if English language Translation is attached.



**Europäisches Patentamt**

**European Patent Office**

**Office européen des brevets**

Heinz-Georg KRIMMEL
A METHOD OF OPERATING A PASSIVE
OPTICAL NETWORK
Attorney Docket No.:   Q93673
Document 1 of 1

# Bescheinigung    Certificate    Attestation

Die angehefteten Unterla-
gen stimmen mit der
ursprünglich eingereichten
Fassung der auf dem näch-
sten Blatt bezeichneten
europäischen Patentanmel-
dung überein.

The attached documents
are exact copies of the
European patent application
described on the following
page, as originally filed.

Les documents fixés à
cette attestation sont
conformes à la version
initialement déposée de
la demande de brevet
européen spécifiée à la
page suivante.

**Patentanmeldung Nr.    Patent application No.    Demande de brevet n°**

05290737.5

Der Präsident des Europäischen Patentamts;
Im Auftrag

For the President of the European Patent Office

Le Président de l'Office européen des brevets
p.o.

**R C van Dijk**

THIS PAGE BLANK (USPTO)

**Europäisches Patentamt**     **European Patent Office**     **Office européen des brevets**

Anmeldung Nr:
Application no.:   05290737.5
Demande no:

Anmeldetag:
Date of filing:   04.04.05
Date de dépôt:

Anmelder/Applicant(s)/Demandeur(s):

ALCATEL
54, rue la Boétie
75008 Paris
FRANCE

Bezeichnung der Erfindung/Title of the invention/Titre de l'invention:
(Falls die Bezeichnung der Erfindung nicht angegeben ist, siehe Beschreibung.
If no title is shown please refer to the description.
Si aucun titre n'est indiqué se referer à la description.)

A method of operating a passive optical network

In Anspruch genommene Prioriät(en) / Priority(ies) claimed /Priorité(s)
revendiquée(s)
Staat/Tag/Aktenzeichen/State/Date/File no./Pays/Date/Numéro de dépôt:

Internationale Patentklassifikation/International Patent Classification/
Classification internationale des brevets:

G02B6/00

Am Anmeldetag benannte Vertragstaaten/Contracting states designated at date of
filing/Etats contractants désignées lors du dépôt:

AT BE BG CH CY CZ DE DK EE ES FI FR GB GR HU IE IS IT LT LU
MC NL PL PT RO SE SI SK TR LI

05290737.5                                                                2

EPA/EPO/OEB Form 1014.2 - 01.2000      7001014

THIS PAGE BLANK (USPTO)

S:\IB5DUP\DUPDKA\200503\01380258EP-2005011229.doc

Applicant:
ALCATEL
54, rue La Boétie

75008 PARIS
FRANCE

01380258EP                     04.04.2005
                                SCH/NEG

**Title:**    **A method of operating a passive optical network**


**Specification**


The invention relates to a method of operating a passive
optical network comprising an optical line termination
being connected via optical fibers to a number of network
terminations and comprising the step of generating an
optical signal to be transmitted on one of the optical
fibers comprising a number of signal states. The invention
also relates to a corresponding passive optical network, to
a corresponding optical line termination and to a
corresponding network termination.


It is known to define the transmission rate within a

2

passive optical network to a pre-defined value. Under this condition, all network terminations are able to communicate with the optical line termination.

In order to incorporate network terminations in the passive optical network that have a higher transmission rate, it is known to use several different transmission rates at least in the upstream direction. In this case, the optical line termination must be adapted to all of the used transmission rates. In order to use several transmission rates in the downstream direction, the receivers of the network terminations would have to be adapted.

However, the transmission qualities of the links between the optical line termination and the network terminations may be different or may even change from time to time. For example, changes within the passive optical fiber network may have the consequence that a specific transmission path includes an additional splitter with the result that the transmission quality of the link is reduced.

The known methods do not consider such changes of the transmission quality.

It is an object of the invention to provide a method of operating a passive optical network that is capable to

3

consider changes of the transmission quality of a link.

Based on a method as outlined above, the invention solves this object by the step of changing the number of signal states.

On one hand, if the transmission quality of the link proves to be better, it is possible to increase the number of signal states of the optical signal. Due to the better transmission quality, the optical line termination and/or the corresponding network termination is able to distinguish this increased number of signal states correctly within a received optical signal.

On the other hand, if the transmission quality of the link proves to be worse, the number of signal states is decreased so that it is easier for the optical line termination and/or the corresponding network termination to recognize the correct signal state within the received optical signal

As a result, the number of signal states of the optical signal may be adapted based on the transmission quality of the link.

An increase of the number of signal states, however,

4

represents an increase of the transmission rate. Therefore, the invention provides an adaptation of the transmission rate depending on the transmission quality of the link.

In an advantageous embodiment, a first number of signal states is two (2) and a second number of signal states is greater than two (2). Alternatively, it is possible that both, a first and a second number of signal states are greater than two (2), but both are different from each other.

In a further advantageous embodiment, it is not only possible to change between a first and a second number of signal states, but between several different numbers of signal states, for example between two (2) and four (4) and eight (8) and sixteen (16) signal states.

In an advantageous embodiment of the invention, the number of signal states depends on the power of the received optical signal. For example, the optical line termination analyzes the received optical signal of a specific frame with regard to its power and then evaluates a corresponding number of signal states. If the received power is high, the number of signal states may also be high. This is a simple but effective method to define the number of signal states.

5

It is advantageous, if the number of signal states is defined for any one of the network terminations. This allows to adapt the transmission rate of any one of the network terminations separately.

In a further advantageous embodiment of the invention, the optical power of the optical signal received at the optical line termination is evaluated for a specific frame, the number of signal states is defined based on the evaluated optical power, and the defined number of signal states is assigned to that network termination from which the received frame was sent.

Advantageously, that network termination from which the received frame was sent, is informed about the defined number of signal states.

Further features, applications and advantages of the invention will become apparent from the following description of exemplary embodiments of the invention that are shown in the drawings. There, all described and shown features, separately or in any combination, represent the subject matter of the invention, independently of the wording of these features in the description and independently of the combination of these features in the claims or of the dependencies of the claims.

6

Figure 1 shows a schematic block diagram of an embodiment of a passive optical network according to the invention, and figure 2a and 2b show schematic diagrams of signals within the passive optical network of figure 1.

In figure 1, a passive optical network PON is shown. On the side of the network provider, the passive optical network PON provides an optical line termination OLT. On the customer side of the link, the passive optical network PON provides a number of network terminations NT1, NT2, NT3, NT4, NT5.

According to figure 1, the optical line termination OLT is connected with the first network termination NT1 by optical fibers via a first optical splitter S1. The first optical splitter S1 is connected by an optical fiber with a second optical splitter S2 which, in turn, is connected by an optical fiber with a third optical splitter S3. The second and the fifth network termination NT2, NT5, are connected with the second optical splitter S2 and the third and the fourth network termination NT3, NT4 are connected with the third optical splitter S3.

The transmission direction from the optical line termination OLT to the network terminations NT1, NT2, NT3,

7

NT4, NT5 is called downstream. The opposite direction, i.e. the direction from the network terminations NT1, NT2, NT3, NT4, NT5 to the optical line termination OLT is called upstream.

The optical paths may be realized on a single fiber for combined upstream and downstream direction; however, multiple fiber paths may also be present.

The optical line termination OLT comprises a device for transmitting and receiving optical signals via the connected optical fiber. Furthermore, the optical line termination OLT comprises a device for analyzing received optical signals and for generating signal states for the upstream direction. These signal states will be explained later.

Any one of the network terminations NT1, NT2, NT3, NT4, NT5 comprises a device for transmitting and receiving optical signals. Any one of the optical splitters S1, S2, S3 is designed to forward optical signals received at one of the connected optical fibers of one side to the connected optical fibers of the other side, and vice versa.

The data to be transmitted in the downstream direction is encapsulated in frames. Any one of the frames comprises a

8

destination address. The optical line termination OLT sends
these frames one after the other with the corresponding
destination addresses. All network terminations NT1, NT2,
NT3, NT4, NT5 receive all frames. Each one of the network
terminations NT1, NT2, NT3, NT4, NT5 examines the
destination address of a received frame. If a respective
frame is addressed to one of the network terminations NT1,
NT2, NT3, NT4, NT5, then this specific network termination,
e.g. NT2, stores the received frame for further processing.

The data to be transmitted in the upstream direction is
also encapsulated. However, each one of the network
terminations NT1, NT2, NT3, NT4, NT5 is only allowed to
send data within allocated time frames. The optical line
termination OLT, therefore, receives a sequence of frames
from the different network terminations NT1, NT2, NT3, NT4,
NT5.

As all frames transmitted in the downstream direction are
generated by the same optical line termination OLT, the
transmitted intensities of the corresponding optical
signals are also the same. This is shown in figure 2a.

Figure 2a shows a diagram of the transmitted optical power
P at the output of the optical line termination OLT over
the time t. In figure 2a, a sequence of frames is

9

transmitted by the optical line termination OLT in the downstream direction "DS". As can be seen, all frames have the same power P.

In contrast thereto, all frames received in the upstream direction by the optical line termination OLT, are generated by different network terminations NT1, NT2, NT3, NT4, NT5. The frames from the different network terminations NT1, NT2, NT3, NT4, NT5 are transmitted via different paths through the passive optical network PON. The number of optical splitters and the length of the optical fibers being passed, therefore, are also different for the different frames.

As a result, the optical signals corresponding to the different frames received in the upstream direction by the optical line termination OLT generally have different intensities. This is shown in figure 2b.

Figure 2b shows a diagram of the received optical power P at the input of the optical line termination OLT over the time t. In figure 2b, a sequence of frames is received by the optical line termination OLT in the upstream direction "US". As can be seen, the frames have different powers P.

Each frame is built up of symbols. In connection with all

10

frames being transmitted in upstream or in downstream
direction, a maximum symbol rate or Baud rate is pre-
defined. For example, this rate is 1.244,16 Mbaud. This
pre-defined rate remains constant.

The optical line termination OLT analyzes the received
frames from the different network terminations NT1, NT2,
NT3, NT4, NT5 and evaluates the received optical signals
within each of the corresponding frames. This evaluation
may be directed to the optical power P of the received
signals; however, the evaluation may alternatively or in
addition comprise evaluations of the error rate and/or the
error ratio and/or the eye opening or the like of the
received optical signals.

Based on the evaluation, the optical line termination OLT
defines a signaling mode for each of the received frames.
This signaling mode comprises a specific number of signal
states wherein each of the signal states is defined by a
different optical power or a different optical intensity or
the like. Then, the optical line termination OLT assigns
this signaling mode, i.e. the corresponding number of
signal states, to the upstream direction of that network
terminations NT1, NT2, NT3, NT4, NT5 from which the frame
was sent.

11

If the optical signal of a received frame coming from e.g. the network termination NT1 has a high optical power P and enough margin of the transmission link quality, then the optical line termination OLT defines a signaling mode with e.g. a number of 16 signal states in connection with the network termination NT1. However, if the optical signal of a received frame coming from e.g. the network termination NT4 has a low optical power P, then the optical line termination OLT defines a signaling mode with e.g. a number of 2 signal states in connection with the network termination NT4. Other signaling modes may have other numbers of signal states, e.g. 8 and/or 4 for received optical powers P that are in between a high received power P and a low received power P.

A number of 16 signal states means that the optical signal received from the respective network termination, e.g. the network termination NT1, may have 16 different values, wherein each of these values corresponds to a different binary value. Based on these 16 different signal states, therefore, it is possible to encode 4 binary digits in each transmitted symbol.

However, if there is only a number of 2 signal states, then the optical signal received from the respective network termination, e.g. from the network termination NT4, may

12

only represent 2 different values. Based on these 2
different signal states, therefore, it is possible to
encode only 1 binary digit in each transmitted symbol.

Having 8 signal states, 3 binary digits can be encoded per
symbol, and having 4 signal states, 2 binary digits can be
encoded per symbol.

As a consequence, if the symbol rate is e.g. 1.244,16
Mbaud, and if the number of the signal states in connection
with a specific network termination is 16, then the
transmission rate from and to this network termination is 4
x 1.244,16 Mbits/sec. If the number of signal states is 8,
then the transmission rate is 3 x 1.244,16 Mbits/sec, if
the number of signal states is 4, then the transmission
rate is 2 x 1.244,16 Mbits/sec, and if the number of signal
states is 2, then the transmission rate is 1.244,16
Mbits/sec which corresponds to the symbol rate of 1.244,16
Mbaud.

The optical line termination OLT then informs the
respective network termination about the evaluated
signaling mode, i.e. about the evaluated number of signal
states. Then, the subsequent transmissions between the
respective network termination and the optical line
termination OLT in the upstream direction are carried out

13

using the defined number of signal states.

This procedure is carried out for all network terminations NT1, NT2, NT3, NT4, NT5. As well, this procedure is repeated consecutively or from time to time for all network terminations NT1, NT2, NT3, NT4, NT5.

As a result, the transmission between any one of the network terminations NT1, NT2, NT3, NT4, NT5 and the optical line termination OLT in the upstream direction is always adapted to the actual quality of the optical signal received by the optical line termination OLT. E.g. based on the received power P and/or other quality criteria, the signaling mode for the respective network terminations NT1, NT2, NT3, NT4, NT5 is evaluated and adjusted, if necessary. The transmission rate between the optical line termination OLT and the network terminations NT1, NT2, NT3, NT4, NT5 is thereby permanently optimized.

Alternatively or in addition, it is possible to implement a similar scenario in the downstream direction. In this case, one or more of the network terminations NT1, NT2, NT3, NT4, NT5 are adapted to analyze the frames received from the optical line termination OLT with regard to the optical power of the received optical signals or with regard to other criteria like the error rate and/or the error ratio

Fax regu de : +49 711 240930 99

14

and/or the eye opening of the optical signal received from the optical line termination OLT. The respective network termination sends the results of the analysis back to the optical line termination OLT which then defines a signaling mode as described above, based on the received results. The transmissions between the optical line termination OLT and the respective network termination in the downstream direction may then be carried out using the defined signaling mode.

As a requirement for carrying out the described procedures, the optical line termination OLT and/or the network terminations NT1, NT2, NT3, NT4, NT5 must be able to generate an optical signal with e.g. 16 different signal states, and to distinguish 16 different signal states of a received optical signal.

Of course, the optical line termination OLT must fulfill this requirement in any case. However, it is possible that only "new" network terminations are able to fulfill this requirement, whereas "old" network terminations remain to work with only 2 signal states. The address of these "old" network terminations may be stored in the optical line termination OLT so that the number of signal states is held fixed for these "old" network terminations. These "old" network terminations, therefore, do not have to be

15

replaced.

Furthermore, it is possible that in the downstream direction at least the address, in particular the header of the address, of any frame is always sent with only 2 signal states. This ensures that any one of the network terminations, i.e. "old" ones and "new" ones", are able to read the received address or header correctly.

As well it is possible that the described number of signal states is only introduced in one of the two transmission directions, e.g. in the upstream direction. Then, the network terminations must only be able to generate an optical signal with e.g. 16 different signal states. However, the receivers of the network terminations do not need to be able to detect the 16 signal states of a received optical signal. The receiver of the optical line termination OLT, of course, must be able to distinguish between different signal states of the received optical signal. This requirement, therefore, is only necessary once within the optical line termination OLT but not within the network terminations.

Furthermore, it is possible that – prior to the above described procedures – the signal states between the optical line termination OLT and the network terminations

16

are calibrated using so-called preambles. This calibration
of the signal states may as well be carried out any time
when a new network termination is incorporated into the
passive optical network PON. Furthermore, any preamble sent
in the upstream direction may be used for the described
calibration and to inform the optical line termination OLT
about the possible number of signal states of the sending
network termination.

17

**Claims**

1.  A method of operating a passive optical network (PON)
    comprising an optical line termination (OLT) being
    connected via optical fibers to a number of network
    terminations (NT1, NT2, NT3, NT4, NT5) and comprising
    the step of generating an optical signal to be
    transmitted on one of the optical fibers comprising a
    number of signal states, characterized in that the
    number of signal states is changed.

2.  The method of claim 1 comprising the step of
    generating an optical signal to be transmitted on one
    of the optical fibers comprising a number of signal
    states that is two (2), characterized by the step of
    generating an optical signal to be transmitted on one
    of the optical fibers comprising a number of signal
    states that is greater than two (2).

3.  The method of claim 1 wherein the number of signal
    states depends on the quality of the received optical
    signal.

4.  The method of claim 1 wherein the number of signal
    states depends on an optical power (P) of the received
    optical signal.

5.  The method of claim 1 wherein the number of signal
    states depends on an error rate/ratio and/or an eye
    opening of the received optical signal.

6.  The method of claim 1 wherein the optical signal
    corresponds to a specific frame.

7.  The method of claim 6 wherein the frame corresponds to

18

one of the network terminations (NT1, NT2, NT3, NT4, NT5).

8.  The method of claim 1 wherein, for an upstream direction and/or for a downstream direction, the number of signal states is forwarded to at least one of the network terminations (NT1, NT2, NT3, NT4, NT5).

9.  The method of claim 1 wherein, for an upstream direction and/or for a downstream direction, the number of signal states is defined for any one of the network terminations (NT1, NT2, NT3, NT4, NT5).

10.  The method of claim 1 wherein an optical power (P) of the optical signal received at the optical line termination (OLT) is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power (P), and wherein the defined number of signal states is assigned to that network termination (NT1, NT2, NT3, NT4 or NT5) from which the received frame was sent.

11.  The method of claim 10 wherein that network termination (NT1, NT2, NT3, NT4 or NT5) from which the received frame was sent, is informed about the defined number of signal states.

12.  A passive optical network (PON) comprising an optical line termination (OLT) being connected via optical fibers to a number of network terminations (NT1, NT2, NT3, NT4, NT5) characterized in that means are provided for carrying out the method of claim 1.

13.  An optical line termination (OLT) being part of a passive optical network (PON) comprising said optical line termination (OLT) being connected via optical fibers to a number of network terminations (NT1, NT2,

19

NT3, NT4, NT5) characterized in that said optical line termination (OLT) comprises means for carrying out the method of claim 1.

14.   A network termination (NT1, NT2, NT3, NT4 or NT5) being part of a passive optical network (PON) comprising an optical line termination (OLT) being connected via optical fibers to a number of network terminations (NT1, NT2, NT3, NT4, NT5) characterized in that said network termination (NT1, NT2, NT3, NT4 or NT5) comprises means for carrying out the method of claim 1.

THIS PAGE BLANK (USPTO)

20

## Abstract

The invention relates to a method of operating a passive optical network (PON). The passive optical network comprises an optical line termination (OLT) being connected via optical fibers to a number of network terminations (NT1, NT2, NT3, NT4, NT5). The method comprises the step of generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states. The method is characterized in that the number of signal states is changed.

(Figure 1)

THIS PAGE BLANK (USPTO)



fig. 2a

fig. 2b



THIS PAGE BLANK (USPTO)

# This Page is Inserted by IFW Indexing and Scanning Operations and is not part of the Official Record

## BEST AVAILABLE IMAGES

Defective images within this document are accurate representations of the original documents submitted by the applicant.

Defects in the images include but are not limited to the items checked:

- ☑ **BLACK BORDERS**

- ☐ **IMAGE CUT OFF AT TOP, BOTTOM OR SIDES**

- ☑ **FADED TEXT OR DRAWING**

- ☐ **BLURRED OR ILLEGIBLE TEXT OR DRAWING**

- ☐ **SKEWED/SLANTED IMAGES**

- ☐ **COLOR OR BLACK AND WHITE PHOTOGRAPHS**

- ☐ **GRAY SCALE DOCUMENTS**

- ☐ **LINES OR MARKS ON ORIGINAL DOCUMENT**

- ☑ **REFERENCE(S) OR EXHIBIT(S) SUBMITTED ARE POOR QUALITY**

- ☐ **OTHER:** _____

## IMAGES ARE BEST AVAILABLE COPY.
## As rescanning these documents will not correct the image problems checked, please do not report these problems to the IFW Image Problem Mailbox.

THIS PAGE BLANK (USPTO)

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/390,313 | 03/28/2006 | Heinz-Georg Krimmel | 29250S-000004/US | 2207 |

30594          7590          12/12/2008
HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

| EXAMINER |
|---|
| TRAN, DZUNG D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2613 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/12/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/390,313 | KRIMMEL, HEINZ-GEORG |
| | Examiner | Art Unit | |
| | Dzung D. Tran | 2613 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>28 March 2006</u>.
2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-14</u> is/are pending in the application.
     4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>1-14</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.
10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.
     Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
     Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
     a)☒ All   b)☐ Some * c)☐ None of:
       1.☒ Certified copies of the priority documents have been received.
       2.☐ Certified copies of the priority documents have been received in Application No. _____.
       3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
     * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO/SB/08)
     Paper No(s)/Mail Date _____.
4)☐ Interview Summary (PTO-413)
     Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

Application/Control Number: 11/390,313                                      Page 2
Art Unit: 2613

## DETAILED ACTION

### *Specification*

### *Claim Rejections - 35 USC § 101*

1.      Claims 1-11 are rejected under 35 U.S.C. 101 as not falling within one of the four statutory categories of invention.  While the claims recite a series of steps or acts to be performed, a statutory "process" under 35 U.S.C. 101 must (1) be tied to another statutory category (such as a particular apparatus), or (2) transform underlying subject matter (such as an article or material) to a different state or thing (Reference the May 15, 2008 memorandum issued by Deputy Commissioner for Patent Examining Policy, John J. Love, titled "Clarification of 'Processes' under 35 U.S.C. 101").  The instant claims neither transform underlying subject matter nor positively tie to another statutory category that accomplishes the claimed method steps, and therefore do not qualify as a statutory process.

### *Claim Rejections - 35 USC § 112*

2.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

3.      Claims 12-14 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Application/Control Number: 11/390,313                                          Page 3
Art Unit: 2613

Claims 12-14 provides a means for carry out a method.  Claims 1 and 21 claim

both apparatus (i.e., means) and method (carrying out the method) which is indefinite

under 112, second paragraph (see *Ex parte Lyell*, 17 USPQ2d 1548 (Bd. Pat. App. &

Inter. 1990)).

Claims 12-14 are rejected under 35 U.S.C. 101 because the claims are directed

to neither a "process" nor a "machine", but rather embraces or overlaps two different

statutory classes of invention set forth in 35 U.S.C. 101 which is drafted so as to set

forth the statutory classes of invention in the alternative only.

### *Claim Rejections - 35 USC § 102*

4.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

5.      Claims 1-14 are rejected under 35 U.S.C. 102(e) as being anticipated by Chand

et al. US 6,763,193).

Regarding claim 1, Chand discloses a method of operating a passive optical

network comprising an optical line termination being connected via optical fibers to a

number of network terminations and comprising the step of generating an optical signal

to be transmitted on one of the optical fibers comprising a number of signal states,

wherein the number of signal states is changed (Fig. 1A, col. 2, lines 29-48).

Application/Control Number: 11/390,313                                    Page 4
Art Unit: 2613

Regarding claim 2, Chand discloses for generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states that is two, characterized by the step of generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states that is greater than two (col. 2, lines 29-48).

Regarding claim 3, Chand discloses the number of signal states depends on the quality of the received optical signal (col. 2, lines 41-48).

Regarding claim 4, Chand discloses the number of signal states depends on an optical power of the received optical signal (col. 2, lines 41-48; i.e., QAM).

Regarding claim 5, Chand discloses the number of signal states depends on an error rate/ratio and/or an eye opening of the received optical signal (col. 2, lines 46-48).

Regarding claims 6 and 7, Chand discloses the optical signal corresponds to a specific frame and the frame corresponds to one of the network terminations (col. 6, lines 43-55).

Regarding claims 8 and 9, Chand discloses for an upstream direction and/or for a downstream direction, the number of signal states is forwarded to at least one of the network terminations (col. 2, lines 55-67).

Regarding claims 10 and 11, Chand discloses an optical power of the optical signal received at the optical line termination is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and wherein the defined number of signal states is assigned to that network termination from which the received frame was sent (col. 6, lines 43-55).

Application/Control Number: 11/390,313                                          Page 5
Art Unit: 2613

Regarding claim 12, Chand discloses a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein means are provided for carrying out the method of claim 1 (Fig. 1A, col. 2, lines 29-48).

Regarding claim 13, Chand discloses an optical line termination being part of a passive optical network comprising said optical line termination being connected via optical fibers to a number of network terminations wherein said optical line termination comprises means for carrying out the method of claim 1 (Fig. 1A, col. 2, lines 29-48).

Regarding claim 14, Chand discloses a network termination being part of a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein said network termination comprises means for carrying out the method of claim 1 (Fig. 1A, col. 2, lines 29-48).

### *Conclusion*

6.      The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

a.      Kahn et al. U.S. Publication no. 2003/0011854.   Transmission and reception of duobinary multilevel pulse amplitude modulated optical signals

b.      Beylat et al. U.S. Patent no. 5,920,416. Optical method and transmitting digital data

Application/Control Number: 11/390,313                                    Page 6
Art Unit: 2613

7.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Dzung D Tran whose telephone number is (571) 272-

3025. The examiner can normally be reached on 9:00 AM - 7:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jason Chan, can be reached on (571) 272-3022. The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

Information regarding the status of an application may be obtained from thePatent

Application Information Retrieval (PAIR) system. Status information for published

applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

Dzung Tran

12/06/2008

/Dzung D Tran/

Primary Examiner, Art Unit 2613

| | Notice of References Cited | | Application/Control No.<br>11/390,313 | Applicant(s)/Patent Under Reexamination<br>KRIMMEL, HEINZ-GEORG | |
|---|---|---|---|---|---|
| | | | Examiner<br>Dzung D. Tran | Art Unit<br>2613 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,763,193 | 07-2004 | Chand et al. | 398/76 |
| * | B | US-5,920,416 | 07-1999 | Beylat et al. | 398/185 |
| * | C | US-2003/0011854 | 01-2003 | Kahn et al. | 359/173 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

PATENT APPLICATION

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of                           Docket No:  Q93673

Heinz-Georg KRIMMEL

Appln. No.:  Not Yet Assigned

Confirmation No.:  Not Yet Assigned          Group Art Unit:  Not Yet Assigned

Filed:  March 28, 2006                        Examiner:  Not Yet Assigned

For:    A METHOD OF OPERATING A PASSIVE OPTICAL NETWORK

## INFORMATION DISCLOSURE STATEMENT
## UNDER 37 C.F.R. §§ 1.97 and 1.98

**MAIL STOP AMENDMENT**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

In accordance with the duty of disclosure under 37 C.F.R. § 1.56, Applicant hereby

notifies the U.S. Patent and Trademark Office of the documents which are listed on the attached

PTO/SB/08 A & B (modified) form and/or listed herein and which the Examiner may deem

material to patentability of the claims of the above-identified application.

One copy of each of the listed documents is submitted herewith, along with a copy of the

corresponding Communication from a Foreign Patent Office, except for the following: U.S.

patents and/or U.S. patent publications; and co-pending non-provisional U.S. applications filed

after June 30, 2003.

The present Information Disclosure Statement is being filed:  (1) No later than three

months from the application's filing date; (2) Before the mailing date of the first Office Action

on the merits (whichever is later); or (3) Before the mailing date of the first Office Action after filing a request for continued examination (RCE) under §1.114, and therefore, no Statement under 37 C.F.R. § 1.97(e) or fee under 37 C.F.R. § 1.17(p) is required.

The submission of the listed documents is not intended as an admission that any such document constitutes prior art against the claims of the present application. Applicant does not waive any right to take any action that would be appropriate to antedate or otherwise remove any listed document as a competent reference against the claims of the present application.

The USPTO is directed and authorized to charge all required fees, except for the Issue Fee and the Publication Fee, to Deposit Account No. 19-4880. Please also credit any overpayments to said Deposit Account.

Respectfully submitted,

David J. Cushing
Registration No. 28,703

SUGHRUE MION, PLLC
Telephone: (202) 293-7060
Facsimile: (202) 293-7860

WASHINGTON OFFICE
23373
CUSTOMER NUMBER

Date: March 28, 2006

MODIFIED PTO/SB/08 A & B (06-03)

| Substitute for Form 1449 A & B/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | Application Number | Not Yet Assigned |
| | Confirmation Number | Not Yet Assigned |
| | Filing Date | March 28, 2006 |
| | First Named Inventor | Heinz-Georg KRIMMEL |
| | Art Unit | Not Yet Assigned |
| | Examiner Name | Not Yet Assigned |

| Sheet | 1 | of | 1 | Attorney Docket Number | Q93673 |
|---|---|---|---|---|---|

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number | | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document |
|---|---|---|---|---|---|
| | | Number | Kind Code[2] *(if known)* | | |
| /D.T./ | | US 6 763 193 | B1 | 07-13-2004 | CHAND et al. |
| /D.T./ | | US 2003/0011854 | A1 | 01-16-2003 | KAHN et al. |
| /D.T./ | | US 5, 920, 416 | A | 07-06-1999 | BEYLAT et al. |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document | | | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Translation[6] |
|---|---|---|---|---|---|---|---|
| | | Country Code[3] | Number[4] | Kind Code[5] *(if known)* | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city, and/or country where published. | Translation[6] |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /Dzung Tran/ | Date Considered | 12/07/2008 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1]Applicant's unique citation designation number (optional). [2]See Kind Codes of USPTO Patent Documents at www.uspto.gov, MPEP 901.04 or in the comment box of this document. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST. 3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. [6] Applicant is to indicate here if English language Translation is attached.

**PATENT**

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Heinz-Georg KRIMMEL | Confirmation No.: | 2207 |
| Application No.: | 11/390,313 | Examiner: | Dzung D. Tran |
| Filing Date: | March 28, 2006 | Group Art Unit: | 2613 |
| Title: | A METHOD OF OPERATING A PASSIVE OPTICAL NETWORK | | |

Attorney Docket: 29250S-000004/US

Customer Service Window                                 April 13, 2009, Monday
Randolph Building
401 Dulany Street
Alexandria, VA 22314
**Mail Stop Amendment**

## AMENDMENT

Sir:

In response to the Office Action mailed December 12, 2008, the following amendments and remarks are respectfully submitted in connection with the above-identified application.

**Amendments to the Claims** begin on page 2 of this Amendment.

**Remarks** begin on page 5 of this Amendment.

| | Claims remaining after Amendment | | Highest number previously paid for | | Present extra |
|---|---|---|---|---|---|
| **Total** | 14 | - | 20 | = | 0 |
| **Independent** | 4 | - | 3 | = | 1 |

04/14/2009 DEHMANU1 00000037 11390313
02 FC:1201                                           220.00 OP

Application No.11/390,313
Attorney Docket No.29250S-000004/US

**AMENDMENTS TO THE CLAIMS**

The following is a complete, marked-up listing of claims including the claim amendments proposed by the Examiner.  Please note the updated status identifier in parenthesis, underlined text indicating insertions, and strike through and/or double-bracketed text indicating deletions.

LISTING OF CLAIMS

1. (Currently Amended)  A method of operating a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations and comprising the step of generating an optical signal <u>at the optical line termination for transmission</u> ~~to be transmitted on~~ <u>over</u> one of the optical fibers<u>, the optical signal</u> comprising a number of signal states, wherein the number of signal states is changed <u>during operation by the optical line termination</u>.

2. (Currently Amended)  The method of claim 1, <u>wherein the number of signal states is two or greater</u> ~~comprising the step of generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states that is two, characterized by the step of generating an optical signal to be transmitted on one of the optical fibers comprising a number of signal states that is greater than two~~.

3. (Currently Amended)  The method of claim 1, ~~characterized in that~~ <u>wherein</u> the number of signal states depends on ~~the~~ <u>a</u> quality of the received optical signal.

4. (Currently Amended)  The method of claim 1, ~~characterized in that~~ <u>wherein</u> the number of signal states depends on an optical power of the received optical signal.

5. (Currently Amended)  The method of claim 1, ~~characterized in that~~ wherein the number of signal states depends on an error rate/ratio and/or an eye opening of the received optical signal.

6. (Currently Amended)  The method of claim 1, ~~characterized in that~~ wherein the optical signal corresponds to a specific frame.

7. (Currently Amended)  The method of claim 6, ~~characterized in that~~ wherein the specific frame corresponds to one of the network terminations.

8. (Currently Amended)  The method of claim 1, ~~characterized in that~~ wherein for an upstream direction and/or for a downstream direction, the number of signal states is forwarded to at least one of the network terminations.

9. (Currently Amended)  The method of claim 1, ~~characterized in that~~ wherein for an upstream direction and/or for a downstream direction, the number of signal states is defined for any one of the network terminations.

10. (Currently Amended)  The method of claim 1, ~~characterized in that~~ wherein an optical power of the optical signal received at the optical line termination is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and wherein the defined number of signal states is assigned to that network termination from which the received frame was sent.

11. (Currently Amended)  The method of claim 10, ~~characterized in that~~ <u>wherein</u> a network termination from which the received frame was sent, is informed about the defined number of signal states.

12. (Currently Amended)  A passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein ~~means are provided for carrying out the method of claim 1~~ <u>the optical line termination is configured to generate an optical signal comprising a number of signal states and configured to change the number of signal states during operation</u>.

13. (Currently Amended)  An optical line termination being part of a passive optical network comprising said optical line termination being connected via optical fibers to a number of network terminations wherein ~~said optical line termination comprises means for carrying out the method of claim 1~~ <u>the optical line termination is configured to generate an optical signal comprising a number of signal states and configured to change the number of signal states during operation</u>.

14. (Currently Amended)  A network termination being part of a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein ~~said network termination comprises means for carrying out the method of claim 1~~ <u>the network termination is configured to receive an optical signal comprising a number of signal states from an optical line termination configured to change the number of signal states during operation</u>.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## REMARKS

In light of the following remarks, reconsideration of the present application is requested.  Claims 1-14 are pending in the application.  Claims 1 and 12-14 are independent claims.  Claims 1 -14 are amended.  No new matter has been added.

### Drawings

Applicants note the Examiner has not indicated whether the drawings are accepted.  Accordingly, the Applicants respectfully request the Examiner to indicate the status of the drawings in the next Office Action.

### Claim Rejections - 35 U.S.C. § 101

The Examiner rejects claims 1-11 under 35 U.S.C. § 101 alleging they do not fall within one of the four statutory categories of the invention.  The Applicants respectfully traverse.

Recently, the Court of Appeals for the Federal Circuit established a two-branch test regarding the patentability of method claims (see *In re Bilski*).  In particular, the Court stated that method claims are patent-eligible under 35 U.S.C. § 101 if: (1) they are tied to a particular machine or apparatus, or (2) they transform a particular article into a different state or thing.  As amended, the operations recited in at least claim 1 - 11 are tied to a particular apparatus.  For example, the operation of "generating an optical signal," as recited in claim 1, is "at the optical line termination."  Similarly, the operation of changing the number of signal states during operation is performed by "the optical line termination."  Because the operations recited in claims 1-11 are tied to an apparatus, the Applicants submit the subject matter recited in claims 1-11 is patent eligible per *In re Bilski.*

For at least the reasons given above, the Applicants respectfully request the rejection of claim 1, and all claims which depend thereon, under 35 U.S.C. § 101 as being drawn to nonstatutory subject matter be withdrawn.

## Claim Rejections – 35 USC §112

Claims 12-14 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicants regard as the invention. The Applicants respectfully traverse.

In the Office Action, the Examiner alleges claims 12-14 are directed to neither a "process" nor a "machine", but rather embraces or overlaps two different statutory classes of invention as set forth in 35 U.S.C. § 101. The Applicants submit claims 12-14 are clearly drawn towards apparatuses, not "processes." For example, claim 12 is clearly drawn to a passive optical network, claim 13 is clearly drawn to an optical line termination, and claim 14 is clearly drawn to a network termination. However, in order to advance prosecution, the Applicants have amended claims 12-14 to remove the alleged "process" language.

In light of the amendments to claims 12-14, the Applicants respectfully request the rejections of claim 12-14 under 35 U.S.C. § 112 be withdrawn.

## Claim Rejections – 35 USC §102

Claims 1-14 are rejected under 35 U.S.C. § 102(e) as being anticipated by Chand et al (U.S. Patent No. 6,763,193). The Applicants respectfully traverse.

*Claim 1*

The Examiner alleges Chand teaches "wherein the number of signal states is changed," as recited in original claim 1, and points to FIG. 1A, column 2, lines 29-48,

for support.  However, this portion of the disclosure only discusses and compares various modulation schemes such as basic QAM (2 states), 16 QAM (16 states), and 64 QAM (64 states).  Although Chand discusses and compares different modulation schemes with different signal states (see for example column 2, lines 40-48), Chand's disclosure fails to disclose "wherein the number of signal states is ***changed*** during operation by the optical line termination," as recited in claim 1.  Rather, Chand merely compares different fixed QAM systems against each other (for example, Chand teaches that the signal-to-noise ratio for a fixed 64 QAM system is higher than the signal-to-noise ratio of a fixed 16 QAM system).  For at least this reason, the Applicants submit claim 1 is not anticipated by Chand.

For at least the reason given above, the Applicants respectfully request the rejection of claim 1, and all claims which depend thereon, under 35 U.S.C. § 102(e) as being anticipated by Chand be withdrawn.


*Claims 12-14*

Because Chand fails to disclose a network in which the number of signal states may be changed during operation, the Applicants submit Chand likewise fails to disclose an optical network with an "optical line termination ... configured to change the number of signal states during operation," as recited in claims 12 – 14.  For at least the above reasons, the Applicants submit Chand fails to anticipate claims 12-14.

For at least the reason given above, the Applicants respectfully request the rejection of claim 12-14, and all claims which depend thereon, under 35 U.S.C. § 102(e) as being anticipated by Chand be withdrawn.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## CONCLUSION

Accordingly, in view of the above amendments and remarks, reconsideration of the objections and rejections and allowance of each of claims 1-14 in connection with the present application is earnestly solicited.

Should there be any outstanding matters that need to be resolved in the present application, the Examiner is respectfully requested to contact Gary D. Yacura at the telephone number of the undersigned below.

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 08-0750 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. §1.17; particularly, extension of time fees.

Respectfully submitted,

HARNESS, DICKEY, & PIERCE, P.L.C.

By _____
Gary D. Yacura, Reg. No. 35,416

P.O. Box 8910
Reston, Virginia 20195
(703) 668-8000

GDY/DMB/cfc

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/390,313 | 03/28/2006 | Heinz-Georg Krimmel | 29250S-000004/US | 2207 |

30594          7590          06/25/2009
HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

| EXAMINER |
|---|
| TRAN, DZUNG D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2613 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/25/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| ***Office Action Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 11/390,313 | KRIMMEL, HEINZ-GEORG |
| | Examiner | Art Unit | |
| | Dzung D. Tran | 2613 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>13 April 2009</u>.

2a)☐ This action is **FINAL**.  2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-14</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-14</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☒ All  b)☐ Some * c)☐ None of:

      1.☒ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 11/390,313                                            Page 2
Art Unit: 2613

## DETAILED ACTION

### Specification

### Claim Rejections - 35 USC § 103

1.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

2.     Claims 1-14 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Maeda et al. US Publication no. 2005/0180575 in view of Asashiba et al. US Publication

no. 2002/0172216.

Regarding claim 1, Maeda discloses a method of operating a optical network

comprising the step of generating an optical signal at the node for transmission over

one of the optical fibers comprising a number of signal states wherein the number of

signal states is changed (Paragraphs 0002, 0005; i.e., for high optical power the signal

state go to high, for low optical power the signal state go to low).

Maeda does not specifically disclose the system is a passive optical network

comprising an optical line termination being connected via optical fibers to a number of

network terminations.

Asashiba discloses a well known passive optical network comprising an optical

line termination being connected via optical fibers to a number of network terminations

(see Figure 3).

Application/Control Number: 11/390,313                                    Page 3
Art Unit: 2613

At the time of the invention was made, it would have been obvious to an artisan to include the teaching of Asashiba in the system of Maeda.  One of ordinary skill in the art would have been motivated to do that in order to transmit the optical signal passively.

Regarding claim 2, Maeda discloses wherein the number of signal states that is two or greater (Paragraphs 0002, 0005, i.e., 2 states).

Regarding claim 3, Maeda discloses wherein the number of signal states depends on the quality of the received optical signal (Paragraphs 0002, 0005, i.e., for high optical power the signal state go to high, for low optical power the signal state go to low).

Regarding claim 4, Maeda discloses the number of signal states depends on an optical power of the received optical signal (Paragraphs 0002, 0005, i.e., for high optical power the signal state go to high, for low optical power the signal state go to low).

Regarding claim 5, Asashiba discloses the number of signal states depends on an error rate/ratio and/or an eye opening of the received optical signal (paragraph 0016).

Regarding claims 6 and 7, Asashiba discloses the optical signal corresponds to a specific frame and the frame corresponds to one of the network terminations (paragraph 0007).

Application/Control Number: 11/390,313                                     Page 4
Art Unit: 2613

Regarding claims 8 and 9, Asashiba discloses for an upstream direction and/or for a downstream direction, the number of signal states is forwarded to at least one of the network terminations (paragraphs 0007-0010).

Regarding claims 10 and 11, Maeda discloses an optical power of the optical signal received at the optical line termination is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and wherein the defined number of signal states is assigned to that network termination from which the received frame was sent (Paragraphs 0002, 0005, i.e., for high optical power the signal state go to high, for low optical power the signal state go to low).

Regarding claims 12-14, Maeda discloses an optical network comprising a node for generating an optical signal and transmission over one of the optical fibers comprising a number of signal states wherein the number of signal states is changed during operation (Paragraphs 0002, 0005; i.e., for high optical power the signal state go to high, for low optical power the signal state go to low).

Maeda does not specifically disclose the system is a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations.

Asashiba discloses a well known passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations (see Figure 3).

At the time of the invention was made, it would have been obvious to an artisan to include the teaching of Asashiba in the system of Maeda.  One of ordinary skill in the

Application/Control Number: 11/390,313                                        Page 5
Art Unit: 2613

art would have been motivated to do that in order to transmit the optical signal

passively.


*Response to Arguments*

3.      Applicant's arguments with respect to claims 1-14 have been considered but are

moot in view of the new ground(s) of rejection.



**Conclusion**

4.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Dzung D Tran whose telephone number is (571) 272-

3025. The examiner can normally be reached on 9:00 AM - 7:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jason Chan, can be reached on (571) 272-3022. The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

Information regarding the status of an application may be obtained from thePatent

Application Information Retrieval (PAIR) system. Status information for published

applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

Application/Control Number: 11/390,313                                      Page 6
Art Unit: 2613


Dzung Tran

06/21/2009

/Dzung D Tran/

Primary Examiner, Art Unit 2613

| *Notice of References Cited* | | Application/Control No. 11/390,313 | | Applicant(s)/Patent Under Reexamination KRIMMEL, HEINZ-GEORG | |
|---|---|---|---|---|---|
| | | Examiner Dzung D. Tran | | Art Unit 2613 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2005/0180575 | 08-2005 | Maeda et al. | 380/278 |
| * | B | US-2002/0172216 | 11-2002 | Asashiba et al. | 370/442 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

IFW



**PATENT**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| Application No.: | 11/390,313 | Group Art Unit: | 2613 |
| Filing Date: | March 28, 2006 | Examiner: | Dzung D. Tran |
| Applicant: | Heinz-George Krimmel | | |
| Title: | A METHOD OF OPERATING A PASSIVE OPTICAL NETWORK | | |
| Attorney Docket: | 29250S-000004/US | | |

Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, VA 22314
**Mail Stop Amendment**

September 3, 2009

**AMENDMENT**

Sir:

In response to the Office Action dated June 25, 2009, the following amendments and remarks are respectfully submitted in connection with the above-identified application.

**Amendments to the Claims** begin on page 2 of this Amendment.

**Remarks** begin on page 7 of this Amendment.

| | Claims remaining after Amendment | | Highest number previously paid for | | Present extra |
|---|---|---|---|---|---|
| **Total** | 20 | - | 20 | = | 0 |
| **Independent** | 4 | - | 4 | = | 0 |

## AMENDMENTS TO THE CLAIMS

The following is a complete, marked-up listing of claims including the claim amendments proposed by the Examiner.  Please note the updated status identifier in parenthesis, underlined text indicating insertions, and strike through and/or double-bracketed text indicating deletions.

**LISTING OF CLAIMS**

1. (Currently Amended)  A method of operating a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations and comprising the step of generating an optical signal ~~at the optical line termination~~ for transmission over one of the optical fibers, the optical signal <u>including</u> ~~comprising~~ a number of signal states <u>that is two and that correspond to one binary digit,</u> <u>wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers.</u> ~~wherein the number of signal states is changed during operation by the optical line termination.~~

2-3. (Cancelled)

4. (Currently Amended)  The method of claim 1, wherein the <u>transmission quality is</u> ~~number of signal states depends on~~ an optical power <u>of the one of the optical fibers</u> ~~of the received optical signal~~.

5. (Currently Amended)  The method of claim 1, wherein <u>the transmission quality is at least one of</u> ~~the number of signal states depends on~~ an error rate<u>,</u> [[/]] <u>error</u> ratio

Application No.11/390,313
Attorney Docket No.29250S-000004/US

and/~~or~~ an eye opening of <u>the one of the optical fibers</u> ~~the received optical signal~~.

6. (Previously Presented)  The method of claim 1, wherein the optical signal corresponds to a specific frame.

7. (Previously Presented)  The method of claim 6, wherein the specific frame corresponds to one of the network terminations.

8. (Currently Amended)  The method of claim 1, wherein for <u>at least one of</u> an upstream direction and [[/or]] ~~for a~~ downstream direction, the number of signal states is forwarded to at least one of the network terminations.

9. (Currently Amended)  The method of claim 1, wherein for <u>at least one of</u> an upstream direction and [[/or]] ~~for a~~ downstream direction, the number of signal states is defined for any one of the network terminations.

10. (Currently Amended)  The method of claim 1, wherein an optical power of the optical signal <u>of the one of the optical fibers</u> ~~received at the optical line termination~~ is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and wherein the defined number of signal states is assigned to that network termination from which the received frame was sent.

11. (Previously Presented)  The method of claim 10, wherein a network termination from which the received frame was sent, is informed about the defined number of signal states.

12. (Currently Amended)  A passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein the optical line termination is configured to generate an optical signal including comprising a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers and configured to change the number of signal states during operation.

13. (Currently Amended)  An optical line termination being part of a passive optical network comprising said optical line termination being connected via optical fibers to a number of network terminations wherein the optical line termination is configured to generate an optical signal including comprising a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers and configured to change the number of signal states during operation.

14. (Currently Amended)  A network termination being part of a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein the network termination is configured to receive an optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the

Application No.11/390,313
Attorney Docket No.29250S-000004/US

one of the optical fibers. ~~from an optical line termination configured to change the number of signal states during operation.~~

15. (New)  The method of claim 1, wherein the number of signal states is decreased based on the transmission quality of the one of the optical fibers.

16.  (New)  The passive optical network of claim 12, wherein the number of signal states is decreased based on the transmission quality of the one of the optical fibers.

17. (New)  The passive optical network of claim 12, wherein the transmission quality is an optical power of the one of the optical fibers.

18. (New)  The passive optical network of claim 12, wherein the transmission quality is at least one of an error rate, error ratio and an eye opening of the one of the optical fibers.

19.  (New)  The optical line termination of claim 13, wherein the number of signal states is decreased based on the transmission quality of the one of the optical fibers.

20. (New)  The optical line termination of claim 13, wherein the transmission quality is an optical power of the one of the optical fibers.

21.  (New)  The network termination of claim 14, wherein the number of signal states is decreased based on the transmission quality of the one of the optical fibers.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

22. (New)  The network termination of claim 14, wherein the transmission quality is an optical power of the one of the optical fibers.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## REMARKS

In light of the following preceding amendments and following remarks, reconsideration of the present application is requested.   Claims 1 and 4-22 are pending in the application.   By this Amendment, claim 1, 4-5, 8-10 and 12-14 are amended, claims 15-22 are added, and claims 2-3 have been cancelled.   Support for these amendments is provided at least at paragraphs 3-5 of page 3 of the originally filed application.   Claims 1 and 12-14 are independent claims.

## Claim Rejections - 35 U.S.C. § 103

The Examiner has rejected claims 1-14 under 35 U.S.C. § 102(e) as being unpatentable over Maeda et al. (U.S. Publication No. 2005/0180575, hereinafter "Maeda"), in view of Asashiba et al (U.S. Publication No. 2002/0172216, hereinafter "Asashiba").   Applicants respectfully traverse this rejection for the reasons detailed below.

Without conceding to the Examiner's current position, Applicants have amended independent claim 1 to further clarify its features.   For instance, claim 1 recites, *inter alia,* "generating an optical signal for transmission over one of the optical fibers, the optical signal including **a number of signal states that is two and that correspond to one binary digit**, **wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers.**"   Applicants submit that Maeda does not disclose or suggest these features.

For example, the claimed invention starts from a baseband system.   The baseband system includes an optical signal that has two signal states "0" and "1"

Application No.11/390,313
Attorney Docket No.29250S-000004/US

constituting one binary digit.  The number of signal states remains fixed.  According to claim 1, it is possible to increase the number of signal states as a function of the transmission quality.  In particular, if a high transmission quality is evaluated, then a higher number of signal states may be selected.  Therefore, claim 1 allows an adjustment of the transmission rate based on the transmission quality of the optical fiber.

In contrast, Maeda relates to a system and method for establishing synchronization over channels in the field of *quanum cryptography*.  This is not related to the field of the claimed invention.  In addition, although Maeda discloses a system that includes two channels which have two different states relating to the amount of optical power (e.g., high optical power and low optical power), these channels of Maeda do not include a number of signal states that is two and that correspond to <u>one binary digit</u>.  In addition, Maeda is silent on *increasing* the number of signal states to greater than two based on a *transmission quality* of one of the optical lines.  Asashiba fails to cure the deficiency of Maeda.   Therefore, Asashiba and Maeda, alone or in combination, fail to render independent claim 1 obvious to one of ordinary skill in the art.   Independent claims 12-14 have been amended to include features similar to amended claim 1, and therefore are patentable for at least the same reasons stated above.   Claims 4-11, dependent on claim 1, are patentable for at least the same reasons stated above.  The Applicants, therefore, respectfully request that the rejection to Claims 1 and 4-14 under 35 U.S.C. § 103(a) be withdrawn.

## New Claims

New claims 15-22, dependent on claims 12-14, are patentable for at least the same reasons stated above.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## CONCLUSION

Accordingly, in view of the above amendments and remarks, reconsideration of the objections and rejections and allowance of each of the pending claims in connection with the present application is earnestly solicited.

Should there be any outstanding matters that need to be resolved in the present application, the Examiner is respectfully requested to contact Gary D. Yacura at the telephone number of the undersigned below.

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 08-0750 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. §1.17; particularly, extension of time fees.

Respectfully submitted,

HARNESS, DICKEY, & PIERCE, P.L.C.

By _____

Gary D. Yacura, Reg. No. 35,416

P.O. Box 8910
Reston, Virginia 20195
(703) 668-8000

GDY/JBS;gew

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/390,313 | 03/28/2006 | Heinz-Georg Krimmel | 29250S-000004/US | 2207 |

30594          7590          12/28/2009
HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

| EXAMINER |
|---|
| TRAN, DZUNG D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2613 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/28/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Office Action Summary** | Application No. | Applicant(s) |
| --- | --- | --- |
| | 11/390,313 | KRIMMEL, HEINZ-GEORG |
| | Examiner | Art Unit |
| | Dzung D. Tran | 2613 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on *03 September 2009*.

2a)☒ This action is **FINAL**.       2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) *1 and 4-22* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1 and 4-22* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☒ All   b)☐ Some * c)☐ None of:

      1.☒ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

Application/Control Number: 11/390,313                                    Page 2

Art Unit: 2613

## DETAILED ACTION

### *Specification*

### *Claim Rejections - 35 USC § 103*

1.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

2.      Claims 1, 4-22 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Azadet et al. US Publication no. 2004/0057733 in view of Asashiba et al. US Publication

no. 2002/0172216.

Regarding claim 1, Azadet discloses a method of operating a optical network

comprising the step of generating an optical signal at the node for transmission over

one of the optical fibers, the optical signal comprising a number of signal states that is

two and that corresponding to one binary digit, wherein the number of signal states is

increasing to a number of signal states that is greater than two based on a

transmission quality of the one of the optical fibers (Paragraphs 0014-0016; i.e., three

levels 0, 1, 2 to a corresponding voltage level –V, 0, +V).

Azadet does not specifically disclose the system is a passive optical network

comprising an optical line termination being connected via optical fibers to a number of

network terminations.

Application/Control Number: 11/390,313                                    Page 3
Art Unit: 2613

Asashiba discloses a well known passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations (see Figure 3).

At the time of the invention was made, it would have been obvious to an artisan to include the teaching of Asashiba in the system of Maeda.  One of ordinary skill in the art would have been motivated to do that in order to transmit the optical signal passively.

Regarding claim 4, Azadet discloses the transmission quality is an optical power of the one of the optical fibers (Paragraphs 0019-0025, i.e., the transmission quality is an optical power or amplitude).

Regarding claim 5, Asashiba discloses the number of signal states depends on an error rate/ratio and/or an eye opening of the one of the optical fibers (paragraphs 0016).

Regarding claims 6 and 7, Asashiba discloses the optical signal corresponds to a specific frame and the frame corresponds to one of the network terminations (paragraph 0007).

Regarding claims 8 and 9, Asashiba discloses for an upstream direction and/or for a downstream direction, the number of signal states is forwarded to at least one of the network terminations (paragraphs 0007-0010).

Regarding claims 10 and 11, Azadet discloses an optical power of the optical signal received at the optical line termination is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and

Application/Control Number: 11/390,313                                    Page 4
Art Unit: 2613

wherein the defined number of signal states is assigned to that network termination

from which the received frame was sent (Paragraphs 0014-0016; i.e., three levels 0, 1,

2 to a corresponding voltage level –V, 0, +V).

Regarding claims 12-14, Azadet discloses an optical network comprising a node

for generating an optical signal at the node for transmission over one of the optical

fibers, the optical signal comprising a number of signal states that is two and that

corresponding to one binary digit, wherein the number of signal states is increasing to

a number of signal states that is greater than two based on a transmission quality of

the one of the optical fibers (Paragraphs 0014-0016; i.e., three levels 0, 1, 2 to a

corresponding voltage level –V, 0, +V).

Azadet does not specifically disclose the system is a passive optical network

comprising an optical line termination being connected via optical fibers to a number of

network terminations.

Asashiba discloses a well known passive optical network comprising an optical

line termination being connected via optical fibers to a number of network terminations

(see Figure 3).

At the time of the invention was made, it would have been obvious to an artisan

to include the teaching of Asashiba in the system of Maeda.  One of ordinary skill in the

art would have been motivated to do that in order to transmit the optical signal

passively.

Regarding claims 15-16, 19 and 21, Azadet discloses wherein the number of

signal states is decreased based on the transmission quality of the one of the optical

Application/Control Number: 11/390,313                                     Page 5
Art Unit: 2613

fibers (Paragraphs 0014-0016; i.e., three levels 0, 1, 2 to a corresponding voltage level

–V, 0, +V).

    Regarding claims 17, 20 and 22, Azadet discloses the transmission quality is an

optical power of the one of the optical fibers (Paragraphs 0019-0025, i.e., the

transmission quality is an optical power or amplitude).

    Regarding claim 18, Asashiba discloses the number of signal states depends on

an error rate/ratio and/or an eye opening of the one of the optical fibers (paragraphs

0016).

### *Response to Arguments*

3.    Applicant's arguments with respect to claims 1, 4-22 have been considered but

are moot in view of the new ground(s) of rejection.

### Conclusion

4.    Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

    A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

Application/Control Number: 11/390,313                                          Page 6
Art Unit: 2613

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

5.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Dzung D Tran whose telephone number is (571) 272-

3025. The examiner can normally be reached on 9:00 AM - 7:00 PM.

       If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Vanderpuye Kenneth, can be reached on (571) 272-3078. The fax phone

number for

the organization where this application or proceeding is assigned is 703-872-9306.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published

applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

Application/Control Number: 11/390,313                                    Page 7
Art Unit: 2613


Dzung Tran

12/18/2009

/Dzung D Tran/

Primary Examiner, Art Unit 2613

| *Notice of References Cited* | | Application/Control No. 11/390,313 | Applicant(s)/Patent Under Reexamination KRIMMEL, HEINZ-GEORG | |
|---|---|---|---|---|
| | | Examiner Dzung D. Tran | Art Unit 2613 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2004/0057733 | 03-2004 | Azadet et al. | 398/183 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

**PATENT**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| Application No.: | 11/390,313 | Group Art Unit: | 2613 |
| Filing Date: | March 28, 2006 | Examiner: | Dzung D. Tran |
| Applicant: | Heinz-George KRIMMEL | | |
| Title: | A METHOD OF OPERATING A PASSIVE OPTICAL NETWORK | | |
| Attorney Docket: | 29250S-000004/US | | |

Customer Service Window                                          March 1, 2010
Randolph Building
401 Dulany Street
Alexandria, VA 22314
**Mail Stop AF**

### Request for Reconsideration

Sir:

In response to the final Office Action dated December 28, 2009, the following remarks are respectfully submitted in connection with the above-identified application.

**Listing of the Claims** begin on page 2 of this Amendment.

**Remarks** begin on page 6 of this Amendment.

| | Claims remaining after Amendment | | Highest number previously paid for | | Present extra |
|---|---|---|---|---|---|
| **Total** | 20 | - | 20 | = | 0 |
| **Independent** | 4 | - | 4 | = | 0 |

Application No.11/390,313
Attorney Docket No.29250S-000004/US

**LISTING OF CLAIMS**

1. (Previously Presented)  A method of operating a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations and comprising the step of generating an optical signal for transmission over one of the optical fibers, the optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers.

2. - 3. (Cancelled)

4. (Previously Presented)  The method of claim 1, wherein the transmission quality is an optical power of the one of the optical fibers.

5. (Previously Presented)  The method of claim 1, wherein the transmission quality is at least one of an error rate, error ratio and an eye opening of the one of the optical fibers.

6. (Previously Presented)  The method of claim 1, wherein the optical signal corresponds to a specific frame.

7. (Previously Presented)  The method of claim 6, wherein the specific frame corresponds to one of the network terminations.

8. (Previously Presented)  The method of claim 1, wherein for at least one of an

upstream direction and downstream direction, the number of signal states is forwarded to at least one of the network terminations.

9. (Previously Presented)  The method of claim 1, wherein for at least one of an upstream direction and downstream direction, the number of signal states is defined for any one of the network terminations.

10. (Previously Presented)  The method of claim 1, wherein an optical power of the optical signal of the one of the optical fibers is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and wherein the defined number of signal states is assigned to that network termination from which the received frame was sent.

11. (Previously Presented)  The method of claim 10, wherein a network termination from which the received frame was sent, is informed about the defined number of signal states.

12. (Previously Presented)  A passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein the optical line termination is configured to generate an optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

13. (Previously Presented)  An optical line termination being part of a passive optical network comprising said optical line termination being connected via optical fibers to a number of network terminations wherein the optical line termination is configured to generate an optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers.

14. (Previously Presented)  A network termination being part of a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations wherein the network termination is configured to receive an optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers.

15. (Previously Presented)  The method of claim 1, wherein the number of signal states is decreased based on the transmission quality of the one of the optical fibers.

16. (Previously Presented)  The passive optical network of claim 12, wherein the number of signal states is decreased based on the transmission quality of the one of the optical fibers.

17. (Previously Presented)  The passive optical network of claim 12, wherein the transmission quality is an optical power of the one of the optical fibers.

18. (Previously Presented)  The passive optical network of claim 12, wherein the transmission quality is at least one of an error rate, error ratio and an eye opening of the one of the optical fibers.

19.  (Previously Presented)  The optical line termination of claim 13, wherein the number of signal states is decreased based on the transmission quality of the one of the optical fibers.

20. (Previously Presented)  The optical line termination of claim 13, wherein the transmission quality is an optical power of the one of the optical fibers.

21.  (Previously Presented)  The network termination of claim 14, wherein the number of signal states is decreased based on the transmission quality of the one of the optical fibers.

22. (Previously Presented)  The network termination of claim 14, wherein the transmission quality is an optical power of the one of the optical fibers.

**\<End of Claims Listing\>**

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## REMARKS

In light of the following remarks, reconsideration of the present application is requested.  Claims 1 and 4-22 are pending in the application. Claims 2 and 3 were previously cancelled.  Claims 1 and 12-14 are independent claims.

### Examiner Interview

The Applicants thank the Examiner for the interview conducted on February 26, 2010.  In the interview, the Applicants' representative and the Examiner discussed whether or not the cited art disclosed "...the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fiber," as recited in claim 1.  In short, the Applicants' representative and the Examiner did not agree that the instant feature was disclosed by the Azadet document.

During the interview, the Examiner indicated that claim 1 should be amended to further clarify the basis for which the number of signal states is increased.  For example, the Examiner indicated that the claims should recite "based on a transmission quality of *__a signal of__* the one of the optical fibers" rather than "based on a transmission quality of the one of the optical fibers."  The Examiner also indicated that the feature "a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations" should be amended to recite "a passive optical network comprising an optical line termination being connected via *__a plurality of__* optical fibers to a ~~number~~ *__plurality__* of network terminations," to better characterize the invention.  The Examiner also indicated that such amendments would overcome the cited art.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

Although the Applicants appreciate the Examiner's suggested amendments, the Applicants do not believe such amendments are necessary at this time.

## Claim Rejections - 35 U.S.C. § 103

Claims 1 and 4-22 are rejected under 35 U.S.C. § 103a) as being unpatentable over U.S. Patent Publication 2004/0057733 to Azadet et al. ("Azadet") in view of U.S. Patent Publication 2002/0172216 to Asashiba et al. ("Asashiba"). Applicants respectfully traverse this rejection for the reasons detailed below.

*Claim 1*

Initially, the Applicants submit claim 1 is not obvious over the combination of Azadet and Asashiba at least because neither document, alone or in combination, teach, suggest, or disclose, at least, "the number of signal states is increased to a number of signal states that is greater than two ***based on a transmission quality of the one of the optical fibers***," as recited in claim 1.

Azadet discloses a duobinary optical communication system that employs pulse amplitude modulation (PAM) techniques to provide improvements in spectral efficiency. The communication system includes a precoder 115 which includes an XOR gate 110 and a delay element 150. In operation, an input bit is applied to a terminal of the XOR gate 110 and a previous bit (obtained by a feedback loop including the delay element) is applied to another terminal of the XOR gate 110. The previous output bit is added to the current input bit. The output of the precoder is a two level value (0 or 1) that is applied to an encoder 120 that maps the two level value to a three level value. As explained in paragraph [0014] of Azadet's disclosure, the encoder 120 adds the previous and current bit levels together to produce a three level value (0,1,2).

Page 7

In the Office Action, that the Examiner relies on the operations of generating a three level value (0,1,2) for disclosing "wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers," as recited in claim 1.  However, the system disclosed by Azadet appears to generate the three level value (0,1,2) regardless of a "transmission quality of the one of the optical fibers." Therefore, the Applicants submit that Azadet cannot be relied on for disclosing, at least, "wherein the number of signal states is increased to a number of signal states that is greater than two *__based on a transmission quality of the one of the optical fibers__*," as recited in claim 1.

The Examiner has not indicated, nor can the Applicants find, "the number of signal states is increased to a number of signal states that is greater than two *__based on a transmission quality of the one of the optical fibers__*," as recited in claim 1, disclosed in the Asashiba document.  Therefore, even if one skilled in the art did combine Azadet with Asashiba, the combination would not disclose the instant feature.  Accordingly, the Applicants submit the Examiner cannot rely on the combination of Azadet and Asashiba to render claim 1 obvious.

For at least the reasons given above, the Applicants respectfully request the rejection of claim 1, and all claims which depend thereon, under 35 U.S.C. § 103 as being obvious over the combination of Azadet and Asashiba be withdrawn.

For somewhat similar reasons, the Applicants respectfully request the rejection of claim 12-14, and all claims which depend thereon, under 35 U.S.C. § 103 as being obvious over the combination of Azadet and Asashiba be withdrawn.

*Claim 4*

Initially, the Applicants submit claim 4 is not obvious over the combination of Azadet and Asashiba at least because neither document, alone or in combination, teach, suggest, or disclose, at least, "wherein the transmission quality is an optical power of the one of the optical fibers," as recited in claim 4.

In the Office Action, the Examiner asserts that Azadet, in addition to disclosing a duobinary optional communication system, also discloses an operation for increasing a number of signal states to a number of signal states greater than two based on a transmission quality of the one of the optical fibers "wherein the transmission quality is an optical power of the one of the optical fibers," as recited in claim 4. For support the Examiner refers to paragraphs [0019] – [0025] of Azadet's disclosure. The Applicants have studied this portion of Azadet's disclosure and note the following.

Paragraphs [0019] – [0020] of Azadet's disclosure indicates that Azadet's duobinary pulse shaping techniques may be employed in conjunction with pulse amplitude modulation (PAM) techniques. FIG. 2 illustrates a PAM-4 duobinary optical communication system 200 according to Azadet's disclosure. Here, a precoder 215 comprising a modulo 4 adder 210 and a delay element 250 is shown. Two input bits comprising four levels are applied to one terminal of the modulo 4 adder 210 and a previous four level value is applied to the second terminal of the adder 210 (the previous four level value is obtained by a feedback loop containing the delay element 250). The precoder, therefore, introduces a correlation into a transmitted signal by adding a previous four level output value to a current four level input value.

The four level output of the precoder 215 is applied to an encoder 220 that maps the four levels to a seven level value (0, 1, 2, 3, 4, 5, 6). The seven level value

generated by the encoder 220 is applied to a digital to analog converter (DAC) 225 that maps the seven level value to a corresponding voltage.  The seven level value is then mapped to a corresponding optical signal by a Mach Zehnder modulator 230 and the optical signal is applied to an optical fiber 235.  A power detector 240 performs an optical to electrical conversion by performing a squaring operation on the received signal.  Thereafter, a slicer 260 maps the four levels generated by the power detected to a corresponding two bit binary value.

The Applicants note that although Azadet discloses operations for adding previous four level output values to current four level input values (operation of precoder), operations for mapping a four level output of a precoder to a seven level value (operation of encoder), operations for mapping a seven level value from an encoder to a voltage (operation of DAC), operations for mapping voltages to an optical signal (operation of MZM), operations converting optical signals to  electrical (power detector), and mapping a four level output from a power detector to two bit binary value (operation of the slicer), none of these operations increase "a number of signal states that is greater than two ***based on a transmission quality of the one of the optical fibers***," as recited in claim 1, wherein "***the transmission quality is an optical power of the one of the optical fibers***," as recited in claim 4.  Rather, paragraphs [0019]-[0025] merely disclose operations for converting input bits into optical signals and voltages regardless of "the quality of the one of the optical signals," as recited in claim1, wherein "***the transmission quality is an optical power of the one of the optical fibers***," as recited in claim 4.

The Examiner has not indicated, nor can the Applicants find, "a number of signal states that is greater than two ***based on a transmission quality of the one of the optical fibers***," as recited in claim 1, wherein "***the transmission quality is an***

***optical power of the one of the optical fibers***," as recited in claim 4, disclosed in the Asashiba document.  Therefore, even if one skilled in the art did combine Azadet with Asashiba, the combination would not disclose the instant features.  Accordingly, the Applicants submit the Examiner cannot rely on the combination of Azadet and Asashiba to render claim 4 obvious.

For at least the reasons given above, the Applicants respectfully request the rejection of claim 4, and all claims which depend thereon, under 35 U.S.C. § 103 as being obvious over the combination of Azadet and Asashiba be withdrawn.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## **CONCLUSION**

Accordingly, in view of the above amendments and remarks, reconsideration of the objections and rejections and allowance of each of the pending claims in connection with the present application is earnestly solicited.

Should there be any outstanding matters that need to be resolved in the present application, the Examiner is respectfully requested to contact Gary D. Yacura at the telephone number of the undersigned below.

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 08-0750 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. §1.17; particularly, extension of time fees.

Respectfully submitted,

HARNESS, DICKEY, & PIERCE, P.L.C.

By _____

Gary D. Yacura, Reg. No. 35,416

P.O. Box 8910
Reston, Virginia 20195
(703) 668-8000

GDY/DMB:eaf

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/390,313 | 03/28/2006 | Heinz-Georg Krimmel | 29250S-000004/US | 2207 |

| | |
|---|---|
| 30594          7590          03/25/2010 | EXAMINER |
| HARNESS, DICKEY & PIERCE, P.L.C. | TRAN, DZUNG D |
| P.O. BOX 8910 | |
| RESTON, VA 20195 | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2613 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/25/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 11/390,313 | KRIMMEL, HEINZ-GEORG |
| | Examiner | Art Unit | |
| | Dzung D. Tran | 2613 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>01 March 2010</u>.

2a)☐ This action is **FINAL**.  2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1 and 4-22</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1 and 4-22</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner.  Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☒ All  b)☐ Some * c)☐ None of:

      1.☒ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 11/390,313                                                Page 2
Art Unit: 2613

## DETAILED ACTION

### *Specification*

*1.*      The finality of the last Final office action mailed 12/28/2009 is withdrawn due to
lack of the 112 rejection.


### *Claim Rejections - 35 USC § 112*


2.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly
> claiming the subject matter which the applicant regards as his invention.


3.      Claims  1, 4-22 are are rejected under 35 U.S.C. 112, second paragraph, as
being indefinite for failing to particularly point out and distinctly claim the subject matter
which applicant regards as the invention.

In independent claims 1 and 12-14, it is unclear what is meant by "wherein the
number of signal states is increasing to a number of signal states that is greater than
two **based on a transmission quality of the one of the optical fibers**" because
the specification, page 3 discloses the number of signal states **depends on the
power of the received optical signal**.


### *Claim Rejections - 35 USC § 103*

4.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all
obviousness rejections set forth in this Office action:

Application/Control Number: 11/390,313                                           Page 3
Art Unit: 2613

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

5.      Claims 1, 4-22 are rejected under 35 U.S.C. 103(a) as being unpatentable over Azadet et al. US Publication no. 2004/0057733 in view of Asashiba et al. US Publication no. 2002/0172216.

        Regarding claim 1, as far as Examiner understood, Azadet discloses a method of operating a optical network comprising the step of generating an optical signal at the node for transmission over one of the optical fibers, the optical signal comprising a number of signal states that is two and that corresponding to one binary digit, wherein the number of signal states is increasing to a number of signal states that is greater than two based on a transmission quality of the optical signal (Paragraphs 0014-0016; i.e., three levels 0, 1, 2 to a corresponding voltage level –V, 0, +V).

        Azadet does not specifically disclose the system is a passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations.

        Asashiba discloses a well known passive optical network comprising an optical line termination being connected via optical fibers to a number of network terminations (see Figure 3).

        At the time of the invention was made, it would have been obvious to an artisan to include the teaching of Asashiba in the system of Maeda.  One of ordinary skill in the art would have been motivated to do that in order to transmit the optical signal passively.

Application/Control Number: 11/390,313                                    Page 4
Art Unit: 2613

Regarding claim 4, as far as Examiner understood, Azadet discloses the transmission quality is an optical power of the optical signal (Paragraphs 0019-0025, i.e., the transmission quality is an optical power or amplitude).

Regarding claim 5, as far as Examiner understood, Asashiba discloses the number of signal states depends on an error rate/ratio and/or an eye opening of the optical signal (paragraphs 0016).

Regarding claims 6 and 7, as far as Examiner understood, Asashiba discloses the optical signal corresponds to a specific frame and the frame corresponds to one of the network terminations (paragraph 0007).

Regarding claims 8 and 9, as far as Examiner understood, Asashiba discloses for an upstream direction and/or for a downstream direction, the number of signal states is forwarded to at least one of the network terminations (paragraphs 0007-0010).

Regarding claims 10 and 11, as far as Examiner understood, Azadet discloses an optical power of the optical signal received at the optical line termination is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and wherein the defined number of signal states is assigned to that network termination from which the received frame was sent (Paragraphs 0014-0016; i.e., three levels 0, 1, 2 to a corresponding voltage level –V, 0, +V).

Regarding claims 12-14, as far as Examiner understood, Azadet discloses an optical network comprising a node for generating an optical signal at the node for transmission over one of the optical fibers, the optical signal comprising a number of

Application/Control Number: 11/390,313                                      Page 5
Art Unit: 2613

signal states that is two and that corresponding to one binary digit, wherein the number

of signal states is increasing to a number of signal states that is greater than two based

on a transmission quality of the optical signal (Paragraphs 0014-0016; i.e., three levels

0, 1, 2 to a corresponding voltage level –V, 0, +V).

Azadet does not specifically disclose the system is a passive optical network

comprising an optical line termination being connected via optical fibers to a number of

network terminations.

Asashiba discloses a well known passive optical network comprising an optical

line termination being connected via optical fibers to a number of network terminations

(see Figure 3).

At the time of the invention was made, it would have been obvious to an artisan

to include the teaching of Asashiba in the system of Maeda.  One of ordinary skill in the

art would have been motivated to do that in order to transmit the optical signal

passively.

Regarding claims 15-16, 19 and 21, as far as Examiner understood, Azadet

discloses wherein the number of signal states is decreased based on the transmission

quality of the   optical signal (Paragraphs 0014-0016; i.e., three levels 0, 1, 2 to a

corresponding voltage level –V, 0, +V).

Regarding claims 17, 20 and 22, as far as Examiner understood, Azadet

discloses the transmission quality is an optical power of the optical signal (Paragraphs

0019-0025, i.e., the transmission quality is an optical power or amplitude).

Application/Control Number: 11/390,313                                          Page 6
Art Unit: 2613

Regarding claim 18, as far as Examiner understood, Asashiba discloses the

number of signal states depends on an error rate/ratio and/or an eye opening of the

optical signal (paragraphs 0016).

### *Response to Arguments*

6.      Applicant's arguments with respect to claims 1, 4-22 have been considered but

are moot in view of the new ground(s) of rejection.

### Conclusion

7.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Dzung D Tran whose telephone number is (571) 272-

3025. The examiner can normally be reached on 9:00 AM - 7:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Vanderpuye Kenneth, can be reached on (571) 272-3078. The fax phone

number for

the organization where this application or proceeding is assigned is 703-872-9306.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published

applications may be obtained from either Private PAIR or Public PAIR.

Application/Control Number: 11/390,313                                    Page 7
Art Unit: 2613

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).


Dzung Tran

03/21/2010

/Dzung D Tran/

Primary Examiner, Art Unit 2613

**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Application No.: | 11/390,313 | Group Art Unit: | 2613 |
| Filing Date: | March 28, 2006 | Examiner: | Dzung D. Tran |
| Applicant: | Heinz-George KRIMMEL | | |
| Title: | A METHOD OF OPERATING A PASSIVE OPTICAL NETWORK | | |
| Attorney Docket: | 29250S-000004/US | | |

---

Customer Service Window                         June 7, 2010
Randolph Building
401 Dulany Street
Alexandria, VA 22314
**Mail Stop Amendment**

### Amendment under 37 C.F.R. §1.111

Sir:

In response to the Office Action dated March 25, 2010, the following remarks are respectfully submitted in connection with the above-identified application.

**Amendments to the Claims** begin on page 2 of this Amendment.

**Remarks** begin on page 7 of this Amendment.

| | Claims remaining after Amendment | | Highest number previously paid for | | Present extra |
|---|---|---|---|---|---|
| **Total** | 20 | - | 20 | = | 0 |
| **Independent** | 4 | - | 4 | = | 0 |

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## AMENDMENTS TO THE CLAIMS

The following is a complete, marked up listing of revised claims with a status identifier in parentheses, underlined text indicating insertions, and strikethrough and/or double-bracketed text indicating deletions.

1. (Currently Amended) A method of operating a passive optical network comprising an optical line termination being connected via a plurality of optical fibers to a ~~number~~ plurality of network terminations and comprising the step of generating an optical signal for transmission over one of the plurality of optical fibers, the optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the optical signal on the one of the plurality of optical fibers.

2. - 3. (Cancelled)

4. (Currently Amended)  The method of claim 1, wherein the transmission quality of the optical signal is an optical power of the optical signal of the one of the plurality of optical fibers.

5. (Currently Amended)  The method of claim 1, wherein the transmission quality of the optical signal is at least one of an error rate, error ratio and an eye opening of the optical signal of the one of the plurality of optical fibers.

6. (Previously Presented)  The method of claim 1, wherein the optical signal corresponds to a specific frame.

7. (Previously Presented)  The method of claim 6, wherein the specific frame corresponds to one of the network terminations.

8. (Previously Presented)  The method of claim 1, wherein for at least one of an upstream direction and downstream direction, the number of signal states is forwarded to at least one of the network terminations.

9. (Previously Presented)  The method of claim 1, wherein for at least one of an upstream direction and downstream direction, the number of signal states is defined for any one of the network terminations.

10. (Currently Amended)  The method of claim 1, wherein an optical power of the optical signal of the one of the plurality of optical fibers is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and wherein the defined number of signal states is assigned to that network termination from which the received frame was sent.

11. (Previously Presented)  The method of claim 10, wherein a network termination from which the received frame was sent, is informed about the defined number of signal states.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

12. (Currently Amended)  A passive optical network comprising an optical line termination being connected via ~~a plurality of~~ optical fibers to a ~~number~~ plurality of network terminations wherein the optical line termination is configured to generate an optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the optical signal of the one of the plurality of optical fibers.

13. (Currently Amended)  An optical line termination being part of a passive optical network comprising said optical line termination being connected via a plurality of optical fibers to a ~~number~~ plurality of network terminations wherein the optical line termination is configured to generate an optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the optical signal of the one of the plurality of optical fibers.

14. (Currently Amended)  A network termination being part of a passive optical network comprising an optical line termination being connected via a plurality of optical fibers to a ~~number~~ plurality of network terminations wherein the network termination is configured to receive an optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the optical signal of the one of the plurality of optical fibers.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

15. (Currently Amended)  The method of claim 1, wherein the number of signal states is decreased based on the transmission quality of the <u>optical signal of the</u> one of the <u>plurality of</u> optical fibers.

16.  (Currently Amended)  The passive optical network of claim 12, wherein the number of signal states is decreased based on the transmission quality of the <u>optical signal of the</u> one of the <u>plurality of</u> optical fibers.

17. (Currently Amended)  The passive optical network of claim 12, wherein the transmission quality <u>of the optical signal</u> is an optical power <u>of the optical signal</u> of the one of the <u>plurality of</u> optical fibers.

18. (Currently Amended)  The passive optical network of claim 12, wherein the transmission quality <u>of the optical signal</u> is at least one of an error rate, error ratio and an eye opening <u>of the optical signal</u> of the one of the <u>plurality of</u> optical fibers.

19.  (Currently Amended)  The optical line termination of claim 13, wherein the number of signal states is decreased based on the transmission quality <u>of the optical signal</u> of the one of the <u>plurality of</u> optical fibers.

20. (Currently Amended)  The optical line termination of claim 13, wherein the transmission quality <u>of the optical signal</u> is an optical power <u>of the optical signal</u> of the one of the <u>plurality of</u> optical fibers.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

21.  (Currently Amended)  The network termination of claim 14, wherein the number of signal states is decreased based on the transmission quality of the optical signal of the one of the plurality of optical fibers.

22. (Currently Amended)  The network termination of claim 14, wherein the transmission quality of the optical signal is an optical power of the optical signal of the one of the plurality of optical fibers.

**<End of Claims Listing>**

## REMARKS

In light of the following remarks, reconsideration of the present application is requested.  Claims 1 and 4-22 are pending in the application. Claims 2 and 3 were previously cancelled.  Claims 1 and 12-14 are independent claims.

## Rejections under 35 U.S.C. §112

Claims 1 and 4-22 stand rejected under 35 USC §112, second paragraph, as being indefinite. This rejection is respectfully traversed.

On page 2 of the March 25, 2010 Office Action, the Examiner alleges that it is unclear what is meant by "wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers" as recited by claim 1 because page 3 of the specification discloses that the "number of signal states depends on the power of the received optical signal."

However, in the Examiner's §112 rejection of the claims the Examiner relies solely on a single embodiment of the invention.  Yet, the specification teaches multiple embodiments, which clearly support the claim limitation.

For example, para. [0012] recites "[a]n increase of the number of signal states, however, represents an increase of the transmission rate. **Therefore, the invention provides an adaptation of the transmission rate depending on the transmission quality of the link**." (emphasis added). Additionally, paras. [0009], [0011], [0035], [0036], [0037] and [0044] of the specification particularly point out, "if the transmission quality of the link proves to be better," "the number of signal states of the optical signal may be adapted based on the transmission quality of the link," and "[a]s a result, the transmission between any one of the network terminations NT1,

NT2, NT3, NT4, NT5 and the optical line termination OLT in the upstream direction is always adapted to the actual quality of the optical signal received by the optical line termination OLT."

Thus, one skilled in the art would understand "transmission quality" as used in the claims is clearly supported.

Therefore, Applicants respectfully request that the rejections of these claims under 35 U.S.C. §112 be withdrawn.

## Claim Rejections - 35 U.S.C. § 103

Claims 1 and 4-22 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Azadet et al. (US 2004/0057733) hereinafter "Azadet", in view of Asashiba et al. (US 2002/0172216) hereinafter "Asashiba".   Applicants respectfully traverse this rejection for the reasons detailed below.

On page 3 of the Office Action dated March 25, 2010, the Examiner alleges that Azdaet in view of Asashiba discloses all the limitations of claim 1 as previously recited. Without conceding to the Examiner's position, Applicants have amended claim 1 as recommended by the Examiner in the February 15, 2010 Examiner's interview.

Amended claim 1 recites, inter alia, "the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the optical signal on the one of the plurality of optical fibers." At least these limitations are not disclosed or rendered obvious in any combination of the cited art.

Azadet discloses a duobinary optical communication system that employs pulse amplitude modulation (PAM) techniques to provide improvements in spectral efficiency. The communication system includes a precoder 115 which includes an XOR gate 110 and a delay element 150. In operation, an input bit is applied to a terminal of

the XOR gate 110 and a previous bit (obtained by a feedback loop including the delay element) is applied to another terminal of the XOR gate 110. The previous output bit is added to the current input bit. The output of the precoder is a two level value (0 or 1) that is applied to an encoder 120 that maps the two level value to a three level value. As explained in paragraph [0014] of Azadet's disclosure, the encoder 120 adds the previous and current bit levels together to produce a three level value (0,1,2).

One page 3 of this Office Action, the Examiner relies on the operations of generating a three level value (0,1,2) for disclosing "wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality of the one of the optical fibers," as previously recited in claim 1.

However, the system disclosed by Azadet **always** generates the three level values regardless of a "a transmission quality of the optical signal on the one of the plurality of optical fibers" as recited by amended claim 1. More so, the three level value of Azadet is based upon the input to the encoder that adds the previous and the current bit levels together to output the three level value. Specifically, the output of the three level value in para. [0014] of Azadet shows that the three level value is **always** three.

Additionally, para. [0015] of Azadet discloses that the three level value (0, 1, 2) correspond to a voltage (-V, 0, +V) which is **then converted** to a corresponding optical signal (-e, 0, +e) and applied to an optical fiber.  Yet, the optical signals in Azadet always correspond in a 1 to 1 fashion to the voltage levels. Thus, the three level value is converted into the optical signal and the optical signal has **no influence on the three level value** as disclosed by Azadet. Therefore, Azadet can not teach "wherein the number of signal states is increased to a number of signal states that is greater than

two **based on a transmission quality of the optical signal** on the one of the plurality of optical fibers" as recited in amended claim 1.

The Examiner has not indicated, nor can the Applicants find any disclosure or suggestion of, "the number of signal states is increased to a number of signal states that is greater than two ***based on a transmission quality of the one of the optical fibers***," as recited in claim 1, in the Asashiba document.  Therefore, even if one skilled in the art did combine Azadet with Asashiba, the combination would not disclose these features. Accordingly, the Applicants submit the Examiner cannot rely on the combination of Azadet and Asashiba to render claim 1 obvious.

For at least the reasons given above, the Applicants respectfully request the rejection of claim 1, and all claims which depend thereon, under 35 U.S.C. § 103 as being obvious over the combination of Azadet and Asashiba be withdrawn.

For somewhat similar reasons, the Applicants respectfully request the rejection of claim 12-14, and all claims which depend thereon, under 35 U.S.C. § 103 as being obvious over the combination of Azadet and Asashiba be withdrawn.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## **CONCLUSION**

Accordingly, in view of the above amendments and remarks, reconsideration of the objections and rejections and allowance of each of the pending claims in connection with the present application is earnestly solicited.

Should there be any outstanding matters that need to be resolved in the present application, the Examiner is respectfully requested to contact Gary D. Yacura at the telephone number of the undersigned below.

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 08-0750 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. §1.17; particularly, extension of time fees.

Respectfully submitted,

HARNESS, DICKEY, & PIERCE, P.L.C.

By _____

Gary D. Yacura, Reg. No. 35,416

P.O. Box 8910
Reston, Virginia 20195
(703) 668-8000

GDY/EGP/mas
905210.1

Page 11

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/390,313 | 03/28/2006 | Heinz-Georg Krimmel | 29250S-000004/US | 2207 |

30594          7590          08/16/2010

HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

| EXAMINER |
|---|
| TRAN, DZUNG D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2613 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/16/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 11/390,313 | KRIMMEL, HEINZ-GEORG |
| | Examiner | Art Unit | |
| | Dzung D. Tran | 2613 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>07 June 2010</u>.
2a)☐ This action is **FINAL**.   2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1 and 4-22</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>1 and 4-22</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.
10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a)☒ All   b)☐ Some * c)☐ None of:
      1.☒ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 08-06)          Office Action Summary          Part of Paper No./Mail Date 20100813

Application/Control Number: 11/390,313                                    Page 2
Art Unit: 2613

## DETAILED ACTION

### *Specification*


### *Claim Rejections - 35 USC § 103*

1.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for

all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described
> as set forth in section 102 of this title, if the differences between the subject matter sought to
> be patented and the prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary skill in the art to which
> said subject matter pertains.  Patentability shall not be negatived by the manner in which the
> invention was made.

2.      Claims 1, 4-22 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Faulkner US Patent no. 5,062,152 in view of Elbers et al. US Publication no.

2003/0011835.

        Regarding claim 1, Faulkner discloses in figure 3, a method of operating a

passive optical network comprising an optical line termination 1 being connected

via a plurality of optical fiber to a plurality of network terminations 2 and

comprising the step of generating an optical signal for transmission over one of

the plurality of optical fibers, the optical signal comprising a number of signal

states that is two and that corresponding to one binary digit, wherein the number

of signal states is increasing to a number of signal states that is greater than two

based on the power (col. 1, lines 36-line 67; for example the codeword for the

least power is all zeros, 0000 0000 and  for the most power is all one 1111

1111).

Application/Control Number: 11/390,313                                          Page 3
Art Unit: 2613

Faulkner does not specifically disclose wherein the number of signal states is based on a transmission quality of the optical signal on the one of the plurality fiber.

Elbers discloses a well known method for determining signal quality in optical transmission system based on the amplitude or power (paragraphs 0029, 0031).

At the time of the invention was made, it would have been obvious to an artisan to include the teaching of Elbers in the system of Faulker.  One of ordinary skill in the art would have been motivated to do that in order to determine signal quality on each fiber of the plurality fibers.

Regarding claim 4, Elbers discloses the transmission quality is an optical power of the optical signal (paragraphs 0029, 0031).

Regarding claim 5, Elbers discloses the number of signal states depends on an error rate/ratio and/or an eye opening of the optical signal (paragraphs 0028, 0056).

Regarding claims 6 and 7, Faulkner discloses the signal for return transmission is encoded using a power coding scheme in a TDMA (col. 4, lines 4-30) wherein TDMA transmission method is well known in the art that the optical signal corresponds to a specific frame and the frame corresponds to one of the network terminations.

Regarding claims 8 and 9, Faulkner discloses for an upstream direction and/or for a downstream direction, the number of signal states is forwarded to at least one of the network terminations (Figure 3, col. 4, lines 4-30).

Application/Control Number: 11/390,313                                        Page 4
Art Unit: 2613

Regarding claims 10 and 11, Faulkner discloses an optical power of the optical signal received at the optical line termination is evaluated for a specific frame, wherein the number of signal states is defined based on the evaluated optical power, and wherein the defined number of signal states is assigned to that network termination from which the received frame was sent (col. 4, lines 4-30 discloses wherein TDMA transmission method is well known in the art that the optical signal corresponds to a specific frame and the frame corresponds to one of the network terminations).

Regarding claims 12-14, Faulkner discloses in figure 3, an optical network comprising a node for generating an optical signal at the node for transmission over one of the optical fibers, the optical signal comprising a number of signal states that is two and that corresponding to one binary digit, wherein the number of signal states is increasing to a number of signal states that is greater than two based on the power (col. 1, lines 36-line 67; for example the codeword for the least power is all zeros, 0000 0000 and  for the most power is all one 1111 1111).

Faulkner does not specifically disclose wherein the number of signal states is based on a transmission quality of the optical signal on the one of the plurality fiber.

Elbers discloses a well known method for determining signal quality in optical transmission system based on the amplitude or power (paragraphs 0029, 0031; i.e., the transmission quality is an optical power or amplitude).

Application/Control Number: 11/390,313                                      Page 5
Art Unit: 2613

At the time of the invention was made, it would have been obvious to an artisan to include the teaching of Elbers in the system of Faulker.  One of ordinary skill in the art would have been motivated to do that in order to determine signal quality on each fiber of the plurality fibers.

Regarding claims 15-16, 19 and 21, Faulkner discloses wherein the number of signal states is decreased based on the transmission quality of the optical signal (col. 1, lines 36-line 67; for example the codeword for the least power is all zeros, 0000 0000 and  for the most power is all one 1111 1111).

Regarding claims 17, 20 and 22, Elbers discloses the transmission quality is an optical power of the optical signal (paragraphs 0029, 0031; i.e., the transmission quality is an optical power or amplitude).

Regarding claim 18, Elbers discloses the number of signal states depends on an error rate/ratio and/or an eye opening of the optical signal (paragraphs 0028, 0056).

### *Response to Arguments*

3.      Applicant's arguments with respect to claims 1, 4-22 have been considered but are moot in view of the new ground(s) of rejection.

### Conclusion

Application/Control Number: 11/390,313                                          Page 6
Art Unit: 2613

4.      Any inquiry concerning this communication or earlier communications from

the examiner should be directed to Dzung D Tran whose telephone number is

(571) 272-3025. The examiner can normally be reached on 9:00 AM - 7:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the

examiner's supervisor, Vanderpuye Kenneth, can be reached on (571) 272-3078.

The fax phone number for

the organization where this application or proceeding is assigned is 703-872-

9306.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR

only.

For more information about the PAIR system, see http://pair-direct.uspto.gov.

Should you have questions on access to the Private PAIR system, contact the

Electronic Business Center (EBC) at 866-217-9197 (toll-free).


Dzung Tran

08/13/2010

/Dzung D Tran/

Primary Examiner, Art Unit 2613

Application/Control Number: 11/390,313                                                Page 7

Art Unit: 2613

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11/390,313 | KRIMMEL, HEINZ-GEORG |
| | Examiner | Art Unit | |
| | Dzung D. Tran | 2613 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,062,152 | 10-1991 | Faulkner, David W. | 398/190 |
| * | B | US-2003/0011835 | 01-2003 | Elbers et al. | 359/110 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

PATENT

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Application No.: | 11/390,313 |
| Filing Date: | March 28, 2006 |
| Applicant: | Heinz-George KRIMMEL |
| Title: | A METHOD OF OPERATING A PASSIVE OPTICAL NETWORK |
| Attorney Docket: | 29250S-000004/US |

| | |
|---|---|
| Group Art Unit: | 2613 |
| Examiner: | Dzung D. Tran |

Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, VA 22314
**Mail Stop Amendment**

September 13, 2010

## Amendment under 37 C.F.R. §1.111

Sir:

In response to the Office Action dated August 16, 2010, the following remarks are respectfully submitted in connection with the above-identified application.

**Amendments to the Claims** begin on page 2 of this Amendment.

**Remarks** begin on page 7 of this Amendment.

| | Claims remaining after Amendment | | Highest number previously paid for | | Present extra |
|---|---|---|---|---|---|
| **Total** | 20 | - | 20 | = | 0 |
| **Independent** | 4 | - | 4 | = | 0 |

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## AMENDMENTS TO THE CLAIMS

The following is a complete, marked up listing of revised claims with a status identifier in parentheses, underlined text indicating insertions, and strikethrough and/or double-bracketed text indicating deletions.

1. (Currently Amended) A method of operating a passive optical network comprising an optical line termination being connected via a plurality of optical fibers to a plurality of network terminations and comprising the step of generating an optical signal for transmission over one of the plurality of optical fibers, ~~the optical signal including a number of signal states that is two and that correspond to one binary digit,~~ the optical signal including a plurality of signal states, each signal state corresponding to a different sequence of bits, wherein the ~~number~~ plurality of signal states and the number of bits in each sequence are ~~is~~ increased ~~to a number of signal states that is greater than two~~ based on a transmission quality of the optical signal on the one of the plurality of optical fibers.

2. - 3. (Cancelled)

4. (Previously Presented)  The method of claim 1, wherein the transmission quality of the optical signal is an optical power of the optical signal of the one of the plurality of optical fibers.

5. (Previously Presented)  The method of claim 1, wherein the transmission quality of the optical signal is at least one of an error rate, error ratio and an eye opening of the

Page 2

Application No.11/390,313
Attorney Docket No.29250S-000004/US

optical signal of the one of the plurality of optical fibers.

6. (Previously Presented)  The method of claim 1, wherein the optical signal corresponds to a specific frame.

7. (Previously Presented)  The method of claim 6, wherein the specific frame corresponds to one of the network terminations.

8. (Currently Amended)  The method of claim 1, wherein for at least one of an upstream direction and downstream direction, the plurality ~~number~~ of signal states is forwarded to at least one of the network terminations.

9. (Currently Amended)  The method of claim 1, wherein for at least one of an upstream direction and downstream direction, the plurality ~~number~~ of signal states is defined for any one of the network terminations.

10. (Currently Amended)  The method of claim 1, wherein an optical power of the optical signal of the one of the plurality of optical fibers is evaluated for a specific frame, wherein the plurality ~~number~~ of signal states is defined based on the evaluated optical power, and wherein the defined plurality ~~number~~ of signal states is assigned to that network termination from which the received frame was sent.

11. (Previously Presented)  The method of claim 10, wherein a network termination from which the received frame was sent, is informed about the defined plurality

Page 3

~~number~~ of signal states.

12. (Currently Amended)  A passive optical network comprising an optical line termination being connected via  a plurality of optical fibers to a plurality of network terminations wherein the optical line termination is configured to generate an ~~optical signal including a number of signal states that is two and that correspond to one binary digit~~ optical signal including a plurality of signal states, each signal state corresponding to a different sequence of bits, wherein the ~~number~~ plurality of signal states and the number of bits in each sequence are ~~is~~ increased ~~to a number of signal states that is greater than two~~ based on a transmission quality of the optical signal of the one of the plurality of optical fibers.

13. (Currently Amended)  An optical line termination being part of a passive optical network comprising said optical line termination being connected via a plurality of optical fibers to a plurality of network terminations wherein the optical line termination is configured to generate an ~~optical signal including a number of signal states that is two and that correspond to one binary digit~~ optical signal including a plurality of signal states, each signal state corresponding to a different sequence of bits, wherein the ~~number~~ plurality of signal states and the number of bits in each sequence are ~~is~~ increased ~~to a number of signal states that is greater than two~~ based on a transmission quality of the optical signal of the one of the plurality of optical fibers.

14. (Currently Amended)  A network termination being part of a passive optical network comprising an optical line termination being connected via a plurality of

optical fibers to a plurality of network terminations wherein the network termination is configured to receive an ~~optical signal including a number of signal states that is two and that correspond to one binary digit~~ optical signal including a plurality of signal states, each signal state corresponding to a different sequence of bits, wherein the plurality ~~number~~ of signal states and the number of bits in each sequence are ~~is~~ increased to a number of signal states that is greater than two based on a transmission quality of the optical signal of the one of the plurality of optical fibers.

15. (Currently Amended)  The method of claim 1, wherein the plurality ~~number~~ of signal states is decreased based on the transmission quality of the optical signal of the one of the plurality of optical fibers.

16.  (Currently Amended)  The passive optical network of claim 12, wherein the plurality ~~number~~ of signal states is decreased based on the transmission quality of the optical signal of the one of the plurality of optical fibers.

17. (Previously Presented)  The passive optical network of claim 12, wherein the transmission quality of the optical signal is an optical power of the optical signal of the one of the plurality of optical fibers.

18. (Previously Presented)  The passive optical network of claim 12, wherein the transmission quality of the optical signal is at least one of an error rate, error ratio and an eye opening of the optical signal of the one of the plurality of optical fibers.

Page 5

19. (Currently Amended)  The optical line termination of claim 13, wherein the ~~number~~ plurality of signal states is decreased based on the transmission quality of the optical signal of the one of the plurality of optical fibers.

20. (Previously Presented)  The optical line termination of claim 13, wherein the transmission quality of the optical signal is an optical power of the optical signal of the one of the plurality of optical fibers.

21. (Previously Presented)  The network termination of claim 14, wherein the ~~number~~ plurality of signal states is decreased based on the transmission quality of the optical signal of the one of the plurality of optical fibers.

22. (Previously Presented)  The network termination of claim 14, wherein the transmission quality of the optical signal is an optical power of the optical signal of the one of the plurality of optical fibers.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## REMARKS

In light of the following remarks, reconsideration of the present application is requested.  Claims 1 and 4-22 are pending in the application.  Claims 1 and 12-14 are independent claims.

## Claim Rejections - 35 U.S.C. § 103

Claims 1 and 4-22 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Faulkner (U.S. 4,062,152) hereinafter "Faulkner", in view of Elbers (U.S. 2003/0011835) hereinafter "Elbers."  Applicants respectfully traverse this rejection for the reasons detailed below.

On page 2 of the Office Action dated August 16, 2010, the Examiner alleges that col. 1, lines 36-67 of Faulkner discloses "the optical signal including a number of signal states that is two and that correspond to one binary digit, wherein the number of signal states is increased to a number of signal states that is greater than two based on a transmission quality" as previously recited in claim 1.

To expedite prosecution and without conceding to the Examiner's positions, Applicants have amended claim 1 to recite, inter alia, "wherein the plurality of signal states **and the number of bits in each sequence** are increased based on a transmission quality of the optical signal" as recited amended claim 1.

Faulkner discloses a system that minimizes the power required to transmit signals in an optical network using binary code words. The binary code words in Faulkner quantize the probability of transmission power levels. Specifically, col. 1, lines 45-48 of Faulkner recite "[t]he codeword which consumes the least power is all zeros, 0000 0000, **in 8-bit coding**, and that which consumes the most power is all ones, 1111 1111."

Page 7

Therefore, because the system in Faulkner **maintains an 8-bit coding**, Faulkner does not disclose "wherein the plurality of signal states **and the number of bits in each sequence** are increased based on a transmission quality of the optical signal" as recited amended claim 1.

Additionally, the Examiner does not rely on, nor does Elbers teach the above mentioned elements of claim 1. Thus, Elbers fails to overcome the deficiencies as discussed above regarding Faulkner and claim 1. Therefore, the combination of the cited art can not disclose or render obvious each and every element of claim 1. Applicants submit that claims 12-14 are allowable at least for somewhat similar reasons as claim 1 and on their own merits. Applicants additionally submit that claims 4-11 and 15-22 are allowable at least for depending on allowable base claims.

In view of the above, Applicants respectfully request this rejection of the claims under 35 U.S.C. § 103 as being obvious over the combination of the cited art be withdrawn.

Application No.11/390,313
Attorney Docket No.29250S-000004/US

## CONCLUSION

Accordingly, in view of the above amendments and remarks, reconsideration of the objections and rejections and allowance of each of the pending claims in connection with the present application is earnestly solicited.

Should there be any outstanding matters that need to be resolved in the present application, the Examiner is respectfully requested to contact Gary D. Yacura at the telephone number of the undersigned below.

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 08-0750 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. §1.17; particularly, extension of time fees.

Respectfully submitted,

HARNESS, DICKEY, & PIERCE, P.L.C.

By _____

Gary D. Yacura, Reg. No. 35,416

P.O. Box 8910
Reston, Virginia 20195
(703) 668-8000

GDY/EGP:mk
996769.1

Page 9



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

30594          7590          12/09/2010

HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

| EXAMINER |
|---|
| TRAN, DZUNG D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2613 | |

DATE MAILED: 12/09/2010

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/390,313 | 03/28/2006 | Heinz-Georg Krimmel | 29250S-000004/US | 2207 |

TITLE OF INVENTION: METHOD OF OPERATING A PASSIVE OPTICAL NETWORK

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 03/09/2011 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

## HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

**PART B - FEES TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to: <u>Mail</u>**

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**or <u>Fax</u>  (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| | | |
|---|---|---|
| 30594 | 7590 | 12/09/2010 |

HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/390,313 | 03/28/2006 | Heinz-Georg Krimmel | 29250S-000004/US | 2207 |

TITLE OF INVENTION: METHOD OF OPERATING A PASSIVE OPTICAL NETWORK

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 03/09/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TRAN, DZUNG D | 2613 | 398-063000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
  ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
  ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02  or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11.  Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:
  ☐ Issue Fee
  ☐ Publication Fee (No small entity discount permitted)
  ☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
  ☐ A check is enclosed.
  ☐ Payment by credit card. Form PTO-2038  is attached.
  ☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
  ☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
  ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/390,313 | 03/28/2006 | Heinz-Georg Krimmel | 29250S-000004/US | 2207 |

30594        7590        12/09/2010

HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

| EXAMINER |
|---|
| TRAN, DZUNG D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2613 | |

DATE MAILED: 12/09/2010

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 532 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 532 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 11/390,313 | KRIMMEL, HEINZ-GEORG | |
| | Examiner | Art Unit | |
| | Dzung D. Tran | 2613 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *09/13/2010*.

2. ☒ The allowed claim(s) is/are *1 and 4-22*.

3. ☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☒ All  b) ☐ Some*  c) ☐ None  of the:

       1. ☒ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

       1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .
7. ☐ Examiner's Amendment/Comment
8. ☐ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

/Dzung D Tran/
Primary Examiner, Art Unit 2613