# EXHIBIT K

PTO/AIA/15 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

| UTILITY PATENT APPLICATION TRANSMITTAL | | |
|---|---|---|
| | Attorney Docket No. | 811781-US-NP |
| | First Named Inventor | Jeffrey L. Zwiebel |
| | Title | APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS C... |
| *(Only for new nonprovisional applications under 37 CFR 1.53(b))* | Express Mail Label No. | Via EFS /Carolyn Firestone/ |

| APPLICATION ELEMENTS | ADDRESS TO: | Commissioner for Patents |
|---|---|---|
| *See MPEP chapter 600 concerning utility patent application contents.* | | P.O. Box 1450 |
| | | Alexandria, VA 22313-1450 |

| APPLICATION ELEMENTS | ACCOMPANYING APPLICATION PAPERS |
|---|---|
| 1. ☐ **Fee Transmittal Form** (PTO/SB/17 or equivalent) | 10. ☐ **Assignment Papers** (cover sheet & document(s)) Name of Assignee _____ |
| 2. ☐ **Applicant asserts small entity status.** See 37 CFR 1.27 | |
| 3. ☐ **Applicant certifies micro entity status.** See 37 CFR 1.29. Applicant must attach form PTO/SB/15A or B or equivalent. | 11. ☑ **37 CFR 3.73(c) Statement** (when there is an assignee)   ☑ **Power of Attorney** |
| 4. ☑ **Specification**   [Total Pages 26] Both the claims and abstract must start on a new page. (See MPEP § 608.01(a) for information on the preferred arrangement) | 12. ☐ **English Translation Document** (if applicable) |
| 5. ☑ **Drawing(s)** (35 U.S.C. 113)   [Total Sheets 6] | 13. ☑ **Information Disclosure Statement** (PTO/SB/08 or PTO-1449) ☐ Copies of citations attached |
| 6. **Inventor's Oath or Declaration**   [Total Pages 2] (including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e)) | |
| a. ☑ Newly executed (original or copy) | 14. ☐ **Preliminary Amendment** |
| b. ☐ A copy from a prior application (37 CFR 1.63(d)) | 15. ☐ **Return Receipt Postcard** (MPEP § 503) (Should be specifically itemized) |
| 7. ☑ **Application Data Sheet** * See note below. See 37 CFR 1.76 (PTO/AIA/14 or equivalent) | 16. ☐ **Certified Copy of Priority Document(s)** (if foreign priority is claimed) |
| 8. ☐ **CD-ROM or CD-R** in duplicate, large table, or Computer Program (Appendix) | 17. ☐ **Nonpublication Request** Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent. |
| ☐ Landscape Table on CD | 18. ☐ **Other:** _____ |
| 9. **Nucleotide and/or Amino Acid Sequence Submission** (If applicable, items a. – c. are required) | _____ |
| a. ☐ Computer Readable Form (CRF) | _____ |
| b. ☐ Specification Sequence Listing on: | _____ |
| i. ☐ CD-ROM or CD-R (2 copies); or | _____ |
| ii. ☐ Paper | |
| c. ☐ Statements verifying identity of above copies | |

***Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

| **19. CORRESPONDENCE ADDRESS** | | | | | |
|---|---|---|---|---|---|
| ☑ The address associated with Customer Number: 47394 | | | OR ☐ Correspondence address below | | |
| Name | | | | | |
| Address | | | | | |
| City | | State | | Zip Code | |
| Country | | Telephone | | Email | |
| Signature | */DHH/* | | Date | 2013-12-16 | |
| Name (Print/Type) | David H. Hitt | | Registration No. (Attorney/Agent) | 33182 | |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/14 (11-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 811781-US-NP |
|---|---|---|
| | Application Number | |

| Title of Invention | APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor    1**    [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Jeffrey | L. | Zwiebel | |

**Residence Information (Select One)**  ⦿ US Residency   ◯ Non US Residency   ◯ Active US Military Service

| City | Plano | State/Province | TX | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 3400 West Plano Parkway | | |
|---|---|---|---|
| Address 2 | | | |
| City | Plano | State/Province | TX |
| Postal Code | 75075 | Country i | US |

**Inventor    2**    [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Andrea | | Galbiati | |

**Residence Information (Select One)**  ◯ US Residency   ⦿ Non US Residency   ◯ Active US Military Service

| City | Vimercate | Country of Residence i | | IT |
|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | Via Trento 30 | | |
|---|---|---|---|
| Address 2 | | | |
| City | Vimercate | State/Province | |
| Postal Code | | Country i | IT |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    [Add]

## Correspondence Information:

PTO/AIA/14 (11-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 811781-US-NP |
| | Application Number | |
| Title of Invention | APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR | |

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐  **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 47394 |
| Email Address | | [Add Email] [Remove Email] |

## Application Information:

| Title of the Invention | APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR | |
| Attorney Docket Number | 811781-US-NP | **Small Entity Status Claimed** ☐ |
| Application Type | Nonprovisional | |
| Subject Matter | Utility | |
| Total Number of Drawing Sheets (if any) | 6 | **Suggested Figure for Publication (if any)** |

## Publication Information:

☐  Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐  **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify  that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a  multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ◉  Customer Number | ◯  US Patent Practitioner | ◯  Limited Recognition (37 CFR 11.9) |
| Customer Number | 47394 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application.  Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the application number blank.

| Prior Application Status | | | [Remove] | |
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | | | |

EFS Web 2.2.9

PTO/AIA/14 (11-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 811781-US-NP |
|---|---|---|
| | Application Number | |

| Title of Invention | APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR |
|---|---|

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(d). When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(h)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

## Authorization to Permit Access:

☐ Authorization to Permit Access to the Instant Application by the Participating Offices

PTO/AIA/14 (11-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | 811781-US-NP |
| | **Application Number** | |

| Title of Invention | APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR |

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO), and any other intellectual property offices in which a foreign application claiming priority to the instant patent application is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is sought in the instant patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date o f filing this Authorization.

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant   1**

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

( • ) Assignee        ( ) Legal Representative under  35 U.S.C. 117        ( ) Joint Inventor

( ) Person to whom the inventor is obligated to assign.        ( ) Person who shows sufficient proprietary interest

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| Name of the Deceased or Legally Incapacitated Inventor : | |

| If the Applicant is an Organization check here. | ☒ |

| Organization Name | Alcatel-Lucent USA, Inc. |

**Mailing Address Information For Applicant:**

| **Address 1** | 600-700 Mountain Avenue |
| Address 2 | |
| **City** | Murrray Hill | **State/Province** | NJ |
| **Country**ʲ | US | Postal Code | 07974 |
| Phone Number | | Fax Number | |

PTO/AIA/14 (11-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 811781-US-NP |
|---|---|---|
| | Application Number | |

| Title of Invention | APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR |
|---|---|

| Email Address | |
|---|---|

Additional Applicant Data may be generated within this form by selecting the Add button.

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not subsitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

### Assignee   1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication . An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☐ |
|---|---|

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| City | | State/Province | |
|---|---|---|---|
| Country ⁱ | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

# Signature:

NOTE:  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4 for signature requirements and certifications.

| Signature | /DAVID H. HITT/ | | | Date  (YYYY-MM-DD) | 2013-12-16 |
|---|---|---|---|---|---|
| First Name | David H. | Last Name | Hitt | Registration Number | 33182 |

Additional Signature may be generated within this form by selecting the Add button.

PTO/AIA/14 (11-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 811781-US-NP |
| --- | --- | --- |
| | Application Number | |

| Title of Invention | APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR |
| --- | --- |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.     The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.     A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.     A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.     A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.     A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent C o o p eration Treaty.

6.     A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.     A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.     A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.     A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.



FIG. 1

811781-US-NP
1/6



FIG. 2

811781-US-NP
2/6



FIG. 3

811781-US-NP
3/6



FIG. 6

811781-US-NP
4/6



FIG. 4





FIG. 5

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | |
| Filing Date | 2013-12-16 | |
| First Named Inventor | Jeffrey L. Zwiebel | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket Number | 811781-US-NP | |

### U.S. PATENTS

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 5056119 | | 1991-10-08 | Sakalian, et al. | |
| | 2 | 5602880 | A | 1997-02-11 | Webster, et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.

### U.S. PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

### FOREIGN PATENT DOCUMENTS

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

### NON-PATENT LITERATURE DOCUMENTS

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT<br>( Not for submission under 37 CFR 1.99) | Application Number | |
| | Filing Date | 2013-12-16 |
| | First Named Inventor | Jeffrey L. Zwiebel |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 811781-US-NP |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

| **EXAMINER SIGNATURE** | | | |
|---|---|---|---|
| Examiner Signature | | Date Considered | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | |
| --- | --- | --- |
| | Filing Date | 2013-12-16 |
| | First Named Inventor | Jeffrey L. Zwiebel |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 811781-US-NP |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

 A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /David H. Hitt/ | Date (YYYY-MM-DD) | 2013-12-16 |
| --- | --- | --- | --- |
| Name/Print | David H. Hitt | Registration Number | 33182 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

DOCKET NO. 811781-US-NP                    PATENT APPLICATION

## APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR

Inventors:        Jeffrey L. Zwiebel
                  3400 West Plano Parkway
                  Plano, Texas  75075
                  County: Collin
                  Citizenship: USA

                  Andrea Galbiati
                  Via Trento 30
                  Vimercate, Italy
                  Citizenship: Italy


Assignee:         Alcatel-Lucent USA, Incorporated
                  600-700 Mountain Avenue
                  Murray Hill, New Jersey  07974

ELECTRONIC FILING CERTIFICATE

I hereby certify that this correspondence, including the attachments listed, is being electronically filed with the USPTO on the date shown below.

**DEC 16, 2013**          **CAROLYN FIRESTONE**
Date of Filing                  Name of person filing


**_/CAROLYN FIRESTONE/_**
Signature of person filing

Hitt Gaines, P.C.
P.O. Box 832570
Richardson, Texas  75083-2570
(972) 480-8800

# APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR

## TECHNICAL FIELD

**[0001]** This application is directed, in general, to microelectronics and telecommunication systems.

## BACKGROUND

**[0002]** In microelectronics and telecommunication systems, two or more separate asynchronous clock signals are often required. For example, in a telecommunication system, a module may generate a first clock signal that is synchronized to an external network clock and a second clock signal that is not synchronized (*i.e.* free-run) to the external network clock. If multiple modules require a free-run clock signal, it may be necessary to add a crystal oscillator clock to each module. Since crystal oscillator clocks are generally expensive, adding a crystal oscillator to each module may increase the total cost of a system. Other examples include a need for modules to use common clocks or for RAN sharing scenarios in which a single module typically receives two or more clock signals generated by two or more external networks sharing the same installation.

**[0003]** To avoid requiring each module to have its own crystal oscillator clock, a dedicated conductor (which may take the form of a wire, line, trace or via) may be used to transfer each clock signal from a core module to one or more peripheral

-1-

modules. For example, a master CPU module may provide a synchronized clock signal and a free-run clock signal. A first conductor may be used to transfer the synchronized clock signal from the master CPU module to the peripheral modules and a second conductor may be used transfer the free-run clock signal from the master CPU module to the peripheral modules. However, two dedicated conductors may not always be available to transfer two clock signals. If only one conductor is available, both clock signals may not be available at all times in the peripheral modules. In such cases, one of the two clock signals may be selected at each module based on configuration parameters, and the selected clock signal may be transferred to the peripheral module.

**SUMMARY**

[0004]   Various disclosed embodiments are directed to methods and systems for transferring two clock signals over a single conductor. The method includes generating, at a first module, first and second input clock signals. The method includes detecting, at the first module, a rising edge of the first input clock signal, and in response generating a first enable signal. The method includes detecting, at the first module, a rising edge of the second input clock signal, and in response generating a second enable signal. The method includes inserting

a guard time between the first and the second enable signals to prevent overlap of the first and second enable signals.

**[0005]**    The method includes generating, at the first module, a reference clock signal responsive to the first and second enable signals. The reference clock signal is representative of the first and second enable signals.

**[0006]**    Certain embodiments include receiving by a second module over the single conductor the reference clock signal. The method includes detecting, at the second module, rising and falling edges of the reference clock signal, and in response generating respective third and fourth enable signals. The method includes generating, at the second module, a first output clock signal by tracking the third enable signal. The method includes generating, at the second module, a second output clock signal by tracking and integrating the fourth enable signal. The first and second output clock signals are representative of the respective first and second input clock signals.

**[0007]**    According to various disclosed embodiments, the first input clock signal is synchronized with a network clock, and the second input clock signal is a free-run clock signal or a second network clock if required by a specific application (*e.g.*, RAN sharing). The first module may be a central processor unit (CPU) module, and the second module may be a peripheral module.

[0008]    According to various disclosed embodiments, the method includes generating an unadjusted first enable signal responsive to the first input clock signal, and dividing the unadjusted first enable signal by a first predetermined factor to generate the first enable signal. The method includes receiving, by a dual clock generator, the first and second enable signals, and generating, by the dual clock generator, the reference clock signal responsive to the first and second enable signals.

[0009]    According to various disclosed embodiments, a system for transfer of two clock signals over a single conductor includes first and second modules connected by a single conductor. The first module includes first and second clocks operable to generate first and second input clock signals, respectively. The first and second input clock signals are asynchronous in relation to one another.

[0010]    The first module includes a first edge detector configured to receive the first input clock signal. The first edge detector operable to detect a rising edge of the first input clock signal and to generate a first enable signal. The first module includes a second edge detector configured to receive the second input clock signal. The second edge detector is operable to detect the rising edge of the second input clock signal and to generate a second enable signal.

-4-

[0011]    The   first   module   may   include   a   first   divider configured   to   receive   the   first   enable   signal   and   operable   to generate   a   first   adjusted   enable   signal   based   on   a   first predetermined   factor.   The   first   module   may   include   a   dual   clock generator   configured   to   receive   the   first   adjusted   enable   signal and   the   second   enable   signal,   and   in   response   operable   to generate a reference clock signal.

[0012]    According   to   various   disclosed   embodiments,   the   second module   includes   a   third   edge   detector   configured   to   receive   the reference   clock   signal   via   the   single   conductor.   The   third   edge detector   is   operable   to   detect   the   rising   edge   of   the   reference clock   signal   and   to   generate   a   third   enable   signal.   The   second module   includes   a   fourth   edge   detector   configured   to   receive   the reference   clock   signal   via   the   single   conductor.   The   fourth   edge detector   is   operable   to   detect   the   falling   edge   of   the   reference clock   signal   and   to   generate   a   fourth   enable   signal.   The   second module   includes   a   first   oscillator   configured   to   receive   the third   enable   signal   and   operable   to   phase-track   the   third   enable signal   to   generate   a   first   output   clock   signal.   The   second module   includes   a   numerically   controlled   oscillator   configured to   receive   the   fourth   enable   signal   and   operable   to   adjust   the fourth   enable   signal   to   generate   a   fifth   enable   signal.   The second   module   includes   a   second   oscillator   configured   to   receive

the fifth enable signal and operable to generate a second output clock signal based on a second predetermined factor.

[0013]     According to various disclosed embodiments, a system is configured to transmit two asynchronous clock signals over a single conductor. The system comprises a first module including first and second clocks operable to generate first and second input clock signals, respectively, wherein the first and second input clock signals are asynchronous in relation to one another. The first module includes a first edge detector configured to receive the first input clock signal and operable to detect a rising edge of the first input clock signal and to generate a first enable signal. The first module includes a second edge detector configured to receive the second input clock signal and operable to detect the rising edge of the second input clock signal and to generate a second enable signal. The first module includes a first divider configured to receive the first enable signal and operable to generate a first adjusted enable signal based on a first predetermined factor. The first module includes a dual clock generator configured to receive the first adjusted enable signal and the second enable signal, and in response operable to generate a reference clock signal, wherein the reference clock signal is transmitted over the single conductor.

[0014]     According to various disclosed embodiments, the system comprises a second module including a first edge detector

–6–

configured to receive the reference clock signal over the single conductor and operable to detect a rising edge of the reference clock signal and to generate a first enable signal. The second module includes a second edge detector configured to receive the reference clock signal via the single conductor and operable to detect a falling edge of the reference clock signal and to generate a fourth enable signal. The second module includes a first controlled oscillator configured to receive the first enable signal and operable to track the first enable signal to generate a first output clock signal. The second module includes an integer controlled oscillator configured to receive the second enable signal and operable to generate a third enable signal that compensates the rate of the second enable signal. The second module includes a second controlled oscillator configured to receive the third enable signal and operable to track the third enable signal to generate a second output clock signal.

**BRIEF DESCRIPTION**

[0015]   Reference is now made to the following descriptions taken in conjunction with the accompanying drawings, in which:

[0016]   FIG. 1 illustrates a block diagram of a system in which disclosed embodiments can be implemented;

**[0017]**     FIG. 2 illustrates a block diagram of a dual reference clock generator according to various disclosed embodiments;

**[0018]**     FIG. 3 illustrates a block diagram of a clock recovery unit according to various disclosed embodiments;

**[0019]**     FIG. 4 illustrates exemplary waveforms in a reference clock generator;

**[0020]**     FIG. 5 illustrates exemplary waveforms in a clock recovery unit; and

**[0021]**     FIG. 6 is a flowchart of a method according to various disclosed embodiments.

**DETAILED DESCRIPTION**

**[0022]**     FIGS. 1-6, discussed below, and the various embodiments used to describe the principles of the present disclosure are by way of illustration only and should not be construed in any way to limit the scope of the disclosure. Those skilled in the art will recognize that the principles of the disclosure may be implemented in any suitably arranged device or a system. The numerous innovative teachings of the present disclosure will be described with reference to exemplary non-limiting embodiments.

**[0023]**     Various disclosed embodiments include systems and methods for transferring two clock signals from a first module to a second module over a single conductor. The disclosed

embodiments may be implemented in a telecommunication system, for example, where a first module may provide a first clock signal that is synchronized to an external network clock and may also provide a second clock signal that is not synchronized to the external network clock (*i.e.* free-run clock signal or a network clock from a different external network). The first module may, for example, be a central processor unit (CPU) module and the second module may be a peripheral module.

[0024]    According to disclosed embodiments, rising and falling edges of a reference signal are used to transfer the first and second clock signals between two modules over a single conductor. By allowing transfer of two clock signals over a single conductor, the disclosed embodiments eliminate the need to provide separate crystal oscillators in each module or to provide dedicated conductors for the transmission of two clock signals.

[0025]    FIG. 1 depicts a block diagram of system 100 in which the disclosed embodiments can be implemented, for example, as a system particularly configured for transferring two clock signals over a single conductor. The disclosed embodiments may be implemented in a telecommunication system where module 110 transmits two asynchronous clock signals to module 120 over conductor 130. Module 110 may be a CPU module and module 120 may be a peripheral module. Although, FIG 1 illustrates transfer of

-9-

two clock signals between only two modules, the disclosed embodiments can be implemented for transferring two clock signals among three or more modules.

[0026]    Referring again to FIG. 1, module 110 includes clocks 102 and 104 which generate clock signals 106 and 108, respectively. Clock signal 106 may be synchronized to an external network clock while clock signal 108 may not be synchronized to the external network clock (*i.e.* free-run clock signal or synchronized to a different external network). Thus, clock signals 106 and 108 are asynchronous with respect to one another.

[0027]    According to various disclosed embodiments, system 100 includes dual reference clock generator 112 configured to receive clock signals 106 and 108. Dual reference clock generator 112 detects a rising edge of clock signal 106 and a rising edge of clock signal 108, and in response generates reference clock signal 116 which is transmitted over conductor 130. Dual reference clock generator 112 may be implemented within a field programmable gate array (FPGA). In other embodiments, the falling edges of the clock signals 106 and 108 may be used instead of the rising edges to generate reference clock signal.

[0028]    According to various disclosed embodiments, module 120 receives reference clock signal 116 via conductor 130. Module

120 includes clock recovery unit 122 configured to detect rising and falling edges of reference clock signal 116, and in response generates first and second output clock signals, 124, 126, respectively. First and second output clock signals, 124, 126, are representative of respective first and second input clock signals, 106, 108. Clock recovery unit 122 may be implemented within an FPGA.

[0029]   FIG. 2 illustrates a block diagram of dual reference clock generator 112 according to various disclosed embodiments. Clock generator 112 includes edge detector 202 configured to detect a rising edge of clock signal 106, and in response edge detector 202 generates first enable signal 204.

[0030]   Clock generator 112 also includes edge detector 206 configured to detect a rising edge of clock signal 108, and in response edge detector generates second enable signal 208.

[0031]   Clock generator 112 also includes counter 212 (or divider) configured to receive first enable signal 204. Counter 212 delays first enable signal 204 by a predetermined time period and generates first adjusted enable signal 216.

[0032]   Since first and second clock signals 106, 108, are asynchronous with respect to one another, the two clock signals will overlap periodically. In order to prevent overlapping of the two clock signals, a guard time (*i.e.*, delay) is inserted by clock generator 112 between the two signals to ensure the

-11-

reference signal is stable for an adequate time before and after each rising edge.

[0033]   Referring now to FIG. 2, the insertion of a guard time (*i.e.*, delay) is described. By way of example, counter 212 delays first enable signal 204 to insert a guard time (*e.g.*, 20ns). In addition, enables from edge detector 206 may be suppressed for a predetermined time period after the arrival of the rising edge of the first clock signal 106. It will be appreciated that the guard time (*e.g.*, 20 ns) is selected based on the respective frequencies of the first and second clock signals, and other guard times may be chosen depending on the frequencies of the clock signals.

[0034]   Consider, for example, that the frequency of first clock signal is 25 MHz, and the frequency of the second clock signal is 12.8 MHz. Thus, the frequency of first enable signal, which is generated responsive to the rising edge of the first clock signal, is approximately 25 MHz. According to disclosed embodiments, counter 212 (or divider) converts the frequency of first enable signal 204 to 12.5 MHz. Consequently, first adjusted enable signal 216 and second enable signal 208 have respective frequencies that are approximately close to one another.

[0035]   According to disclosed embodiments, first adjusted enable signal 216 and second enable signal 208 are received by

-12-

reference generator 218. Reference generator 218 generates reference clock signal 116 responsive to first adjusted enable signal 216 (forcing rising edges on reference clock) and second enable signal 208 (forcing falling edges on reference clock). Reference clock signal 116 is transmitted to module 120 over conductor 130.

[0036]   FIG. 3 illustrates a block diagram of clock recovery unit 122 of module 120 according to various disclosed embodiments. Clock recovery unit 122 includes third edge detector 302 configured to receive reference clock signal 116 via conductor 130.  Third edge detector detects the rising edge of reference clock signal 116, and in response generates third enable signal 304. Clock recovery unit 122 includes fourth edge detector 306 configured to receive reference clock signal 116 Fourth edge detector 306 detects the falling edge of reference clock signal 116, and in response generates fourth enable signal 308.

[0037]   Clock recovery unit 122 may include first oscillator 310 configured to receive third enable signal 304. First oscillator 310 tracks the third enable signal and generates first output clock signal 312.

[0038]   Clock recovery unit 122 may include numerically controlled oscillator 314 configured to receive fourth enable signal 308. Numerically controlled oscillator 314 adapts (*i.e.,*

-13-

compensates) fourth enable signal 308 and generates fifth enable signal 316. The adaptation is needed to compensate for the enable signal that was removed or added during the guard time that was enforced by clock generator 112 of module 110.

[0039] Clock recovery unit 122 may also include oscillator 318 configured to receive fifth enable signal 316. Oscillator 318 tracks fifth enable signal 316 and generates second output clock signal 320.

[0040] FIG. 4 illustrates the following waveforms in reference clock generator 112: clock signal 106; first enable signal 204; clock signal 108; second enable signal 208; first adjusted signal 216; and reference clock signal 116.

[0041] FIG. 5 illustrates the following waveforms in clock recovery unit 122: reference clock signal 116; third enable signal 304; fourth enable signal 308; first output clock signal 312; fifth enable signal 316; and second output clock signal 320.

[0042] FIG. 6 is a flowchart of a process according to various disclosed embodiments. Such a process can be performed, for example, by system 100, as described above, but the process can be performed by any apparatus configured to perform a process as described herein.

[0043] In block 604, the first and second input clock signals are generated. In block 608, the first enable signal is

-14-

generated responsive to a detection of a rising edge of the first input clock signal.

[0044]    In block 612, the second enable signal is generated responsive to a detection of a rising edge of the second input clock signal. In block 616, the reference clock signal is generated responsive to the first and second enable signals, wherein the reference clock signal is representative of the first and second enable signals.

[0045]    In block 620, the reference clock signal is transmitted over a single conductor. In block 624, the third enable signal is generated responsive to a detection of a rising edge of the reference clock signal. In block 628, the fourth and fifth enable signals are generated responsive to a detection of a falling edge of the reference clock signal.

[0046]    In block 632, the first output clock signal is generated by tracking the third enable signal. In block 636, the second output clock signal is generated by tracking and integrating the fifth enable signal.

[0047]    Those skilled in the art will recognize that, for simplicity and clarity, the full structure and operation of all systems suitable for use with the present disclosure is not being depicted or described herein. Instead, only so much of a system as is unique to the present disclosure or necessary for an understanding of the present disclosure is depicted and

-15-

described. The remainder of the construction and operation of the disclosed systems may conform to any of the various current implementations and practices known in the art.

**[0048]** Of course, those of skill in the art will recognize that, unless specifically indicated or required by the sequence of operations, certain steps in the processes described above may be omitted, performed concurrently or sequentially, or performed in a different order. Further, no component, element, or process should be considered essential to any specific claimed embodiment, and each of the components, elements, or processes can be combined in still other embodiments.

**[0049]** It is important to note that while the disclosure includes a description in the context of a fully functional system, those skilled in the art will appreciate that at least portions of the mechanism of the present disclosure are capable of being distributed in the form of instructions contained within a machine-usable, computer-usable, or computer-readable medium in any of a variety of forms, and that the present disclosure applies equally regardless of the particular type of instruction or signal bearing medium or storage medium utilized to actually carry out the distribution. Examples of machine usable/readable or computer usable/readable mediums include: nonvolatile, hard-coded type mediums such as read only memories (ROMs) or erasable, electrically programmable read only memories

(EEPROMs), and user-recordable type mediums such as floppy disks, hard disk drives and compact disk read only memories (CD-ROMs) or digital versatile disks (DVDs).

**[0050]** Those skilled in the art to which this application relates will appreciate that other and further additions, deletions, substitutions and modifications may be made to the described embodiments.

**WHAT IS CLAIMED IS:**

1. An apparatus, comprising:

first and second clocks operable to generate first and second input clock signals, respectively, wherein the first and second input clock signals are asynchronous in relation to one another;

a first edge detector configured to receive the first input clock signal, the first edge detector operable to detect a rising edge of the first input clock signal and to generate a first enable signal; and

a second edge detector configured to receive the second input clock signal, the second edge detector operable to detect the rising edge of the second input clock signal and to generate a second enable signal.


2.   The apparatus of claim 1 further comprising:

a first divider configured to receive the first enable signal and operable to generate a first adjusted enable signal based on a first predetermined factor;

a dual clock generator configured to receive the first adjusted enable signal and the second enable signal, and in response operable to generate a reference clock signal and transmit the reference clock signal over a single conductor.

3. The apparatus of claim 1, wherein the first clock signal is synchronized with a network clock.

4. The apparatus of claim 1, wherein the second clock signal is a free-run clock or a second network clock.

5. The apparatus of claim 1, wherein the apparatus is a central processor unit (CPU) module.

6. The apparatus of claim 2, wherein the frequency of the first adjusted enable signal is approximately equal to the frequency of the second enable signal.

7. The apparatus of claim 2, wherein the first divider is configured to insert a guard time between the first and second enable signals to prevent overlap of the first and second enable signals.

8. An apparatus comprising:

a first edge detector configured to receive a reference clock signal via a single conductor, the first edge detector operable to detect a rising edge of the reference clock signal and to generate a first enable signal;

a second edge detector configured to receive the reference clock signal via the single conductor, the second edge detector operable to detect a falling edge of the reference clock signal and to generate a fourth enable signal;

a first controlled oscillator configured to receive the first enable signal and operable to track the first enable signal to generate a first output clock signal;

an integer controlled oscillator configured to receive the second enable signal and operable to generate a third enable signal that compensates the rate of the second enable signal; and

a second controlled oscillator configured to receive the third enable signal and operable to track the third enable signal to generate a second output clock signal.


9. The apparatus of claim 8, wherein the apparatus is a peripheral module.

10.   The  apparatus  of  claim  9,  wherein  the  peripheral module is connected to a CPU module via the single conductor.


11.   The apparatus of claim 10, wherein the reference clock signal is transmitted by a CPU module over the single conductor.

12. A method for transferring two asynchronous clock signals over a single conductor, comprising:

generating, at a first module, first and second input clock signals;

detecting, at the first module, a rising edge of the first input clock signal, and in response generating a first enable signal;

detecting, at the first module, a rising edge of the second input clock signal, and in response generating a second enable signal;

inserting a guard time between the first and the second enable signals to prevent overlap of the first and the second enable signals;

generating, at the first module, a reference clock signal responsive to the first and second enable signals, wherein the reference clock signal is representative of the first and second input clock signals;

receiving, by a second module over the single conductor, the reference clock signal;

detecting, at the second module, rising and falling edges of the reference clock signal, and in response generating third and fourth enable signals, respectively;

generating, at the second module, a first output clock signal by sampling the third enable signal;

-22-

generating, at the second module, a fifth enable signal that compensates the rate of the fourth enable signal;

generating, at the second module, a second sampled output clock signal by sampling the fifth enable signal.

13. The method of claim 12, wherein the first and second output clock signals are synchronized with the first and the second input clock signals, respectively.

14. The method of claim 12, wherein the first input clock signal is synchronized with a network clock.

15. The method of claim 12, wherein the second input clock signal is a free-run clock or a second network clock.

16. The method of claim 12, wherein the first module is a central processor unit (CPU) module.

17. The method of claim 12, wherein the second module is a peripheral module.

18. The method of claim 12, wherein the first and second input clock signals are asynchronous in relation to one another.

19. The method of claim 12, wherein the guard time is inserted by a counter.

20. The method of claim 12, wherein the guard time is inserted by a divider.

# APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR

## ABSTRACT OF THE DISCLOSURE

Methods and systems for transferring two clock signals over a single conductor are disclosed. According to various disclosed embodiments, first and second input clock signals are generated at a first module. The rising and falling edges of a generated reference clock signal are used to transfer the two clock signals from the first module to a second module over the single conductor.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/107,878 | 12/16/2013 | Jeffrey L. Zwiebel | 811781-US-NP | 1715 |

47394        7590        09/03/2015
HITT GAINES, PC
ALCATEL-LUCENT
PO BOX 832570
RICHARDSON, TX 75083

| EXAMINER |
|---|
| JAGER, RYAN C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2842 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/03/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

docket@hittgaines.com

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | **Application No.** 14/107,878 | **Applicant(s)** ZWIEBEL ET AL. | |
|---|---|---|---|
| | **Examiner** RYAN JAGER | **Art Unit** 2842 | **AIA (First Inventor to File) Status** Yes |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on _12/16/13_.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.   2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) _1-20_ is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☒ Claim(s) _12-20_ is/are allowed.

7)☒ Claim(s) _1-11_ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
  a)☐ All   b)☐ Some**  c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _12/16/13_.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

4) ☐ Other: _____.

Application/Control Number: 14/107,878                                    Page 2

Art Unit: 2842

1.      The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA.

## DETAILED ACTION

2.      Non-final action in response to communication filed 12/16/13.

### *Drawings*

3.      The drawings are objected to under 37 CFR 1.83(a).  The drawings must show every

feature of the invention specified in the claims.  Therefore, the first clock synchronized with a

network clock in claim 3, must be shown or the feature(s) canceled from the claim(s).  No new

matter should be entered.

        Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to

the Office action to avoid abandonment of the application. Any amended replacement drawing

sheet should include all of the figures appearing on the immediate prior version of the sheet,

even if only one figure is being amended. The figure or figure number of an amended drawing

should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure

must be removed from the replacement sheet, and where necessary, the remaining figures must

be renumbered and appropriate changes made to the brief description of the several views of the

drawings for consistency. Additional replacement sheets may be necessary to show the

renumbering of the remaining figures. Each drawing sheet submitted after the filing date of an

application must be labeled in the top margin as either "Replacement Sheet" or "New Sheet"

pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner, the applicant will

Application/Control Number: 14/107,878                                      Page 3
Art Unit: 2842

be notified and informed of any required corrective action in the next Office action. The

objection to the drawings will not be held in abeyance.


### Claim Rejections - 35 USC § 112

4.      The following is a quotation of 35 U.S.C. 112(b):

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing
out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the
invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

5.      Claims 8-11 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second

paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject

matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the

invention.

6.      Claim 8 recites the limitation "the second enable signal" in line 14.  There is insufficient

antecedent basis for this limitation in the claim.


7.      Claims 1-11 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second

paragraph, as being incomplete for omitting essential structural cooperative relationships of

elements, such omission amounting to a gap between the necessary structural connections.  See

MPEP § 2172.01.  The omitted structural cooperative relationships are:

In claim 1, the first and second clock and edge detector paths have no connection or co-

operation

Application/Control Number: 14/107,878                                       Page 4
Art Unit: 2842

In claim 8, the integer controlled oscillator and second controlled oscillator have no connection to the rest of the circuit.


### Claim Rejections - 35 USC § 102

8.      In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

9.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.
>
> (a)(2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

10.     Claims 1, 4, are rejected under 35 U.S.C. 102(b)(1) as being anticipated by Baeckler et al. [20140097877].

With respect to claim 1, figure 5 of Baeckler et al. discloses an apparatus, comprising: first and second clocks [output 550's of 540's] operable to generate first and second input clock signals, respectively, wherein the first and second input clock signals are asynchronous in relation to one another; a first edge detector [520] configured to receive the first input clock signal, the first edge detector operable to detect a rising edge of the first input clock signal and to generate a first enable signal

Application/Control Number: 14/107,878                                      Page 5
Art Unit: 2842

[450]; and

a second edge detector [520] configured to receive the second input clock signal, the second edge detector operable to detect the rising edge of the second input clock signal and to generate a second enable signal [460].

With respect to claim 4, figure 5 of Baeckler et al. discloses the apparatus of claim i, wherein the second clock signal is a free-run clock or a second network clock [just names for a clock].

### *Claim Rejections - 35 USC § 103*

11.     In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

12.     The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102 of this title, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not be negated by the manner in which the invention was made.

13.     Claim 5 are rejected under 35 U.S.C. 103 as being unpatentable over Baeckler et al. [20140097877].

With respect to claim 5, figure 5 of Baeckler et al. discloses all limitations of the claim except the apparatus of claim 1, wherein the apparatus is a central processor unit (CPU) module.

Application/Control Number: 14/107,878                                    Page 6
Art Unit: 2842

However, it has been held that a recitation with respect to the manner in which a claimed

apparatus is intended to be employed does not differentiate  the claimed apparatus from a prior

art apparatus satisfying the claimed structural limitations.


With respect to claim 3, the above modification discloses the apparatus of claim 1,

wherein the first clock signal is synchronized with a network clock.


### *Allowable Subject Matter*

14.     Claims 12-20 are allowed.


### *Conclusion*

15.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to RYAN JAGER whose telephone number is (571)272-7016.  The

examiner can normally be reached on M-F, 8:30 am - 5 pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Lincoln Donovan can be reached on (571) 272-1988.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 14/107,878                                      Page 7
Art Unit: 2842

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/RYAN JAGER/
Primary Examiner, Art Unit 2842
6/12/15

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| ***Notice of References Cited*** | | 14/107,878 | ZWIEBEL ET AL. |
| | | Examiner | Art Unit | |
| | | RYAN JAGER | 2842 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,834,979 A | 11-1998 | Yatsuka, Hiroyuki | 331/1R |
| * | B | US-2002/0181360 A1 | 12-2002 | Hamada et al. | 369/47.28 |
| * | C | US-2007/0025489 A1 | 02-2007 | Milton et al. | 375/375 |
| * | D | US-2008/0266001 A1 | 10-2008 | Griffin, Jed | 331/25 |
| * | E | US-2008/0315921 A1 | 12-2008 | CHA et al. | 327/42 |
| * | F | US-2011/0063039 A1 | 03-2011 | Maruko, Kenichi | 331/1.R |
| * | G | US-2011/0055671 A1 | 03-2011 | Kim et al. | 714/800 |
| * | H | US-2011/0156766 A1 | 06-2011 | AHN et al. | 327/142 |
| * | I | US-2011/0156767 A1 | 06-2011 | Ahn et al. | 327/142 |
| * | J | US-2011/0291730 A1 | 12-2011 | Ahn et al. | 327/276 |
| * | K | US-8,344,769 B2 | 01-2013 | Adachi, Takahiro | 327/156 |
| * | L | US-8,390,347 B1 | 03-2013 | Sinha et al. | 327/156 |
| * | M | US-2014/0097877 A1 | 04-2014 | Baeckler et al. | 327/149 |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

Receipt date: 12/16/2013

Doc code: IDS

Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | |

| | |
|---|---|
| Application Number | 14107878 - GAU: 2842 |
| Filing Date | 2013-12-16 |
| First Named Inventor | Jeffrey L. Zwiebel |
| Art Unit | |
| Examiner Name | Ryan Jager |
| Attorney Docket Number | 811781-US-NP |

### U.S.PATENTS

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 5056119 | | 1991-10-08 | Sakalian, et al. | |
| | 2 | 5602880 | A | 1997-02-11 | Webster, et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.

### U.S.PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

### FOREIGN PATENT DOCUMENTS

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

### NON-PATENT LITERATURE DOCUMENTS

EFS Web 2.1.17

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /RJ/

| Receipt date: 12/16/2013 | | Application Number | 14107878 - GAU: 2842 |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | | Filing Date | 2013-12-16 |
| | | First Named Inventor | Jeffrey L. Zwiebel |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket Number | 811781-US-NP |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T⁵ |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | /Ryan Jager/ (06/12/2015) | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /RJ/

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:  Alcatel-Lucent USA, Inc.

Inventors:  Jeffrey L. Zwiebel, *et al*.

Application No.:  14/107,878

Filed:  December 16, 2013

For:  APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR

Confirmation No.:  1715

Art Unit:  2842

Examiner:  Ryan C. Jager

Atty. Docket:  811781-US-NP

**CERTIFICATE OF EFS-WEB TRANSMISSION**
I hereby certify that this correspondence is being transmitted via the USPTO electronic filing system (EFS-Web) to USPTO.

On:  December 3, 2015 (Date)

Shannon Trotter
(Printed or typed name of person signing the certificate)

/Shannon Trotter/
(Signature of the person signing the certificate)

Sir:

## AMENDMENT UNDER 37 C.F.R. § 1.111

Applicant has carefully considered this application in connection with the non-final Office Action electronically delivered on September 3, 2015 ("Office Action"). Applicant respectfully requests entry of the following amendment pursuant to 37 C.F.R. § 1.111 and reconsideration of this application in view of the amendment and remarks below.

Please amend the above-identified application as follows:

- **Amendments to the Claims** are reflected in the listing of claims that begins on page 2 of this Amendment.

**Remarks** begin on page 6 of this Amendment.

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

## AMENDMENT TO THE CLAIMS:

*This Listing of Claims replaces all prior versions, and listings, of claims in the application.*

## Listing Of Claims:

1. (**Currently Amended**)   An apparatus, comprising:

first and second clocks operable to generate first and second input clock signals, respectively, wherein the first and second input clock signals are asynchronous in relation to one another;

a first edge detector configured to receive the first input clock signal, the first edge detector operable to detect a rising edge of the first input clock signal and to generate a first enable signal; ~~and~~

a second edge detector configured to receive the second input clock signal, the second edge detector operable to detect the rising edge of the second input clock signal and to generate a second enable signal**;**

**a first divider configured to receive the first enable signal and operable to generate a first adjusted enable signal based on a first predetermined factor; and**

**a dual clock generator configured to receive the first adjusted enable signal and the second enable signal, and in response operable to generate a reference clock signal and transmit the reference clock signal over a single conductor**.

2.-3. (**Canceled**)

4. (Original)   The apparatus of claim 1, wherein the second clock signal is a free-run clock or a second network clock.

5. (Original)   The apparatus of claim 1, wherein the apparatus is a central processor unit (CPU) module.

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

6. (**Currently Amended**)      The apparatus of claim **1**[[ 2]], wherein the frequency of the first adjusted enable signal is approximately equal to the frequency of the second enable signal.

7. (**Currently Amended**)      The apparatus of claim **1**[[ 2]], wherein the first divider is configured to insert a guard time between the first and second enable signals to prevent overlap of the first and second enable signals.

8. (**Currently Amended**)      An apparatus comprising:

a first edge detector configured to receive a reference clock signal via a single conductor, the first edge detector operable to detect a rising edge of the reference clock signal and to generate a first enable signal;

a second edge detector configured to receive the reference clock signal via the single conductor, the second edge detector operable to detect a falling edge of the reference clock signal and to generate a **second** ~~fourth~~ enable signal;

a first controlled oscillator configured to receive the first enable signal and operable to track the first enable signal to generate a first output clock signal;

an integer controlled oscillator configured to receive the second enable signal and operable to generate a third enable signal that compensates the rate of the second enable signal; and

a second controlled oscillator configured to receive the third enable signal and operable to track the third enable signal to generate a second output clock signal.

9. (Original)    The apparatus of claim 8, wherein the apparatus is a peripheral module.

10. (Original)  The apparatus of claim 9, wherein the peripheral module is connected to a CPU module via the single conductor.

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

11. (Original)  The apparatus of claim 10, wherein the reference clock signal is transmitted by a CPU module over the single conductor.

12. (Original)  A method for transferring two asynchronous clock signals over a single conductor, comprising:

generating, at a first module, first and second input clock signals;

detecting, at the first module, a rising edge of the first input clock signal, and in response generating a first enable signal;

detecting, at the first module, a rising edge of the second input clock signal, and in response generating a second enable signal;

inserting a guard time between the first and the second enable signals to prevent overlap of the first and the second enable signals;

generating, at the first module, a reference clock signal responsive to the first and second enable signals, wherein the reference clock signal is representative of the first and second input clock signals;

receiving, by a second module over the single conductor, the reference clock signal;

detecting, at the second module, rising and falling edges of the reference clock signal, and in response generating third and fourth enable signals, respectively;

generating, at the second module, a first output clock signal by sampling the third enable signal;

generating, at the second module, a fifth enable signal that compensates the rate of the fourth enable signal;

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

generating, at the second module, a second sampled output clock signal by sampling the fifth enable signal.

13. (Original)  The method of claim 12, wherein the first and second output clock signals are synchronized with the first and the second input clock signals, respectively.

14. (Original)  The method of claim 12, wherein the first input clock signal is synchronized with a network clock.

15. (Original)  The method of claim 12, wherein the second input clock signal is a free-run clock or a second network clock.

16. (Original)  The method of claim 12, wherein the first module is a central processor unit (CPU) module.

17. (Original)  The method of claim 12, wherein the second module is a peripheral module.

18. (Original)  The method of claim 12, wherein the first and second input clock signals are asynchronous in relation to one another.

19. (Original)  The method of claim 12, wherein the guard time is inserted by a counter.

20. (Original)  The method of claim 12, wherein the guard time is inserted by a divider.

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

# REMARKS/ARGUMENTS

Applicant originally submitted Claims 1-20 in the application. In the present response, Applicant has amended originally submitted independent Claim 1 to substantially include the features of originally submitted dependent Claim 2. As a result of the amendment, originally submitted dependent Claim 2 has been canceled herewith without prejudice or disclaimer and originally submitted Claims 6-7 have been amended solely to present proper dependency on currently amended independent Claim 1 (rather than currently canceled dependent Claim 2 from which Claims 6-7 originally depended on). Furthermore, originally submitted independent Claim 8 has been amended solely in response to a pending 35 U.S.C. § 112(b) rejection thereof. No other claims have been amended, canceled, or added.

Status of the Claims:
- Claims 1 and 6-8 are currently amended.
- Claims 2-3 are canceled herewith.
- Claims 4-5 and 9-20 remain in original form.
- Claims 1, 8, and 12 are in independent form.
- Accordingly, Claims 1 and 4-20 are currently pending in the application.

## I.      Formal Matters and Objections

The drawings stand objected to as allegedly not showing every feature of the invention specified in the claims. Specifically, the Office Action alleges that the originally submitted drawings do not show the features of originally submitted Claim 3. Without comment on whether the objection is proper, Applicant has, as noted above, canceled originally submitted Claim 3 in order to expedite the instant application to allowance. Accordingly, Applicant respectfully requests the Office to withdraw the objection to the drawings.

6

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

## II.     Rejection of Claims 1-11 under 35 U.S.C. § 112

Claims 8-11 stand rejected under 35 U.S.C. § 112(b) as allegedly being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicant regards as the invention.  Specifically, the Office Action alleges that feature "the second enable signal" recited at line 14 of originally submitted Claim 8 lacks sufficient antecedent basis.  In response, Applicant has, as noted above, amended originally submitted Claim 8 to correct an inadvertent error at line 7 of Claim 8 as originally filed, replacing "to generate a *fourth* enable signal" with "to generate a *second* enable signal."  In view of the amendment, the original recitation of "the" second enable signal in line 14 now has sufficient antecedent basis.  As such, currently amended independent Claim 8 and Claims 9-11 that depend thereon comply with the requirements of 35 U.S.C. § 112(b).  For at least this reason, the § 112(b) rejection of Claims 8-11 should be overturned and the claims set to issue. Accordingly, Applicant respectfully requests the Office to withdraw this § 112(b) rejection of Claims 8-11 and allow issuance thereof.

Claims 1-11 stand rejected under 35 U.S.C. § 112(b) as allegedly being incomplete for omitting essential structural cooperative relationships of elements.  Specifically, originally submitted Claim 1 is rejected because the claimed first and second clock and edge detector paths allegedly have no connection or cooperation.  In response, Applicant has, as noted above, amended originally submitted independent Claim 1 to substantially include the features of originally submitted independent Claim 2.  As such, currently amended independent Claim 1 now recites that: (1) the claimed first edge detector detects a rising edge of the claimed first input clock signal (generated by the claimed first clock) to generate a first enable signal; (2) the claimed second edge detector detects a rising edge of the claimed second input clock signal (generated by the claimed second clock) to generate a second enable signal; and (3) the first enable signal (after adjustment by the claimed first

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

divider) and the second enable signal are applied to the claimed dual clock generator which uses these signals to generate the claimed reference clock signal (which is transmitted over a single conductor). Thus, currently amended independent Claim 1 recites <u>how the first and second clock and edge detector paths are connected</u> (or how they cooperate).

Further, Claim 8 is rejected because the claimed integer controlled oscillator and second controlled oscillator allegedly have no connection to the rest of the circuit. Pending independent Claim 1 recites: (1) a first controlled oscillator tracks the claimed first enable signal (from the detection of the rising edge of the received reference clock signal by the claimed first edge detector) to generate the claimed first output clock signal; (2) an integer controlled oscillator generates a third enable signal which compensates the rate of the claimed second enable signal (detected by the claimed second edge detector on the falling edge of the reference clock signal); and (3) the third enable signal is applied to the claimed second controlled oscillator to track the third enable signal to generate the claimed second output clock signal. Thus, pending independent Claim 8 recites <u>how the claimed integer and second controlled oscillators are connected to the rest of the circuit</u>.

Therefore, currently amended independent Claims 1 and 8 and Claims 2-7 and 9-11 that depend thereon, respectively, comply with the requirements of 35 U.S.C. § 112(b). For at least this reason, the § 112(b) rejection of Claims 1-11 should be overturned and the claims set to issue. Accordingly, Applicant respectfully requests the Office to withdraw this § 112(b) rejection of Claims 1-11 and allow issuance thereof.

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

### III.   Rejection of Claims 1 and 4 under 35 U.S.C. § 102

Claims 1 and 4 stand rejected under 35 U.S.C. § 102(b)(1) as allegedly being anticipated by U.S. Patent Application Publication No. 2014/0097877 to Baeckler, *et al.* ("Baeckler").  Applicant respectfully traverses based at least on the amendment and the reasons given below.

Applicant has, as noted above, amended originally submitted independent Claim 1 to substantially include the features of originally submitted dependent Claim 2.  Applicant respectfully submits, nor has the Office Action asserted that, the cited portions of Baeckler do ***not expressly describe*** all of the features of currently amended independent Claim 1.  Further, Applicant respectfully submits that the cited portions of Baeckler do ***not inherently describe*** all of these features of currently amended independent Claim 1 as well.

With respect to inherency, the Manual of Patent Examining Procedure (MPEP) provides the following guidance:

> To establish inherency, the extrinsic evidence must make clear that the missing descriptive matter is **necessarily present** in the thing described in the reference, and that is would be so recognized by persons of ordinary skill.  Inherency, however, may not be established by probabilities or possibilities.  **The mere fact that a certain thing may result from a given set of circumstances is not sufficient.**[1]

Applicant respectfully submits that the cited portions of Baeckler, as applied by the Office Action, fail to contain an *inherent teaching* sufficient to anticipate currently amended independent Claim 1.

With respect to anticipation, the MPEP states:

> "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987).  "When a claim covers several structures or compositions, either generically or as alternatives, the claim is deemed anticipated if any of the structures or compositions within the scope of the claim is known in the prior art."…"The identical invention must be shown in as complete detail as is

---

[1] MPEP 9th Ed., March 2014, § 2112(IV), p. 2100-62 (internal quotations omitted, **emphasis added**).

contained…in the claim." *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236, 9 USPQ2d 1913, 1920 (Fed. Cir. 1989).[2]

As established above, the cited portions of Baeckler, as applied by the Office Action, <u>do not expressly or inherently describe "each and every element as set forth" in currently amended independent Claim 1</u>.  For at least these reasons, the § 102(b)(1) rejection of Claims 1 and 4 should be overturned and the claims set to issue.  Accordingly, Applicant respectfully requests the Office to withdraw the § 102(b)(1) rejection of Claims 1 and 4 and allow issuance thereof.

## IV.    Rejection of Claims 3 and 5 under 35 U.S.C. § 103

Claims 3 and 5 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Baeckler.  The rejection of Claim 3, however, is now moot since, as noted above, Applicant has canceled herewith originally submitted Claim 3 without prejudice or disclaimer.  With respect to originally submitted Claim 5, Applicant respectfully traverses based at least on the amendment and the reasons given below.

As established above, the cited portions of Baeckler, as applied by the Office Action, do not include each and every element of currently amended independent Claim 1.  The MPEP states:

> The Supreme Court in *KSR Int'l v. Teleflex, Inc.*, 550 U.S. 398, 415-421, 82 USPQ2d 1385, 1395-97 (2007) identified a number of rationales to support a **conclusion of obviousness** which are consistent with the proper "functional approach" to the determination of obviousness as laid down in *Graham*.[3]

One of the rationales given that may support a conclusion of obviousness includes "(A) Combining prior art elements according to known methods to yield predictable results."[4]  The MPEP goes on to further describe use of this rationale:

---

[2] *Id.*, § 2131, p. 2100-85.
[3] *Id.*, § 2143, p. 2100-154 (**emphasis added**).
[4] *Id.* § 2143(I), p. 2100-154.

> To reject a claim based on this rationale, Office personnel must resolve the *Graham* factual inquires. Then, Office personnel must articulate the following:
>
> > (1) **a finding that the prior art included each element claimed**, although not necessarily in a single prior art reference, with the only difference between the claimed invention and the prior art being the lack of actual combination of the elements in a single prior art reference…[5]

As established above, the Office Action has not articulated a finding that the cited portions of Baeckler, as applied by the Office Action, includes "each element claimed" in currently amended independent Claim 1. Therefore, per the above-cited portions of the MPEP, the cited portions of Baeckler, as applied by the Office Action, <u>do not establish a conclusion of obviousness</u> for currently amended independent Claim 1.

As such, the cited portions of Baeckler, as applied by the Office Action, does not provide a *prima facie* case of obviousness for currently amended independent Claim 1 and claims that depend thereon. For at least these reasons, the § 103 rejection of Claims 3 and 5 should be overturned and the Claim 5 set to issue. Accordingly, Applicant respectfully request the Office to withdraw the § 103 rejection of Claims 3 and 5 and allow issuance of Claim 5.


## V.  Comment on Other Art of Record

Though there is additional art of record, the Office Action has not cited any of this additional art to provide the missing elements to make the pending claims anticipated by the cited portions of Baeckler or obvious in view of the cited portions of Baeckler.

---

[5] *Id.* § 2143(I)(A), p. 2100-155 (**emphasis added**).

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

## VI.    Comment

All of the Applicant's arguments are without prejudice or disclaimer.  Applicant reserves the right to discuss the distinctions between the cited references and the claims in a later response or on appeal, if appropriate.  The arguments offered by Applicant are sufficient to overcome the Office Action rejections and Applicant does not acquiesce to additional statements in the Office Action even if not specifically addressed in the response.

Should a rejection based on any of the above asserted rejections be maintained, Applicant respectfully requests appropriate evidentiary support.  Additionally, if the Examiner is relying upon "common knowledge" or "well known" principles or "Official Notice" or other information within the Examiner's personal knowledge to establish a rejection, Applicant respectfully requests that the Examiner cite a reference or provide an affidavit as documentary evidence in support of this position in accordance with M.P.E.P. § 2144.03 and 37 C.F.R. 1.104(d)(2).

Appl. No. 14/107,878
Reply to Office Action dated September 3, 2015

## VII.    Conclusion

In view of the foregoing amendment and remarks, Applicant respectfully submits that all of the claims currently pending in this application are in condition for allowance and therefore earnestly solicits a Notice of Allowance for Claims 1 and 4-20.

Applicant requests the Office to telephone the undersigned agent of record at (972) 480-8800 if such would further or expedite the prosecution of the present application.   It is believed that no extensions of time or fees are required with this Amendment, beyond those that otherwise would be provided for in any documents accompanying this Amendment.   However, in the event that additional extensions of time are necessary to allow consideration of this Amendment, such extensions are hereby petitioned for pursuant to 37 C.F.R. § 1.136(a).  Applicant authorizes the Commissioner to charge any other fees required (including fees for net addition of claims) or any credits to Deposit Account 08-2395.

Respectfully submitted,

**HITT GAINES, P.C.**

Dated: <u>December 3, 2015</u>

P.O. Box 832570
Richardson, Texas  75083
(972) 480-8800

Steven J. Hanke
Registration No. 58,076
AGENT FOR APPLICANT



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 47394          7590          12/18/2015 | | EXAMINER |
|---|---|---|
| HITT GAINES, PC | | JAGER, RYAN C |
| ALCATEL-LUCENT | | |

| | ART UNIT | PAPER NUMBER |
|---|---|---|
| PO BOX 832570 | 2842 | |
| RICHARDSON, TX 75083 | | |

DATE MAILED: 12/18/2015

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/107,878 | 12/16/2013 | Jeffrey L. Zwiebel | 811781-US-NP | 1715 |

TITLE OF INVENTION: APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 03/18/2016 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**or** <u>Fax</u>    **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

47394      7590      12/18/2015
HITT GAINES, PC
ALCATEL-LUCENT
PO BOX 832570
RICHARDSON, TX 75083

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/107,878 | 12/16/2013 | Jeffrey L. Zwiebel | 811781-US-NP | 1715 |

TITLE OF INVENTION: APPARATUS AND METHOD FOR TRANSFERRING MULTIPLE ASYNCHRONOUS CLOCK SIGNALS OVER A SINGLE CONDUCTOR

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 03/18/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| JAGER, RYAN C | 2842 | 327-291000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)


Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/107,878 | 12/16/2013 | Jeffrey L. Zwiebel | 811781-US-NP | 1715 |

47394      7590      12/18/2015

HITT GAINES, PC
ALCATEL-LUCENT
PO BOX 832570
RICHARDSON, TX 75083

| EXAMINER |
|---|
| JAGER, RYAN C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2842 | |

DATE MAILED: 12/18/2015

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| ***Notice of Allowability*** | Application No.<br>14/107,878 | Applicant(s)<br>ZWIEBEL ET AL. | |
|---|---|---|---|
| | Examiner<br>RYAN JAGER | Art Unit<br>2842 | AIA (First Inventor to File) Status<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *communication filed 12/3/15*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1 and 4-20*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☐ All   b) ☐ Some  *c) ☐ None of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has **THREE MONTHS FROM THE** "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment

6. ☒ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

/RYAN JAGER/<br>Primary Examiner, Art Unit 2842

Application/Control Number: 14/107,878                                              Page 2
Art Unit: 2842

1.      The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA.

## NOTICE OF ALLOWANCE

2.      Notice of allowance in response to communication filed on 12/3/15.

### *Allowable Subject Matter*

3.      The following is an examiner's statement of reasons for allowance:

4.      Claims 1, 4-7 are allowable over the prior art of record because the art of record does not

disclose nor render obvious a first divider and a dual clock generator connected as recited, in

combination with the rest of the claimed limitations.

5.      Claims 8-11 are allowable over the prior art of record because the art of record does not

disclose nor render obvious an integer controlled oscillator and a second controlled oscillator

connected as recited, in combination with the rest of the claimed limitations.

6.      Claims 12-20 are allowable over the prior art of record because the art of record does not

disclose nor render obvious inserting a guard time between the first and second enable signal to

prevent overlap of the first and the second enable signals, and generating, at the second module,

a first output clock signal by sampling the third enable signal, in combination with the rest of the

claimed limitations.

        Any comments considered necessary by applicant must be submitted no later than the

payment of the issue fee and, to avoid processing delays, should preferably accompany the issue

fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for

Allowance."

Application/Control Number: 14/107,878                                                    Page 3
Art Unit: 2842

## *Conclusion*

7.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to RYAN C. JAGER whose telephone number is (571)272-7016. The examiner can normally be reached on M-F 8:30 am - 5 pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Lincoln Donovan can be reached on (571) 272-1988.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/RYAN JAGER/
Primary Examiner, Art Unit 2842
12/9/15