IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>                        Plaintiff,<br><br>    v.<br><br>XILINX, INC.,<br><br>                        Defendant. | C.A. No. 20-1228-CFC-JLH<br>(Consolidated) |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM ANNE SHEA GAZA OPPOSING WSOU'S MOTION TO COMPEL FURTHER DISCOVERY**

*Of Counsel:*

Hilda C. Galvan
Keith B. Davis
Christopher A. Buxton
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
(214) 969-4556
hcgalvan@jonesday.com
cbuxton@jonesday.com

David B. Cochran
JONES DAY
North Point 901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-7029
dcochran@jonesday.com

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant*
*Xilinx, Inc.*

Thomas W. Ritchie
JONES DAY
77 West Wacker, Suite 3500
Chicago, Illinois 60601
(312) 269-4003
twritchie@jonesday.com

Jonathan McNeal Smith
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
(213) 243-2559
jonathansmith@jonesday.com

Dear Magistrate Judge Hall:

WSOU asserts infringement by almost every Xilinx product and their following alleged features: for the '653 patent, edge detection for transceiver eye diagrams; for the '950 patent, shifting a clock signal based on a channel leakage ratio measurement; for the '938 patent, circuit card power management; for the '971 patent, switching between PAM4 and NRZ modulation modes; and for the '838 patent, clock signal generation by a mixed-mode clock manager.

**Scope of the Accused Products.** WSOU's complaints are misplaced. Xilinx has produced core technical documents, revenue information, and marketing documents for ***every product*** identified in WSOU's September 1, 2021 Identification of Accused Products. In fact, Xilinx has produced over 43,000 pages of core technical documents for the accused products, 720 source code files, and thousands of schematics. And while WSOU identified over 200 Xilinx products, WSOU has ***charted only 5 of those products*** in its infringement contentions. *See* Xilinx's letter brief at 3 (D.I. 123). It is improper for WSOU to try and obtain broad discovery on as-of-yet-unaccused products through overbroad, unsupportable definitions of "Accused Functionalities" and "Related Products"—especially since WSOU has not even provided compliant infringement contentions for the accused products already in the case. *Id.*

**Search Terms, Custodians Files, and Databases.** WSOU ignores the fact that neither the Scheduling Order nor the Default Standard require the use of search terms to locate responsive documents, or that Xilinx disclose its process, privileged communications, and work product on how it has located those documents. WSOU also completely ignores that it agreed to an ESI Order in this case that requires Xilinx to disclose search terms only *in response to* search terms proposed and identified by WSOU in the first instance. D.I. 55 (a party seeking certain ESI may "propose a procedure identifying custodians and search terms it believes the opposing party should search. The opposing party can oppose, or propose an alternate plan."). WSOU has never made a proposal consistent with the ESI Order. Nevertheless, Xilinx has, without waiver of its work product, told WSOU that it used search terms as an aid to identify responsive marketing documents, which were then further reviewed for production. Xilinx has also told WSOU that it has not applied search terms in all circumstances, including when custodians identify responsive documents, or indicate that any such documents are kept in non-custodial (rather than custodial) repositories.

**Date for Completion of Production.** WSOU concedes that the Scheduling Order already sets June 29, 2022 as the substantial completion deadline. WSOU does not present any good cause to change that deadline, and Xilinx has been producing documents on a rolling basis. This includes Xilinx already substantially completing its technical document production. But Xilinx cannot *complete* its remaining production until the Court resolves the parties' disputes above about the scope of WSOU's RFPs. Further, WSOU's argument that it needs an earlier deadline is belied by its own 3-month delay raising these RFP disputes with the Court, and any delay in the first instance is a product of its own overbroad, disproportionate, burdensome RFPs and its subsequent refusal to narrow them to a proper scope during the meet and confer process.

**WSOU's RFPs**. WSOU's RFPs are overbroad, boilerplate requests that are divorced from its infringement allegations—especially for non-technical documents. WSOU's non-

1

technical RFPs facially seek all financial, marketing, business plan, industry and consumer demand, licensing and settlement, competitive products, joint venture, and many other non-technical documents—regardless of any nexus to its infringement claims. And WSOU seeks this overbroad discovery while ignoring the Scheduling Order and the parties' case-specific ESI Order that it agreed to and the Court entered (D.I. 55).

**RFPs 3–5, 22, and 35 (technical documents):** These RFPs collectively seek every technical document concerning any aspect of the accused products, and even the same for unaccused "Related Products." For example, RFP 5 seeks "[a]ll documents related to the technology, products, and services incorporated into the Accused Products, [and] Related Products." D.I. 122-1 (Ex. A) at 10. These RFPs are plainly overbroad, disproportionate, and extremely burdensome. The accused products include FPGA (field-programmable gate array) and programmable RFSoC (radio frequency system on chip) devices. They are very complex semiconductor chips having billions of transistors and circuits. For example, the '653 Patent is directed to eliminating an EXOR gate circuit element, which consists of just a few transistors. By comparison, one accused product, the Virtex UltraScale+, has 35 billion transistors.

The Scheduling Order required Xilinx to "produce core technical documents related to the accused product(s), *sufficient to show how the accused product(s) work(s)*." D.I. 63 ¶ 7(b). Xilinx has done so. For the '653, '950, '938, and '838 Patents, Xilinx has produced schematics, source code, or design specifications for the accused features, as well as manuals and marketing presentations. For the '971 Patent, only one product has both accused modulation modes. Xilinx has produced manuals showing that a user manually programs a register to switch between these modes; nothing else is relevant or responsive. WSOU does not identify any specific deficiencies that Xilinx has not already cured, all of which were minor collection-related issues. And, Xilinx has not "cherry picked" documents; its production documents show how the allegedly-infringing features of the accused products work. Xilinx will continue to produce, on a rolling basis, additional responsive documents, if any, identified based on its reasonable search.

**RFPs 7–10, 21, 32–33 (financial documents):** These RFPs seek all documents relating to financial and cost information for the accused products. WSOU has failed to explain why it needs all such documents. As is customary in patent cases, Xilinx has produced sales revenue figures, which it will update on a quarterly basis. Xilinx also is working to isolate cost of goods sold information associated with the accused products or their product lines. WSOU does not explain why it needs more or is entitled to *all* financial information in every form.

**RFPs 11, 16–17, 28, and 34 (marketing documents):** Xilinx has produced marketing documents regarding the accused features as well as marketing documents "sufficient to show" the overall marketing of the accused products. Again, WSOU does not explain why more than this is discoverable or proportionate. In particular, WSOU does not explain why its burdensome request for *all* marketing documents regardless of any connection to the accused functionality is proper. Also, WSOU disregards that it has access to Xilinx marketing documents on its website.

**RFPs 18–20 (industry and consumer demand documents):** These RFPs seek all documents relating to customer requests for the accused functionalities, or industry or customer need for those functionalities. Similar to WSOU's other overbroad RFPs, these seek documents

2

for unaccused "Related Products."  And WSOU's definition of "Accused Functionalities" is far broader than what was allegedly invented.  At least RFP 18 is not limited to the accused features, but instead sweeps in all documents for any products "that include" those features—even if none of the documents actually discuss any of those features.  Xilinx has **over 7,500 customers**.  Seeking all documents relating to any and all customer requests is incredibly overbroad, disproportionate, burdensome, and irrelevant.  Further, Xilinx does not track "needs" of customers or the industry at the granular level associated with the specific accused features, and its marketing documents reflect the features that Xilinx markets about its accused products.

**RFPs 12–15, and 29 (licensing/settlement agreements and joint venture agreements):** RFPs 12–13 seek a wide variety of agreements, most of which are completely irrelevant to damages or any other issues.  As typical in patent cases, Xilinx is reviewing and will produce its one-way patent license agreements and settlement agreements (but not cross-licenses, which cannot be comparable because of the cross-license itself).  But WSOU's boilerplate, vague, disproportionate, and burdensome requests for "enterprise agreements, purchase agreements, product or software development agreements, joint ventures, or co-development agreements," and their related terms and conditions, are nothing more than a fishing expedition.  For RFPs 14 and 29, Xilinx already responded that it does not have responsive documents.  And RFP 15 is vague, suffers from the same defective overbroad definition of "Accused Functionalities," and again encompasses unaccused "Related Products"; if any responsive information might exist, it likely is in the marketing documents already produced.

**RFPs 23–26 (organizational charts and employee information):**  For RFP 23, Xilinx explained that it does not maintain organizational charts in the ordinary course of business, but its witnesses can testify about its organizational structure.  RFP 24 improperly seeks documents sufficient to identify "all" employees, persons, or entities involved in research, development, design, or production of the accused functionalities, regardless of how attenuated.  But Xilinx has produced initial disclosures identifying its engineers knowledgeable of the accused features, and for related Rog 2, WSOU agreed it was sufficient for Xilinx to identify a sufficient number of these persons.  D.I. 122-5 (Ex. E) at 3–4.  RFPs 25 and 26 are even worse, seeking similar documents identifying *all* employees, persons, or entities that market, sell, and distribute the accused products—regardless of the accused functionality—and many other subjects including the sales and marketing department's structures, product distribution and distributors, sales force territories and numbers, and even sales compensation and commission structure.  WSOU has pointed to no reason that these overbroad, disproportionate, and burdensome RFPs seek relevant documents.  Certainly, they are not "narrowly tailored" as WSOU asserts.

**RFP 27 (competitor products):**  WSOU refuses to limit this overbroad request to the accused features and the accused products.  Further, the documents sought again do not have any relevance to damages, and the RFP is disproportionate and unduly burdensome.  WSOU is not a competitor or operating company, there may be countless third-party competitor products, and none of those products are relevant—much less all documents about them throughout Xilinx.

Xilinx has complied with its discovery obligations, and will continue to do so.  Accordingly, Xilinx requests the Court deny WSOU's requested relief in all respects.

3

| | |
|---|---|
| Dated: March 3, 2022<br><br>OF COUNSEL:<br><br>Hilda C. Galvan<br>Keith B. Davis<br>Christopher A. Buxton<br>JONES DAY<br>2727 North Harwood Street<br>Dallas, TX 75201<br>(214) 969-4556<br>hcgalvan@jonesday.com<br>cbuxton@jonesday.com<br><br>David B. Cochran<br>JONES DAY<br>North Point 901 Lakeside Avenue<br>Cleveland, Ohio 44114<br>(216) 586-7029<br>dcochran@jonesday.com<br><br>Thomas W. Ritchie<br>JONES DAY<br>77 West Wacker, Suite 3500<br>Chicago, Illinois 60601<br>(312) 269-4003<br>twritchie@jonesday.com<br><br>Jonathan McNeal Smith<br>JONES DAY<br>555 South Flower Street<br>Fiftieth Floor<br>Los Angeles, CA 90071<br>(213) 243-2559<br>jonathansmith@jonesday.com | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Anne Shea Gaza*<br>Anne Shea Gaza (No. 4093)<br>Robert M. Vrana (No. 5666)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>agaza@ycst.com<br>rvrana@ycst.com<br><br>*Attorneys for Xilinx, Inc.* |

29143832

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 3, 2022, a copy of the foregoing document was served on the persons listed below in the manner indicated:

**BY E-MAIL**

James M. Lennon
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
jlennon@devlinlawfirm.com

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John W. Downing
Heather S. Kim
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
jwaldrop@kasowitz.com
djones@kasowitz.com
mbarber@kasowitz.com
jdowning@kasowitz.com
hkim@kasowitz.com
tnguyen@kasowitz.com

Isaac Rabicoff
RABICOFF LAW FIRM LLC
5680 King Centre Drive, Suite 645
Alexandria, VA 22315
isaac@rabilaw.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street N.E., Suite 2445
Atlanta, GA 30309
pwilliams@kasowitz.com

Shelley Ivan
Hershy Stern
Joshua A. Whitehill
Howard L. Bressler
Bradley P. Lerman
Noah P. Dorman
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
sivan@kasowitz.com
hstern@kasowitz.com
jwhitehill@kasowitz.com
hbressler@kasowitz.com
blerman@kasowitz.com
ndorman@kasowitz.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Xilinx, Inc.*