# EXHIBIT D

# JONES DAY

555 SOUTH FLOWER STREET, FIFTIETH FLOOR • LOS ANGELES, CA 90071.2300

TELEPHONE: +1.213.489.3939 • FACSIMILE: +1.213.243.2539

Direct Number:  (213) 243-2559
jonathansmith@jonesday.com

469799-600016

November 11, 2021

VIA E-MAIL

Hershy Stern, Esq.
KASOWITZ, BENSON, TORRES LLP
1633 Broadway
New York, NY 10019
HStern@Kasowitz.com

      Re:    Civil Action No. 20-cv-1228-CFC-JLH (D. Del.)
              *WSOU v. Xilinx, Inc.*:  Xilinx's October 18, 2021 Discovery Responses

Dear Counsel:

      We write in response to your letter dated October 29, 2021 ("Stern Letter"), concerning Xilinx's responses to WSOU's First Set of Interrogatories ("Interrogatories") and First Set of Requests for Production ("RFPs").  We disagree that Xilinx's responses are deficient or that its objections are improper, as further explained below.  Further, your assertion that Xilinx has failed to provide responsive documents also is incorrect.

      As an initial matter that is applicable and related to many of WSOU's complaints, WSOU's Infringement Contentions ("ICs") do not chart or otherwise provide notice of its infringement allegations for a large number of the products identified in its Identification of Accused Products.  (*See* November 11, 2021 Letter from J. Smith to WSOU Counsel (hereafter, "Smith Letter").)  Further, WSOU's ICs suffer from numerous deficiencies.  (*Id.*)  WSOU cannot assert it is entitled to broad discovery of Xilinx products merely by labeling certain products "Accused Products."  "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.  That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request."  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (internal citations omitted).  Thus, "Rule 26(g) requires a party to make a 'reasonable inquiry' before seeking discovery, and parallels the thrust of Rule 11 with respect to making allegations in a complaint." *Id.*  And that is particularly true for those Xilinx products where WSOU has not provided claim charts identifying the allegedly-infringing features.  Unless and until WSOU provides adequate notice of its infringement allegations for those Xilinx

AMSTERDAM   •   ATLANTA   •   BEIJING   •   BOSTON   •   BRISBANE   •   BRUSSELS   •   CHICAGO   •   CLEVELAND   •   COLUMBUS   •   DALLAS   •   DETROIT
DUBAI   •   DÜSSELDORF   •   FRANKFURT   •   HONG KONG   •   HOUSTON   •   IRVINE   •   LONDON   •   LOS ANGELES   •   MADRID   •   MELBOURNE
MEXICO CITY   •   MIAMI   •   MILAN   •   MINNEAPOLIS   •   MOSCOW   •   MUNICH   •   NEW YORK   •   PARIS   •   PERTH   •   PITTSBURGH   •   SAN DIEGO
SAN FRANCISCO   •   SÃO PAULO   •   SAUDI ARABIA   •   SHANGHAI   •   SILICON VALLEY   •   SINGAPORE   •   SYDNEY   •   TAIPEI   •   TOKYO   •   WASHINGTON

Hershy Stern
November 11, 2021
Page 2

products where it seeks discovery—and for *every* accused and allegedly-infringing product as WSOU was already required to do in its ICs and their claim charts, (D.I. 63 ¶ 7(c))—then WSOU is not entitled to discovery concerning those products, much less the breadth of discovery that it seeks through its RFPs and Interrogatories.

I.     **XILINX'S RESPONSES TO WSOU'S FIRST SET OF REQUESTS FOR PRODUCTION**

       Xilinx has not improperly limited, reworked, or otherwise selectively decided which RFPs to which it will respond. Further, to the extent that Xilinx has objected to WSOU's RFPs or any related definitions, Xilinx's objections are proper. Indeed, WSOU "must describe with reasonable particularity each item or category of items" that it seeks in its RFPs, which also must be "proportional to the needs of the case". Fed. R. Civ. P. 26(b)(1), 34(b)(1)(A). We take up the specific issues you have raised below.

    A.     **Xilinx's General Objections to WSOU's RFPs And Their Defined Terms Are Proper**

        1.     **General Objections Nos. 4, 6, & 13**

       Your assertion that Xilinx has improperly objected to or redefined the terms "Accused Products," "Product," "products," and "Accused Functionalities" is misplaced. You neglect to mention that WSOU's definition of "Accused Products" merely bootstraps the meaning of this term to products allegedly having WSOU's definition of "Accused Functionalities." (*See* RFPs at 2.) In turn, WSOU's definition of "Accused Functionalities" similarly and vaguely attempts to bootstrap the meaning of that term—and hence what are "Accused Products"—to "the technologies described in the claims of the Patents-in-Suit," followed by a general recitation of certain functionalities that are improperly broader than the claims themselves, and are not limited to the particular features relied on for the patents to issue over the prior art. (*Id.* at 3.) None of these definitions invoke and are limited to the specific Xilinx products identified in WSOU's ICs and, most importantly, these definitions are not limited to the specific allegedly-infringing features of Xilinx products (rather than the patent claims) that WSOU has charted in its ICs' claim charts. Your letter does not present any basis for WSOU to accuse products or seek discovery on Xilinx functionality beyond that which WSOU itself has identified in its ICs.

       In the end, WSOU's definitions of "Accused Products" and "Accused Functionalities" improperly attempt to shift the burden to Xilinx to assess both what are the "Accused Functionalities" and which of its products supposedly have them. Xilinx's objections stating as such, including that these definitions are overbroad, do not seek relevant information, are disproportionate, and attempt to accuse Xilinx products not charted in WSOU's ICs, are well

Hershy Stern
November 11, 2021
Page 3

grounded.[1]  So too, Xilinx's position that the "Accused Functionalities" should be limited to mean the specific, allegedly infringing components and features of the Xilinx products that WSOU has charted in its ICs is entirely proper.  To the extent you believe WSOU is entitled to discovery of more than those components and features identified in WSOU's ICs and claim charts, you do not explain why that is so or what further documents WSOU seeks.

WSOU's attempt to define "Accused Products" to also include "reasonably similar" products" is similarly flawed.  This tautological definition fails to specifically identify what is an accused product and, more importantly, why it allegedly infringes merely due to some similarity, thereby warranting discovery.  This Court has denied discovery in similar circumstances.  *See, e.g.*, *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 284-85 (D. Del. 2012) (denying discovery where the definition of accused products tracked "the language of the key claims of the patents-in-suit" and explaining that "the more [the definition] simply tracks the broad outlines of the key asserted claims, the less it tells a defendant (and the Court) about how the defendant's unaccused products are alleged to be 'reasonably similar' to the accused products at issue in the case, according to Plaintiff's infringement theory").

To the extent WSOU seeks to stand on its overbroad and improper definitions of "Accused Products" and "Accused Functionalities," they remain problematic because WSOU has not adequately disclosed its infringement theories for all allegedly infringing Xilinx products.  (*See* Smith Letter.)  Indeed, WSOU's ICs include numerous deficiencies.  (*Id.*)  Due to these deficiencies, Xilinx cannot necessarily assess which of its products "contain or makes [sic] use of the Accused Functionalities," (RFPs at 2), or what those "Accused Functionalities" supposedly are, (RFPs at 3).  In any event, discovery of any Xilinx "Accused Products" and their "Accused Functionalities" can only extend as far as the notice that WSOU has itself provided in its ICs and their claim charts, given WSOU's obligation to "produce an initial claim chart ***relating each accused product to the asserted claims***."  (D.I. 63 ¶ 7(c).)[2]

Regardless of whether the breadth of discovery may extend beyond the currently accused products identified in WSOU's ICs and their claim charts, WSOU's discovery request must still seek relevant information, be proportional to the needs of the case, has sufficient specificity, and not be overly broad or unduly burdensome.  WSOU's definitions of "Accused Products," "Product," "products," and "Accused Functionalities" do not meet these fundamental requirements, particularly in light of the deficiencies with WSOU's ICs.

---

[1] WSOU's definitions of "Product" and "products" are even broader and more untethered to the asserted claims, their supposed functionality, or WSOU's ICs.

[2] All emphasis added unless otherwise noted.

Hershy Stern
November 11, 2021
Page 4

   For all of these reasons, Xilinx's General Objections Nos. 4, 6 & 13 are proper. Putting aside the production of core technical documents that Xilinx produced for all documents identified in WSOU's Identification of Accused Products and Asserted Patents (9/1/21) ("Core Technical Production"), Xilinx's production of documents for products that WSOU has specifically charted in its ICs is proper. Having failed to serve sufficient ICs for all Xilinx products that it might seek to accuse, WSOU cannot complain that Xilinx has not produced documents for unaccused products whose allegedly infringing features remain unknown.

   **2.**   **General Objections Nos. 5 & 14**

   Xilinx's objections to WSOU's RFPs regarding "Related Products" and "Related Patents" are also proper for somewhat similar reasons to its objections to "Accused Products" and "Accused Functionalities."

   WSOU's RFPs actually never expressly define "Related Products," as stated by Xilinx's General Objection No. 5 and uncontested by your letter. Nonetheless, assuming that WSOU intended to define this term as in its other discovery requests, (*see, e.g.*, WSOU's Rule 30(b)(6) deposition subpoenas, which refer to "Related Products" as including "any products, services, software, and/or applications that are related to the Accused Products"), WSOU is improperly seeking discovery of Xilinx products that are neither accused of infringement nor charted in WSOU's ICs. WSOU has not shown with specificity how discovery of unaccused Xilinx products is relevant to its existing claims of infringement. *See, e.g.*, *Ethicon LLC v. Intuitive Surgical, Inc.*, No. CV 17-871-LPS-CJB, 2018 WL 1392341, at *1–3 (D. Del. Feb. 12, 2018). Further, WSOU's presumptive, tautological, and generic definition of "related products" as products that "are related to the Accused Products" fails to "describe with reasonable particularity" what these products are and, hence, what documents are sought. *See* Fed. R. Civ. P. 34(b)(1)(A). It is therefore unclear what products are at issue, and this definition and related RFPs invoking it are vague, overbroad, disproportionate to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence. Indeed, your letter does attempt to explain why discovery is warranted of unaccused and vaguely "Related Products."

   The same is true for Xilinx's definition of "Related Patents," only more so. Xilinx is not accused of infringing any "Related Patents," nor are any such patents asserted or charted in WSOU's ICs. Further, it is unclear why you assert that Xilinx's objection to "Related Patents" unreasonably restricts the scope of Xilinx's RFP responses when ***none of WSOU's RFPs even use or invoke the term "Related Patents."*** Having not even propounded any RFPs that recite "Related Patents," your complaint that Xilinx's RFP responses are somehow deficient is clearly unfounded, and once again you fail to explain why such discovery of Xilinx is warranted.

Hershy Stern
November 11, 2021
Page 5

       **3.**      **General Objection No. 12**

As explained by our correspondence regarding the deficiencies with WSOU's ICs, those ICs improperly assert indirect infringement when those claims have been dismissed by the Court. (*See* Smith Letter at 8-11.) WSOU is not entitled to discovery on indirect infringement merely because those claims were dismissed without prejudice. As the Court explained, the indirect infringement claims were dismissed because Xilinx's alleged notice of the Asserted Patents arose due to WSOU's filing of the complaints—a fact that remains unchanged. And, WSOU acknowledged during the May 21 hearing that indirect infringement discovery would relate only to Xilinx's pre-suit notice of WSOU's patents. Hence, Xilinx's General Objection No. 12 to the definition of "Infringe" is entirely proper, as is limiting its RFP responses to exclude indirect infringement.

      **B.**      **Xilinx's Specific Objections And Responses To WSOU's RFPs**

       **1.**      **Xilinx's RFP Responses Do Not Have Any General Deficiencies**

Xilinx's objections to certain RFPs based on burden, expense, and lack of proportionality are proper, as explained above. For example, to the extent that WSOU's RFPs seek discovery on Xilinx products that are not accused, and on functionality neither accused nor charted in WSOU's ICs, then the documents and information sought is entirely irrelevant, and the corresponding RFPs are disproportionate at least to that extent. Based on this objection, as well as others, and putting aside the Core Technical Production, Xilinx has limited its production of documents to those for its accused products with respect to the components and features that WSOU has specifically identified as infringing and mapped to the claim limitations in WSOU's ICs and their claim charts. Further, as explained above, Xilinx's General Objections Nos. 4 & 13 (and also 5, 6, and 14) are entirely proper.

Tellingly, your letter does not point to any deficiencies with Xilinx's actual production of documents itself. In other words, WSOU does not allege that Xilinx has not produced the core technical documents that describe the allegedly-infringing and accused features of WSOU's ICs and their claim charts. Nor do you assert that Xilinx has not produced these documents for each of the products identified as Accused Instrumentalities in the ICs. This confirms that Xilinx's RFP responses are proper, that there are no general deficiencies with its RFP responses or associated document production, and that Xilinx has complied with its discovery obligations.

Hershy Stern
November 11, 2021
Page 6

      **2.**      **Xilinx's Objections and Reponses To WSOU's RFPs Regarding Xilinx's Discovery Responses Are Proper And Not Deficient (RFPs 1, 32, and 37)[3]**

WSOU mistakenly asserts that Xilinx's responses to RFP Nos. 1 and 37 are deficient. (Stern Letter at 3–4.) These RFPs improperly seek information that is not subject to discovery.

**RFP No. 1** seeks "All documents identified or considered by You in Your responses to any of WSOU's concurrently-propounded Interrogatories in the Actions." Xilinx agreed to produce documents that Xilinx identified pursuant to Rule 33(d) in its interrogatory responses. But documents that were only *considered* when responding to WSOU's interrogatories are not discoverable. Moreover, a request for such documents *considered* when responding to interrogatories improperly seeks attorney strategy and mental impressions, work product, and potentially attorney-client privileged information, given that such documents are usually considered by counsel and subject to counsel's discussions with the client. The meaning of "considered" in this context is also vague and ambiguous, and there is no reason to believe documents that were only considered have any relevance, particularly since Xilinx is already obligated to identify documents that are actually responsive to Interrogatories, including by way of Federal Rule of Civil Procedure 33(d). For all of these reasons, Xilinx's objections and response to RFP No. 1 are not deficient. Xilinx's objections and response to **RFP No. 32**, asking for "[a]ll documents identified or considered by You in Your responses to any discovery in this action" is not deficient for these same reasons, and indeed, is even more objectionable, overbroad, vague, and implicates privilege than RFP No. 1.

**RFP No. 37** similarly seeks "All documents You may offer as evidence, use as an exhibit, or otherwise rely on in any trial, hearing, motion, submission to the court, submission to a special master, or deposition in this Action." This generalized request effectively requires what Federal Rule of Civil Procedure 26 requires. Xilinx properly responded that it will produce non-privileged documents on which it intends to rely at trial, to the extent disclosure of such documents would be required under applicable orders and rules. WSOU's complaint appears to be that it seeks production of documents to be used for impeachment. (Stern Letter at 3.) But Xilinx did not agree to produce documents on which it intends to rely at trial solely for purposes of impeachment because such disclosure is not required Federal Rule of Civil Procedure 26(a)(1)(A)(ii). WSOU's cited case law does not hold otherwise. In both *Varga v. Rockwell Int'l. Corp.*, 242 F.3d 693 (6th Cir. 2001), and *Karr v. Four Seasons Maritime Ltd.*, 2004 WL

---

[3] Throughout this response letter, we repeat certain headings and characterizations used by the Stern Letter. In doing so, Xilinx does not necessarily agree with the characterizations of those headings and the documents or interrogatories discussed in each section. Xilinx instead only does so for clarity and convenience when responding to the Stern Letter.

797728 (E.D. La. Apr. 12, 2004), the impeachment evidence in question was responsive to narrowly tailored document requests seeking specific, substantive information about the case—not a generalized, catch-all request like RFP No. 37—and the responding parties had withheld the responsive documents solely because they intended to use them for impeachment purposes. Your letter does not cite any authority from this Court or the Federal Rules of Civil Procedure that production of impeachment documents is warranted or required.

### 3. Xilinx's Objections And Responses To WSOU's RFPs Related To Xilinx Technical Documents Are Proper And Not Deficient (RFPs 3, 4, 5, and 22)

WSOU purports to identify deficiencies in Xilinx's responses to requests that seek broad categories of documents regarding technical aspects of the accused products. (Stern Letter at 4.) Xilinx properly objected to the over breadth and burden of these RFPs, and its objections and responses to each are otherwise proper.

**RFP No. 1** seeks "All documents *related to the technology, products, and services incorporated into the* Accused Products, Related Products, and products identified in response to Interrogatory No. 1 *with respect to the Accused Functionalities*." As already discussed, WSOU's definitions of "Accused Products," "Accused Functionalities," and "Related Products" are objectionable, and Xilinx's objection is well founded.

WSOU's complaint seems to be that Xilinx has objected to the RFP's request that it produce "all" technical documents. Specifically, you mischaracterize Xilinx's response that it will produce "documents sufficient to show how the Accused Products work" as "cherry-picked" and improperly limiting the scope of this RFP. WSOU's complaint is surprising, given that ¶7(b) of the Court's own Scheduling Order (Dkt. 63)[4] in these cases only require Xilinx to produce documents "sufficient to show," stating:

> By September 29, 2021, Defendant shall produce core technical documents related to the accused product(s), *sufficient to show how the accused product(s) work(s)*, including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications.[5]

---

[4] When citing to the docket for these cases, this letter cites to the docket of the -1228 case as representative of the docket and their filings in all of the cases.

[5] The Scheduling Order is consistent with the common practice in patent cases that Courts only require accused infringers to produce documents sufficient to show the accused, allegedly infringing features—not "all" documents as WSOU seeks here due to the burden and

Hershy Stern
November 11, 2021
Page 8

Your letter does not present any basis or cite any authority for your assertion that Xilinx nonetheless should be required to produce "all" technical documents here related to the accused features and components, rather than documents "sufficient to show" how the accused products work as stated by the Court's Scheduling Order.

Most importantly, your letter does not raise any complaint about Xilinx's actual core technical document production, or otherwise identify any information WSOU has been unable to ascertain from Xilinx's documents about the allegedly-infringing features. Xilinx has produced source code, manuals, and other technical documents for its accused products, many of which are cited by WSOU's ICs. WSOU does not identify what other types of documents it needs in order to pursue its infringement claims, nor has it said it requires more documents to present its ICs. As a result, your complaint that Xilinx produce "all" documents is not only inconsistent with the typical discovery rules of patent litigation, but seemingly an attempt to generate an unnecessary discovery dispute to burden Xilinx with additional discovery costs and effort.

WSOU's complaints for **RFPs 4, 5, and 22** are similar, demanding that Xilinx produce "all" documents related to the technology of its products instead of documents "sufficient to show" the accused features according to WSOU's ICs and their claim charts. Xilinx's responses to these RFPs and core technical document production are proper and not deficient for the same reasons as discussed above for RFP No. 1.

### 4. Xilinx's Objections And Responses To WSOU's RFPs Related To Xilinx's Knowledge Of The Asserted Patents Are Proper And Not Deficient (RFPs 6 and 30)

WSOU does not identify any deficiencies in Xilinx's responses to **RFP Nos. 6 and 30**. (*See* Stern Letter at 4–5.) Instead, WSOU asks Xilinx to confirm that its responses to those requests are accurate. Xilinx has responded to WSOU's RFPs based on the information

---

overbreadth associated with doing so. *See, e.g.*, Eastern District of Texas P. R. 3-4(a) (requiring production of "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P. R. 3-1(c) chart."). Indeed, in the Western District of Texas where WSOU has filed the vast majority of its cases, Judge Albright's Order Governing Proceedings ("OGP") only requires a defendant to produce "(2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s)." (See Judge Albright Standing Order Governing Proceedings – Patent Cases, ¶ 4, available at https://www.txwd.uscourts.gov/wp-content/uploads/Standing%20Orders/Waco/Albright/Standing%20Order%20Governing%20Proceedings%20-%20Patent%20Cases%20100821.pdf.)

Hershy Stern
November 11, 2021
Page 9

available at the time of its responses.  Xilinx's investigation is ongoing, and at this time, Xilinx has no further supplementation of its responses to RFP Nos. 6 and 30.

     **5.**     **Xilinx's Objections And Responses To WSOU's RFPs Related To Financial Documents Are Proper And Not Deficient (RFPs 8, 11–13, and 31)**

     **RFP No. 8** seeks "[a]ll documents related to the costs of developing and maintaining the technology used in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1."  On its face, this RFP is overly broad and not limited to development or maintenance costs for the specific, allegedly-infringing features.  As explained above in relation to RFP No. 5, the technology included in the accused products is extensive, and most of it is not accused of infringing the Asserted Patents.  It is unclear why this RFP and the documents it seeks are relevant or proportional to the needs of this case.  Your letter does not demonstrate otherwise merely by asserting in a conclusory fashion that such documents are allegedly relevant to damages—particularly if WSOU is seeking documents on the entire development and maintenance costs for each Accused Product, rather than only the specific, allegedly-infringing features.  Xilinx therefore does not see the relevance of this RFP and the documents it requests.  Nonetheless, Xilinx is willing to meet and confer if WSOU desires to further explain what it is seeking and why the requested documents are discoverable.

     **RFP No. 11** seeks "All documents reflecting Your internal business and marketing plans, budgets, strategic marketing or planning reports, internal planning memoranda, internal presentations, meeting notes, feasibility studies, cost/benefit analyses, customer surveys, or minutes to board meetings for any product or application line, division, or company that includes or relates to the Accused Products, Related Products, or products identified in Your response to Interrogatory No. 1."  Even if the various document categories enumerated were somehow tied to the Xilinx accused products, the RFP still would be overbroad and unduly burdensome because it is unclear how all such documents are relevant to WSOU's claims.  But the request is not so limited.  It seeks the document categories "for any product or ***application line, division, or company*** that includes or relates to" the "Accused Products" and "Related Products"—regardless of whether or not the documents themselves relate to the accused products.  For example, this RFP seemingly requires production of all meeting notes for a division or company that includes or relates to the accused products, even if those meeting notes have nothing to do with the accused products.  That could also include business and marketing documents for the entire company.  While Xilinx is willing to meet and confer about this RFP, its objections and statement that it will produce documents sufficient to show its marketing is entirely proper in light of the overbreadth, lack of proportion, irrelevance, and burden of this RFP as written.

Hershy Stern
November 11, 2021
Page 10

**RFP Nos. 12 and 13** are once again overbroad, unduly burdensome, not proportionate, and do not seek relevant information on their faces. They are not limited to the allegedly infringing, accused functionalities, nor is it clear why discoverable information from Xilinx in these cases should include any of its "enterprise agreements, purchase agreements, product or software development agreements, joint ventures, or co-development agreements" (RFP No. 12) or related payments and rates (RFP No. 13). Further, RFP No. 12's recitation seeking such agreements "involving any patent or technology *related in any way or covering any aspect* of the Accused Products, Related Products, and products identified in response to Interrogatory No. 1" is vague and ambiguous, and does not sufficiently identify the documents sought with particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). Xilinx's objections and responses are therefore proper, but it is available to meet and confer on these RFPs to further ascertain what WSOU is seeking.

**RFP No. 31** which seeks valuation analysis of WSOU's patents including the Asserted Patents seems to prematurely seek information related to Xilinx's rebuttal expert report on damages. Xilinx will present that report and any associated support and documents in the time and manner required by the Court's Scheduling Order. That being said, the invalidity of the Asserted Patents certainly goes to the value of those patents. Xilinx is not aware of any other non-privileged documents responsive to this RFP. Xilinx's investigation is ongoing, and it will supplement its response and production to the extent it identifies any non-privileged documents.

      6.      **Xilinx's Objections And Responses To WSOU's RFPs Related To Offer, Marketing, Research, And Customers Of The Accused Products Are Proper And Not Deficient (RFPs 15, 18–21, and 23–27)**

For **RFP No. 15**, Xilinx's objections and responses to this RFP are proper and not deficient, and your letter does not indicate otherwise. In particular, the RFP does not explain what is meant by "sell, license, offer, or provide the Accused Functionalities," including assuming that such sales, licenses, offers, or provisions exist, and is otherwise unclear about what documents are sought.

**RFP No. 18** somewhat similarly seeks "[a]ll documents relating to any customer requests for products, hardware, software, and/or applications that include the Accused Functionalities." Setting aside the issues concerning WSOU's definition of "Accused Functionalities" previously discussed above, this request is extremely broad and burdensome because Xilinx has tens of thousands of customers and has sold millions of products. It is unclear how all documents relating to every customer request is relevant, and the RFP also assumes that customers have actually made specific requests for the "Accused Functionalities" whose definition, as previously discussed, relates to the Asserted Claims and their limitations rather than the components and

Hershy Stern
November 11, 2021
Page 11

features of Xilinx's accused products.  **RFP Nos. 19–20** are similar, and Xilinx's objections and responses are proper and not deficient for similar reasons.

**RFP No. 21** yet again suffers from the objectionable definition of "Accused Functionalities," as well as the related deficiencies with WSOU's ICs already discussed. Xilinx's objections and response to this RFP are similarly proper and not deficient.  In any event, Xilinx is currently unaware of any "cost-benefit analysis" or related documents of the specific, allegedly-infringing features identified in WSOU's ICs and their claim charts, to the extent that WSOU has identified any such features for Xilinx's accused products.

**RFP Nos. 23–26** are both individually and collectively overbroad, unduly burdensome, disproportionate to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and suffer from other defects as stated in Xilinx's objections to these RFPs. For example, **RFP No. 24** seeks "documents sufficient to determine the name, location, title and role of ***all employees, persons, or entities involved in the research, development, design, or production*** of the Accused Functionalities as implemented in the Accused Products, Related Products, and products identified in Your response to Interrogatory No. 1."  This RFP suffers from the same issues regarding the objectionable definitions of "Accused Functionalities," "Accused Products," and "Related Products."  Moreover, given the large number of Xilinx accused products and persons that may be "involved in" their research, development, design, or production—even for just the allegedly-infringing features—the RFP seemingly asks Xilinx to produce information about hundreds, if not thousands, of its employees.  **RFP No. 25** similarly seeks documents for "all employees, persons, or entities" that are "involved in" the "marketing, sale, or distribution" of Xilinx's accused products—and it is not even limited to the "Accused Functionalities."  It is therefore objectionable for the same reasons.  Nowhere does your letter explain why WSOU requires all of this information and related documents, or how the breadth of documents sought is discoverable, relevant, or proportionate to the needs of the case.

**RFP No. 27** is similarly overbroad with its request for essentially all documentation related to any competitors and competitive products or services with Xilinx and its accused products.  Your letter does not provide any basis for why the requested documents are anything other than overbroad, not relevant, not proportionate to the needs of the case, unduly burdensome, and subject to the other objections that Xilinx raised in its response.

For all of these RFPs, Xilinx has agreed to produce documents sufficient to show its marketing for the accused products.  WSOU has not explained why that is not responsive to its requests, or why the additional information sought is proportional to the needs of this case.  Until WSOU provides the basis for its position that the full scope of such discovery is both relevant and proportional to the needs of this case, Xilinx maintains its objections to these requests.

Hershy Stern
November 11, 2021
Page 12

       **7.**      **Xilinx's Objections And Responses To WSOU's RFP Related To Its Document Retention Policies Are Proper And Not Deficient (RFP 36)**

Xilinx stands by its objections and response to **RFP No. 36** regarding its document retention or destruction policies. Your letter does not explain why any such policies are relevant to or otherwise discoverable in this case.

**II.**    **XILINX'S RESPONSES TO WSOU'S FIRST SET OF INTERROGATORIES**

    **A.**    **Xilinx's General Objections to WSOU's Interrogatories And Their Defined Terms Are Proper**

WSOU repeats similar assertions about Xilinx's general objections to WSOU's Interrogatories and their defined terms, as it made for Xilinx's general objections to WSOU's RFPs. (*See* Stern Letter at 7–8.) Xilinx's general objections here to WSOU's interrogatories are proper for the same reasons that they were proper for WSOU's RFPs. *See* Section I.A, *supra*. As already explained, WSOU's definitions of "Accused Products," "Product," "products," and "Accused Functionalities" are all proper. *Id.* As a result, WSOU's assertions to the contrary for Xilinx's General Objection Nos. 3, 4, and 11 are misplaced. So too, WSOU's definition of "Related Patent" (and also "Related Patent Applications") are improper. Further, WSOU only invokes these two definitions in its Interrogatory No. 7, but WSOU does not complain elsewhere in the Stern Letter that Xilinx's response to that interrogatory is deficient. And, as already explained, Xilinx correctly objected to WSOU's definition of "infringement" because it included indirect infringement, when those claims have already been dismissed by the Court. *Id.* For all of these reasons, your complaints about Xilinx's general objections are incorrect.

    **B.**    **Xilinx's Specific Objections And Responses To WSOU's Interrogatories**

       **1.**      **Xilinx's Interrogatory Responses Do Not Have Any General Deficiencies**

Xilinx's objections to certain Interrogatories on the basis of burden, expense, and lack of proportionality are proper, as already explained and similar to its objections to WSOU's RFPs. *See* Section I.B.1, *supra* and prior discussion of WSOU IC deficiencies. Once again, to the extent that WSOU's Interrogatories seek discovery on Xilinx products that are not accused, and on functionality neither accused nor charted in WSOU's ICs, then the information sought is entirely irrelevant, and the corresponding Interrogatories are disproportionate at least to that extent. Based on this objection, as well as others, Xilinx has limited its Interrogatory responses to its accused products with respect to the components and features that WSOU has specifically identified as infringing and mapped to the claim limitations in WSOU's ICs and their claim charts. And, as explained above, Xilinx's General Objections Nos. 3, 4, and 11 are entirely

Hershy Stern
November 11, 2021
Page 13

proper. To the extent that WSOU seeks information regarding unaccused Xilinx products and on components and features other than those specifically accused, the Interrogatories are overly broad, irrelevant, disproportionate to the needs of the case, and unduly burdensome, particularly in those circumstances where the Interrogatories seek information about the technical features of unaccused Xilinx products and unaccused portions of those products for purposes of any attempt to make an infringement read under the either Asserted Patents or any other WSOU unasserted patents.

  **2.** **Xilinx's Objections And Responses To WSOU's Interrogatories Concerning Its Accused Products Are Not Deficient (Interrogatory Nos. 1–3)**

  **Interrogatory No. 1** asked Xilinx to "Identify, by product name, part number, internal name, internal model number, external model number, and any other designation, all products and services that perform or enable any aspect of the Accused Functionalities, including but not limited to the Accused Products and Related Products, and for each, describe in detail how it was developed and its period of use." Xilinx fully responded to this interrogatory by providing a chart reflecting the Product Family Name, Internal Name, Device Name, and the date each product was introduced, and by identifying documents from which WSOU can obtain additional responsive information pursuant to Rule 33(d).

  WSOU attempts to fault Xilinx's response for not providing information like "product name, part number, internal model number, and external model number." (Stern Letter at 9.) But Xilinx does not use information with those specific labels. The information that Xilinx has provided is how Xilinx identifies products internally and externally. WSOU has not explained why the information provided is not responsive to the interrogatory, or is otherwise inadequate.

  **Interrogatory No. 2** asked Xilinx to "identify all Persons and entities that developed, designed, coded, planned, or otherwise contributed to the Accused Functionalities as implemented in each Accused Product, Related Product, and product identified in response to Interrogatory No. 1; for each Person or entity identified, describe the nature of the work or services performed, including relevant dates and time periods." This interrogatory is overbroad, not proportional to the needs of the case, seeks irrelevant information and unduly burdensome at least because it seeks the identity of every person who has ever worked on the accused components and features of the accused products in any way. Assuming that information were even available to and could be ascertained by Xilinx, the burden of producing it would far outweigh any benefit. WSOU did not properly limit this interrogatories in ways that are typical in patent cases such as asking Xilinx to identify a much more limited number of persons who are most knowledgeable of these components and features. Xilinx therefore properly objected to the scope of the interrogatory, but still provided a chart identifying nine individuals with knowledge

Hershy Stern
November 11, 2021
Page 14

of the structure and operation of the accused functionality in the accused products, and the dates of their employment. Xilinx's response is reasonable and proportionate to the needs of this case. WSOU has not explained how the information provided is not responsive to the interrogatory, or why the additional information sought is proportional to the needs of this case. Nor has WSOU explained why it was unreasonable for Xilinx to identify current employees in response to this interrogatory or why those employees are not positioned to provide information about Xilinx's accused products and their accused components and features.

**Interrogatory No. 3** asks Xilinx to "identify all source code files, modules, projects, libraries, collections, compilations, and repositories related to the Accused Functionalities as implemented in each" of the Accused Products and Related Products. Notwithstanding issues with WSOU's defined terms discussed above, Xilinx responded by providing access to a source code computer containing relevant source code files and schematics from which WSOU could derive the information requested, pursuant to Federal Rule of Civil Procedure 33(d). WSOU's technical experts have had access to that computer for over a month and have requested over 200 pages of source code printouts and 37 pages of schematics. Further, WSOU has included certain source code citations in the claim charts to its ICs according to the code names of certain products, and therefore understands which source code files, modules, and so on are related to which Xilinx accused products, as well as allegedly certain claim limitations. WSOU has not explained why provision of the source code computer is not responsive to this interrogatory, or sufficient under Rule 33(d), and Xilinx has not "shift[ed] its discovery burden to WSOU" as your letter alleges. (Stern Letter at 3.) Finally, as already repeatedly discussed, WSOU's definition of "Related Products" and "Accused Functionalities" are objectionable, as are WSOU's attempts to seek source code files, module files, and other technical information under this interrogatory for unaccused Xilinx products, as well as for unaccused components and features.

      **3.**      **Xilinx's Objections And Responses To WSOU's Interrogatories Concerning Financial Information And Sales Are Not Deficient (Interrogatory Nos. 4–5)**

**Interrogatory No. 4** asks for sales information "for each Accused Product, Related Product, and product identified in response to Interrogatory No. 1." Xilinx responded pursuant to Federal Rule of Civil Procedure 33(d), indicating that it will produce documents from which a response could be derived. After serving its responses, Xilinx produced XILINX_WSOU-0043724. Xilinx will supplement its interrogatory response to specifically identify that responsive document.

**Interrogatory No. 5** asks Xilinx to "identify the earliest date each [Accused Product and Related Product] was developed, and the date each was (1) sold, (2) offered for sale, or (3) otherwise made available to any customers and/or consumers." Your letter incorrectly asserts

Hershy Stern
November 11, 2021
Page 15

that Xilinx has not responded to this interrogatory. (Stern Letter at 10.) Xilinx responded by referring to its responses to Interrogatory Nos. 1 and 4. Xilinx's response to Interrogatory No. 1 identified the date each accused product was first introduced to the market, and the sales spreadsheet XILINX_WSOU-0043724 indicates the dates each accused product was sold to customers since 2015. As just discussed, Xilinx will supplement its response to Interrogatory No. 4 to identify this sales spreadsheet.

    **4.**  **Xilinx's Objections And Responses To WSOU's Interrogatories Concerning Xilinx's Defenses Are Not Deficient (Interrogatory Nos. 8–10)**

  WSOU asks Xilinx to immediately and fully respond to **Interrogatory No. 8**, which asks Xilinx to "identify and describe each alleged non-infringing alternative." We reiterate that discovery is in its early stages, and Xilinx is continuing its investigation. Further, the parties have not yet identified any claim terms for construction, their proposed constructions, or submitted any claim construction briefing, and the Court has not yet issued its claim construction order. Further, this is a contention interrogatory, and the Court's claim construction is necessary to inform Xilinx of the scope of the claims and potential non-infringing alternatives. To the extent Xilinx intends to rely on non-infringing alternatives, it will provide the requested information. Nonetheless, Xilinx will supplement its response to Interrogatory No. 8 to at least assert at this early stage that the prior art to the Asserted Patents and obvious combinations thereof are non-infringing alternatives.

  Again, Xilinx is continuing its investigation, and reserves the right to present additional non-infringing alternatives following claim construction and as part of its technical expert reports on non-infringement at the time and in the manner required by the Court's Scheduling Order.

  WSOU does not identify any purported deficiencies in Xilinx's response to **Interrogatory No. 9**, other than in its identification of documents pursuant to Federal Rule of Civil Procedure 33(d). (Stern Letter at 10–11.) WSOU alleges that Xilinx's identification of its entire production pursuant to Rule 33(d) is improper. (*Id.*) However, WSOU's interrogatory broadly asks Xilinx to "[s]et forth ***all factual*** and legal bases for Your Affirmative Defenses." In turn, Xilinx has alleged a number of affirmative defenses such as non-infringement, invalidity, prosecution history estoppel, and limitation on damages. The factual bases for these and Xilinx's other affirmative defenses (as well as its counterclaims) are found throughout its document production, and Xilinx reserves the right to rely upon its production to support its affirmative defenses. Hence, the breadth of Xilinx's Rule 33(d) response is due to the breadth of WSOU's own interrogatory, and WSOU's complaint reflects substantive disagreement with Xilinx's response rather than any deficiency. Indeed, your letter does not cite any case or other authority for your assertion that Xilinx's response is "clearly improper." (*Id.* at 11.) And, to the extent

Hershy Stern
November 11, 2021
Page 16

that WSOU seeks more detailed information about particular documents likely to be presented in motions practice or at trial, Xilinx will make those disclosures in the time and manner required by the Court's Scheduling Order, including as part of its pretrial disclosures and as attachments to its motions and other submissions to the Court, as well as their use in discovery.

**Interrogatory No. 10** asks Xilinx to "[s]et forth all factual and legal bases for Your Counterclaims." WSOU asserts that Xilinx failed to directly identify its factual and legal bases for its counterclaims. We disagree. Xilinx asserted two counterclaims: one for declaratory judgment of non-infringement and one for declaratory judgment of invalidity. Xilinx's response to Interrogatory No. 10 incorporated by reference its response to Interrogatory No. 6, which concerns Xilinx's non-infringement positions. WSOU did not identify any purported deficiencies in Xilinx's response to Interrogatory No. 6, and has not explained why the information contained in Xilinx's response to Interrogatory No. 6 is not responsive to Interrogatory No. 10. Xilinx also incorporated by reference its forthcoming invalidity contentions, which are not required under the Scheduling Order until December 1, 2021. To the extent Interrogatory No. 10 seeks Xilinx's invalidity contentions before that date, it is premature. Finally, you assert that Xilinx's identification of documents pursuant to Fed. R. Civ. P. 33(d) is improper. But, again, the breadth of Xilinx's Rule 33(d) response is due to the breadth of WSOU's interrogatory, as just discussed for Interrogatory No. 9. As there, here your complaint does not reflect any deficiency on Xilinx's part, but substantive disagreement with Xilinx's Rule 33(d) response. And, as discussed for Interrogatory No. 9, Xilinx will continue to identify and use specific documents from its production in filings and submissions to the Court, discovery, and as part of its pretrial submissions, allowing WSOU to further understand the basis of Xilinx's claims and defenses and documents having responsive information.

*   *   *

We are available to meet and confer to discuss these issues further on Tuesday, November 16.

Very truly yours,

*/s/ Jonathan McNeal Smith*

Jonathan McNeal Smith