# EXHIBIT E

# JONES DAY

555 SOUTH FLOWER STREET, FIFTIETH FLOOR • LOS ANGELES, CA 90071.2300

TELEPHONE: +1.213.489.3939 • FACSIMILE: +1.213.243.2539

Direct Number:  (213) 243-2559
jonathansmith@jonesday.com

469799-600016

November 19, 2021

VIA E-MAIL

Hershy Stern, Esq.
KASOWITZ, BENSON, TORRES LLP
1633 Broadway
New York, NY 10019
HStern@Kasowitz.com

      Re:    Civil Action No. 20-cv-1228-CFC-JLH (D. Del.)
              *WSOU v. Xilinx, Inc.*:  Summary of Meet and Confer

Dear Counsel:

      We write following up on the parties' November 18, 2021 meet and confer call concerning Xilinx's responses to WSOU's First Set of Requests for Production and First Set of Interrogatories, as well as the deficiencies in WSOU's infringement contentions.  This letter does not provide an exhaustive summary of the parties' discussion, and we continue to refer WSOU to my November 11, 2021 letter regarding Xilinx's discovery responses ("Xilinx Discovery Letter") and my November 11, 2021 letter outlining deficiencies in WSOU's infringement contentions (" Xilinx ICs Deficiency Letter").  Nevertheless, we write to provide further comments and to memorialize certain issues discussed during the call.

**I.    XILINX'S RESPONSES TO WSOU'S FIRST SET OF REQUESTS FOR PRODUCTION**

      As explained yesterday and in the Xilinx Discovery Letter, many of WSOU's RFPs are objectionable and improper.  We stand by the objections set forth in Xilinx's responses.  Nevertheless, Xilinx is not refusing to produce documents.  As reiterated yesterday, Xilinx already has produced over 43,000 pages of documents and is in the process of collecting additional documents for production.  In many instances, however, the scope of Xilinx's collection and production necessarily depends upon WSOU's willingness to narrow the scope of its RFPs, as well as to resolve the pending deficiencies with its infringement contentions.  These instances include where WSOU continues to improperly seek documents (i) regarding claims that have been dismissed such as its indirect infringement claims, (ii) for patents that it has not asserted in the case, (iii) for Xilinx products where it has not provided sufficient notice of its

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

infringement contentions and how those products allegedly meet the patent claims, and (iv) for broad non-technical document discovery not tied to the accused features and otherwise unlikely to yield relevant information.

As discussed yesterday, for the RFPs to which Xilinx has objected, Xilinx remains willing to discuss reasonable limits on discovery, and will consider any proposals to narrow the RFPs to a reasonable scope. That includes in particular for non-technical document requests, where Xilinx will produce marketing, sales, and other non-technical documents so long as the RFPs are narrowed to a reasonable scope, such as tying requests to the accused features or documents sufficient to show Xilinx's marketing for the accused products. To that end, and again as we requested during our meet and confer yesterday, we ask that WSOU provide any narrowing proposals in writing so that we may evaluate those proposals and consider them.

For RFPs seeking technical documents, we explained yesterday that Xilinx already has produced documents "sufficient to show" how each of the accused products works, and has made its production of core technical documents, as required under the Scheduling Order. So far, you have not identified, either in your letter or during yesterday's call, any deficiencies in Xilinx's technical document production, nor have you explained what additional technical documents WSOU requires to support its infringement theories. WSOU and its experts have reviewed Xilinx's production of core technical documents, and served both initial and amended infringement contentions. Therefore, we do not understand how WSOU's RFPs seeking "all documents" is relevant or proportional to the needs of the case. Indeed, you conceded yesterday that WSOU was not, in fact, seeking "all" documents and, instead, requested that Xilinx perform a reasonable search for technical documents. But Xilinx already has done so in the course of making its core technical document production—including, in particular, producing source code and schematics that show the operation of its products. And, in doing so, we did not limit the production to only those products that WSOU specifically charted, instead producing technical documents for all products that WSOU identified as allegedly-infringing. As we discussed yesterday, to the extent you believe specific deficiencies exist for specific products or technical documents, we are happy to consider any specific deficiencies that you may raise.

Further, as discussed in the Xilinx ICs Deficiency Letter, many of WSOU's complaints concerning Xilinx's discovery responses are intertwined with the deficiencies and lack of clarity in WSOU's own infringement contentions and definitions of the terms "Accused Functionalities," and "Accused Products." But again, we remain willing to consider and discuss any specific document and product issues that WSOU wants to raise with respect to Xilinx's production of technical documents.

As also discussed yesterday, there is no basis for WSOU to seek discovery concerning "Related Patents." Indeed, when we asked during yesterday's conference, WSOU did not

Hershy Stern
November 19, 2021
Page 3

identify any specific patents that it contended were "related" to the five asserted patents, much less articulate any basis for seeking discovery from Xilinx related to unasserted WSOU patents or what documents that WSOU was seeking from Xilinx.

For RFPs seeking non-technical documents, we are willing to perform a reasonable search provided that the RFPs are reasonable in scope, and as Xilinx has noted in its objections and during our conference yesterday. Xilinx already has produced sales information concerning the accused products, and we identified such information in our prior correspondence. As stated in our earlier correspondence and discovery responses, Xilinx is willing to produce documents sufficient to show its marketing of the accused products, as well as marketing documents that are specifically directed to the features that are accused of infringement, as we understand them and to the extent specifically disclosed in WSOU's infringement contentions. But WSOU's RFPs that seek all non-technical documents related in any way to the accused products—whether marketing information, sales information, customer information, agreements, or other types of non-technical documents—regardless of any relevance to the features that are actually accused of infringement, continue to be disproportionate, very burdensome, and seek irrelevant information. To the extent WSOU would like to discuss more reasonable and narrowed requests for non-technical documents that are specific to the accused features, we remain willing to consider and discuss such narrowed and specific requests and, again, we request WSOU make any narrowing proposals in writing for our consideration and to avoid any misunderstandings.

**II.     XILINX'S RESPONSES TO WSOU'S FIRST SET OF INTERROGATORIES**

We are pleased that the parties could resolve each of the issues raised in your October 29, 2021 letter concerning Xilinx's interrogatory responses. Below, we briefly summarize the parties' discussion and resolution concerning the interrogatories.

**A.     Interrogatory No. 1**

With respect to Interrogatory No. 1, we explained that Xilinx's response provides the information that Xilinx actually uses to identify and refer to the accused products, and that Xilinx does not use labels that match exactly those used in the interrogatory. The parties agreed that Xilinx will supplement its response to state that to the extent Xilinx has information about its products that correspond to the labels used by the interrogatory, Xilinx has provided that information in its response.

**B.     Interrogatory No. 2**

With respect to Interrogatory No. 2, we explained that Xilinx's response identifies nine individuals that are knowledgeable about the accused products. We appreciated WSOU's agreeing that it was sufficient for Xilinx to identify persons most knowledgeable of the accused

Hershy Stern
November 19, 2021
Page 4

products, and that WSOU was not seeking for Xilinx to identify every single individual that has ever worked on any of the accused products. You asked us to consider whether Xilinx would be willing to identify up to 3 persons most knowledgeable with respect to the allegedly infringing features of the accused products, as well as to identify the products each person worked on and to generally identify what aspect of the products on which each person worked. We agreed to do so including, in particular, to supplement Xilinx's response by providing this additional detail for those persons already identified in the response.

      C.      **Interrogatory No. 3**

With respect to Interrogatory No. 3, we explained that the source code computer already includes a list of the source code files, and that WSOU was able to ascertain the information sought by this interrogatory by inspecting that code, as its experts have already done. You agreed that this interrogatory was limited to seeking information about Xilinx's source code. You also agreed to consult with WSOU's technical experts who have reviewed that source code to determine whether there is any specific information that WSOU is seeking that is not already apparent from the source code computer and its source code files.

      D.      **Interrogatory No. 4**

With respect to Interrogatory No. 4, we reiterated that, after serving its discovery responses, Xilinx produced a responsive financial spreadsheet, at XILINX_WSOU-0043724. Xilinx agreed to supplement its response to specifically identify that document. You also asked us to inquire about whether the financial information provided in the spreadsheet extended back to 6 years before the filing date of the lawsuit. We will confirm that the information provided does go back to 6 years before the filing date of the lawsuit.

      E.      **Interrogatory No. 5**

With respect to Interrogatory No. 5, we explained that Xilinx's response to Interrogatory No. 1, which is incorporated by reference, provides the actual product release dates. We also explained that the spreadsheet responsive to Interrogatory No. 4, XILINX_WSOU-0043724, provides the relevant sales information. We also agreed to further consider your request concerning dates of first development, and offers for sale. However, as we explained yesterday and as it relates to financial information, our current belief is that actual sales spreadsheet information already provided is most responsive to this interrogatory.

      F.      **Interrogatory No. 8**

With respect to Interrogatory No. 8 regarding non-infringing alternatives, we explained that discovery is still in its early stages, including in particular that the Court has not yet

Hershy Stern
November 19, 2021
Page 5

construed the claims. We also stated that Xilinx would not be producing technical fact witnesses for depositions twice, to the extent that WSOU might seek later post-claim construction discovery on non-infringing alternatives. We appreciated your suggestions about attempting to find some compromise or middle ground regarding timing and supplementation regarding non-infringing alternatives, such as possible designation of 30(b)(6) witness to testify for Xilinx on non-infringing alternatives. We will remain available to further confer on this issue but, again, believe that this contention interrogatory remains premature, a position that you did not seem to dispute during our conference.

      G.      **Interrogatory No. 9**

With respect to Interrogatory No. 9, we explained that Xilinx provided a complete narrative response, and pointed out that WSOU did not identify any deficiencies in that aspect of the response. We appreciated your statement that there were no further concerns with Xilinx's response to this interrogatory at this time, particularly in light of that narrative response.

      H.      **Interrogatory No. 10**

With respect to Interrogatory No. 10, we again explained that Xilinx provided a complete narrative response. We also explained that Xilinx's response incorporates by reference its response to Interrogatory No. 6, which seeks information about Xilinx's non-infringement positions, and that Xilinx will be producing its invalidity contentions and associated prior art document production. We appreciated your statement that there were no further concerns with Xilinx's response to this interrogatory at this time.

**III.    WSOU'S INFRINGEMENT CONTENTIONS**

We also raised and summarized with you each of the issues raised in the Xilinx ICs Deficiency Letter. In particular, we reiterated that WSOU's indirect infringement claims were dismissed by the Court months ago and are no longer at issue in the case. WSOU's infringement contentions based on indirect infringement theories are therefore improper. As stated on our call yesterday, please let us know ***immediately in writing and no later than the COB on Monday, November 22*** that WSOU will withdraw those indirect infringement contentions from its ICs. If WSOU refuses to do so, we will seek relief from the Court to enforce its order dismissing the indirect infringement claims and striking any related infringement contentions or discovery requests by WSOU. Further, as discussed during our call yesterday, there is no change regarding Xilinx's prior search and representation to the Court that Xilinx did not have any pre-suit notice of the five asserted patents.

We also raised and summarized the other issues in the Xilinx ICs Deficiency Letter, including WSOU's accusations against what amounts to the prior art under the '838 patent,

Hershy Stern
November 19, 2021
Page 6

WSOU's boilerplate contentions concerning the doctrine of equivalents, WSOU's improper use of long string citations that do not provide notice of its infringement theories, WSOU's failure to identify each allegedly infringing feature in the accused products, and other deficiencies with respect to the '938, '971, '950, and '838 Patents. You explained that you would need to consult members of your team responsible for the technical aspects of the case. As discussed in the Xilinx ICs Deficiency Letter, we ask that WSOU drop its assertions of certain patents and claims, and against certain products, due to these deficiencies.

      We request a further meet and confer on Tuesday, November 23, to continue the parties' discussion concerning the Xilinx ICs Deficiency Letter, and ask that WSOU provide a written response to the Xilinx ICs Deficiency Letter before that time. Please be prepared at that time to fully state WSOU's positions concerning those issues and to otherwise address all issues discussed in the Xilinx ICs Deficiency Letter, so that we may seek relief from the Court as appropriate if the parties are unable to resolve those issues.

      Very truly yours,

      */s/ Jonathan McNeal Smith*

      Jonathan McNeal Smith