# EXHIBIT G

# JONES DAY

555 SOUTH FLOWER STREET, FIFTIETH FLOOR • LOS ANGELES, CA 90071.2300

TELEPHONE: +1.213.489.3939 • FACSIMILE: +1.213.243.2539

Direct Number: (213) 243-2559
jonathansmith@jonesday.com

469799-600016

December 14, 2021

VIA E-MAIL

Hershy Stern, Esq.
KASOWITZ, BENSON, TORRES LLP
1633 Broadway
New York, NY 10019
HStern@Kasowitz.com

      Re:    Civil Action No. 20-cv-1228-CFC-JLH (D. Del.)
              *WSOU v. Xilinx, Inc.*:  Xilinx's October 18, 2021 Discovery Responses

Dear Counsel:

      We write in response to your letter dated November 29, 2021 ("Stern Nov. 29 Letter"), following up on the parties' November 18, 2021 meet and confer call.  As is our usual practice, this letter addresses the most significant issues raised in the meet and confer and our prior correspondence, in an attempt to make further progress.  But to the extent we do not address any particular issue, it is not an indication that we agree with WSOU's position on that issue.

      We disagree with your characterizations of Xilinx's discovery responses and production of documents, and again refer you to my November 11, 2021 letter regarding Xilinx's discovery responses ("Xilinx Discovery Letter"), my November 11, 2021 letter outlining deficiencies in WSOU's infringement contentions ("Xilinx ICs Deficiency Letter"), and my November 19, 2021 letter summarizing the parties' November 18 meet and confer call ("Xilinx Nov. 19 M&C Letter").  We address below the issues raised in your latest Stern Nov. 29 Letter.

**I.    XILINX IS NOT REFUSING TO PRODUCE DOCUMENTS**

      As discussed during our November 18 meet and confer, as well as in the Xilinx Discovery Letter and Xilinx Nov. 19 M&C Letter, many of WSOU's discovery requests are objectionable as overbroad, disproportionate, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome on their face, and seek information unrelated to the claims and defenses.  This includes RFPs that are largely boilerplate and speculatively seek extensive and unnecessary discovery.  This also includes WSOU's objectionable definitions and requests for discovery on "Accused Products," "Accused Functionalities," "Related Products,"

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Hershy Stern
December 14, 2021
Page 2

and "Related Patents" (*see* Stern Nov. 29 Letter at 1)—which seek discovery on patents that WSOU has not asserted, products that WSOU has not accused or specifically charted, and functionalities that are not claimed or described as the invention in the Patents-in-Suit. (*See* Xilinx ICs Deficiency Letter.) In short, WSOU's discovery requests seek far more than "basic information" as the Stern Nov. 29 Letter (at 1) mistakenly asserts, and are not properly tailored to the particular issues in this case.

So too, the Stern Nov. 29 Letter's (at 1) mistaken assertions that "Xilinx has no intention of producing responsive relevant information for many [of] WSOU's discovery requests," that "Xilinx has refused to agree to produce responsive documents" in response to "requests that seek basic information concerning the Technical Documents," and other similar statements that Xilinx is refusing to produce documents are not accurate. (Stern Nov. 29 Letter at 1–2.) Quite the contrary, Xilinx already has produced more than 43,000 pages of documents that are responsive to WSOU's requests and that show how the accused products work. And, WSOU has cited many of those technical documents including source code in its ICs—despite now complaining that Xilinx has refused to produce documents, and yet at the same time asserting that WSOU is not obligated to produce further claim charts on other accused Xilinx products that have not yet been charted in its ICs (*see* Dec. 13 Letter from J. Smith to WSOU Counsel (memorializing the parties' Dec. 2 meet and confer on WSOU ICs deficiencies)).

Xilinx will continue to perform a reasonable investigation and search into responsive information and documents for the non-objectionable, non-privileged portions of WSOU's discovery requests, including as the parties continue to meet and confer on the proper scope of these requests. This includes doing so as WSOU narrows its RFPs to a proper scope. And, this includes doing so consistent with the Court's orders on discovery, such as its order that requires Xilinx to produce documents "sufficient to show how the accused product(s) work(s)," (Dkt. 63 ¶ 7(b)), but that does not require production of *all* technical documents or documents for products and features that are not accused of infringement.

We also disagree with your statement that "the parties acknowledged during the meet and confer that they were at an impasse and would have to seek guidance from the Court." (Stern Nov. 29 Letter at 2.) Indeed, the Stern Nov. 29 Letter (at 1) identifies at least RFP Nos. 2 and 34 as ones where there is supposedly an impasse, and yet, WSOU did not raise either of these RFPs in the original Stern Oct. 29 Letter, nor were they discussed during our meet and confer. As a result, these are new complaints. In any event, we reiterate that Xilinx is willing to consider revised RFPs that address the objections we have raised. (*See, e.g.*, Xilinx Nov. 19 M&C Letter at 2.) Moreover, we are considering your revised RFPs concerning technical documents from Section II of your letter, as further discussed in Section II, *infra*. But so far, WSOU has not provided any similarly revised, more narrowly tailored requests for technical documents that are the subject of Section I of your letter. And, as discussed in Section IV, *infra*, Xilinx also is

Hershy Stern
December 14, 2021
Page 3

investigating the production issues that WSOU has raised in Section IV of the Stern Nov. 29 Letter.

## II.    REQUESTS CONCERNING NON-TECHNICAL DOCUMENTS

As discussed during our meet and confer, as well as in our prior correspondence and RFP responses, Xilinx is willing to produce documents sufficient to show Xilinx's marketing of the accused products. Xilinx also is willing to search for and produce marketing documents specific to the accused features and functionalities of the accused products. Your Nov. 29 letter responds that "this is insufficient, and illogical as marketing materials specific to 'accused features,' . . . are not likely to exist." (Stern Nov. 29 Letter at 2.) ***But that is exactly the point—WSOU does not explain why its original overbroad, disproportionate, and burdensome marketing and other non-technical RFPs are warranted when they are unlikely to be tied to the accused features***. WSOU is not entitled to discovery of all marketing and other non-technical documents merely because most such documents likely are not specific to the accused features.

We appreciate that WSOU now has agreed to "narrow its requests to responsive documents, following a reasonable search of custodial data sources." (*Id.* at 3.) We understand that WSOU has identified six narrower categories of non-technical documents for which WSOU is proposing that Xilinx search its identified custodial sources. We are considering these further narrowed categories of non-technical documents, as further discussed below. Additionally, we disagree that Xilinx's disclosures are deficient. Nevertheless, we will consider your request that Xilinx update its disclosures to identify further persons or custodians related to categories (i)–(vi) of your letter. (*Id.* at 3.)

### A.    Narrowed Category Number 1:  Financial Documents

As discussed during our meet and confer, Xilinx already has produced financial information concerning the accused products. Accordingly, some of the information within this narrowed category has already been produced, and any statements that Xilinx is willing to produce certain information is not an admission that such information has not been produced yet.

To the extent not already done so, Xilinx is willing to search for and produce documents reflecting the actual sales, volume, gross revenue, and profit for sales of the accused products dating back 6 years prior to the date this lawsuit was filed, to the extent such documents exist and can be located pursuant to a reasonable search of the relevant custodian's documents or Xilinx's business records as kept in the ordinary course of business. In doing so, however, we are not conceding that this information is relevant to the claims and defenses, that it exists, or that it is otherwise related to the particular accused features and components.

Hershy Stern
December 14, 2021
Page 4

With respect to "itemized costs," it is unclear what WSOU is seeking, and in any event such costs do not appear to be relevant or necessary to the claims and defenses. Further, collecting all such costs for every accused Xilinx products would be overbroad, disproportionate, not reasonably calculated to lead to the discovery of admissible evidence, and unduly burdensome. As a result, Xilinx will not collect or produce "itemized costs" information absent further explanation from WSOU of what it seeks, why such information is relevant, and a reasonable narrowing of this category.

It is also unclear what "number of users" means. The sales information that Xilinx produced already reflects the number of units of the accused products that have been sold. To the extent WSOU is seeking information concerning the number of *people* who actually use the products Xilinx has sold, we are not aware that Xilinx keeps any such information in the ordinary course of business or that such information is within Xilinx's corporate knowledge. Xilinx's products are implemented in thousands of consumer devices sold in various industries. Xilinx therefore declines to produce this category of information. Further, we remind you once again that indirect infringement is not in this case.

With respect to "licensing revenue," it is unclear what WSOU is seeking. To the extent WSOU is seeking information concerning licensing revenue from patents that generally relate to Xilinx's products, it is not apparent why such revenue information is relevant to the claims and defenses in this action or otherwise discoverable.

With respect to "indirect revenue streams," it again is unclear what WSOU is seeking. In light of the financial information that WSOU has agreed to provide as discussed above, Xilinx declines to produce information on "indirect revenue streams," whatever this might mean.

Finally, it is also unclear what WSOU means by "Financial documents including . . . damages theories." To the extent WSOU is seeking documents supporting or related to Xilinx's rebuttal of WSOU's damages theories, Xilinx already has responded with respect to such information. (*See* Xilinx's Response to RFP No. 10.) Further, Xilinx will produce its rebuttal expert report on damages in the time and manner required by the Court's orders.

### B.   Narrowed Category Number 2:  Business and Marketing Documents

As reiterated above, Xilinx is willing to produce documents sufficient to show Xilinx's marketing of the accused products. Xilinx also is willing to perform a reasonable search for and produce marketing documents specific to the accused features and functionalities, to the extent any such documents might exist. To this end, Xilinx is willing to search for and produce marketing plans, reports, and presentations concerning the accused products, to the extent they exist and can be located pursuant to a reasonable search of the relevant custodian's documents.

Hershy Stern
December 14, 2021
Page 5

Xilinx also is willing to search for and produce documents reflecting advertising of or awards concerning the accused features or functionalities, to the extent they exist and can be located pursuant to a reasonable search of the relevant custodian's documents (or other equivalent internal Xilinx non-custodial sources), as well as documents sufficient to show any general advertising and awards related to the accused products.

With respect to projections, promotions, and recognitions, it is unclear what exactly WSOU is seeking or why such information would be relevant or proportional to the needs of this case. In light of the categories of documents that Xilinx has agreed to produce discussed above, Xilinx does not believe it is necessary to search for these additional documents, but it is willing to further meet and confer on this issue if WSOU would like to do so.

      C.      **Narrowed Category Number 3:  Documents Relating to Consumer or Industry Demand**

This narrowed category is still overbroad because it seeks documents concerning demand for the accused products generally and is not tied to the accused features. Nonetheless, Xilinx is willing to search for and produce documents sufficient to show the general demand for its accused products, as well as documents reflecting specific demand for the accused features or functionalities, to the extent they exist and can be located pursuant to a reasonable search of the relevant custodian's documents.

      D.      **Narrowed Category Number 4:  Licensing Policies**

Xilinx does not have either formal or informal licensing policies. (*See* Xilinx's Response to RFP No. 14, 29.) Further, to the extent this category seeks privileged information or work product, Xilinx will not produce such documents or information. Nevertheless, Xilinx is willing to search for and produce non-privileged license and settlement agreements that might be discoverable for purposes of damages in these Actions, to the extent they exist and can be located pursuant to a reasonable search. Xilinx is unclear what documents WSOU seeks regarding "royalty" or "joint venture agreement" documents, or why such documents would be discoverable here. As a result, Xilinx declines to search for or produce any such documents, to the extent they exist.

      E.      **Narrowed Category Number 5:  Organizational Charts**

This narrowed category is still overbroad because it concerns the Accused Products generally, rather than only those portions of Xilinx that relate to the accused features specifically. As explained above, the accused products are complex FPGAs that include many technologies that have nothing to do with the accused features. Further, Xilinx does not maintain organizational charts in the ordinary course of business. As a result, Xilinx does not have any

such documents to produce. However, WSOU is free to ask Xilinx witnesses who may testify at deposition about the organization and location of persons and groups with respect to the accused features of Xilinx's accused products, including their design and development.

### F.     Narrowed Category Number 6:  Competitive Intelligence

This supposedly narrowed category does not appear to be any narrower than WSOU's RFP No. 27. Accordingly, this category is objectionable for the same reasons provided in Xilinx's original response to that RFP. As one example, the category relates to the accused products generally, not the specific accused features or functionalities. Nevertheless, Xilinx is willing to perform a reasonable search of custodial records and to produce documents relating to competition concerning the accused features or functionalities, to the extent they exist and can be located pursuant to a reasonable search of the relevant custodian's documents.

### III.    WSOU'S INTERROGATORIES

We continue to assert our objections to WSOU's definitions of "Accused Functionalities," "Related Products," and "Related Patents." WSOU has not explained why these definitions or the discovery they seek are appropriate, and they remain objectionable for the reasons we have previously stated. Again, however, we reiterate that Xilinx has produced discovery for the Xilinx products that WSOU has specifically identified as accused products, and for the WSOU patents that WSOU has specifically asserted in this case. As a result, there is no deficiency in Xilinx's interrogatory responses, and none were discussed for those responses during our earlier meet and confer. As a result, there is no dispute or impasse to address with respect to these definitions and Xilinx's interrogatory responses. Instead, as discussed in the Xilinx Nov. 19 M&C Letter, as well as in the Stern Nov. 29 Letter (at 5–6), the parties were able to resolve WSOU's complaints about Xilinx's interrogatory responses. For the resolution of those complaints, I again refer to the Xilinx Nov. 29 M&C Letter.

Regarding specifically Interrogatory No. 1, we reiterate that, as stated in its objections, "Xilinx understands the terms 'Accused Products' and 'Accused Product' to mean only the Xilinx products that are the subject of the claim charts attached to WSOU's complaint in each Action." (Xilinx's Responses to WSOU's First Set of Interrogatories at 2.) Based on that understanding, and its objections, Xilinx's response to Interrogatory No. 1 included information concerning the specific products that were included in the charts attached to WSOU's complaints. Nevertheless, in light of WSOU's infringement contentions that were served after the deadline for Xilinx's interrogatory responses, and the parties' subsequent correspondence and meet and confers, Xilinx agrees to provide a supplemental response to Interrogatory No. 1 to include information concerning products that were charted in WSOU's infringement contentions as amended on November 8, 2021. By agreeing to provide this supplementation, Xilinx does not

Hershy Stern
December 14, 2021
Page 7

concede that WSOU's infringement contentions for the additional products are without deficiencies, and we continue to refer you to the Xilinx ICs Deficiency Letter.

### IV. XILINX HAS PRODUCED CORE TECHNICAL DOCUMENTS AS REQUIRED BY THE SCHEDULING ORDER

Xilinx has not, as you contend, "fail[ed] to comply with the Court's Scheduling Order (Dkt. 63) to produce core technical documents for each accused product." (Stern Nov. 29 Letter at 1; *see also id.* at 5-6.) Xilinx has produced "core technical documents related to the accused product(s), sufficient to show how the accused product(s) work(s)," as expressly required by the Scheduling Order (D.I. 63 ¶ 7(b)). It is telling that your letter could identify only a few purported issues with Xilinx's production of more than 43,000 pages, as well as its source code production. (Stern Nov. 29 Letter at 6.)

Nonetheless, as stated during our meet and confer, we always are willing to consider any specific production issues that WSOU might raise, particularly as it relates to inadvertent or administrative errors regarding Xilinx's production. We have performed a preliminary investigation into the specific issues raised in Section IV of your letter (at 5-6). As an initial matter, Xilinx disagrees that the production of source code or schematics is always required to satisfy the obligation to produce core technical documents, and Xilinx has produced both source code and schematics for its products. Nevertheless, Xilinx is in the process of collecting additional technical documents (e.g., relating to the Spartan devices), and will produce those documents as soon as they are available. Additionally, in some instances, there were inadvertent production errors where certain underlying files were not produced (e.g, the absence of standard cell libraries resulting in certain reproduction errors with Xilinx schematics), which we will of course address and correct as soon as possible.

None of WSOU's complaints demonstrate that Xilinx has failed to comply with its obligation to produce core technical documents for the accused Xilinx products. Instead, as shown by Xilinx's explanations above for the few issues that your letter raises, Xilinx has substantially complied with this obligation, and any residual issues are due to minor inadvertent production issues that Xilinx will seek to correct.

Very truly yours,

*/s/ Jonathan McNeal Smith*

Jonathan McNeal Smith