# EXHIBIT N

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | ) ) ) | |
| | ) | C.A. No. 20-cv-1228-CFC-JLH |
| Plaintiff, | ) ) | C.A. No. 20-cv-1229-CFC-JLH C.A. No. 20-cv-1231-CFC-JLH |
| v. | ) ) | C.A. No. 20-cv-1232-CFC-JLH C.A. No. 20-cv-1233-CFC-JLH |
| XILINX, INC., | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT XILINX, INC.'S FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFF WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT'S FIRST SET OF INTERROGATORIES (NOS. 1-10)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Xilinx, Inc. ("Xilinx") objects and responds to Plaintiff WSOU Investments, LLC d/b/a/ Brazos Licensing and Development's ("WSOU" or "Plaintiff") First Set of Interrogatories (Nos. 1-10). In providing information in response to these requests, Xilinx does not concede the relevancy, materiality, or admissibility of any such information and reserves all objections. Xilinx further states that its investigation continues, and it reserves the right to amend and supplement these responses as additional information is identified.

**GENERAL OBJECTIONS**

1.      Xilinx objects to each definition, instruction, or Interrogatory to the extent that they are inconsistent with or seek to impose a duty beyond that imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and/or the Orders or instructions of this Court.

2.      Xilinx objects to each definition, instruction, or Interrogatory to the extent that they seek information or documents protected by the attorney-client privilege, work-product

immunity, the common-interest privilege (also known as the joint-defense privilege), the privilege afforded non-testifying experts by Federal Rule of Civil Procedure 26(b), Federal Rule of Evidence 501, and/or any other applicable common law or statutory privileges, immunities or doctrines.  Such information shall not be provided intentionally in response to the Interrogatories.  Should any response by Xilinx include such privileged or protected information, such disclosure shall not constitute a waiver of any applicable privilege or immunity or of any other ground for objecting to discovery with respect to such response, or of Xilinx's right to object during this litigation or otherwise to the use of such response.  Insofar as these Interrogatories seek the identification of specific documents, Xilinx will identify non-privileged documents, to the extent they exist, can be located pursuant to a reasonable and diligent search, and are responsive to the substance of the Interrogatory.

3.       Xilinx objects to Plaintiff's definition of the terms "Accused Products" and "Accused Product" (Definition No. 7) because they are overbroad, unduly burdensome, and seek information that is not relevant to any claim or defense in this case to the extent they purport to encompass products for which WSOU has not provided a claim chart or infringement contentions purporting to compare one or more claims of the Patents-in-Suit to one or more features of a Xilinx product.  The burden and expense of complying with the scope of Interrogatories seeking information concerning "Accused Products" as defined by WSOU far outweighs any likely benefit of obtaining that discovery, and therefore is not proportional to the needs of the case.  For the purpose of responding to these Interrogatories, Xilinx understands the terms "Accused Products" and "Accused Product" to mean only the Xilinx products that are the subject of the claim charts attached to WSOU's complaint in each Action.  Xilinx reserves the

right to amend and supplement these responses to the extent WSOU provides infringement claim charts relating the asserted claims to other Xilinx products.

4.     Xilinx objects to Plaintiff's definition of the term "Accused Functionalities" (Definition No. 8) as overbroad, unduly burdensome, not proportionate to the needs of the case, and not relevant to any claim or defense to the extent it does not accurately portray the claims of the Patents-in-Suit.  For the purpose of responding to these Interrogatories, Xilinx understands the term "Accused Functionalities" to mean the components of the Xilinx products that WSOU contends are covered by the asserted claims of the Patents-in-Suit.

5.     Xilinx objects to Plaintiff's definition of the term "Communication" (Definition No. 11) as overbroad and unduly burdensome to the extent it conflicts with the Parties' Stipulation and Order Regarding Discovery, Including Discovery of Electronically Stored Information (ESI) and seeks information the Parties have agreed not to provide.  For the purpose of responding to these Interrogatories, Xilinx understands the term "Communication" not to include "electronic mail message[s]" or materials not preserved and not required to be preserved per the Parties' Stipulation and Order Regarding Discovery, Including Discovery of Electronically Stored Information (ESI).

6.     Xilinx objects to Plaintiff's definition of the terms "Concern," "Concerning," "Relate," "Related" and "Relating" (Definition No. 12) as vague, ambiguous, overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and disproportionate to the needs of the case.  For the purpose of responding to these Interrogatories, Xilinx understands each of "Concern," "Concerning," "Relate," "Related" and "Relating" as having its plain and ordinary meaning when responding to these Interrogatories.

7.      Xilinx objects to Plaintiff's definition of the term "Describe" (Definition No. 14) as vague, ambiguous, overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and disproportionate to the needs of the case.  For the purpose of responding to these Interrogatories, Xilinx understands the term "Describe" as having its plain and ordinary meaning.

8.      Xilinx objects to Plaintiff's definition of the terms "Document" and "Documents" (Definition No. 15) as overbroad and unduly burdensome to the extent it conflicts with the Parties' Stipulated Protective Order and Stipulation and Order Regarding Discovery, Including Discovery of Electronically Stored Information (ESI) and seeks information the Parties have agreed not to provide.  For the purpose of responding to these Interrogatories, Xilinx understands the terms "Document" and "Documents" not to include "electronic mail message[s]" or information not preserved and not required to be preserved per the Parties' Stipulation and Order Regarding Discovery, Including Discovery of Electronically Stored Information (ESI).  To the extent the terms "Document" and "Documents" purport to include "source code," Xilinx will identify source code only under the limitations provided for by the Parties' Stipulated Protective Order.

9.      Xilinx objects to Plaintiff's definition of the term "Identify" (Definition No. 16) as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it conflicts with the Parties' Stipulated Protective Order and Stipulation and Order Regarding Discovery, Including Discovery of Electronically Stored Information (ESI).  Insofar as these Interrogatories seek the identification of specific documents, Xilinx will identify only non-privileged documents, to the extent they exist and are responsive to the substance of the Interrogatory.

10.     Xilinx objects to Plaintiff's definition of the term "Infringe" (Definition No. 17) as overbroad, unduly burdensome, not proportional to the needs of the case, and not relevant to any claim or defense to the extent it purports to include any form of infringement under 35 U.S.C. § 271 that is not at issue in these Actions.  Following the Court's order dismissing Plaintiff's claims of indirect infringement, Xilinx understands the term "Infringe" to mean only direct infringement for the purpose of responding to these Interrogatories.

11.     Xilinx objects to Plaintiff's definition of the terms "Product" and "products" (Definition No. 20) as overbroad and unduly burdensome to the extent it purports to encompass products for which WSOU has not provided a claim chart or infringement contentions purporting to compare one or more claims of the Patents-in-Suit to one or more features of a Xilinx product. For the purpose of responding to these Interrogatories, Xilinx understands the terms "Product" and "products" to mean only the Xilinx products that are the subject of the claim charts attached to WSOU's complaint in each Action.  Xilinx reserves the right to amend and supplement these responses to the extent WSOU provides infringement claim charts relating the asserted claims to other Xilinx products.

12.     Xilinx objects to Plaintiff's definition of the terms "Related Patents" and "Related Patent Applications" (Definition No. 21) as overbroad and unduly burdensome to the extent it purports to include patents or patent applications that WSOU has not expressly identified as related to any of the Patents-in-Suit.  For the purpose of responding to these Interrogatories, Xilinx understands the terms "Related Patents" and "Related Patent Applications" to mean only the patents and patent applications expressly identified in Plaintiff's Identification of Accused Products and Accused Products, served September 1, 2021.

13.     Xilinx objects to Plaintiff's definition of the terms "WSOU" and "Plaintiff" (Definition No. 22) as overbroad and unduly burdensome to the extent it purports to place a duty on Xilinx to investigate and or determine WSOU's "officers, directors, employees, partners, corporate parent, subsidiaries or affiliates."  For the purpose of responding to these Interrogatories, Xilinx understands the terms "WSOU" and/or "Plaintiff" to mean WSOU Investments, LLC d/b/a Brazos Licensing and Development.

14.     Xilinx objects to Plaintiff's definition of the terms "Xilinx," "Defendant," "You" and "Your" (Definition No. 23) as overbroad and unduly burdensome to the extent that any of these terms purport to include parents, subsidiaries, affiliates and/or any other entities that are not named as defendants in this case.  For the purpose of responding to these Interrogatories, Xilinx understands the terms "Xilinx," "Defendant," "You" and "Your" to mean Xilinx, Inc.

15.     Xilinx objects to each definition, instruction, or Interrogatory as overly broad and unduly burdensome to the extent that they seek information and/or documents that are unlimited in time or include a time frame beyond that which is relevant to this litigation.  Subject to and without waiving any of its objections, to the extent any responsive, non-privileged information exists, Xilinx will provide information in existence within six years prior to the date of filing of the Complaint by WSOU.

16.     Xilinx objects to each definition, instruction, or Interrogatory to the extent they seek "all" information that refers or relates to a particular subject if it was intended by WSOU to impose any requirement upon Xilinx to seek information from all of its employees, entities, affiliates, customers, and/or suppliers in a manner that is inconsistent with the provisions of Rule 26(b)(2) of the Federal Rules of Civil Procedure and/or the Parties' Stipulation and Order Regarding Discovery, Including Discovery of Electronically Stored Information (ESI).  In

seeking documents, Xilinx expects to make inquiry of persons who are reasonably likely to have such documents and of other persons identified by these persons.  In response to these Interrogatories, and assuming no other objections or privileges apply, Xilinx will provide responses after a reasonable inquiry.

17.     Xilinx objects to each definition, instruction, or Interrogatory to the extent that they seek information that Xilinx will not have until after WSOU provides its infringement claim charts, which are not due to be served under the Scheduling Order until October 27, 2021. Xilinx reserves the right to supplement any response in due course after Xilinx has had an opportunity to review, among other things, WSOU's infringement claim charts.

18.     Xilinx's responses to these Interrogatories are made without in any way waiving (a) the right to object on the grounds of competency, relevancy, materiality, privilege or admissibility as evidence for any purpose in any subsequent proceeding in, or the hearing of, this action or any other action; and (b) the right to object on any grounds to other discovery requests involving or relating to the subject matter of these Interrogatories.  Xilinx reserves all rights to contest and/or object to admissibility at trial of Xilinx's responses to Plaintiff's Interrogatories and any information, document or thing provided by Xilinx.

19.     A response by Xilinx to any Interrogatory that has been objected to in whole or in part is not a waiver of the objection.  By asserting various objections, Xilinx does not waive other objections that may become applicable.

20.     Xilinx's responses are based on its present knowledge, information and belief, as well as its present understanding of each Interrogatory.  Xilinx is continuing its investigation to obtain information responsive to these Interrogatories.  The following responses are provided without prejudice to Xilinx's right to present information subsequently discovered or determined

to be responsive and to amend or otherwise supplement these responses consistent with the Federal Rules of Civil Procedure, the Local Rules for the District of Delaware, the Scheduling Order, and/or the Parties' Stipulation and Order Regarding Discovery, Including Discovery of Electronically Stored Information (ESI).

21.     All of the foregoing General Objections are incorporated by reference below into each separate response.  Subject to and without waiving these General Objections, Xilinx responds and specifically objects to Plaintiff's Interrogatories as follows:

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify, by product name, part number, internal name, internal model number, external model number, and any other designation, all products and services that perform or enable any aspect of the Accused Functionalities, including but not limited to the Accused Products and Related Products, and for each, describe in detail how it was developed and its period of use.

### RESPONSE:

Xilinx incorporates by reference its General Objections above.  In addition to the General Objections, Xilinx specifically objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is not relevant to any claim or defense in this case to the extent it is unlimited with respect to time or geography, to the extent the term "Accused Products" purports to include anything other than the Xilinx products that are the subject of the claim charts attached to WSOU's complaint filed in each Action, and to the extent the term "Accused Functionalities" purports to mean anything other than the components of the Xilinx products that WSOU contends are covered by the asserted claims of the Patents-in-Suit.  The burden and expense of complying with the scope of the Interrogatory as drafted far outweighs any likely benefit of obtaining that discovery, and therefore is not proportional to the needs of

the case.  Xilinx also objects that the term "Related Products" is undefined and renders this Interrogatory vague and ambiguous.  Xilinx also objects to the terms "describe" and "identify" and specifically incorporates its objections to Plaintiff's Definition Nos. 14 and 16 discussed above.  Xilinx also objects to this Interrogatory as containing multiple discrete subparts.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx responds to the non-objectionable scope of this Interrogatory as follows:

The product family, internal name, device name for the Accused Products, *i.e.*, Xilinx products that are the subject of the claim charts attached to WSOU's complaint filed in each Action are set forth below:







Pursuant to Fed. R. Civ. P. 33(d), Xilinx produced documents from which a response to the nonobjectionable scope of this Interrogatory can be further derived, including at least at XILINX_WSOU-0011234-83; XILINX_WSOU-0017167-78; XILINX_WSOU-0018315-25; XILINX_WSOU-0037863-65; XILINX_WSOU-0040483-85; XILINX_WSOU-0040469-71. Xilinx further responds that its investigation into information responsive to the non-objectionable scope of this Interrogatory is ongoing, and Xilinx will supplement its response when additional information is obtained.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving the foregoing general and specific objections, Xilinx supplements its response to the non-objectionable scope of this Interrogatory as follows:

The product family, internal name, and device name for the Accused Products are set forth below:









Pursuant to Fed. R. Civ. P. 33(d), Xilinx further identifies the following document from which information responsive to this Interrogatory can be derived: XILINX_WSOU-0043724.

**INTERROGATORY NO. 2:**

For each Accused Product, Related Product, and product identified in response to Interrogatory No. 1, identify all Persons and entities that developed, designed, coded, planned, or otherwise contributed to the Accused Functionalities as implemented in each Accused Product, Related Product, and product identified in response to Interrogatory No. 1; for each Person or entity identified, describe the nature of the work or services performed, including relevant dates and time periods.

**RESPONSE:**

Xilinx incorporates by reference its General Objections above.  In addition to the General Objections, Xilinx specifically objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is not relevant to any claim or defense in this case to the extent it is unlimited with respect to time or geography, to the extent it seeks the identity of "all Persons and entities that developed, designed, coded, planned, or otherwise contributed to the Accused Functionalities as implemented in each Accused Product, Related Product, and product," to the extent the terms "Accused Products" or "product" purport to include anything other than the Xilinx products that are the subject of the claim charts attached to WSOU's complaint filed in each Action, and to the extent the term "Accused Functionalities" purports to mean anything other than the components of the Xilinx products that WSOU contends are covered by the asserted claims of the Patents-in-Suit.  The burden and expense of complying with the scope of the Interrogatory as drafted far outweighs any likely benefit of obtaining that discovery, and therefore is not proportional to the needs of the case.  Xilinx also objects that the term "Related Products" is undefined and renders this Interrogatory vague and ambiguous. Xilinx also objects to the terms "describe" and "identify" and specifically incorporates its

objection to Plaintiff's Definition Nos. 14 and 16 discussed above.  Xilinx also objects to this Interrogatory as containing multiple discrete subparts.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx responds to the non-objectionable scope of this Interrogatory as follows:

Xilinx identifies the below persons with knowledge of the Accused Functionalities, *i.e.*, the components of the Xilinx products that WSOU contends are covered by the asserted claims of the Patents-in-Suit:



**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiving the foregoing general and specific objections, Xilinx supplements its response to the non-objectionable scope of this Interrogatory as follows:

Xilinx identifies the below persons with knowledge of the Accused Products, the nature of work or services performed with respect to those products, and the dates of their employment at Xilinx:





**INTERROGATORY NO. 3:**

For each Accused Product, Related Product, and product identified in response to Interrogatory No. 1, identify all source code files, modules, projects, libraries, collections, compilations, and repositories related to the Accused Functionalities as implemented in each.

**RESPONSE:**

Xilinx incorporates by reference its General Objections above.  In addition to the General Objections, Xilinx specifically objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is not relevant to any claim or defense in this case to the extent it is unlimited with respect to time or geography, to the extent it seeks the identity of "all source code files, modules, projects, libraries, collections, compilations, and repositories related to the Accused Functionalities," to the extent the terms "Accused Products" or "product" purport to include anything other than the Xilinx products that are the subject of the claim charts attached to WSOU's complaint filed in each Action, and to the extent the term "Accused Functionalities" purports to mean anything other than the components of the Xilinx products that WSOU contends are covered by claims of the Patents-in-Suit.  The burden and expense of complying with the scope of the Interrogatory as drafted far outweighs any likely benefit of obtaining that discovery, and therefore is not proportional to the needs of the case.  Xilinx also objects that the term "Related Products" is undefined and renders this Interrogatory vague and ambiguous. Xilinx also objects to the terms "related to" and "identify" and specifically incorporates its objection to Plaintiff's Definition Nos. 12 and 16 discussed above.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx responds to the non-objectionable scope of this Interrogatory as follows:

Pursuant to Fed. R. Civ. P. 33(d), Xilinx has made available a computer containing relevant source code files and schematics for the Accused Products from which a response to the nonobjectionable scope of this Interrogatory can be further derived.

**INTERROGATORY NO. 4:**

Separately, for each Accused Product, Related Product, and product identified in response to Interrogatory No. 1, state Your actual or projected U.S. monthly (or quarterly if

monthly does not exist, or annual if neither monthly nor quarterly exist) sales volume, gross revenue, average revenue, operating revenue, net revenue, gross profit, operating profit, net profit, profit margin, the country/countries in which the sale was made, and costs (including costs of sales) generated from November 2014 through the expiration of the Patents-in-Suit.

**RESPONSE:**

Xilinx incorporates by reference its General Objections above.  In addition to the General Objections, Xilinx specifically objects to this Interrogatory because it is overbroad, unduly burdensome, including because Xilinx does not maintain certain information requested and/or in the format requested in its ordinary course of business.  Xilinx objects to providing information in substance or in format that is unduly burdensome for it to ascertain.  Xilinx further objects to this Interrogatory to the it extent it seeks information that is not relevant to any claim or defense in this case, including but limited to, no limitation on geography and products that are not the subject of the claim charts attached to WSOU's complaint filed in each Action.  Xilinx further objects that the phrase "actual or projected U.S. monthly … sales volume, gross revenue, average revenue, operating revenue, net revenue, gross profit, operating profit, net profit, profit margin, the country/countries in which the sale was made, and costs (including costs of sales)" is undefined and renders this Interrogatory vague and ambiguous.  The burden and expense of complying with the scope of the Interrogatory as drafted far outweighs any likely benefit of obtaining that discovery, and therefore is not proportional to the needs of the case.  Xilinx also objects to the interrogatory where it solicits information that will be the subject of expert testimony.  Xilinx also objects that the term "Related Products" is undefined and renders this Interrogatory vague and ambiguous.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx responds to the non-objectionable scope of this Interrogatory as follows:

Pursuant to Fed. R. Civ. P. 33(d), Xilinx has and/or will produce documents from which a response to the non-objectionable scope of this Interrogatory can be further derived.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.  4:**

Subject to and without waiving the foregoing general and specific objections, Xilinx supplements its response to the non-objectionable scope of this Interrogatory as follows:

Pursuant to Fed. R. Civ. P. 33(d), Xilinx identifies the following document from which a response to the non-objectionable scope of this Interrogatory can be further derived: XILINX_WSOU-0043724.

**INTERROGATORY NO. 5:**

Separately, for each Accused Product, Related Product, and product identified in response to Interrogatory No. 1, identify the earliest date each was developed, and the date each was (1) sold, (2) offered for sale, or (3) otherwise made available to any customers and/or consumers by You.

**RESPONSE:**

Xilinx incorporates by reference its General Objections above.  In addition to the General Objections, Xilinx specifically objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is not relevant to any claim or defense in this case to the extent the terms "Accused Products" or "product" purport to include anything other than the Xilinx products that are the subject of the claim charts attached to WSOU's complaint filed in each Action.  The burden and expense of complying with the scope of the Interrogatory as drafted far outweighs any likely benefit of obtaining that discovery, and therefore is not

proportional to the needs of the case.  Xilinx also objects that the term "Related Products" is undefined and renders this Interrogatory vague and ambiguous.  Xilinx also objects to the term "identify" and specifically incorporates its objection to Plaintiff's Definition No. 16 discussed above.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx responds to the non-objectionable scope of this Interrogatory as follows:

Information responsive to this Interrogatory is included in responses to Interrogatory Nos. 1 and 4.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Subject to and without waiving the foregoing general and specific objections, Xilinx supplements its response to the non-objectionable scope of this Interrogatory as follows:

Information responsive to this Interrogatory is included in the First Supplemental Response to Interrogatory No. 1.  Pursuant to Fed. R. Civ. P. 33(d), Xilinx identifies the following document from which information responsive to this Interrogatory can be derived: XILINX_WSOU-0043724.

**INTERROGATORY NO. 6:**

For each asserted claim that You contend is not infringed, set forth in detail (per claim element basis and per Accused Product basis) the factual and legal basis for Your contention of non-infringement.

**RESPONSE:**

Xilinx incorporates by reference its General Objections above.  In addition to the General Objections, Xilinx specifically objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, attorney work product immunity, the common interest

privilege, or any other applicable privilege or immunity against disclosure. Xilinx also objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is not relevant to any claim or defense in this case to the extent the term "Accused Products" purports to include anything other than the Xilinx products that are the subject of the claim charts attached to WSOU's complaint filed in each Action. The burden and expense of complying with the scope of the Interrogatory as drafted far outweighs any likely benefit of obtaining that discovery, and therefore is not proportional to the needs of the case. Xilinx also objects to this Interrogatory as a premature contention Interrogatory to the extent it conflicts with this Court's Scheduling Order, at least because WSOU has not yet served its initial claim charts.

Additionally, any non-infringement analysis depends on claim construction, which is a question of law reserved for the Court. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). In submitting this Interrogatory response, Xilinx does not waive or relinquish any arguments with respect to any claim scope or construction on which the Court has not ruled. As discovery remains ongoing, depositions have not occurred, and claims have not been construed, this response is preliminary. Xilinx thus reserves the right to amend and supplement this response.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx responds to the non-objectionable scope of this Interrogatory as follows:

**U.S. Patent No. 9,312,838**

WSOU has not met its burden of showing that the Accused Products infringe claim 1 of the '838 Patent. For example, WSOU fails to show that the Accused Products comprise "first and second clocks operable to generate first and second input clock signals, respectively, wherein the first and second input clock signals are asynchronous in relation to one another."

WSOU asserts that the Accused Products include a "phase-frequency detector (PFD) in the PLL [that] is equipped to compare two asynchronous signals," but fails to identify "first and second input clock signals [that] are asynchronous in relation to one another."

As another example, WSOU fails to show that the Accused Products comprise "a first edge detector configured to receive the first input clock signal, the first edge detector operable to detect a rising edge of the first input clock signal and to generate a first enable signal," and "a second edge detector configured to receive the second input clock signal, the second edge detector operable to detect the rising edge of the second input clock signal and to generate a second enable signal."  WSOU asserts that the Accused Products comprise "two input MUXes (Multiplexers)," but fails to identify a "first edge detector" and a "second edge detector" that respectively "generate a first enable signal" and "generate a second enable signal."

As another example, WSOU fails to show that the Accused Products comprise "a dual clock generator configured to receive the first adjusted enable signal and the second enable signal, and in response operable to generate a reference clock signal and transmit the reference clock signal over a single conductor."  WSOU asserts that the Accused Products include "signals … sent out" from "a voltage-controlled oscillator (VCO)," but fails to identify any such signals that are "a reference clock signal."

**U.S. Patent No. 7,613,938**

WSOU has not met its burden of showing that the Accused Products infringe claim 13 of the '938 Patent.  For example, WSOU fails to show that the Accused Products are "a circuit card."  WSOU asserts that the Accused Products are "an evaluation kit" that is "a raw circuit card," but fails to identify Accused Products that are "a circuit card" as recited by the claim.

As another example, WSOU fails to show that the Accused products comprise "a switch responsive to a command received from the controller, for causing electrical power to at least one device to be decoupled therefrom for a predetermined period of time, and an electrical power device, operable independent of the controller, that causes electrical power to the at least one device and the controller to be restored after the predetermined time period if the electrical power was also decoupled from the controller."  WSOU asserts that a "PMU (i.e., switch) receives a request from cortex R5 processor (i.e., controller)," and that the "PMU (i.e., an electrical power device, operable independent of the controller) is responsible for providing power to the circuitry," but fails to identify a PMU that is "a switch" and that it is also "an electrical device, operable independent of the controller" as recited by the claim.

**U.S. Patent No. 7,068,950**

WSOU has not met its burden of showing that the Accused Products infringe claim 17 of the '950 Patent.  For example, WSOU fails to show that Xilinx performs "a method of reducing misalignment between a carrier signal and a data signal."  WSOU alleges that the Accused Products receive and combine "two or more signal frequencies," but fails to identify "a carrier signal and a data signal."  WSOU also alleges that the Accused Products perform an ACLR measurement "to assess the misalignment of the data and carrier signals" and that "the multi-mode clock manager (MMCM) within the Ultrascale+ will attempt to reduce it through phase shifting," but fails to identify the steps of performing an ACLR measurement to assess "misalignment" and introducing a phase shift for "reducing misalignment."

As another example, WSOU fails to show that Xilinx performs the step of "i) analyzing spectral power of a data-modulated signal corresponding to the carrier and data signals, the spectral power being in a spectral band corresponding to a spectral null of the data-modulated

signal." WSOU asserts that the Accused Products "characterize[ ] the performance of RF-sampling data by using an adjacent channel leakage ratio (ACLR) to characterize the ratio of modulated signal power versus power emitted or leaked into adjacent channels of the communication system," but fails to identify performing an ACLR measurement to satisfy the step of "analyzing spectral power of a data-modulated signal corresponding to the carrier and data signals."

As another example, WSOU fails to show that Xilinx performs the step of "(ii) introducing a phase shift between the data signal and a clock signal based on the analysis, wherein the carrier signal is based on the clock signal." WSOU asserts that the Accused Products include "a mixed-mode clock manager (MMCM) to dynamically change the clock output frequency" and that "[t]he clock outputs are then used for possible phase-shifting within the MMCM," but fails to identify performing the step of "introducing a phase shift between the data signal and a clock signal based on the analysis."

**U.S. Patent No. 7,903,971**

WSOU has not met its burden of showing that the Accused Products infringe claim 1 of the '971 Patent. For example, WSOU fails to show that Xilinx performs "a method of operating a passive optical network comprising an optical line termination being connected via a plurality of optical fibers to a plurality of network terminations." WSOU asserts that the Accused Products "enable new optics" and "operate[ ] various types of PON (passive optical network) by implantation in different network entities," but fails to identify "being connected via a plurality of optical fibers to a plurality of network terminations."

As another example, WSOU fails to show that Xilinx performs "the step of generating an optical signal for transmission over one of the plurality of optical fibers, the optical signal

including a plurality of signal states, each signal state corresponding to a different sequence of bits." WSOU asserts that the Accused Products "support 58G PAM 4 technology" and "support different signalling rate (i.e. signal states) and different sequence of bits," but fails to identify the step of "generating an optical signal."

As another example, WSOU fails to show that Xilinx performs the step of generating an optical signal "wherein the plurality of signal states and the number of bits in each sequence are increased based on a transmission quality of the optical signal on the one of the plurality of optical fibers." WSOU asserts that the Accused Products are "programmable" and "the number of bits in each sequence can be increased … by [the] designer of the Optical Network," but fails to identify increasing "the number of bits in each sequence" "based on a transmission quality."

**U.S. Patent No. 6,784,653**

WSOU has not met its burden of showing that the Accused Products infringe claim 7 of the '653 Patent. For example, WSOU fails to show that Xilinx performs a "method of evaluating a binary input signal of a transmission link and of recognizing the edges of an eye diagram of the input signal, wherein a decision circuit is directly connected to an integrator." WSOU asserts that the "Error-detection, screening and de-serialization block" of the PMA architecture is a "decision circuit" and that an "Error Counter block" in the PCS architecture is an "integrator," but fails to identify an accused "decision circuit" that is "directly connected to an integrator."

As another example, WSOU fails to show that Xilinx performs "the steps of providing the input signal and a variable threshold to the decision circuit and using an output signal of the integrator to recognize the edges of the eye diagram." WSOU asserts that "the Rx input (or input signal) and the HORZ_OFFSET (Horizontal Offset) and VERT_OFFSET (Vertical Offset) signals (or variable threshold signals) [are] eventually fed to the" accused decision circuit, but

fails to identify "providing the input signal … to the decision circuit."  WSOU also asserts that the "Output signal (*es_error_count*)" of the accused integrator "provides information about the edges of the Eye diagram," but fails to identify "using an output signal of the integrator to recognize the edges of the eye diagram."

* * *

Pursuant to Fed. R. Civ. P. 33(d), Xilinx produced documents from which a response to the non-objectionable scope of this Interrogatory can be further derived, including at least at the bates ranges in the below table.  Xilinx further responds that, pursuant to Fed. R. Civ. P. 33(d), it has made available a computer containing relevant source code files and schematics for the Accused Products from which a response to the nonobjectionable scope of this Interrogatory can be further derived.  Xilinx further responds that its investigation into information responsive to the non-objectionable scope of this Interrogatory is ongoing, and Xilinx will supplement its response when additional information is obtained.

| Product Name | Bates Range |
|---|---|
| Kintex UltraScale FPGA | XILINX_WSOU-0010634 - XILINX_WSOU-0011283 <br> XILINX_WSOU-0012802 - XILINX_WSOU-0012856 <br> XILINX_WSOU-0014134 - XILINX_WSOU-0018199 |
| Kintex UltraScale+ FPGA | XILINX_WSOU-0010634 - XILINX_WSOU-0012721 <br> XILINX_WSOU-0014306 - XILINX_WSOU-0015789 <br> XILINX_WSOU-0018200 - XILINX_WSOU-0018340 |
| Virtex UltraScale FPGA | XILINX_WSOU-0010634 - XILINX_WSOU-0011283 <br> XILINX_WSOU-0012802 - XILINX_WSOU-0012856 <br> XILINX_WSOU-0014217 - XILINX_WSOU-0028150 |
| Virtex UltraScale+ FPGA | XILINX_WSOU-0010634 - XILINX_WSOU-0012784 <br> XILINX_WSOU-0014531 - XILINX_WSOU-0014556 <br> XILINX_WSOU-0018200 - XILINX_WSOU-0018216 <br> XILINX_WSOU-0018217 - XILINX_WSOU-0018238 <br> XILINX_WSOU-0028151 - XILINX_WSOU-0028607 |
| Virtex UltraScale+ 58G PAM4 | XILINX_WSOU-0018315 - XILINX_WSOU-0018325 <br> XILINX_WSOU-0028608 - XILINX_WSOU-0028787 |

| Product Name | Bates Range |
|---|---|
| Zynq UltraScale+ MPSoC | XILINX_WSOU-0010552 - XILINX_WSOU-0010565 <br> XILINX_WSOU-0010663 - XILINX_WSOU-0011283 <br> XILINX_WSOU-0011366 - XILINX_WSOU-0011755 <br> XILINX_WSOU-0012023 - XILINX_WSOU-0012721 <br> XILINX_WSOU-0014557 - XILINX_WSOU-0015789 <br> XILINX_WSOU-0017566 - XILINX_WSOU-0018199 <br> XILINX_WSOU-0018326 - XILINX_WSOU-0018340 <br> XILINX_WSOU-0032383 - XILINX_WSOU-0041691 |
| Zynq UltraScale+ RFSoC | XILINX_WSOU-0010552 - XILINX_WSOU-0010565 <br> XILINX_WSOU-0010663 - XILINX_WSOU-0011283 <br> XILINX_WSOU-0011366 - XILINX_WSOU-0011755 <br> XILINX_WSOU-0012023 - XILINX_WSOU-0012721 <br> XILINX_WSOU-0014557 - XILINX_WSOU-0015789 <br> XILINX_WSOU-0017566 - XILINX_WSOU-0018199 <br> XILINX_WSOU-0018326 - XILINX_WSOU-0018340 <br> XILINX_WSOU-0032383 - XILINX_WSOU-0041691 |
| Zynq UltraScale+ RFSoC ZCU216 Evaluation Kit | XILINX_WSOU-0005332 - XILINX_WSOU-0006097 <br> XILINX_WSOU-0011366 - XILINX_WSOU-0011755 |
| Artix UltraScale+ | XILINX_WSOU-0010566 - XILINX_WSOU-0012784 |

**INTERROGATORY NO. 7:**

For each of the Patents-in-Suit, describe in detail the facts and circumstances regarding Your first awareness of each of the Patents-in-Suit, Related Patents, and Related Patent Applications, including when You first became aware of each of the Patents-in-Suit, how You first became aware of each of the Patents-in-Suit, the identity of the individual(s) who first became aware of each of the Patents-in-Suit, the actions, if any, taken by You after becoming aware of each of the Patents-in-Suit, and an identification of all documents showing or reflecting awareness of each of the Patents-in-Suit.

**RESPONSE:**

Xilinx incorporates by reference its General Objections above.  In addition to the General

Objections, Xilinx specifically objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, attorney work product immunity, the common interest

privilege, or any other applicable privilege or immunity against disclosure.  Xilinx also objects to

this Interrogatory because it is overbroad, unduly burdensome, and seeks information that is not

relevant to any claim or defense in this case to the extent it seeks the identity of "all documents

showing or reflecting awareness of each of the Patents-in-Suit," and to the extent the terms

"Related Patents" and "Related Patent Applications" purport to include anything other than the

patents and patent applications expressly identified in Plaintiff's Identification of Accused

Products and Accused Products, served September 1, 2021 in each Action.  The burden and

expense of complying with the scope of the Interrogatory as drafted far outweighs any likely

benefit of obtaining that discovery, and therefore is not proportional to the needs of the case.

Xilinx also objects to the terms "document" and "identify" and specifically incorporates its

objection to Plaintiff's Definition Nos. 15 and 16 discussed above.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx

responds to the non-objectionable scope of this Interrogatory as follows:

Xilinx first became aware of the Patents-in-Suit on or about the filing of the Actions.

Xilinx filed a motion to dismiss WSOU's indirect infringement claims on November 9, 2020 and

again on December 7, 2020.  The Court granted the motion to dismiss on June 8, 2021.

**INTERROGATORY NO. 8:**

To the extent You contend that acceptable non-infringing alternatives exist for the subject

matter claimed by each of the Patents-in-Suit, identify and describe in detail each alleged non-

infringing alternative that You contend can be used as an alternative, including but not limited to:

(1) a description of each alleged non-infringing alternative; (2) a description of when and how each alleged non-infringing alternative was developed; (3) the identity of individuals involved in developing and/or most knowledgeable about each alleged non-infringing alternative (if applicable); (4) the dates when each alleged non-infringing alternative was incorporated in any Accused Product; (5) the costs associated with developing and implementing each alleged non-infringing alternative; (6) the steps and the time required to develop and implement each alleged non-infringing alternative; (7) a detailed explanation of how each identified alternative is not infringing; and (8) a detailed explanation of how each identified alternative is technically and commercially acceptable.

**RESPONSE:**

Xilinx incorporates by reference its General Objections above.  In addition to the General Objections, Xilinx specifically objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, attorney work product immunity, the common interest privilege, or any other applicable privilege or immunity against disclosure.  Xilinx also objects to this Interrogatory as a premature contention interrogatory to the extent it conflicts with this Court's Scheduling Order, at least because WSOU has not yet served its initial infringement contentions.  Xilinx also objects to this Interrogatory to the extent it calls for expert testimony. Xilinx also objects to the terms "describe" and "identify" and specifically incorporates its objection to Plaintiff's Definition Nos. 14 and 16 discussed above.  Xilinx also objects to this Interrogatory as containing multiple discrete subparts.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx responds to the non-objectionable scope of this Interrogatory as follows:

Xilinx will provide the information requested in this Interrogatory as part of its rebuttal expert report on non-infringement in accordance with the Scheduling Order if it intends to rely on non-infringing alternatives.

**INTERROGATORY NO. 9:**

Set forth all factual and legal bases for Your Affirmative Defenses.

**RESPONSE:**

Xilinx incorporates by reference its General Objections above.  In addition to the General Objections, Xilinx specifically objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, attorney work product immunity, the common interest privilege, or any other applicable privilege or immunity against disclosure.  Xilinx also objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all factual and legal bases" for Xilinx's Affirmative Defenses.  Xilinx also objects to this Interrogatory as containing multiple discrete subparts.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx responds to the non-objectionable scope of this Interrogatory as follows:

**U.S. Patent No. 7,613,938**

1.  With respect to the affirmative defense of Non-Infringement, Xilinx incorporates its response to Interrogatory No. 6.

2.  With respect to the affirmative defense of Invalidity, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art production which pursuant to Court Order will be served on December 1, 2021.

3.  With respect to the affirmative defense of Prosecution History Estoppel, Xilinx responds that, based on discovery provided by WSOU to date and/or positions taken to date by WSOU,

WSOU has made admissions and statements to the United States Patent and Trademark Office during prosecution of the applications leading to the issuance of the '938 Patent, including with respect to the term "circuit card" in claim 13 of the '938 Patent.

4. With respect to the affirmative defense of Equitable Defenses, Xilinx responds that the '938 Patent issued in 2009 to Alcatel Lucent. To the extent that WSOU provides infringement claim charts for products other than RFSoC ZCU216 Evaluation Kit, this defense would apply to products allegedly infringing the '938 Patent that have been available since September 2015. Alcatel Lucent or WSOU should have known of the existence of such products for and did not file suit for 5 years.

5. With respect to the affirmative defense of Failure To Mitigate Damages, Xilinx responds that the '938 Patent issued in 2009 to Alcatel Lucent. To the extent that WSOU provides infringement claim charts for products other than RFSoC ZCU216 Evaluation Kit, this defense would apply to products allegedly infringing the '938 Patent that have been available since September 2015. Neither Alcatel Lucent or WSOU took any action to mitigate the loss, injury and damage that has been suffered by Xilinx as the result of their inaction.

6. With respect to the affirmative defense of Notice, Xilinx responds that the '938 Patent issued in 2009 to Alcatel Lucent. On information and belief, Alcatel Lucent and/or Nokia failed to mark any product with the '938 Patent, and Alcatel Lucent, Nokia and/or WSOU did not require licensees, if any, to mark their products with the '938 Patent. Alcatel Lucent, Nokia and/or WSOU did not give Xilinx notice of the '938 Patent until the filing of the lawsuit.

7. With respect to the affirmative defense of Limitation on Damages, Xilinx responds that the '938 Patent issued in 2009 to Alcatel Lucent and expires on or before April 27, 2027. On information and belief, Alcatel Lucent failed to mark any product with the '938 Patent and

did not require its licensees, if any, to mark their products with the '938 Patent.  In addition,

Nokia and/or WSOU acquired the '938 Patent as part of a patent portfolio acquired from

Nokia and/or Alcatel Lucent.  On information and belief, Nokia and/or WSOU have not

required licensees to mark their products.  WSOU has not to date produced copies of any

licenses for or that include the '938 Patent.

8.  With respect to the affirmative defense of Limitation on Recovery of Costs under 35 U.S.C.

§ 288, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art

production which pursuant to Court Order will be served on December 1, 2021.

9.  With respect to the affirmative defense of Government Sales, Xilinx responds that WSOU is

precluded from obtaining any remedy against Xilinx for products used by or manufactured

for the United States under 28 U.S.C. § 1498(a).  ███████████████████

███████████████████████████████████

██████████████████████████

██████████████████████

█████████████

10.  With respect to the affirmative defense of License, Xilinx responds that WSOU acquired the

'938 Patent as part of a patent portfolio acquired from Nokia and/or Alcatel Lucent.  Both

Nokia and Alcatel Lucent have historically licensed their patents.  In addition, WSOU

contends that it has negotiated licenses with "the largest, most sophisticated companies in the

world."  On information and belief, Xilinx may be the beneficiary of licenses entered into by

Nokia, Alcatel Lucent and WSOU.

**U.S. Patent No. 7,068,950**

11. With respect to the affirmative defense of Non-Infringement, Xilinx incorporates its response to Interrogatory No. 6.

12. With respect to the affirmative defense of Invalidity, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art production which pursuant to Court Order will be served on December 1, 2021.

13. With respect to the affirmative defense of Prosecution History Estoppel, Xilinx responds that, based on discovery provided by WSOU to date and/or positions taken to date by WSOU, WSOU has made admissions and statements to the United States Patent and Trademark Office during prosecution of the applications leading to the issuance of the '950 Patent, including with respect to with the term "spectral null" in claim 17 of the '950 Patent.

14. With respect to the affirmative defense of Equitable Defenses, Xilinx responds that the '950 Patent issued in 2006 to Alcatel Lucent.  The product identified in WSOU's claim chart as allegedly infringing the '950 Patent has been available since September 2015.  Alcatel Lucent or WSOU should have known of the existence of this product for and did not file suit for five years.

15. With respect to the affirmative defense of Failure To Mitigate Damages, Xilinx responds that the '950 Patent issued in 2006 to Alcatel Lucent.  The product identified in WSOU's claim chart as allegedly infringing the '950 Patent has been available since September 2015. Neither Alcatel Lucent or WSOU took any action to mitigate the loss, injury and damage that has been suffered by Xilinx as the result of their inaction.

16. With respect to the affirmative defense of Notice, Xilinx responds that the '950 Patent issued in 2006 to Alcatel Lucent. On information and belief, Alcatel Lucent and/or Nokia failed to mark any product with the '950 Patent, and Alcatel Lucent, Nokia and/or WSOU did not

require licensees, if any, to mark their products with the '950 Patent.  Alcatel Lucent, Nokia and/or WSOU did not give Xilinx notice of the '950 Patent until the filing of the lawsuit.

17. With respect to the affirmative defense of Limitation on Damages, Xilinx responds that the '950 Patent issued in 2006 to Alcatel Lucent and expires on or before January 9, 2024.  On information and belief, Alcatel Lucent and/or Nokia failed to mark any product with the '950 Patent and did not require licensees, if any, to mark their products with the '950 Patent. WSOU acquired the '950 Patent as part of a patent portfolio acquired from Nokia and/or Alcatel Lucent.  WSOU contends that it has negotiated licenses with "the largest, most sophisticated companies in the world."  On information and belief, WSOU has not required its licensees, if any, to mark their products with the '950 patent.  Alcatel Lucent, Nokia and/or WSOU did not give Xilinx notice of the '950 Patent until the filing of the lawsuit.

18. With respect to the affirmative defense of Limitation on Recovery of Costs under 35 U.S.C. § 288, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art production which pursuant to Court Order will be served on December 1, 2021.

19. With respect to the affirmative defense of Government Sales, Xilinx responds that WSOU is precluded from obtaining any remedy against Xilinx for products used by or manufactured for the United States under 28 U.S.C. § 1498(a).  ████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████

20. With respect to the affirmative defense of License, Xilinx responds that WSOU acquired the '950 Patent as part of a patent portfolio acquired from Nokia and/or Alcatel Lucent.  Both

Nokia and Alcatel Lucent have historically licensed their patents.  In addition, WSOU contends that it has negotiated licenses with "the largest, most sophisticated companies in the world."  On information and belief, Xilinx may be the beneficiary of licenses entered into by Nokia, Alcatel Lucent and WSOU.

**U.S. Patent No. 7,903,971**

21. With respect to the affirmative defense of Non-Infringement, Xilinx incorporates its response to Interrogatory No. 6.

22. With respect to the affirmative defense of Invalidity, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art production which pursuant to Court Order will be served on December 1, 2021.

23. With respect to the affirmative defense of Prosecution History Estoppel, Xilinx responds that, based on discovery provided by WSOU to date and/or positions taken to date by WSOU, WSOU has made admissions and statements to the United States Patent and Trademark Office during prosecution of the applications leading to the issuance of the '971 Patent, including but not limited to, the term "wherein the plurality of signal states and the number of bits in each sequence are increased based on a transmission quality of the optical signal" in claim 1 of the '971 Patent.

24. With respect to the affirmative defense of Equitable Defenses, Xilinx responds that the '971 Patent issued in 2011 to Alcatel Lucent.  At least some of the products identified in WSOU's claim chart as allegedly infringing the '971 Patent have been available since November 2013. Alcatel Lucent or WSOU should have known of the existence of these products and did not file suit for seven years.

25. With respect to the affirmative defense of Failure To Mitigate Damages, Xilinx responds that the '971 Patent issued in 2011 to Alcatel Lucent.  At least some of the products identified in WSOU's claim chart as allegedly infringing the '971 Patent have been available since November 2013.  Neither Alcatel Lucent or WSOU took any action to mitigate the loss, injury and damage that has been suffered by Xilinx as the result of their inaction.

26. With respect to the affirmative defense of Notice, Xilinx responds that the '971 Patent issued in 2011 to Alcatel Lucent.  On information and belief, Alcatel Lucent and/or Nokia failed to mark any product with the '971 Patent, and Alcatel Lucent, Nokia and/or WSOU did not require licensees, if any, to mark their products with the '971 Patent.  Alcatel Lucent, Nokia and/or WSOU did not give Xilinx notice of the '971 Patent until the filing of the lawsuit.

27. With respect to the affirmative defense of Limitation on Damages, Xilinx responds that the '971 Patent issued in 2011 to Alcatel Lucent and expires on or before August 21, 2029.  On information and belief, Alcatel Lucent and/or Nokia failed to mark any product with the '971 Patent and did not require licensees, if any, to mark their products with the '971 Patent.  WSOU acquired the '971 Patent as part of a patent portfolio acquired from Nokia and/or Alcatel Lucent.  WSOU contends that it has negotiated licenses with "the largest, most sophisticated companies in the world."  On information and belief, WSOU has not required its licensees, if any, to mark their products with the '971 patent.  Alcatel Lucent, Nokia and/or WSOU did not give Xilinx notice of the '971 Patent until the filing of the lawsuit.

28. With respect to the affirmative defense of Limitation on Recovery of Costs under 35 U.S.C. § 288, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art production which pursuant to Court Order will be served on December 1, 2021.

29. With respect to the affirmative defense of Government Sales, Xilinx responds that WSOU is precluded from obtaining any remedy against Xilinx for products used by or manufactured for the United States under 28 U.S.C. § 1498(a). ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

30. With respect to the affirmative defense of License, Xilinx responds that WSOU acquired the '971 Patent as part of a patent portfolio acquired from Nokia and/or Alcatel Lucent. Both Nokia and Alcatel Lucent have historically licensed their patents. In addition, WSOU contends that it has negotiated licenses with "the largest, most sophisticated companies in the world." On information and belief, Xilinx may be the beneficiary of licenses entered into by Nokia, Alcatel Lucent and WSOU.

**U.S. Patent No. 9,312,838**

31. With respect to the affirmative defense of Non-Infringement, Xilinx incorporates its response to Interrogatory No. 6.

32. With respect to the affirmative defense of Invalidity, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art production which pursuant to Court Order will be served on December 1, 2021.

33. With respect to the affirmative defense of Prosecution History Estoppel, Xilinx responds that, based on discovery provided by WSOU to date and/or positions taken to date by WSOU, WSOU has made admissions and statements to the United States Patent and Trademark

Office during prosecution of the applications leading to the issuance of the '838 Patent , including but not limited to, the term "dual clock generator" in claim 1 of the '838 Patent.

34.    With respect to the affirmative defense of Equitable Defenses, Xilinx responds that the '838 Patent issued in 2016 to Alcatel Lucent.  At least some of the products identified in WSOU's claim chart as allegedly infringing the '838 Patent have been available since November 2013. Alcatel Lucent or WSOU should have known of the existence of these products and did not file suit for seven years.

35.    With respect to the affirmative defense of Failure To Mitigate Damages, Xilinx responds that the '838 Patent issued in 2016 to Alcatel Lucent.  At least some of the products identified in WSOU's claim chart as allegedly infringing the '838 Patent have been available since November 2013.  Neither Alcatel Lucent or WSOU took any action to mitigate the loss, injury and damage that has been suffered by Xilinx as the result of their inaction.

36.    With respect to the affirmative defense of Notice, Xilinx responds that the '838 Patent issued in 2016 to Alcatel Lucent.  On information and belief, Alcatel Lucent and/or Nokia failed to mark any product with the '838 Patent, and Alcatel Lucent, Nokia and/or WSOU did not require licensees, if any, to mark their products with the '838 Patent.  Alcatel Lucent, Nokia and/or WSOU did not give Xilinx notice of the '838 Patent until the filing of the lawsuit.

37.    With respect to the affirmative defense of Limitation on Damages, Xilinx responds that the '838 Patent issued in 2016 to Alcatel Lucent and expires on or before July 3, 2034.  On information and belief, Alcatel Lucent and/or Nokia failed to mark any product with the '838 Patent and did not require licensees, if any, to mark their products with the '838 Patent. WSOU acquired the '838 Patent as part of a patent portfolio acquired from Nokia and/or Alcatel Lucent.  WSOU contends that it has negotiated licenses with "the largest, most

sophisticated companies in the world." On information and belief, WSOU has not required

its licensees, if any, to mark their products with the '838 patent. Alcatel Lucent, Nokia

and/or WSOU did not give Xilinx notice of the '838 Patent until the filing of the lawsuit.

38. With respect to the affirmative defense of Limitation on Recovery of Costs under 35 U.S.C.

§ 288, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art

production which pursuant to Court Order will be served on December 1, 2021.

39. With respect to the affirmative defense of Government Sales, Xilinx responds that WSOU is

precluded from obtaining any remedy against Xilinx for products used by or manufactured

for the United States under 28 U.S.C. § 1498(a). ████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

40. With respect to the affirmative defense of License, Xilinx responds that WSOU acquired the

'838 Patent as part of a patent portfolio acquired from Nokia and/or Alcatel Lucent. Both

Nokia and Alcatel Lucent have historically licensed their patents. In addition, WSOU

contends that it has negotiated licenses with "the largest, most sophisticated companies in the

world." On information and belief, Xilinx may be the beneficiary of licenses entered into by

Nokia, Alcatel Lucent and WSOU.

**U.S. Patent No. 6,784,653**

41. With respect to the affirmative defense of Non-Infringement, Xilinx incorporates its response

to Interrogatory No. 6.

42. With respect to the affirmative defense of Invalidity, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art production which pursuant to Court Order will be served on December 1, 2021.

43. With respect to the affirmative defense of Equitable Defenses, Xilinx responds that the '653 Patent issued in 2004 to Alcatel Lucent. At least some of the products identified in WSOU's claim chart as allegedly infringing the '653 Patent have been available since November 2013. Alcatel Lucent or WSOU should have known of the existence of these products and did not file suit for seven years.

44. With respect to the affirmative defense of Failure To Mitigate Damages, Xilinx responds that the '653 Patent issued in 2004 to Alcatel Lucent. At least some of the products identified in WSOU's claim chart as allegedly infringing the '653 Patent have been available since November 2013. Neither Alcatel Lucent or WSOU took any action to mitigate the loss, injury and damage that has been suffered by Xilinx as the result of their inaction.

45. With respect to the affirmative defense of Notice, Xilinx responds that the '653 Patent issued in 2004 to Alcatel Lucent. On information and belief, Alcatel Lucent and/or Nokia failed to mark any product with the '653 Patent, and Alcatel Lucent, Nokia and/or WSOU did not require licensees, if any, to mark their products with the '653 Patent. Alcatel Lucent, Nokia and/or WSOU did not give Xilinx notice of the '653 Patent until the filing of the lawsuit.

46. With respect to the affirmative defense of Limitation on Damages, Xilinx responds that the '653 Patent issued in 2004 to Alcatel Lucent and expires on or before March 6, 2023. On information and belief, Alcatel Lucent and/or Nokia failed to mark any product with the '653 Patent and did not require licensees, if any, to mark their products with the '653 Patent. WSOU acquired the '653 Patent as part of a patent portfolio acquired from Nokia and/or

- 43 -

Alcatel Lucent.  WSOU contends that it has negotiated licenses with "the largest, most sophisticated companies in the world."  On information and belief, WSOU has not required its licensees, if any, to mark their products with the '653 patent.  Alcatel Lucent, Nokia and/or WSOU did not give Xilinx notice of the '653 Patent until the filing of the lawsuit.

47. With respect to the affirmative defense of Limitation on Recovery of Costs under 35 U.S.C. § 288, Xilinx incorporates by reference its Invalidity Contentions and accompanying prior art production which pursuant to Court Order will be served on December 1, 2021.

48. With respect to the affirmative defense of Government Sales, Xilinx responds that WSOU is precluded from obtaining any remedy against Xilinx for products used by or manufactured for the United States under 28 U.S.C. § 1498(a). █████████████████████

49. With respect to the affirmative defense of License, Xilinx responds that WSOU acquired the '653 Patent as part of a patent portfolio acquired from Nokia and/or Alcatel Lucent.  Both Nokia and Alcatel Lucent have historically licensed their patents.  In addition, WSOU contends that it has negotiated licenses with "the largest, most sophisticated companies in the world."  On information and belief,  Xilinx may be the beneficiary of licenses entered into by Nokia, Alcatel Lucent and WSOU.

* * *

Pursuant to Fed. R. Civ. P. 33(d), Xilinx produced documents from which a response to the nonobjectionable scope of this Interrogatory can be further derived, including at least at

XILINX_WSOU-0000001 – XILINX_WSOU-0043723.  WSOU is also in possession of at least

the following documents from which a response to the nonobjectionable scope of this

Interrogatory can be further derived: WSOU-XILINX_000006-446; WSOU-XILINX_000462-

582; WSOU-XILINX_000595-728; WSOU-XILINX_000736-928; and WSOU-

XILINX_000940-1051 (prosecution histories for the Patents-in-Suit).  Xilinx further responds

that its investigation into information responsive to the non-objectionable scope of this

Interrogatory is ongoing, and Xilinx will supplement its response when additional information is

obtained.

**INTERROGATORY NO. 10:**

Set forth all factual and legal bases for Your Counterclaims.

**RESPONSE:**

Xilinx incorporates by reference its General Objections above.  In addition to the General

Objections, Xilinx specifically objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, attorney work product immunity, the common interest

privilege, or any other applicable privilege or immunity against disclosure.  Xilinx also objects to

this Interrogatory as overbroad and unduly burdensome to the extent it seeks "all factual and

legal bases" for Xilinx's Counterclaims.

Subject to, and without waiving, the foregoing general and specific objections, Xilinx

responds to the non-objectionable scope of this Interrogatory as follows:

Xilinx incorporates by reference its response to Interrogatory No. 6.  Xilinx further

incorporates by reference its Invalidity Contentions and accompanying prior art production

which pursuant to Court Order will be served on December 1, 2021.

Pursuant to Fed. R. Civ. P. 33(d), Xilinx produced documents from which an answer to the nonobjectionable scope of this Interrogatory can be further derived, including at least at XILINX_WSOU-0000001 – XILINX_WSOU-0043723.  Xilinx further responds that its investigation into information responsive to the non-objectionable scope of this Interrogatory is ongoing, and Xilinx will supplement its response when additional information is obtained.

Dated:  February 25, 2022

OF COUNSEL:

Hilda C. Galvan
Christopher A. Buxton
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
(214) 220-3939
hcgalvan@jonesday.com
cbuxton@jonesday.com

David B. Cochran
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-7029
dcochran@jonesday.com

Thomas W. Ritchie
JONES DAY
77 West Wacker Dr.
Chicago, IL 60601-1692
(312) 269-4003
twritchie@jonesday.com

Stephanie M. Mishaga
JONES DAY
4655 Executive Dr., Suite 1500
San Diego, CA 92121-3134
(858) 703-3140
smishaga@jonesday.com

Jonathan McNeal Smith
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
(213) 243-2559
jonathansmith@jonesday.com

*As to objections only:*

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Beth A. Swadley (No. 6331)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
(302) 571-6600
agaza@ycst.com
rvrna@ycst.com
bswadley@ycst.com

*Attorneys for Xilinx, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 25, 2022, a copy of the foregoing document was served on the persons listed below in the manner indicated:

**<u>BY E-MAIL</u>**

James M. Lennon
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
jlennon@devlinlawfirm.com

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John W. Downing
Heather S. Kim
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
jwaldrop@kasowitz.com
djones@kasowitz.com
mbarber@kasowitz.com
jdowning@kasowitz.com
hkim@kasowitz.com
tnguyen@kasowitz.com

Isaac Rabicoff
RABICOFF LAW FIRM LLC
5680 King Centre Drive, Suite 645
Alexandria, VA 22315
isaac@rabilaw.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street N.E., Suite 2445
Atlanta, GA 30309
pwilliams@kasowitz.com

Shelley Ivan
Hershy Stern
Joshua A. Whitehill
Howard L. Bressler
Bradley P. Lerman
Noah P. Dorman
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
sivan@kasowitz.com
hstern@kasowitz.com
jwhitehill@kasowitz.com
hbressler@kasowitz.com
blerman@kasowitz.com
ndorman@kasowitz.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Xilinx, Inc.*